**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **X CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:24-cv-00114-B** |
| | § | |
| **WORLD FEDERATION OF** | § | |
| **ADVERTISERS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

---

**BRIEF SUPPORTING WORLD FEDERATION OF ADVERTISERS'**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(3)**

---

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................ 2

    A.  World Federation of Advertisers and Its Business Activities .................... 2

    B.  The Global Alliance for Responsible Media Initiative ("GARM") ............ 4

III. PLAINTIFF'S ALLEGATIONS ....................................................................... 6

IV. ARGUMENTS AND AUTHORITIES .............................................................. 7

    A.  Personal-Jurisdiction Legal Standards ...................................................... 9

        1.  *Personal Jurisdiction Under 15 U.S.C. § 22* ...................................... 9

        2.  *General Jurisdiction and Specific Jurisdiction* ................................ 10

    B.  Plaintiff Does Not Allege that General Jurisdiction Exists over WFA ...... 11

    C.  Plaintiff Fails to Plead Facts Demonstrating that the Court May Exercise Jurisdiction over WFA, Either Under the Clayton Act or Traditional Due Process Standards .................................................................................... 11

        1.  *Plaintiff Fails to Plead Facts Demonstrating Jurisdiction Under 15 U.S.C. § 22* ..................................................................................... 11

            a.  WFA does not "transact business" in this District ........................... 12

            b.  WFA is not "found" in this District .................................................. 15

        2.  *Plaintiff Fails to Plead Facts Supporting the Exercise of Specific Jurisdiction over WFA Consistent with Federal Due Process* ................ 16

    D.  Plaintiff Fails to Plead Any Facts Demonstrating this District Is a Proper Venue .................................................................................................... 18

V.  CONCLUSION ............................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Acad. of Ambulatory Foot Surgery v. Am. Podiatry Ass'n,*
   516 F. Supp. 378 (S.D.N.Y. 1981) ........................................................13

*Adams v. Unione Mediterranea Di Sicurta,*
   364 F.3d 646 (5th Cir. 2004) ...............................................................17

*Aeritas, LLC v. Darden Corp.,*
   6:20-cv-00938-ADA, 2021 WL 4868430 (W.D. Tex. Oct. 18, 2021) ...................18

*Am. Film & Printing, Ltd. v. Cowart Mulch Prods., Inc.,*
   No. 3:15–CV–0682–L–BF, 2015 WL 5836599 (N.D. Tex. July 16, 2015) .............8

*Am. Medicorp, Inc. v. Humana, Inc.,*
   445 F. Supp. 573 (E.D. Pa. 1977) .........................................................15

*Amateur-Wholesale Elecs. v. R.L. Drake Co.,*
   515 F. Supp. 580 (S.D. Fla. 1981) ...................................................12, 13

*Bartholomew v. Va. Chiropractors Ass'n, Inc.,*
   612 F.2d 812 (4th Cir. 1979) ...............................................................13

*Botter v. Am. Dental Ass'n,*
   124 S.W.3d 856 (Tex. App.—Austin 2003, no pet.) ...................................17

*Bullion v. Gillespie,*
   895 F.2d 213 (5th Cir. 1990) .................................................................8

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)...........................................................................11

*Colwell Realty Inv., Inc. v. Triple T Inns of Arizona, Inc.,*
   785 F.2d 1330 (5th Cir. 1986) ...............................................................8

*Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.,*
   907 F. Supp. 2d 793 (N.D. Miss. 2012).................................................14

*Crompton Corp. v. Clariant Corp.,*
   221 F. Supp. 2d 683 (M.D. La. 2002)......................................................8

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)......................................................................10, 11

*Daniel v. Am. Bd. of Emergency Med.,*
   428 F.3d 408 (2d Cir. 2005)............................................................12, 13

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.,*
   24 F.4th 491 (5th Cir. 2022) ...........................................................................10

*Def. Distributed v. Grewal,*
   971 F.3d 485 (5th Cir. 2020) ...........................................................................10

*Delta Brands Inc. v. Danieli Corp.,*
   99 F. App'x 1 (5th Cir. 2004) ......................................................................8, 17

*Douglass v. Nippon Yusen Kabushiki Kaisha,*
   46 F.4th 226 (5th Cir. 2022) ...........................................................................17

*Eagle Metal Prods., LLC v. Keymark Enters., LLC,*
   651 F. Supp. 2d 577 (N.D. Tex. 2009) (Lynn, J.)..............................................8

*Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.,*
   273 U.S. 359 (1927).........................................................................................12

*Golf City, Inc. v. Wilson Sporting Goods, Co.,*
   555 F.2d 426 (5th Cir. 1977) .................................................................. *passim*

*Guidry v. U.S. Tobacco Co.,*
   188 F.3d 619 (5th Cir. 1999) .............................................................................8

*H & S Distributors, Inc. v. Cott Corp.,*
   No. N78-327, 1980 WL 2236 (D. Conn. Mar. 31, 1980) ..................................16

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.,*
   818 F.3d 193 (5th Cir. 2016) .....................................................................10, 16

*Lawlor v. Nat'l Screen Serv. Corp.,*
   10 F.R.D. 123 (E.D. Pa. 1950)........................................................................15

*Luv N' care, Ltd. v. Insta-Mix, Inc.,*
   438 F.3d 465 (5th Cir. 2006) .............................................................................7

*Mgmt. Insights, Inc. v. CIC Enterprises, Inc.,*
   194 F. Supp. 2d 520 (N.D. Tex. 2001) (Lynn, J.)............................... *passim*

*Nat'l Athletic Trainers' Ass'n, Inc. v. Am. Physical Therapy Ass'n,*
   No. 3:08-CV-0158-G, 2008 WL 4146022 (N.D. Tex. Sept. 9, 2008) (Fish, J.) ..........12, 13, 15

*Nat'l Indus. Sand Ass'n v. Gibson,*
   897 S.W.2d 769 (Tex. 1995)............................................................................17

