IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| X CORP., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> WORLD FEDERATION OF § <br> ADVERTISERS, *et al.*, § <br> § <br> Defendants. § <br> § | Civil Action No. 7:24-cv-00114-B |

**APPENDIX IN SUPPORT OF BRIEF SUPPORTING
WORLD FEDERATION OF ADVERTISERS' MOTION
TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(3)**

Defendant World Federation of Advertisers identifies the following materials offered in support of its Brief Supporting Its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 12(b)(3).

| Description | Page Number |
|---|---|
| Exhibit A – Declaration of Stephan Loerke | App. 001-004 |

Dated: May 14, 2025                                    Respectfully submitted,

                                                       By: */s/ David C. Miller*
                                                       David C. Miller
                                                       Texas Bar No. 24110114
                                                       dmiller@bradley.com
                                                       William S. Snyder
                                                       Texas Bar No. 00786250
                                                       wsnyder@bradley.com
                                                       Samuel T. Acker
                                                       Texas Bar No. 24100111
                                                       sacker@bradley.com
                                                       BRADLEY ARANT BOULT CUMMINGS LLP
                                                       1445 Ross Ave., Ste. 3600
                                                       Dallas, Texas 75202
                                                       (214) 257-9800 (Telephone)
                                                       (214) 939-8787 (Facsimile)

                                                       Charles E. Elder (*pro hac vice*)
                                                       Tennessee Bar No. 038250
                                                       celder@bradley.com
                                                       BRADLEY ARANT BOULT CUMMINGS LLP
                                                       1221 Broadway, Suite 2400
                                                       Nashville, TN 37203
                                                       Telephone: (615) 252-3597
                                                       Facsimile: (615) 252-6380

                                                       *Counsel for Defendant World Federation of Advertisers*

## CERTIFICATE OF SERVICE

    I certify that on May 14, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

                                                       */s/ David C. Miller*
                                                       David C. Miller

2



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **X CORP.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 7:24-cv-00114-B |
| **WORLD FEDERATION OF ADVERTISERS,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF STEPHAN LOERKE

1.   My name is Stephan Loerke. I am competent to make this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct.

2.   I am the CEO of World Federation of Advertisers ("WFA") and have served in that position since November 2003.

3.   I submit this declaration in support of WFA's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3).

4.   WFA is a not-for-profit trade association organized under the Belgian Companies Code. WFA's headquarters is located in Metropolitan Brussels, Belgium, where I currently reside.

5.   WFA has office space in Brussels, New York, London, and Singapore. WFA does not have office space in the State of Texas, including the Northern District of Texas.

6.   As part of its revenue, WFA collects membership fees from its members. WFA members are provided access to certain WFA insights, industry trends, and any information related to upcoming WFA events and conferences.

7.   WFA has never maintained any business operations in the State of Texas, including the Northern District of Texas.

8.   WFA has never held an event or conference in the State of Texas, including the Northern District of Texas.

9.   WFA has never provided services relating to policy and public affairs specifically concerning the State of Texas.

10. WFA has never employed any officers, directors, employees, or agents in the State of Texas, including the Northern District of Texas.

11. WFA has never had an office in the State of Texas, including the Northern District of Texas.

12. WFA has never had a sponsorship agreement with an entity headquartered in the State of Texas, including the Northern District of Texas

13. WFA has never had any initiative purposefully directed to any activity or market in the State of Texas, including the Northern District of Texas.

14. WFA has never owned property in the State of Texas, including the Northern District of Texas.

15. WFA has never held any bank accounts in the State of Texas, including the Northern District of Texas.

16. WFA has never owned securities of any entity headquartered in the State of Texas, including the Northern District of Texas.

17. WFA has never held any investments in the State of Texas, including the Northern District of Texas.

18. To become a member of WFA, an entity must apply and pay an annual fee. Once accepted, WFA members have access to WFA's market insights, perspectives, content, and events.

19. WFA members are never compelled to adopt any policy or initiative that WFA may develop or recommend. WFA members' internal policies and decision-making are solely within those members' discretion.

20. In the summer of 2019, WFA co-founded the Global Alliance for Responsible Media initiative ("GARM"). Both WFA members and certain non-WFA members could be a part of GARM if they paid an annual GARM membership fee. GARM was a distinct initiative at WFA, and not every WFA member was a member of GARM and, conversely, not all GARM members were WFA members.

21. GARM was created to bring clarity and transparency to definitions and understandings in advertising and brand safety in the context of social media. Specifically, advertisers and agencies seeking to advertise on certain social-media platforms, as well as the social-media platforms themselves, all had different subjective definitions of what constituted "brand safety." For example, brands may not want their advertisements displayed next to violent content. But two different brands may have different definitions for what "violent content" means. One brand may allow its advertisements to be displayed near violent content because the "violent" content is in the form of a cartoon. At the same time, another brand may consider the "cartoon violence" unacceptable for its brand. GARM sought to end this confusion and bring transparency to the process by developing a body of work that defined and used common language for what content brands might want their advertisements to be distanced from.

                                                                                                                                                                    App. 002

22. To accomplish this goal, certain GARM members that wanted to participate in the process of creating this body of work voluntarily joined "working groups." One example of the work product created by one of these working groups was the "Brand Safety Floor + Suitability Framework" (the "Framework"). The working groups participated in regular calls and meetings related to their efforts. Most of the working groups' meetings occurred virtually. To the extent these meetings occurred in person, none of these meetings ever took place in the State of Texas, including the Northern District of Texas. For any calls or virtual meetings for these working groups, none of GARM's staff participated in those calls or virtual meetings within the State of Texas, including the Northern District of Texas. None of these calls or meetings for the working groups ever included a WFA or GARM member that is headquartered in the State of Texas, including the Northern District of Texas.

23. After non-Texas-based GARM members developed the Framework, it was approved by GARM's Steer Team, which consisted of GARM members that were not and are not headquartered in the State of Texas, including the Northern District of Texas. The Steer Team largely met virtually.

24. No GARM or WFA member was ever required to use the Framework, and, in fact, certain GARM members either did not substantively change their brand-safety processes or used a modified version of the Framework at their discretion. Using the Framework was not a condition to joining or remaining a member of GARM or WFA.

25. WFA and GARM have never had any member headquartered in the State of Texas, including the Northern District of Texas, contribute to any GARM working group or to any resulting work product from GARM.

26. WFA has never held any GARM-related events, meetings, conferences, or working groups in the State of Texas, including the Northern District of Texas.

27. I have investigated and confirmed that no GARM-related conduct—including but not limited to GARM meetings, working-group sessions, and approval of the Framework—occurred in the State of Texas, including the Northern District of Texas.

28.  Any WFA or GARM documents in WFA's possession, custody, or control relating to this litigation, WFA, and GARM are controlled at WFA's headquarters in Belgium.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on May __13__, 2025

_____
Stephan Loerke