*Nursery Decals & More, Inc. v. Neat Print, Inc.,*
   Civ. Action No. 3:19-CV-2606-B, 2020 WL 1819885 (N.D. Tex. Apr. 10,
   2020) (Boyle, J.) .............................................................................................18

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
    No. 2:23-CV-0155-Z, 2024 WL 1218573 (N.D. Tex. Mar. 21, 2024)
    (Kacsmaryk, J.) ................................................................................................9, 11, 13

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ...........................................................................7, 8, 14

*Sangha v. Navig8 ShipManagement Priv. Ltd.*,
    882 F.3d 96 (5th Cir. 2018) .................................................................................10, 16

*Schlobohm v. Schapiro*,
    784 S.W.2d 355 (Tex. 1990) ......................................................................................10

*United Phosphorous Ltd v. Angus Chem. Co.*,
    No. 94 C 2078, 1996 WL 164394 (N.D. Ill. Apr. 2, 1996) .....................................13, 14

*United States v. Scophony Corp.*,
    333 U.S. 795 (1948) ...................................................................................................12

*Weinstein v. Norman M. Morris Corp.*,
    432 F. Supp. 337 (E.D. Mich. 1977) ..........................................................................13

**Statutes**

15 U.S.C. § 22 ............................................................................................... *passim*

28 U.S.C. § 1391(b) .........................................................................................9, 18, 19

28 U.S.C. § 1391(c)(2) ..............................................................................................19

TEX. CIV. PRAC. & REM. CODE § 17.042 .......................................................1, 2, 8, 16

**Other Authorities**

FED. R. CIV. P. 12(b)(2) ...........................................................................1, 2, 9, 17

FED. R. CIV. P. 12(b)(3) ...........................................................................1, 2, 9, 19

**TO THE HONORABLE JANE J. BOYLE, UNITED STATES DISTRICT JUDGE FOR THE NORTHERN DISTRICT OF TEXAS:**

Defendant World Federation of Advertisers ("WFA") submits this Brief Supporting Its Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(3) and 12(b)(3). Plaintiff X Corp. ("Plaintiff") has failed to carry its burden to plead *prima facie* facts demonstrating: (1) that the Court may exercise personal jurisdiction over WFA consistent with (a) 15 U.S.C. § 22 of the Clayton Act, (b) TEX. CIV. PRAC. & REM. CODE § 17.042 (the "Texas Long-Arm Statute"), or (c) the Due Process Clause of the U.S. Constitution; and (2) that this District is a proper venue. Accordingly, the Second Amended Complaint ("SAC") (Dkt. 77) should be dismissed pursuant to FED. R. CIV. P. 12(b)(2) or 12(b)(3). In support, WFA respectfully shows as follows:

## I.    INTRODUCTION

Plaintiff brings suit against WFA, a Belgian not-for-profit trade association with no contacts, offices, or business operations of any kind in the State of Texas or the Northern District of Texas (the "District"). Plaintiff alleges that WFA, along with other Defendants, violated United States antitrust laws. But Plaintiff fails to plead a *prima facie* case demonstrating that:

(1) WFA "transacts business" or "is found" in this District, such that exercising personal jurisdiction over WFA comports with 15 U.S.C. § 22 and Fifth Circuit law (i.e., Clayton Act jurisdiction);

(2) WFA has the requisite minimum contacts with Texas, such that exercising personal jurisdiction over it does not offend traditional notions of fair play and substantial justice (i.e., specific jurisdiction); or

(3) WFA resides in this District, that a substantial part of the events or omissions that give rise to Plaintiff's claims occurred in the District, or that Plaintiff's claims cannot be brought in another judicial district (and that the Court has jurisdiction over WFA) (i.e., venue).

Instead, Plaintiff attempts to demonstrate that the Court may exercise personal jurisdiction over WFA based on:

1

(1) legally conclusory allegations that WFA "transacts substantial business" in the District, despite not pleading any substantiating factual allegations;

(2) legally conclusory allegations that WFA engaged in activities enumerated in the Texas Long-Arm Statute, despite not pleading any substantiating factual allegations;

(3) legally conclusory allegations that WFA has "substantial contacts" with Texas, despite not pleading any substantiating factual allegations;

(4) alleging acts or omissions that—if true—were not undertaken by WFA's agents in Texas or this District[1]; and

(5) alleging acts or omissions that—if true—were undertaken by WFA's members and *not* WFA itself.

For these reasons, and as fully discussed below, Plaintiff fails to allege sufficient facts to demonstrate that the Court may exercise personal jurisdiction over WFA or that the District is a proper venue for Plaintiff's claims. Accordingly, the SAC should be dismissed pursuant to FED. R. CIV. P. 12(b)(2) and FED. R. CIV. P. 12(b)(3).

## II.    FACTUAL BACKGROUND

### A.  World Federation of Advertisers and Its Business Activities

WFA is a Belgian not-for-profit trade association organized under the Belgian Companies Code.[2] WFA's headquarters is located in Belgium, and it has office space in New York, New York.[3] Certain companies can become members of WFA for a membership fee, which provides access to certain WFA insights, industry trends, and information relating to WFA events.[4]

---

[1] WFA does not concede that the conduct Plaintiff alleges actually occurred. Instead, even if Plaintiff's allegations are true, the alleged conduct would have occurred outside of Texas.

[2] *See* **Appendix, Exhibit A**, Declaration of Stephan Loerke ("Loerke Dec.") at ¶ 4 (App. 001); *see also* Dkt. 77 (Second Amended Complaint ("SAC")) at ¶ 11.

[3] Exhibit A, (Loerke Dec.) at ¶ 4 (App. 001); *see also* SAC (Dkt. 77) at ¶ 11.

[4] Exhibit A, (Loerke Dec.) at ¶¶ 6, 18 (App. 001–002).

Importantly, WFA's business activities have never occurred, and do not currently occur, in Texas, let alone the Northern District of Texas.[5] Specifically, WFA has:

- Never maintained any business operations in Texas[6];

- Never held an event or conference in Texas[7];

- Never provided services relating to policy and public affairs specifically concerning the State of Texas[8];

- Never employed any officers, directors, employees, or agents in Texas[9];

- Never had an office in Texas[10];

- Never had a sponsorship agreement with an entity headquartered in Texas[11];

- Never had any initiative purposefully directed to any activity or market in Texas[12];

- Never owned any property in Texas[13];

- Never held any bank accounts in Texas[14];

- Never owned securities of any entity headquartered in Texas[15]; and

- Never held any investments in Texas.[16]

---

[5] *Id.* at ¶¶ 7–17 (App. 001–002).

[6] *Id.* at ¶ 7 (App. 001).

[7] *Id.* at ¶ 8 (App. 001).

[8] *Id.* at ¶ 9 (App. 001).

[9] *Id.* at ¶ 10 (App. 002).

[10] *Id.* at ¶ 11 (App. 002).

[11] *Id.* at ¶ 12 (App. 002).

[12] *Id.* at ¶ 13 (App. 002).

[13] *Id.* at ¶ 14 (App. 002).

[14] *Id.* at ¶ 15 (App. 002).

[15] *Id.* at ¶ 16 (App. 002).

[16] *Id.* at ¶ 17 (App. 002).

In sum, WFA has no legally relevant contacts with Texas or the District.

**B.  The Global Alliance for Responsible Media Initiative ("GARM")**

In the summer of 2019, WFA co-founded the Global Alliance for Responsible Media initiative ("GARM").[17] Membership within GARM was available to WFA members willing to pay an additional GARM-membership fee, as well as to certain non-WFA members willing to pay an annual GARM-membership fee.[18] GARM was a distinct initiative at WFA; not every WFA member was a member of GARM and, conversely, not all GARM members were WFA members.[19] GARM was co-founded by WFA to bring clarity and transparency to disparate definitions and understandings in advertising and brand safety in the context of social media.[20] For example, certain advertisers did not want platforms to advertise their brands alongside content that could negatively impact their brands. A family-branded ice-cream company may not want its advertisement alongside "violent" or "obscene" content. But these concepts are unclear and extraordinarily subjective. Different stakeholders (advertisers, agencies, social-media platforms, etc.) had different understandings and thresholds as to what qualifies as "violent" or "obscene." One brand may find it acceptable to have its advertisements near violent content because the violence is in the form of a cartoon and not a video of a real-life bar brawl, while another brand may not want its advertisements near any violent content, even if that content was in cartoon form. GARM sought to end this confusion and create a transparent, brand-safety framework free from

---

[17] *Id.* at ¶ 20 (App. 002).

[18] *Id.*

[19] *Id.*

[20] *Id.* at ¶ 21 (App. 002).

the ambiguities of what, for example, advertisers meant when using the term "violence." In short, GARM created a common "language" that the relevant industry could use.[21]

To that end, certain GARM members voluntarily participated in working groups.[22] These working groups sought to create the body of work that would allow for transparency and clarity between advertisers and social-media platforms regarding brand-safety matters.[23] None of the working groups' meetings ever took place in Texas or included any WFA or GARM member that is headquartered in Texas.[24] As one example of the resulting work product, one working group developed the "Brand Safety Floor + Suitability Framework" (the "Framework").[25] The Framework was ultimately approved by GARM's Steer Team, which consisted of GARM members that were not and are not headquartered in Texas.[26]

In addition, WFA and GARM:

- Never had any member headquartered in Texas contribute to any GARM working group or to any resulting work product from GARM[27]; and

- Never held any GARM-related events, meetings, conferences, or working groups in Texas.[28]

In short, no GARM-related conduct occurred in Texas, let alone this District.

---

[21] *See id.*

[22] *Id.* at ¶ 22 (App. 003).

[23] *See id.* at ¶¶ 21–22 (App. 002–003).

[24] *Id.* at ¶¶ 22–23, 25–26 (App. 003).

[25] *Id.* at ¶ 22 (App. 003).

[26] *Id.* at ¶ 23 (App. 003); *see also* SAC (Dkt. 77) at ¶ 39 (listing GARM's Steer Team members that are not entities that are headquartered in Texas or the District). Nowhere in the SAC does Plaintiff allege these Steer Team members are headquartered in Texas or the District.

[27] Exhibit A, (Loerke Dec.) at ¶ 25 (App. 003).

[28] *Id.* at ¶ 26 (App. 003).

Importantly, Plaintiff alleges that the Framework was at the heart of Defendants' alleged conspiracy and was the impetus for the alleged group boycott—and, by extension, Plaintiff's alleged injury.[29] But nowhere does Plaintiff plead facts demonstrating that WFA or GARM conducted any of the above-described activities in Texas, let alone this District.[30]

### III.    PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that WFA, a non-profit, somehow organized or otherwise compelled its members, some of the largest companies in the world, to boycott Plaintiff and not advertise on Plaintiff's platform.[31] Plaintiff alleges the purported boycott was carried out through:

(1) WFA/GARM organizing working groups *outside of Texas* to develop the Framework, and, ultimately, a GARM Steer Team, consisting of non-Texas-based entities, approving the Framework[32];

(2) WFA/GARM making certain communications and/or recommendations relating to brand safety to its members *outside of Texas*[33];

---

[29] *See, e.g.*, SAC (Dkt. 77), at ¶¶ 63–67, 75–85, 158–59, 163–64.

[30] *See generally* SAC (Dkt. 77).

[31] *Id.* at ¶¶ 1–9.

[32] *See, e.g., id.* at ¶ 38 ("Rob Rakowitz, co-founded GARM with WFA . . . . Rakowitz, **who works in WFA's New York office**, was the Initiative Lead for GARM and **was part of every significant decision made by GARM.**" (emphases added)); ¶ 39 (listing non-Texas-based Steer Team members and discussing their supervision of Rakowitz in New York); ¶¶ 50–57 (discussing GARM's "working groups," the development of "Brand Safety Standards," and the Steer Team's role in this work); *see also* Exhibit A, (Loerke Dec.) at ¶ 22 (App. 003) ("To accomplish [developing the Framework], . . . [t]he working groups participated in regular calls and meetings related to their efforts. . . . **None of these meetings ever took place in the State of Texas . . . [or] ever included a WFA or GARM member that is headquartered in the State of Texas . . . .**" (emphasis added)); SAC (Dkt. 77) at ¶¶ 63–64, 143, 154–55 (alleging how Framework was wrongful and caused Plaintiff's injury).

[33] *See, e.g.*, SAC (Dkt. 77) at ¶¶ 38–39, 42–43, 46–47, 75–79, 88–90, 95–97, 108–11, 115–20, 121–126, 128, 133 (alleging conduct that was undertaken by GARM agents in New York or outside of the United States); Exhibit A, (Loerke Dec.) at ¶ 27 (App. 003) (testifying that "no GARM-related conduct . . . occurred in the State of Texas").

6

(3) WFA and GARM having certain, unidentified members headquartered in Texas and this District "join[] in the conspiracy"[34]; and

(4) WFA "engag[ing] in a substantial volume of commerce throughout the United States and transact[ing] substantial business in this District," as well as having "substantial contacts . . . with this District," among other legally conclusory allegations lacking any factual color.[35]

However, Plaintiff refuses to plead any **facts** demonstrating that:

(1) WFA transacts substantial business in this District;

(2) Any of the alleged wrongful conduct Plaintiff alleges WFA undertook occurred *in Texas*, *let alone in this District*;

(3) WFA—*as opposed to its (unidentified) members*—undertook actions in, or were purposefully directed at, the State of Texas or this District;

(4) WFA is headquartered in, or should otherwise be considered a resident of, this District;

(5) A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and

(6) There exists no other district in which Plaintiff's claims may be brought, WFA is subject to jurisdiction in this District, and WFA does not reside in any judicial district in the United States.

### IV.    ARGUMENTS AND AUTHORITIES

Plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over WFA, a non-resident. *Luv N' care, Ltd. v. Insta-Mix, Inc.,* 438 F.3d 465, 469 (5th Cir. 2006). First, a plaintiff must properly allege a *prima facie* case for jurisdiction. *See Panda Brandywine Corp.*

---

[34] SAC (Dkt. 77) at ¶¶ 11, 25, 29. Tellingly, Plaintiff has dropped some allegations about these unidentified "GARM-member advertisers headquartered in Texas" from its First Amended Complaint to its SAC. *Compare* First Amended Complaint (Dkt. 62) at ¶¶ 64, 119 *with* SAC (Dkt. 77) at ¶¶ 3, 137. And while Shell USA, Inc. is the *only* defendant in this lawsuit headquartered in Texas (but not this District), Plaintiff does not allege that Shell USA, Inc. (as opposed to its affiliates) was ever a member of GARM. *See* SAC (Dkt. 77) at ¶ 23.

[35] *E.g.*, SAC (Dkt. 77) at ¶¶ 11, 29–30.

*v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–70 (5th Cir. 2001) (explaining plaintiff's "insufficient [allegations] to establish a prima facie case for jurisdiction"). When examining the sufficiency of the complaint's jurisdictional allegations, the Court is not required to credit conclusory allegations, even if uncontroverted. *Id.* at 869. The Court can determine whether it has jurisdiction over a non-resident defendant without an evidentiary hearing based on the complaint, affidavits/declarations, and other evidence. *Colwell Realty Inv., Inc. v. Triple T Inns of Arizona, Inc.,* 785 F.2d 1330, 1333 (5th Cir. 1986). Any conflicts in the (admissible) facts contained in the parties' declarations must be resolved in favor of the plaintiff. *Bullion v. Gillespie,* 895 F.2d 213, 217 (5th Cir. 1990); *see also Am. Film & Printing, Ltd. v. Cowart Mulch Prods., Inc.*, No. 3:15–CV–0682–L–BF, 2015 WL 5836599, at *5 (N.D. Tex. July 16, 2015) (Stickney, M.J.) (explaining that affidavit testimony for jurisdictional dispute must be "competent evidence").

Here, Plaintiff alleges in one conclusory paragraph that WFA is subject to personal jurisdiction under 15 U.S.C. § 22 and/or the Texas Long-Arm Statute.[36] However, Plaintiff fails to allege a *prima facie* case demonstrating: (1) that jurisdiction is proper under 15 U.S.C. § 22; (2) that WFA availed itself to the forum under any specified act in the Texas Long-Arm Statute; or (3) that WFA has minimum contacts with Texas. Additionally, Plaintiff fails to plead facts

---

[36] *See* SAC (Dkt. 77) at ¶ 29. While Plaintiff seemingly attempts to allege WFA is subject to *specific* jurisdiction here via "conspiracy jurisdiction," *see id.* at ¶¶ 25–26, 29, the Fifth Circuit has rejected conspiracy jurisdiction as a valid basis for exercising personal jurisdiction over non-resident defendants. *E.g.*, *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004) ("[The plaintiff] also contends that specific personal jurisdiction can be based on [a defendant's] alleged participation in a conspiracy to obtain [the plaintiff's] confidential information. To establish its *prima facie* case of specific personal jurisdiction, [the plaintiff] was required to demonstrate that [a defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas." (citing *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999))); *Eagle Metal Prods., LLC v. Keymark Enters., LLC*, 651 F. Supp. 2d 577, 593 (N.D. Tex. 2009) (Lynn, J.) (rejecting "conspiracy-theory jurisdiction" based on Fifth Circuit caselaw, including *Delta Brands*); *see also Crompton Corp. v. Clariant Corp.*, 221 F. Supp. 2d 683, 690–91 (M.D. La. 2002) (relying on *Guidry*'s personal-jurisdiction analysis for conspiracy allegations in context of antitrust case).

demonstrating that venue is proper under 28 U.S.C. § 1391(b), given that the SAC is devoid of any factual allegations demonstrating: (1) WFA resides in the District; (2) a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the District; or (3) there is no district in which this action may be brought *and* WFA is subject to this Court's personal jurisdiction.[37]

Accordingly, and due to its failure to allege a *prima facie* case that WFA is subject to personal jurisdiction in Texas and that venue is proper in this District, the Complaint must be dismissed pursuant to FED. R. CIV. P. 12(b)(2) and FED. R. CIV. P. 12(b)(3).

## A. Personal-Jurisdiction Legal Standards

### 1. Personal Jurisdiction Under 15 U.S.C. § 22

Plaintiff alleges that the Court may exercise jurisdiction over WFA because it (1) "transacted business" or (2) is "found" in this District pursuant to 15 U.S.C. § 22.[38] When determining whether it can exercise jurisdiction over a non-resident defendant under 15 U.S.C. § 22, the Court must look to the SAC to determine whether WFA "(1) inhabit[s]; (2) may be found in; or (3) transact[s] business in this District." *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-0155-Z, 2024 WL 1218573, at *2 (N.D. Tex. Mar. 21, 2024) (Kacsmaryk, J.) (internal quotations omitted); *see, e.g.*, *Golf City, Inc. v. Wilson Sporting Goods*,

---

[37] Plaintiff avers that venue is "proper under . . . 28 U.S.C. § 1391(b), (c), (d), and (f)," but only subsection (b) provides conditions the SAC must satisfy to demonstrate that venue is indeed proper as to WFA, as WFA is not a "foreign state." *See* SAC (Dkt. 77) at ¶ 30.

[38] *See* SAC (Dkt. 77) at ¶¶ 29–30. Plaintiff also alleges that *venue* (not jurisdiction) is proper because WFA "had agents in this District." *Id.* at ¶ 30. However, putting aside the factual inaccuracy of that statement and assuming Plaintiff intends it to apply to jurisdiction as well, recognizing the interplay between jurisdiction and venue under the Clayton Act (discussed below), the relevant inquiry under 15 U.S.C. § 22 is whether Plaintiff has alleged WFA "(1) inhabit[s]; (2) may be found in; or (3) transact[s] business in this District." *E.g.*, *Open Cheer*, 2024 WL 1218573, at *2. While having agents in a District may, in certain situations, be relevant to this analysis, it certainly is not sufficient to justify jurisdiction in and of itself, as Plaintiff avers.

*Co.*, 555 F.2d 426, 437 (5th Cir. 1977); *Mgmt. Insights, Inc. v. CIC Enterprises, Inc.*, 194 F. Supp.

2d 520, 531 (N.D. Tex. 2001) (Lynn, J.). Here, Plaintiff does not allege WFA "inhabits" the District.

### 2. *General Jurisdiction and Specific Jurisdiction*

Non-resident defendants can be haled into court if the court can exercise either "general"

or "specific" jurisdiction over defendants. *See Daimler AG v. Bauman*, 571 U.S. 117, 127–28

(2014). General jurisdiction exists when the defendant's "affiliations with the State are so

'continuous and systematic' as to render [the defendant] essentially at home in the forum State."

*Id.* at 127 (citations omitted). Additionally, the forum state's long-arm statute must provide for

jurisdiction, and the exercise of jurisdiction must be consistent with federal due process. *See Def.*

*Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020).

"Because the Texas [Long-Arm Statute] extends to the limits of federal due process," the

Court need only determine if exercising specific jurisdiction over the defendant is consistent with

federal due process. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir.

2018); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). "Due process requires that the

defendant have 'minimum contacts' with the forum state (*i.e.*, that the defendant has purposely

availed [itself] of the privilege of conducting activities within the forum state) and that exercising

jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" *Danziger*

*& De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (quoting *Sangha*,

882 F.3d at 101). A court may exercise personal jurisdiction over a non-resident defendant only

when that defendant's minimum contacts with the forum gave rise to the claim Plaintiff asserts.

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016).

This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result

of 'random,' 'fortuitous,' or 'attenuated' contacts or the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

**B. Plaintiff Does Not Allege that General Jurisdiction Exists over WFA.**

Plaintiff does not allege that the Court may exercise general jurisdiction over WFA.[39] Moreover, WFA lacks the requisite contacts with Texas to consider it "essentially at home" in the forum.[40] *Daimler AG*, 571 U.S. at 127.

**C. Plaintiff Fails to Plead Facts Demonstrating that the Court May Exercise Jurisdiction over WFA, Either Under the Clayton Act or Traditional Due Process Standards.**

*1. Plaintiff Fails to Plead Facts Demonstrating Jurisdiction Under 15 U.S.C. § 22.[41]*

Section 12 of the Clayton Act (i.e., 15 U.S.C. § 22) provides jurisdiction for antitrust claims if defendants (1) inhabit, (2) are found in, or (3) transact business in the relevant judicial district. *Open Cheer*, 2024 WL 1218573, at *2 (citing 15 U.S.C. § 22). In the present case, Plaintiff alleges—albeit incorrectly—that WFA (1) transacts business in the Northern District of Texas and (2) may "be found" in this District.[42]

---

[39] *See* SAC (Dkt. 77) at ¶¶ 27–32.

[40] *See supra* Part II.A.

[41] Many courts examine Clayton Act jurisdiction by *first* determining whether venue is proper under the Clayton Act, as, technically, the Clayton Act provides for personal jurisdiction only when venue is proper under the Clayton Act. *See, e.g.*, *Mgmt. Insights*, 194 F. Supp. 2d at 530 ("[Clayton Act jurisdiction] is inapplicable . . . because operation of the statute is predicated upon proper venue, which is lacking in this case."). For convenience, however, WFA addresses the *prima facie* case that Plaintiff must demonstrate under the Clayton Act here, in the context of jurisdiction, so that all of Plaintiff's jurisdictional theories are addressed at once, as Plaintiff's failure to satisfy the statute is dispositive of both jurisdiction and venue. *See infra* note 58 and accompanying text.

[42] *See* SAC at ¶¶ 11, 29 ("Each Defendant transacts a substantial volume of business in this District."). It is unclear whether Plaintiff alleges that WFA may "be found" in the District for *jurisdictional* purposes, as Plaintiff alleges that WFA may be "found in" the District only in relation to its venue allegations. *Id.* at ¶ 30. Nevertheless, because Clayton Act jurisdiction "is predicated upon proper venue," WFA addresses both theories. *Mgmt. Insights*, 194 F. Supp. 2d at 530.

### a. **WFA does not "transact business" in this District.**

The Supreme Court has held that whether a company "transacts business" in a district depends on whether "in fact, in the ordinary and usual sense, (the corporation) 'transacts business' (in the district) of any *substantial* character." *Golf City*, 555 F.2d at 437 (emphasis added) (quoting *Eastman Kodak Co. of N.Y. v. S. Photo Materials Co.*, 273 U.S. 359, 372–73 (1927)). Courts in this District "have found that a [company] transacts business within their forum jurisdictions when a substantial business activity is performed within the jurisdiction with continuity of character, regularity, contemporaneous with the service and not looking toward cessation of business." *Nat'l Athletic Trainers' Ass'n, Inc. v. Am. Physical Therapy Ass'n*, No. 3:08-CV-0158-G, 2008 WL 4146022, at *11 (N.D. Tex. Sept. 9, 2008) (Fish, J.) (quoting *Mgmt. Insights*, 194 F. Supp. 2d at 532–33).

The core aim of this test is for the Court to examine the nature of a defendant's business and whether a defendant's conduct demonstrates it carrying out business of a substantial character:

> [T]he determination [of] whether a defendant transacted business in a district depend[s] on a realistic assessment of the nature of the defendant's business and of whether its contacts with the [relevant] district could fairly be said to evidence the "practical, everyday business or commercial concept of doing business or carrying on business of any substantial character."

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 429 (2d Cir. 2005) (quoting *United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948)). Courts examine the following to make the above-described determination: (1) *what activities* constitute a defendant's business operations and (2) is the defendant carrying out those business operations in a district *with regularity* and *without the intent to cease them*. See *Amateur-Wholesale Elecs. v. R.L. Drake Co.*, 515 F. Supp. 580, 584–86 (S.D. Fla. 1981) ("The primary indicator in determining the substantiality of the transactions in the district is to view the *continuity* of the transactions and *their importance to the defendant*

*company*, as well as the dollar amount of the transactions." (emphases added)); *see also Open Cheer*, 2024 WL 1218573 at *2. Importantly, the Fifth Circuit (as well as other circuits) has held that organizations and associations do <u>not</u> "transact business" in a judicial district merely because some of their members reside in the district and receive the association's publications there. *Golf City*, 555 F.2d at 437; *accord Nat'l Athletic Trainers' Ass'n*, 2008 WL 4146022, at *11; *Daniel*, 428 F.3d at 429; *Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979), *abrogated on other grounds*, *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982). And district courts that have examined whether a defendant "transacts business" in a forum emphasize the requirement that such activity be "substantial" and in line with what the defendant's general business operations are. *See, e.g.*, *Acad. of Ambulatory Foot Surgery v. Am. Podiatry Ass'n*, 516 F. Supp. 378, 380–82 (S.D.N.Y. 1981) (emphasizing defendant's lack of established presence in district, walking through defendant's various alleged contacts with the district, and finding that "advertising income [from the forum state] is not dispositive" before deciding that defendant had not "transacted business" in the district); *Weinstein v. Norman M. Morris Corp.*, 432 F. Supp. 337, 341–42 (E.D. Mich. 1977) ("[W]here the foreign corporation has no office within the district and has transacted no business within the state, even the facts that a wholly owned subsidiary did business within the state and had some common officers with the parent corporation has been held to be insufficient to subject the foreign parent corporation to venue in the district under 15 U.S.C. Sec. 22.")[43]; *Amateur-Wholesale Elecs.*, 515 F. Supp. at 584–86 (finding that "two trade shows . . . in the State of Florida" was not "continuous local contact" to be the requisite degree of "transacting business"); *see also United Phosphorous Ltd v. Angus Chem. Co.*, No. 94 C 2078,

---

[43] WFA's situation is even more attenuated if Plaintiff is attempting to impute any of WFA's members' actions and presence in this District to WFA, as the members are not subsidiaries or affiliates of WFA, but separate companies altogether.

1996 WL 164394, at *4 (N.D. Ill. Apr. 2, 1996) ("Viewing plaintiff's complaint most favorably, we are unable to ascertain *specific* allegations directed to defendants Lupin and Gupta. Therefore, we cannot conclude that the general allegations in plaintiffs' complaint are sufficient to establish the needed '[t]ransaction of business within the state' to confer jurisdiction over defendants." (emphasis in original)).[44]

Here, Plaintiff fails to allege a *prima facie* case demonstrating that WFA "transacts business" in the District. First, Plaintiff fails to allege any facts demonstrating that WFA engages in any continuous business activities within the District. Instead, Plaintiff merely—and in an impermissibly conclusory fashion—alleges that "WFA . . . transacts substantial business in this District."[45] *Panda Brandywine Corp.*, 253 F.3d at 869 ("[T]he prima-facie-case requirement does not require the court to credit conclusory [jurisdictional] allegations, even if uncontroverted."); *see also United Phosphorous*, 1996 WL 164394, at *4. Nowhere else in the SAC does Plaintiff explain what WFA's supposed business in the District is or how WFA engages in continuous (rather than sporadic) business activities in the District. And contrary to Plaintiff's legally conclusory allegations, WFA has no such continuous business activities in the District.[46] WFA does not engage

---

[44] Another district court in the Fifth Circuit refused to find that AT&T, Inc. "transacted business" in the Northern District of Mississippi, despite the extensive operations of AT&T, Inc.'s affiliates there, when "[AT&T, Inc.] filed an affidavit stating that [it] [did] not conduct business in Mississippi, [was] not registered to conduct business in Mississippi, . . . maintain[ed] no registered agent in Mississippi[,] . . . [and did] not itself own equipment or maintain any property or employees in Mississippi," and the plaintiff only put forth "general unsubstantiated allegations" about AT&T, Inc. "transacting business." *Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*, 907 F. Supp. 2d 793, 800 (N.D. Miss. 2012).

[45] SAC (Dkt. 77) at ¶ 11

[46] *See* Exhibit A, (Loerke Dec.) at ¶¶ 7–17 (App. 001–002); *see also supra* Part II.A.

in any such activities in Texas or this District, and Plaintiff has failed to plead sufficient facts to suggest otherwise or create any factual dispute.[47]

At best, Plaintiff alleges that certain of WFA's **_members_** are headquartered in **<u>Texas</u>**,[48] but that allegation is insufficient to demonstrate that **_WFA_** "transacts business" in **<u>this District</u>**. *Golf City*, 555 F.2d at 437–38 ("[A] professional association does **<u>not</u>** 'transact business' in a judicial district **_merely because some of its members reside in the district_** . . . ." (emphases added)); *see also Nat'l Athletic Trainers' Ass'n*, 2008 WL 4146022, at \*11.[49]

Accordingly, under the established legal standard, Plaintiff fails to allege any facts demonstrating that WFA transacts business in this District. Therefore, Plaintiff fails to plead a basis for the Court to exercise jurisdiction over WFA pursuant to this aspect of 15 U.S.C. § 22.

**b. <u>WFA is not "found" in this District.</u>**

Courts differ as to when a defendant may be considered "found" in a judicial district. Some courts consider a defendant "found" in a district when that defendant conducts business of a substantial nature in the district—akin to the "transacts business" standard discussed above. *See, e.g., Mgmt. Insights*, 194 F. Supp. 2d at 532 (stating that being "found" is "generally equated with 'doing business' there, and requires greater contacts than does 'transacting business'"); *Am. Medicorp, Inc. v. Humana, Inc.*, 445 F. Supp. 573, 579 (E.D. Pa. 1977). Other courts consider a defendant "found" in a district when it is present in a district by its officers and agents carrying on the business of the company. *See, e.g., Lawlor v. Nat'l Screen Serv. Corp.*, 10 F.R.D. 123, 124

---

[47] *See* Exhibit A, (Loerke Dec.) at ¶¶ 7–17 (App. 001–002); *see generally* SAC (Dkt. 77) (failing to plead any alleged facts demonstrating WFA "transacts business" in Texas or the District).

[48] SAC (Dkt. 77) at ¶¶ 11, 25, and 137.

[49] Clayton Act jurisdiction depends on the defendant transacting business in the forum *district*, not just the forum *state*. 15 U.S.C. § 22.

(E.D. Pa. 1950); *H & S Distributors, Inc. v. Cott Corp.*, No. N78-327, 1980 WL 2236, at *7 (D. Conn. Mar. 31, 1980). Regardless which side of the fence the Court falls, however, WFA cannot be said to be "found" in this District because it (1) does not "transact business" in the District (as discussed above)[50] and (2) does not have any officers or agents carrying out its business in this District.[51] Plaintiff alleges nothing to the contrary.[52] In fact, at best, Plaintiff alleges that WFA had or has an agent *in New York*.[53]

In sum, Plaintiff fails to plead a *prima facie* case for jurisdiction under 15 U.S.C. § 22.[54]

### 2. Plaintiff Fails to Plead Facts Supporting the Exercise of Specific Jurisdiction over WFA Consistent with Federal Due Process.

The Texas Long-Arm Statute permits the exercise of personal jurisdiction over a non-resident defendant when the exercise of personal jurisdiction is consistent with federal due process. *Sangha*, 882 F.3d at 101. However, Plaintiff fails to plead how WFA purposefully availed itself to Texas, or, if it did, facts demonstrating how WFA's alleged activity and/or contacts gave rise to Plaintiff's claims such that the exercise of personal jurisdiction over WFA does not offend traditional notions of fair play and substantial justice. *Int'l Energy Ventures Mgmt.*, 818 F.3d at 212. Indeed, Plaintiff does not allege that WFA took any action in Texas, and every one of WFA's alleged acts—even if true—would necessarily have occurred outside of Texas.[55]

At best, Plaintiff alleges that WFA has certain, unidentified members in Texas and that certain, unidentified members participated in the GARM initiative. However, those allegations

---

[50] *See supra* Part IV.C.1.a.

[51] *See* Exhibit A, (Loerke Dec.) at ¶ 10 (App. 002).

[52] *See generally* SAC (Dkt. 77).

[53] *See id.* at ¶ 38.

[54] *See infra* note 58 and accompanying text.

[55] *See supra* notes 32–33.

standing alone are insufficient to demonstrate WFA has the necessary minimum contacts with this forum because (1) no Texas-based GARM member participated in any working group, which Plaintiff alleges formed the Framework (i.e., the basis of Plaintiff's claims in this action),[56] and, (2) even if Texas-based members did participate in GARM working groups, those contacts are not necessarily WFA's but, rather, the conduct of that specific, independent GARM member. *See Delta Brands*, 99 F. App'x. at 6; *Golf City*, 555 F.2d at 437–38.

Moreover, Plaintiff's contention that WFA is subject to jurisdiction in Texas because *some of its members* are headquartered in Texas, or because WFA communicates with those members, has been rejected by Texas courts under the relevant minimum-contacts analysis. *See e.g.*, *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774–76 (Tex. 1995) (holding no general jurisdiction over non-profit because of its member's presence in Texas, and no specific jurisdiction because non-profit's "only contacts with Texas was limited to various correspondence with [its Texas-based member]," for which plaintiff's claim did not arise out of or relate to); *accord Botter v. Am. Dental Ass'n*, 124 S.W.3d 856, 863–64 (Tex. App.—Austin 2003, no pet.).

Accordingly, and due to Plaintiff's failure to demonstrate the exercise of personal jurisdiction over WFA would be appropriate under due process, the SAC should be dismissed pursuant to FED. R. CIV. P. 12(b)(2).[57]

---

[56] Exhibit A, (Loerke Dec.) at ¶¶ 22, 25 (App. 003).

[57] Plaintiff does not explicitly plead Rule 4(k)(2) as a basis for jurisdiction over WFA, but, to the extent Plaintiff intends to rely on that rule, it does not apply to WFA. General jurisdiction under Rule 4(k)(2) does not apply, as WFA does not have contacts *with the United States as a whole* that are "so continuous and systematic" as to render it "essentially at home" *in the United States*. *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 234–35 (5th Cir. 2022). As for specific jurisdiction under Rule 4(k)(2), that theory also fails because Rule 4(k)(2) distinguishes between a defendant's contacts with the United States as a whole, as opposed to any state within the United States. *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) ("In applying Rule 4(k)(2) the Court must determine whether the defendant has sufficient ties to the United States

*(footnote continues on next page…)*

**D.  Plaintiff Fails to Plead Any Facts Demonstrating this District Is a Proper Venue.**

Plaintiff alleges, in a legally conclusory fashion, that venue is proper in the District under the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391(b). Similar to the personal-jurisdiction analysis detailed above, Plaintiff must allege non-conclusory facts that support venue in this District, and Plaintiff bears the burden of establishing venue. *Nursery Decals & More, Inc. v. Neat Print, Inc.*, Civ. Action No. 3:19-CV-2606-B, 2020 WL 1819885, at *3 & n.2 (N.D. Tex. Apr. 10, 2020) (Boyle, J.) ("Although some courts in this circuit have held that the burden for establishing venue lies with the defendant, . . . other courts, including this one, have consistently held that the plaintiff bears the burden."); *see also Aeritas, LLC v. Darden Corp.*, 6:20-cv-00938-ADA, 2021 WL 4868430, at *1 (W.D. Tex. Oct. 18, 2021) ("[A] plaintiff may not simply rely on legally conclusory statements to survive a motion to dismiss [for improper venue].").

For the reasons discussed above, Plaintiff has failed to plead facts demonstrating venue is proper under the Clayton Act because Plaintiff has not demonstrated that WFA: (1) inhabits; (2) may be found in; or (3) transacts business in this District. In fact, the evidence WFA has put forward demonstrates that it is impossible to find otherwise. In short, the jurisdictional analysis under the Clayton Act (addressed above) disposes of any venue question under the Clayton Act. *See Mgmt. Insights*, 194 F. Supp. 2d at 530–33 (explaining that plaintiff attempting to establish jurisdiction *or venue* under Clayton Act must establish defendant is an inhabitant of, found in, or transacts business in the relevant district).[58]

---

as a whole to satisfy constitutional due process concerns."). That Plaintiff alleges that WFA's only contact with (or more precisely *within*) the United States is that it "has an office in New York, New York" demonstrates that Plaintiff cannot rely on Rule 4(k)(2). SAC (Dkt. 77) at ¶ 11.

[58] *See supra* Part IV.C.1; *see also* Defendants' Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim, Dkt. 56, Case No. 7:24-cv-00115-B (N.D. Tex.) at 9–11, 14–17 (explaining the interplay between Clayton Act jurisdiction and venue, and then addressing why Clayton Act venue does not exist).

Likewise, Plaintiff has failed to plead facts demonstrating that this District is a proper venue for this lawsuit under 28 U.S.C. § 1391(b), which provides that a civil action may be brought in "(1) a judicial district in which [the] defendant resides," "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or "(3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

Here, Plaintiff has failed to plead facts demonstrating that any of these options apply to its claims. Plaintiff never pleads facts demonstrating that WFA resides in Texas, and the jurisdictional analysis set forth above otherwise disposes of this venue theory. *See* 28 U.S.C. § 1391(c)(2). Plaintiff also does not plead any facts showing that "a substantial part of the events or omissions giving rise to [its] claims" occurred in Texas, let alone this District. In fact, the "acts or omissions" that Plaintiff alleges underpin its claims—assuming Plaintiff's allegations to be true—would not have occurred in Texas.[59] Finally, Plaintiff does not allege that there is no district in which this action may be brought; it may even be suggesting the opposite by claiming WFA has office space in New York. And, moreover, Plaintiff does not demonstrate why this Court may exercise jurisdiction over WFA, as discussed above.

Accordingly, the SAC should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

## V.    Conclusion

For the reasons stated above, WFA respectfully requests that the Court dismiss the SAC, as against WFA, for lack of personal jurisdiction and improper venue.

---

[59] *See supra* note 55 and accompanying text.

Dated: May 14, 2025

Respectfully submitted,

*/s/ David C. Miller*

**David C. Miller**
 Texas Bar No. 24110114
 dmiller@bradley.com
**William S. Snyder**
 Texas Bar No. 00786250
 wsnyder@bradley.com
**Samuel T. Acker**
 Texas Bar No. 24100111
 sacker@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
Fountain Place
1445 Ross Ave., Suite 3600
Dallas, TX 75202
Phone: (214) 257-9800
Fax: (214) 939-8787

**Charles E. Elder** (admitted *pro hac vice*)
 Tennessee Bar No. 038250
 celder@bradley.com
**BRADLEY ARANT BOULT CUMMINGS LLP**
1221 Broadway, Suite 2400
Nashville, TN 37203
Phone: (615) 252-3597
Fax: (615) 252-6380

***Counsel for Defendant World Federation of Advertisers***

## CERTIFICATE OF SERVICE

I certify that on May 14, 2025, the foregoing document was filed using the Court's CM/ECF system, which constitutes service to all attorneys of record who have registered for CM/ECF updates.

*/s/ David C. Miller*
David C. Miller