## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| X CORP. | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **WORLD FEDERATION OF** | § | |
| **ADVERTISERS; MARS, INCORPORATED;** | § | **CASE NO. 7:24-CV-00114-B** |
| **CVS HEALTH CORPORATION; ØRSTED** | § | |
| **A/S; TWITCH INTERACTIVE, INC.;** | § | |
| **NESTLÉ S.A.; NESTLE USA, INC.;** | § | |
| **ABBOTT LABORATORIES; COLGATE** | § | |
| **PALMOLIVE COMPANY; LEGO A/S;** | § | |
| **LEGO BRANDS RETAIL, INC.;** | § | |
| **PINTEREST, INC; TYSON FOODS, INC.;** | § | |
| **SHELL PLC; SHELL USA, INC.; and** | § | |
| **SHELL BRANDS INTERNATIONAL AG,** | § | |
| | § | |
| **Defendants.** | § | |

### BRIEF IN SUPPORT OF SHELL PLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Layne E. Kruse
State Bar No. 11742550
layne.kruse@nortonrosefulbright.com
Carlos R. Rainer
State Bar No. 24027641
carlos.rainer@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone No.: (713) 651-5151
Facsimile No.: (713) 651-5246
Ellen Sessions
State Bar No. 00796282
ellen.sessions@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone No.: (214) 855-8000
Facsimile No.: (214) 855-8200
***Attorneys for Defendant Shell Plc***

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   SHELL PLC ..................................................................................................... 2

III.  FACTUAL BACKGROUND ............................................................................ 3

IV.   ARGUMENT AND AUTHORITIES ................................................................ 6

      A.    There is no personal jurisdiction under the Texas long-arm statute. ........... 6

            i.    Shell plc is not subject to general jurisdiction in Texas. .................... 7

            ii.   Shell plc is not subject to specific jurisdiction in Texas. ................... 8

      B.    There is no personal jurisdiction over Shell plc anywhere in the country. ................. 13

            i.    There is no general jurisdiction over Shell plc in the U.S. ............... 14

            ii.   There is no specific jurisdiction over Shell plc in the U.S. .............. 15

      C.    There is no personal jurisdiction under Section 12 of the Clayton Act because venue
            would not be proper under Section 12. ..................................................... 17

V.    THE NORTHERN DISTRICT OF TEXAS IS NOT A PROPER VENUE ....................... 18

      A.    The general federal venue provision— 28 U.S.C. § 1391—does not provide for venue
            in this District. ................................................................................... 18

      B.    The Clayton Act does not provide for venue in this District. .................... 19

VI.   CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*721 Bourbon, Inc. v. House of Auth, LLC*,
  140 F. Supp. 3d 586 (E.D. La. 2015) .................................................................10

*Access Telecom, Inc. v. MCI Telecomms. Corp.*,
  197 F.3d 694 (5th Cir. 1999) ..............................................................................18

*Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*
  450 Fed. App'x 326 (5th Cir. 2011) ....................................................................13

*Admar Int'l v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) ...............................................................................10

*Air Vent, Inc. v. Powermax Elec. Co.*,
  2023 U.S. Dist. LEXIS 9155 (N.D. Tex. 2023) (Boyle, J.) ...................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................13

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................................11

*Carmona v. Leo Ship Mgmt., Inc.*,
  924 F.3d 190 (5th Cir. 2019) ..............................................................................11

*City of Oakland v. BP P.L.C.*,
  No. C 17-06011 WHA, 2018 WL 3609055 (N.D. Cal. July 27, 2018) .......14, 15, 16

*Corr Wireless Commc'ns., L.L.C. v. AT & T, Inc.*,
  907 F. Supp. 2d 793 (N.D. Miss. 2012) ..............................................................17

*Daimler v. Bauman*,
  571 U.S. 117 (2014) ......................................................................................7, 8, 14

*Daniel v. Am. Bd. Of Emergency Medicine*,
  *428 F.3d 408 (2d Cir. 2005)* ..............................................................................17

*Delta Brands Inc. v. Danieli Corp.*,
  99 Fed. Appx. 1 (5th Cir. 2004) ..........................................................................16

*Dennis v. JPMorgan Chase & Co.*,
  343 F. Supp. 3d 122 (S.D.N.Y. 2018) .................................................................20

*Dickson Marine Inc. v. Panalpina, Inc.*
  179 F.3d 331 (5th Cir. 1999) ................................................................................8

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
  46 F.4th 226 (5th Cir. 2022) (*en banc*) ..............................................................14

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
  948 F.3d 289 (5th Cir. 2020) .................................................................................9

*Eagle Metal Prod., v. Keymark Enterprises*,
  651 F. Supp. 2d 577 (N.D. Tex. 2009) ..................................................................16

*Federation of State Massage Therapy Boards v. Mendez Master Training Center, Inc.*,
  4:17-cv–2936, 2018 WL 534540 (S.D. Tex. Jan 24, 2018)....................................16

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021)..............................................................................................11

*Gigi's Cupcakes, LLC v. 4 Box, LLC*,
  No. 3:17-CV-3009, 2020 WL 1064852 (N.D. Tex. March 5, 2020) (Boyle, J.) ...................16

*Gilmore v. Palestinian Interim Self-Government*,
  422 F. Supp. 2d 96 (D.D.C. 2006) ........................................................................16

*Gilmour, Tr. for Grantor Trs. v. Blue Cross & Blue Shield of Ala.*,
  2019 WL 2147580 (W.D. Tex. Mar. 6, 2019) ........................................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011)............................................................................................7, 8

*GTE New Media Servs., Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000)............................................................................17

*Guidry v. U.S. Tobacco Co.*,
  188 F.3d 619 (5th Cir. 1999) ...............................................................................16

*Halliburton Energy v. Ironshore Specialty Ins.*,
  921 F.3d 522 (5th Cir. 2019) .................................................................................9

*Harbour v. Heyl Truck Lines, Inc.*,
  No. 24-CV-0183, 2024 WL 1317805 (N.D. Tex. Mar. 27, 2024)............................6

*Hardy v. Scandinavian Airlines Sys.*,
  117 F.4th 252 (5th Cir. 2024) ..............................................................................15

*Havlish v. Royal Dutch Shell PLC*,
  No. 13-cv-7074, 2014 WL 4828654 (S.D.N.Y. Sept. 24, 2014) ....................3, 8, 12

*Johnson v. TheHuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021) ................................................................................10

*Johnston v. Multidata Sys. Int'l*,
  523 F.3d 602 (5th Cir. 2008) ..............................................................................6, 7

*Kelly v. Syria Shell Petroleum Development B.V.*,
  213 F.3d 841 (5th Cir. 2000) .......................................................................2, 8, 12

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013)................................................................................17

*Lewis v. Fresne*,
   252 F.3d 352 (5th Cir. 2001) ...........................................................................7

*Libersat v. Sundance Energy, Inc.*,
   978 F.3d 315 (5th Cir. 2020) ..........................................................................9

*Mgmt. Insights, Inc. v. CIC Enter., Inc.*,
   194 F. Supp. 2d 520 (N.D. Tex. 2001) ................................................17, 18, 20

*Nat'l Indus. Sand Ass'n v. Gibson*,
   897 S.W.2d 769 (Tex. 1995)...........................................................................16

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
   No. 23-cv-0155, 2024 WL 1218573 (N.D. Tex., Mar. 21, 2024)............................17

*Panda Brandywine Corp. v. Potomac Elec. Power. Co.*,
   253 F.3d 865 (5th Cir. 2001) .............................................................6, 10, 11

*Patterson v. Aker Solutions, Inc.*
   826 F.3d 231 (5th Cir. 2016) .........................................................................14

*Patterson v. Dietze*,
   764 F.2d 1145 (5th Cir. 1985) .......................................................................11

*Petersen v. Meta, Inc.*,
   No. 2:24-CV-00038, 2024 WL 4719714 (S.D. Tex. Sept. 4, 2024), *report and
   recommendation adopted by* 2024 WL 4608185 (S.D. Tex. Oct. 29, 2024)..........19

*Quick Technologies v. Sage Grp.*
   PLC, 313 F.3d 338 (5th Cir. 2002 ) ..................................................................6

*Ramzan v. GDS Holdings Ltd.*,
   No. 18-cv-539, 2019 WL 4748001 (E.D. Tex. Sept. 30, 2019)............................17

*Revell v. Lidov*,
   317 F.3d 467 (5th Cir. 2002) ...........................................................................7

*San Antonio Tel. Co. v. Am. Tel.*
   & *Tel. Co.*, 499 F.2d 349 (5th Cir. 1974).........................................................20

*Sangha v. Navig8 ShipManagement Private Ltd.*,
   882 F.3d 101 (5th Cir. 2018) ...........................................................................7

*Seiferth v. Helicopteros Atuneros, Inc.*
   472 F.3d 266 (5th Cir. 2006) ...........................................................................9

*Sotloff v. Qatar Charity*,
   674 F. Supp. 3d 1279 (S.D. Fla. 2023), X .........................................................15

*Stuart v. Spademan*,
   772 F.2d 1185 (5th Cir. 1985) .........................................................................6

*Walden v. Fiore*,
   571 U.S. 277 (2014).....................................................................................8, 11

*WorldVentures Holdings, LLC v. Mavie*,
 No. 4:18-cv-393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ...........................................16

*Wyatt v. Kaplan*,
 686 F.2d 276 (5th Cir. 1982) ...........................................................................................6, 13

**Rules and Statutes**

15 U.S.C. § 22 ....................................................................................................17, 18, 19

28 U.S.C. § 1391 ................................................................................................................18

28 U.S.C. § 1391(b) .....................................................................................................18, 19

28 U.S.C. § 1391(c) ...........................................................................................................18

28 U.S.C. § 1391(d) ...........................................................................................................18

28 U.S.C. § 1391(f) ............................................................................................................18

Clayton Act 15 U.S.C. §§ 12 et seq ..............................................................1, 17, 18, 19, 20

Fed. R. Civ. P. 4(k)(2).....................................................................................1, 13, 14, 15, 16

Fed. R. Civ. P. 12(b)(2)..................................................................................................1, 20

Fed. R. Civ. P. 12(b)(3)..................................................................................................1, 20

Securities and Exchange Act 15 U.S.C. § 78a et seq.............................................................18

Tex. Civ. Prac. & Rem. Code § 17.042 ..................................................................................6

## I.    INTRODUCTION[1]

X Corp. ("X") demands that Defendant Shell plc come to Texas to answer for an alleged conspiracy that Shell plc did not and could not participate in, encourage, or direct.  Shell plc, a holding company, is not registered to do business in any state, does not maintain any employees or offices in this country, and does not own any tangible assets in the United States (U.S.).

For a century, it has been settled law in the U.S. that the presence of a subsidiary in the forum state does not, without more, subject the parent corporation to its jurisdiction.  Shell plc does not direct, control, or encourage the alleged conduct of the subsidiaries named as defendants in the Complaint. On these grounds, Shell plc moves for dismissal for lack of personal jurisdiction and improper venue under Rules 12(b)(2) and 12(b)(3).

There is no personal jurisdiction over Shell plc under the Texas long-arm statute because Shell plc, headquartered abroad and organized under foreign laws, is not "at home" in Texas. As a holding company with no operations of its own, Shell has not purposefully availed itself of Texas law. There is no personal jurisdiction over Shell plc under Rule 4(k)(2) for the same reason. And there is no personal jurisdiction over Shell plc under Section 12 of the Clayton Act either because nationwide service of process for personal jurisdiction in antitrust cases is only available after venue is established under Section 12, and venue cannot be established in the Northern District of Texas.  Even if this Court were to permit X to decouple the venue and service of process provisions of Section 12 and rely on Section 1391(c)(3)'s venue provision while also relying on Section 12's service of process provision, the exercise would still prove unavailing because X has not made a prima facie showing that Shell plc has sufficient minimum contacts with the U.S. as a whole to establish personal jurisdiction over Shell plc.

---

[1]X and Twitter may be used interchangeably, and X's Second Amended Complaint (ECF No. 77) may be referred to as "XSAC."

II.    **SHELL PLC**

Shell plc is a public limited company registered in England and Wales and headquartered in London. Declaration of Sean Ashley ¶ 3 ("Ashley Decl."). It is the ultimate parent company of hundreds of separate companies around the world. *Id.* ¶5. As a holding company, it has no operations or employees of its own. *Id.* ¶¶ 3, 4. It is not registered to conduct business in Texas or in any other state, does not maintain any office in the country, and, other than its status as a holding company, Shell plc does not own any tangible assets in the U.S. *Id.* ¶¶ 6.

Shell plc is the ultimate parent of Shell USA, Inc. ("Shell USA") and Shell Brands International AG ("SBI"), also named as defendants. Ashley Decl. ¶ 7; Declaration of Ferdinand V. Aragon ("Aragon Decl.") ¶ 8; Declaration of Lynn S. Borgmeier ("Borgmeier Decl.") ¶ 4; XSAC. ¶ 23. Shell USA and SBI are organized and operate separately from Shell plc. Ashley Decl. ¶ 7; Aragon Decl. ¶ 8; Borgmeier Decl. ¶ 4. Officers and employees of Shell USA and SBI are responsible for day-to-day operations of those subsidiaries. Ashley Decl. ¶7; Aragon Decl. ¶ 8; Borgmeier Decl. ¶ 4. None of the officers and directors of SBI reports that they are directors or employees of Shell plc or Shell USA, Inc. Ashley Decl. ¶ 7; Aragon Decl. ¶ 8; Borgmeier Decl. ¶ 4; Declaration of Andrea Laanio ("Laanio Decl.") ¶ 7. As a holding company, Shell plc does not enter into any contracts with media companies for the purchase of services and advertising and it does not approve advertising expenditures of its subsidiaries. Ashley Decl. ¶ 8.

The Fifth Circuit has held that Royal Dutch Petroleum Company (a predecessor of Shell plc) was not amenable to personal jurisdiction based on the Texas contacts of its indirect subsidiary, Shell Oil Company (a predecessor of Shell USA, Inc.). *Kelly v. Syria Shell Petroleum Development B.V.,* 213 F.3d 841, 856-58 (5th Cir. 2000). Because the parent and subsidiary maintained corporate formalities and plaintiff did not show that the parent controlled the subsidiary, Shell Oil's contacts could not be imputed to Royal Dutch. *Kelly* at 856-58. For the

same reason, in *Havlish v. Royal Dutch Shell PLC*, the Southern District of New York would not exercise personal jurisdiction over Royal Dutch Shell plc (another Shell plc predecessor) based on the presence in New York of its indirect subsidiaries. No. 13-cv-7074, 2014 WL 4828654, at *3 (S.D.N.Y. Sept. 24, 2014).

X lumps Shell plc together with SBI and Shell USA, referring to them indiscriminately as "Shell." XSAC ¶ 23.  But in the same breath, X also acknowledges that all three are distinct corporate entities. *Id*. ¶ 23.  This motion focuses on the dismissal of Shell plc as a separate corporate entity.

## III.    FACTUAL BACKGROUND

X, the successor to Twitter, Inc. ("Twitter"), operates a social media platform selling ad space to companies and ad agencies with the ads appearing in "feeds" along with posts generated by X users.  XSAC ¶¶ 10 and 33.  X alleges that the defendants (save the World Federation of Advertisers ("WFA")) have purchased advertising on social media platforms.  *Id*. ¶¶ 13-23.

The WFA is a Belgian nonprofit trade association comprised of companies that advertise products and services around the world.  XSAC ¶¶ 11-12.  In 2019, the WFA established an initiative called the Global Alliance for Responsible Media ("GARM").  *Id*. ¶ 36.  In conclusory fashion, X alleges that Shell plc was a "founding member" of GARM, *id*. ¶ 23, but Shell plc has no operations or employees, and naturally, it has no one who participated in the WFA or GARM and no record of membership payments made to the WFA or GARM.  Ashley Decl. ¶4.

GARM was formed to address a problem plaguing social media platforms and their customers.  XSAC ¶¶ 36, 63.  Conscious of risks to their brands, companies "d[id] not want their advertisements appearing in connection with or adjacent to" hateful, obscene, or otherwise objectionable content, *id*. ¶ 63, and they wanted tools to (i) better understand and decide where their ads would appear relative to such content, *id*. ¶¶ 41, 49, and 53, and (ii) streamline discussions

with platforms concerning how to avoid placing their ads next to such content. *Id.* ¶ 63. GARM participants included advertisers, ad agencies, and social media platforms. *Id.* ¶¶ 11, 36. Twitter was one of GARM's original participants, *id.* ¶ 96. Through GARM, platforms like Twitter worked together with advertisers to develop a voluntary brand safety framework that facilitates social media advertising. Thus, GARM's participants sought to create "common definition[s], common measures, [and] common tools" to facilitate negotiations between advertisers and platforms, *id.* ¶ 49, to address and "customize" where ads would be placed so as "to avoid unwanted content." *Id.* ¶ 63.[2]

In April 2022, Mr. Musk announced his intention to buy Twitter with the transaction closing on October 27, 2022. *Id.* ¶ 92. Four days later, the WFA wrote Mr. Musk, reminding him that Twitter was one of GARM's original members, noting the industry had "come a long way" in advancing "transparency and control," and explaining that GARM would monitor Twitter's actions so GARM members would have information that they needed to make "their own independent assessments" of the platform. *Id.* ¶ 96. Although Mr. Musk publicly responded to the WFA that "Twitter's commitment to brand safety remain[ed] unchanged," *id.* ¶ 98, he immediately dismissed many of Twitter's personnel who helped make the platform safe for advertisers, *id.* ¶ 132. Mr. Musk later renamed the Twitter platform "X" and merged it with his

---

[2] To establish a common framework that social media platforms could use to measure and verify their brand safety processes and that advertisers could use to gauge the risk to their brands from advertising on particular platforms, X alleges GARM "promulgate[d] standards relating to the placement of advertising on digital media and social media platforms." *Id.* ¶¶ 48, 56, 68. In September 2020, GARM published and adopted its Brand Safety Floor and Suitability Framework (the "Framework") to improve transparency in ad placements on social media platforms. *Id.* ¶¶ 52-53. The Framework established a rubric to identify and assign risk to various categories of objectionable content. *Id.* ¶ 53. The categories were split into two tiers: (1) the "Brand Safety Floor," which designated content "that advertisements may not appear in connection with," and (2) the "Brand Suitability Framework," which designated sensitive content next to which advertisers could choose whether or not their ads "may" appear. *Id.* ¶ 53.

new X Corporation. *Id.* ¶¶ 10, 92. Over the course of the week after Mr. Musk acquired Twitter, multiple ad agencies issued recommendations that clients pause their advertising on the platform "based on concerns" about impending changes to Twitter's content policy. *Id.* ¶ 104. On November 3, Mr. Musk tried to salvage X's advertising relationships by meeting with more than 100 companies and ad agencies "to assure them" Twitter would remain "attractive to advertisers." *Id.* ¶ 107.

Advertisers' responses varied with some either reducing or suspending their advertisements on Twitter while others continued advertising on Twitter. Those that did pull back took different approaches at different times, with some cutting back over several months in the U.S. while still advertising on the platform overseas; others withdrew completely. *Id.* ¶ 138. Meanwhile, other advertisers who were not GARM participants exhibited nearly identical behavior with some continuing to advertise on X, while others stopped, *id.* ¶¶ 139, 154, consistent with the facts revealed in X's Complaint, namely that individual GARM participants made independent advertising decisions similar to decisions made by advertisers who did not participate in GARM. *Id.* ¶¶ 3, 66, 85-88, 154–55.

Shell plc *itself* did not suspend or pull any advertisements on Twitter at any time during GARM's existence because Shell plc *itself* had not advertised on Twitter during GARM's existence. Ashley Decl. ¶¶ 3, 8. Despite having no connection with either the WFA or GARM, having not itself advertised on Twitter, and having not approved the advertising expenditures of its subsidiaries, *id.* ¶ 8, X added Shell plc as another defendant six months after it initially filed suit alleging an illegal group boycott and an unlawful information exchange.

## IV.    ARGUMENT AND AUTHORITIES[3]

X has not and cannot meet any legal standard for establishing personal jurisdiction over Shell plc. A plaintiff has the burden to establish a prima facie case of personal jurisdiction. *Quick Technologies v. Sage Grp*. PLC, 313 F.3d 338, 343 (5th Cir. 2002 ). This obligation requires more than mere "conclusory allegations," *Harbour v. Heyl Truck Lines, Inc.*, No. 24-CV-0183, 2024 WL 1317805, at *2 (N.D. Tex. Mar. 27, 2024), and a district court is not required to credit conclusory factual or jurisdictional allegations, even if the allegations are unchallenged. *Panda Brandywine Corp. v. Potomac Elec. Power. Co.*, 253 F.3d 865, 869 (5th Cir. 2001). The Court may consider declarations and other evidence in addressing a motion to dismiss for lack of personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). And, the court is not required to accept allegations in the complaint that are contradicted by such evidence. *Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982) ("On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent not contradicted by affidavits .").

### A.    There is no personal jurisdiction under the Texas long-arm statute.

X can only establish personal jurisdiction under the Texas long-arm statute —TEX. CIV. PRAC. & REM. CODE § 17.042— if the statute extends to Shell plc and the exercise of jurisdiction under the statute is otherwise consistent with due process. *Johnston v. Multidata Sys. Int'l*, 523 F.3d 602, 609 (5th Cir. 2008). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* "Due process requires that [Shell plc] have ''minimum contacts'' with [Texas] (i.e., that [Shell plc] has purposely availed [itself] of the privilege of conducting activities within [Texas]) and that

---

[3] Unless otherwise indicated, alterations, citations, and internal quotation marks have been omitted from quotations.

exercising jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 101 (5th Cir. 2018). "Minimum contacts" can give rise to either general or specific jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

i.  **Shell plc is not subject to general jurisdiction in Texas.**

Well-established, binding Supreme Court precedent precludes a federal court from asserting general jurisdiction over non-resident foreign defendants like Shell plc unless Shell plc's contacts and interaction with Texas are deemed to be ". . .so 'continuous and systematic' as to render [Shell plc] essentially at home in [Texas]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Daimler v. Bauman*, 571 U.S. 117, 139 (2014). "[T]he paradigm forum for the exercise of general jurisdiction" over a corporation is "the place of incorporation and principal place of business." *Daimler AG,* 571 U.S. at 137. Due to this high standard, the Fifth Circuit has observed that "[e]stablishing general jurisdiction is 'difficult' and requires 'extensive' contacts between a defendant and a forum.'' *Sangha*, 882 F.3d at 101-02 (5th Cir. 2018) (*citing Johnston*, 523 F.3d at 609)). "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required," *Johnston*, 523 F.3d at 609-10 (quoting *Revell v. Lidov*, 317 F.3d 467, 47 (5th Cir. 2002)), and the Fifth Circuit has explained moreover that ". . .vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* Shell plc's headquarters is in London. Ashley Decl. ¶ 3. And Shell plc is not incorporated under Texas law. *Id.* ¶¶ 3, 6. Thus, *Daimler* dictates that there is no general jurisdiction in Texas.

There are "exceptional case[s]" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a

-7-

nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 fn. 19. This is not one of those exceptional cases given the absence of Shell plc's contacts. *See* Discussion *supra* at Sections II and III.

General jurisdiction cannot be established through the presence of Shell plc subsidiaries in Texas either. "Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts." *Kelly*, 213 F.3d at 857 (quoting *Dickson Marine Inc. v. Panalpina, Inc.* 179 F.3d 331, 338 (5th Cir. 1999)). In *Kelly*, the Fifth Circuit affirmed the district court's refusal to exercise general jurisdiction over Shell plc's predecessor based on the Texas contacts of Shell USA's predecessor because there was no "alter ego" relationship. *Kelly*, 213 F.3d at 856. Shell USA's predecessor had its own officers who were not officers of Shell plc's predecessor. *Id*. at 857. Plaintiff could not show, for example, that the daily operations of the two entities were intertwined. *Id*. Similarly, in *Havlish*, the Southern District of New York refused to impute the New York contacts of Shell plc's predecessor's indirect subsidiaries to the ultimate parent,. *Havlish* at *2-*3. Shell plc's predecessor and its subsidiaries were separately incorporated, kept separate bank accounts, and were managed by separate boards of directors. *Id*. at *3. Shell plc has maintained the same corporate formalities that led these two courts to deny general jurisdiction. Ashley Decl. ¶¶ 7, 8. There is simply no basis in fact or law for any finding that Shell plc is "at home" in Texas.

## ii.    Shell plc is not subject to specific jurisdiction in Texas.

Likewise, Shell plc is not subject to this Court's specific jurisdiction either. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*,

571 U.S. 277, 283–84 (2014).  The Fifth Circuit applies a three-step analysis to determine whether specific personal jurisdiction exists:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Liberstat v. Sundance Energy, Inc*., 978 F.3d 315, 319-20 (5th Cir. 2020) (quoting *Seiferth v. Helicopteros Atuneros, Inc*. 472 F.3d 266, 271 (5th Cir. 2006)).  A plaintiff asserting specific jurisdiction bears the burden of establishing both that the defendant purposefully directed its activities toward the forum state and that the cause of action arises from those forum-related contacts. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020).  Shell plc has not purposefully availed itself of Texas law, and X's causes of action do not result from any specific forum-related contacts of Shell plc.  Given Shell plc's lack of contacts with Texas and with the U.S. as a whole, any exercise of personal jurisdiction over Shell plc would be unfair and unreasonable.[4]

### a.    Shell plc has not purposefully availed itself of the privilege of doing business in Texas.

As shown herein, Shell plc has not targeted or directed any activities toward Texas or purposefully availed itself of the privilege of doing business in Texas.[5]  X's Complaint is entirely devoid of specific facts establishing that Shell plc either directed any activities toward Texas or purposefully availed itself of the privileges of conducting any activities in Texas.  This is not surprising given that Shell plc, a holding company, does not direct any business operations of its

---

[4] "[C]ourts only reach this [fair and reasonable] prong after establishing the defendant's minimum contacts with the forum state." *Halliburton Energy v. Ironshore Specialty Ins., 921 F.3d 522 (5th Cir. 2019)*; *see also Air Vent, Inc. v. Powermax Elec. Co.*, 2023 U.S. Dist. LEXIS 9155, *16 (N.D. Tex. 2023) (Boyle, J.) (same).

[5] *See* Discussion *supra* at Sections II and III.

own.  X's conclusory allegations that "[e]ach Defendant transacts a substantial volume of business in the District. […]," XSAC ¶ 29, that "Shell expends substantial sums annually on the promotion of its services over the internet, including on social media platforms," *id*. ¶ 23, and that "Shell transacts substantial business in this District and within the Wichita Falls Division…," *id*., are indisputably false with respect to Shell plc and plainly do not establish specific jurisdiction over Shell plc in Texas.  And, X's attempt to lump the Shell entities under the corporate name "Shell" treating them as a single unit despite their separate corporate existences —***whose distinct existence X concedes***— similarly does not create specific jurisdiction where it is plainly lacking.[6]

Even if X's allegation is credited —which it should not be— the allegation would not establish specific jurisdiction in Texas even if Shell plc *did* conduct the type of business operations at issue in this case.  The mere act of purchasing or releasing advertisements over the internet (which Shell plc has not done), including on third party social media platforms like Twitter, that are available and accessible anywhere and by anyone, including by residents of Texas either using the internet or accessing the Twitter platform, would not provide a basis for specific jurisdiction over a foreign defendant under the Texas long-arm statute.[7]

---

[6] What precisely has Shell plc allegedly done in Texas with no operations and no employees that amounts to "…the promotion of its services over the internet, including on social media platforms" or "…transact[ing] substantial business in this District and within the Wichita Falls Division?"  In point of fact, what services did Shell plc promote over the internet and on social media platforms in this District, and what specific business did Shell plc transact in this District from its home base in London, England?  Tellingly, X's Complaint leaves these questions unanswered.  There is not a single allegation —***nor could there be given Shell plc's status as a holding company with no operations or employees***— establishing that Shell plc itself targets Texas specifically and knowingly.  X's impermissible group allegations are both conclusory and controverted by Shell plc and therefore should not be credited.  *Panda Brandywine Corp.*, 253 F.3d at 869.

[7] *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320-21 (5th Cir. 2021); *see also, Admar Int'l v. Eastrock, L.L.C.*, 18 F.4th 783, 788 (5th Cir. 2021) (running a website accessible in the forum state does not constitute  purposeful availment ); *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 594–95 (E.D. La. 2015).

-10-

**b.**    **The allegations against Shell plc do not arise from or relate to any individual contacts with Texas attributable to Shell plc.**

This prong of the specific jurisdiction test requires a plaintiff to demonstrate the required nexus between "the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84. That nexus must result from the defendant's purposeful availment of the forum's laws and protections; purposeful availment is the "constitutional touchstone" of the specific personal jurisdiction inquiry. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 195 (5th Cir. 2019) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985). Recently, the Supreme Court emphasized the limited nature of this prong in the specific jurisdiction analysis, finding that the "relate to" language "does not mean anything goes," but that "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).

Neither of the two claims asserted against Shell plc arises from or relates to any alleged minimum contacts Shell plc had with Texas because Shell plc has no operations and no employees —much less anyone— who participated in the WFA or GARM, and therefore, did not conduct any suit-related conduct either in or otherwise targeting Texas. Notably, at the time of the alleged decision to boycott Twitter in the Fall of 2022, X (Twitter) was headquartered in California, not Texas. Even if Twitter had been domiciled in Texas at the time, its fortuitous presence there would not create jurisdiction over Shell plc, —a foreign holding company with no operations in or ties to Texas. *Patterson v. Dietze*, 764 F.2d 1145, 1147 (5th Cir. 1985) (noting that purposeful availment cannot be inferred from "the mere fortuity that the plaintiff happens to be a resident of the forum").[8]

---

[8] X's conclusory allegation that the alleged conspiracy had "…foreseeable effects in the United States, including in this District," XSAC ¶ 29, does not compel a different analysis or result. This allegation is conclusory for one, and moreover, does not relieve X of its obligation to show that Shell plc purposefully availed itself of the benefits of Texas or purposely directed conduct at Texas. *Panda Brandywine Corp.*, 253 F.3d at 869 (noting that the "'effects' test is not a substitute for a

X spills much ink discussing the purported terms of GARM's membership and the activities of GARM's Steer Team, but Shell plc, for the reasons established herein, did not (nor could it as a holding company with no operations or employees) participate in GARM in any capacity let alone as a founding member. Ashley Decl. ¶¶ 3 and 4. Seemingly cognizant that it cannot establish specific jurisdiction over Shell plc based on causes of action arising out of any individual contacts attributable to Shell plc's *own* individual actions, X alleges in conclusory fashion that "Shell plc controlled, directed and encouraged the anticompetitive conduct of Shell USA and Shell Brands International AG as alleged herein." XSAC ¶ 23. X's conclusory allegation is not supported by any facts that would justify disregarding the separate and distinct corporate identities of Shell plc, Shell USA, and SBI.

As previously explained, the Fifth Circuit held that plaintiffs "have *not* made a prima facie showing that" Shell plc's predecessor "so control[s] the activities" of its indirect subsidiaries that their contacts should be attributed to Shell plc. *Kelly*, 213 F.3 at 857. The Fifth Circuit observed that successfully pleading that Shell plc's predecessor controlled its indirect subsidiaries would require the plaintiff in that case to show that Shell plc's predecessor and the subsidiary did not observe corporate formalities, and among other factors, further show that the day-to-day operations of the two corporate entities were intertwined. *Id.* Similarly, in *Havlish*, plaintiffs could not argue that Shell plc approved the major decisions of the subsidiaries. *Havlish* at *3. The court observed that Shell plc and indirect subsidiaries were separately incorporated, kept separate bank accounts, and were managed by separate boards of directors. *Havlish* at *5.

---

nonresident's minimum contacts that demonstrate purposeful availment" and that plaintiff must show purposeful availment besides the plaintiff's residence in the state and the foreseeability of defendant's actions causing injury in Texas). Again, according to X, the alleged conspiracy occurred in the Fall of 2022 when X was based in California, *not Texas*, and of course Shell plc was then and remains a holding company without operations and no employees or tangible assets.

X's Complaint contains no allegations evidencing the level of parental control and lack of independence the Fifth Circuit determined was necessary but otherwise absent when it recognized and both affirmed Shell plc's distinct corporate separateness as the ultimate parent and the self-determination and independence of its subsidiaries in their day-to-day management of their own affairs. And, X's nonconclusory allegations and failure of proof on this score are not the last word. Here, X's utter failure to plead adequate facts demonstrating Shell plc's control over SBI and Shell USA is actually met with affirmative evidence plainly establishing Shell plc's lack of control over these two subsidiaries.[9] Therefore, binding precedent dictates that X's allegations of Shell plc's alleged control, direction, and encouragement be disregarded as conclusory.[10]

## B.   There is no personal jurisdiction over Shell plc anywhere in the country.

X cannot rely on Rule 4(k)(2) either. Rule 4(k)(2) functions essentially as an analogue to state "long-arm" statutes by allowing federal courts to exercise personal jurisdiction over foreign defendants in certain limited situations not present here. Specifically, Rule 4(k)(2) provides: "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any

---

[9] *See* Discussion supra at Section II (discussing Shell plc's lack of registration, offices, employees, and tangible assets in the U.S.). The Supreme Court has recognized that "allegations [that] are conclusory [are] not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). When evaluating a defendant's alleged contacts with the forum, courts do not accept a plaintiff's allegations if they are controverted by a defendant's declaration. *Wyatt*, 686 F.2d at 283 n.13 ("On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true *to the extent they are not contradicted by affidavits*.") (emphasis added).

[10] Furthermore, bald assertions of agency do not make the ultimate parent amenable to specific jurisdiction. *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.* 450 Fed. App'x 326, 331 (5th Cir. 2011) (per curium) ("Though Plaintiffs make a bald assertion that Biomeasure was Ipsen's actual agent, they offer no evidence to support an express authorization for Biomeasure to act as Ipsen's agent with regard to the RFA or Licensing Agreement."). Merely stating Shell plc controlled, encouraged, and directed its subsidiaries is the kind of bald assertion of agency, with perhaps a few more adjectives, that the *Ipsen* court found did not move the needle if unaccompanied by additional factual evidence. The same "bald assertions of agency" were not enough to make Shell plc's predecessor amenable to personal jurisdiction in either *Shell Syria* and *Havlish*.

state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). While the relevant inquiry here is whether the defendant has minimum contacts with the U.S., not an individual state, the analysis is "nearly identical." *City of Oakland v. BP P.L.C.*, No. C 17-06011 WHA, 2018 WL 3609055, at *2-*5 (N.D. Cal. July 27, 2018) (dismissing Shell plc's predecessor for lack of personal jurisdiction under Rule 4(k)(2) "for the same reasons" that Shell plc was dismissed under the long-arm statute).

### i.    There is no general jurisdiction over Shell plc in the U.S.

For general jurisdiction under Rule 4(k)(2), the relevant question is still whether the defendant is "essentially at home" in the forum. *Patterson v. Aker Solutions, Inc*. 826 F.3d 231, 234 (5th Cir. 2016). The only difference is that the forum is now the U.S. *Id*. at 234 (no general jurisdiction under Rule 4(k)(2) for company headquartered and incorporated in Norway); *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242 (5th Cir. 2022) (*en banc*) (no general jurisdiction under Rule 4(k)(2) for company headquartered in Japan). Shell plc is not headquartered in the U.S., and it is not incorporated in the U.S. Nor are Shell plc's "operations in [the United States] . . . so substantial and of such a nature as to render the corporation at home" in the U.S. even though it is headquartered and incorporated abroad. *Daimler, 571 U.S.* at 137 fn. 19.

And the Fifth Circuit in *Kelly* has already held that the presence of Shell entities in a forum will not be imputed to the ultimate parent. What is true with respect to the analysis under the Texas long-arm statute is also true with respect to Rule 4(k)(2). *City of Okland* at *2-*5 (dismissing Shell plc's predecessor for lack of personal jurisdiction under Rule 4(k)(2) invoking the same personal jurisdiction due process analysis under the relevant state long-arm statute and Rule 4(k)(2)). For the same reason that its indirect subsidiaries' contacts with Texas cannot be imputed to Shell plc under the Texas long-arm statute, its indirect subsidiaries' contacts with the U.S. likewise cannot be imputed to Shell plc under Rule 4(k)(2).

-14-

ii.    **There is no specific jurisdiction over Shell plc in the U.S.**

Because Shell plc has not purposefully availed itself of the privilege of doing business in the U.S. and because the suit does not arise out of or relate to the U.S., the U.S. cannot exercise specific jurisdiction over Shell plc. The test for whether there is specific jurisdiction in the U.S. is identical to the test for whether there is specific jurisdiction in any individual state. *See Hardy v. Scandinavian Airlines Sys.*, 117 F.4th 252, 265-684 (5th Cir. 2024) (analyzing whether defendant purposefully availed itself of the country, whether the suit arises out of or relate to the defendant's contacts with the country, and whether the exercise of jurisdiction would be fair and reasonable).

Shell plc has not purposefully availed itself of the privilege of doing business in the U.S. by "control[ing], "direct[ing]," or "encouraging" SBI or Shell USA either. *See Discussion supra* at Section II, III, and IV(A)(ii)(b). Furthermore, the plain text of Rule 4(k)(2) also makes it impossible to establish the requisite "minimum contacts with the country" through Shell plc's alleged control, direction, and encouragement of its subsidiaries. Specifically, Rule 4(k)(2) only applies to parties that are not subject to the personal jurisdiction of any court of general jurisdiction. Assuming that Shell USA is subject to the jurisdiction of a court of general jurisdiction in Texas, its contacts, if imputed to Shell plc, would disqualify Shell plc from personal jurisdiction under Rule 4(k)(2). This may be why "most cases that analyze agency and/or alter ego under Rule 4(k)(2) rarely find personal jurisdiction[.]" *Sotloff v. Qatar Charity*, 674 F. Supp. 3d 1279 (S.D. Fla. 2023).[11] Because Shell plc does not have "minimum contacts with the country," there is no personal jurisdiction under Rule 4(k)(2).

---

[11] X cannot move onto step two, "arise out of or relate to," in the specific jurisdiction analysis with respect to Rule 4(k)(2) because Shell plc has not purposefully availed itself of the U.S. In *City of Oakland*, plaintiff could not show that the suit arose from or related to Shell plc's predecessor's contacts with the U.S. because its contacts were not the but-for cause of plaintiff's alleged injury.

Exercising specific personal jurisdiction over Shell plc under these facts would offend the traditional notions of fair play and substantial justice and therefore is constitutionally impermissible. *See Gilmore v. Palestinian Interim Self-Government*, 422 F. Supp. 2d 96, 104 (D.D.C. 2006) (granting motion to dismiss because exercising specific jurisdiction under Rule 4(k)(2) would offend the Constitution).[12]

---

2018 WL 3609055, at *4. Even if X could move to step two, X cannot show here that this suit arises from or relates to Shell plc's contacts with the U.S. because Shell plc has no contacts with the U.S. that could be the but-for cause of its alleged injury.

[12] X's apparent strategy for establishing specific jurisdiction over Shell plc is its allegation that each defendant "through its participation in the conspiracy alleged in this Complaint" has "substantial contacts with the United States and with this District." XSAC ¶ 29. However, X's attempt to base jurisdiction on alleged participation in a conspiracy runs afoul of Fifth Circuit precedent. *See Delta Brands Inc. v. Danieli Corp.*, 99 Fed. Appx. 1, 6 (5th Cir. 2004) ("[The plaintiff] also contends that specific personal jurisdiction can be based on [a defendant's] alleged participation in a conspiracy to obtain [the plaintiff's] confidential information. To establish its prima facie case of specific personal jurisdiction, [the plaintiff] was required to demonstrate that [a defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas"); *see also Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999) (same); *Eagle Metal Prod., v. Keymark Enterprises*, 651 F. Supp. 2d 577, 593 (N.D. Tex. 2009) (rejecting application of "conspiracy theory" of jurisdiction based on the Fifth Circuit's decision in *Delta Brands*); *Federation of State Massage Therapy Boards v. Mendez Master Training Center, Inc.*, 4:17-cv–2936, 2018 WL 534540 at *5 n.9 (S.D. Tex. Jan 24, 2018) ("To the extent Plaintiff is asserting that J. Mendez is subject to personal jurisdiction in Texas by virtue of acts in Texas taken by any of his alleged cheating ring 'co-conspirators,' including MMTC Texas, the Court rejects that argument as inconsistent with Fifth Circuit precedent."); *WorldVentures Holdings, LLC v. Mavie*, No. 4:18-cv-393, 2018 WL 6523306, at *10 (E.D. Tex. Dec. 12, 2018) ("Because the Fifth Circuit and Texas Supreme Court have both found that personal jurisdiction must be based on a defendant's 'individual contacts' with the forum 'and not as part of [a] conspiracy,' minimum contacts is established only if 'the alleged conspiracy w[as] related to or arose out of [defendants'] contacts with Texas."). Accordingly, Shell plc's alleged participation in the alleged conspiracy to boycott X (Twitter), without more, does not create "minimum contacts" attributable to Shell plc. *See Gigi's Cupcakes, LLC v. 4 Box, LLC*, No. 3:17-CV-3009, 2020 WL 1064852 at *7 (N.D. Tex. March 5, 2020) (Boyle, J.) ("The only other claim asserted against Butler and Thompson is a general conspiracy claim. But Texas courts have held that 'alleging a conspiracy cause of action does not provide an independent basis for jurisdiction.'") (*citing Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to recognize assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state."). Shell plc's status as a holding company with no business operations or employees, offices, or tangible assets simply cuts off this avenue entirely.

### C.    There is no personal jurisdiction under Section 12 of the Clayton Act because venue would not be proper under Section 12.

In antitrust cases, the Clayton Act provides for personal jurisdiction in a court only if venue is also proper in that court under the Clayton Act. And, as Shell plc explains below, venue is not proper in this District under the Clayton Act.

Section 12 authorizes personal jurisdiction only in a district where it also authorizes venue:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (emphasis added). The first sentence authorizes venue in antitrust cases in any district where the defendant resides, may be found, or transacts business. The second sentence provides for personal jurisdiction but only in "such cases"—that is, only in the cases where venue is proper according to the terms of the first clause.[13]

Although the Fifth Circuit has not addressed this issue, district courts in the Fifth Circuit have consistently adopted the majority approach. *See Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 23-cv-0155, 2024 WL 1218573, at *2 (N.D. Tex., Mar. 21, 2024); *Mgmt. Insights, Inc. v. CIC Enter., Inc.*, 194 F. Supp. 2d 520, 530 (N.D. Tex. 2001); *Corr Wireless Commc'ns., L.L.C. v. AT & T, Inc.*, 907 F. Supp. 2d 793, 800 (N.D. Miss. 2012). *Ramzan v. GDS Holdings Ltd.*, No. 18-cv-539, 2019 WL 4748001, at *5 (E.D. Tex. Sept. 30, 2019) (citing

---

[13] Most of the federal circuits to address this question have held that nationwide personal jurisdiction under the Clayton Act can only apply once venue under the Clayton Act is met. *GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1351 (D.C. Cir. 2000); *KM Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718 (7th Cir. 2013); *Daniel v. Am. Bd. Of Emergency Medicine, 428 F.3d 408 (2d Cir. 2005*. The Fifth Circuit has yet to address the issue*. Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC,* No. 23-cv-0155, 2024 WL 1218573, at *2 (N.D. Tex., Mar. 21, 2024) ("To date, the Fifth Circuit has not weighed in . . . as to whether clauses one and two are interdependent.").

-17-

favorably to the Seventh, Second, and D.C. Circuit Courts' treatment of Section 12 to conclude that an analogous universal service of process provision from the Securities and Exchange Act only applied after the venue requirements of the statute were met).  In short, to avail oneself of nationwide service of process for personal jurisdiction under the Clayton Act, venue must first be laid under the Clayton Act, which X cannot do.[14]

Simply put, Shell plc cannot be "found" in the Northern District of Texas for purposes of the Clayton Act. Indeed, this Court long ago held that, under the Clayton Act, "'being found' in a district is generally equated with doing business there and requires greater contacts than does 'transacting business.'" *Mgmt. Insights, Inc. v. CIC Enter., Inc.,* 194 F. Supp. 2d 520 (N.D. Tex. 2001). The fact that Shell plc does not do any business at all, let alone in this District, inescapably means it cannot be "found" in this District.  Further, Shell plc has no agents in this District, and X does not allege, nor could it allege that Shell plc is an inhabitant of this District.

## V.    The Northern District of Texas is not a proper venue

Whether a federal district court is the proper venue to hear a dispute is an entirely separate question from whether the court can exercise personal jurisdiction over the defendant. X has alleged that venue is proper under both 28 U.S.C. § 1391 and 15 U.S.C. § 22. XSAC ¶ 30.  Venue is proper under neither provision.

### A.    The general federal venue provision— 28 U.S.C. § 1391—does not provide for venue in this District.

X cites to 28 U.S.C. § 1391(b), (c), (d), and (f), but X cannot establish proper venue in this District under this venue statute.  Subsections (d) and (f) plainly do not apply.

---

[14] To the extent X argues that the Fifth Circuit did adopt *Go Video* in its discussion of the Clayton Act in *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694 (5th Cir. 1999), the Fifth Circuit's discussion of the Clayton Act there was limited to "the jurisdictional provision of the Clayton Act," *Access Telecom*, 197 F.3d at 718, and did not address whether complying with the venue provision was a precondition to the availability of nationwide service of process.

Similarly, venue under Section 1391(b)(1) is not applicable here because not all defendants in this case reside in Texas.  Nor is venue proper under § 1391(b)(2) based on X's conclusory allegation that "a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District," XSAC ¶ 30, which this Court is not required to credit. *Gilmour, Tr. for Grantor Trs. v. Blue Cross & Blue Shield of Ala.,* 2019 WL 2147580, at *1 (W.D. Tex. Mar. 6, 2019). X alleges nothing that distinguishes the Northern District of Texas from any other federal district with respect to this action.  Venue is also improper under section 1391(b)(3), which courts apply stringently, requiring a plaintiff to still prove that there is personal jurisdiction over a defendant in a given district, which X has not done with respect to Shell plc. *Petersen v. Meta, Inc.*, No. 2:24-CV-00038, 2024 WL 4719714 *9 (S.D. Tex. Sept. 4, 2024), *report and recommendation adopted by* 2024 WL 4608185 (S.D. Tex. Oct. 29, 2024) (finding 1391(b)(3) inapplicable because court lacked personal jurisdiction).  As detailed above, Shell plc is not subject to personal jurisdiction in any district in the U.S.[15]

## B.    The Clayton Act does not provide for venue in this District.

The Clayton Act provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business[.]" 15 U.S.C. § 22. X has

---

[15] To the extent X purports to rely on Section 1391(c)(3)'s venue provision and separately invoke personal jurisdiction over Shell plc under Section 12 of the Clayton Act based on a minimum contacts analysis focused on purported contacts with the U.S. as a whole, the effort fails because the availability of personal jurisdiction under Section 12 is expressly dependent on X satisfying Section 12's substantive venue requirements, which it cannot do for the reasons noted above.  Even if this Court were to permit X to decouple the venue and service of process provisions of Section 12 and rely on Section 1391(c)(3)'s venue provision while also relying on Section 12's service of process provision for personal jurisdiction, the exercise would still prove unavailing because X has not made a prima facie showing that Shell plc has sufficient minimum contacts with the U.S. as a whole to establish personal jurisdiction over Shell plc in the U.S.

alleged that "each Defendant" either "transacts business" in, "may be found" in, or "had agents in" the Northern District of Texas. XSAC ¶ 30. These assertions are incorrect.

As established herein, Shell plc plainly does not "transact business" in the Northern District of Texas. And, the Fifth Circuit has long made clear that, for purposes of the phrase "transacts business" as used in the Clayton Act's venue statute, the business transactions of a subsidiary are not imputed to the ultimate parent so long as the two are separate corporate entities. *San Antonio Tel. Co. v. Am. Tel. & Tel. Co.*, 499 F.2d 349 (5th Cir. 1974) ("While it is true that venue may be established through a relationship between corporations when they in effect comprise a single entity, the evidence in this case does not demonstrate such a total disregard for the separate corporate entities.").[16] The Fifth Circuit thus dictates that, even if Shell plc's subsidiaries do transact business in this District, their transactions cannot be imputed to Shell plc because Shell plc and its subsidiaries very much *regard and conduct* themselves as distinct corporate entities.

Nor can Shell plc be "found" in the Northern District of Texas. This court long ago held that, under the Clayton Act, "'being found' in a district is generally equated with doing business there and requires greater contacts than does 'transacting business.'" *Mgmt. Insights,* 194 F. Supp. 2d at 532. Shell plc of course does no business in this District. And, X does not allege, nor could it, that Shell plc is an inhabitant of this District.

## VI.    CONCLUSION

For the foregoing reasons, Shell plc should be dismissed under Rule 12(b)(2) and 12(b)(3).

---

[16] Other courts have held similarly. *See, e.g., Dennis v. JPMorgan Chase & Co.,* 343 F. Supp. 3d 122, 199 (S.D.N.Y. 2018) ("[a]llegations that certain of these defendants are parent companies of subsidiaries that transact business in [a district] do not suffice to show that the parent companies transact business in [that district].").

Dated: May 14, 2025

Respectfully submitted,

By: */s/ Layne E. Kruse*
Layne E. Kruse
State Bar No. 11742550
layne.kruse@nortonrosefulbright.com
Carlos R. Rainer
State Bar No. 24027641
carlos.rainer@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone No.: (713) 651-5151
Facsimile No.: (713) 651-5246

Ellen Sessions
State Bar No. 00796282
ellen.sessions@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone No.: (214) 855-8000
Facsimile No.: (214) 855-8200

***Attorneys for Defendant Shell plc***

**CERTIFICATE OF SERVICE**

I certify that on May 14, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

Dated: May 14, 2025                                     Respectfully submitted,

By: */s/ Carlos R. Rainer*
Carlos R. Rainer
State Bar No. 24027641
carlos.rainer@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone No.: (713) 651-5151
Facsimile No.: (713) 651-5246

***Attorneys for Defendant Shell plc***

## CERTIFICATE OF COMPLIANCE

I certify that Defendant Shell plc's Brief in Support of Its Motion to Dismiss for Lack of

Personal Jurisdiction and Improper Venue complies with LR 7.2 and this Court's previous order.

Dated: May 14, 2025                          Respectfully submitted,

By: */s/ Carlos R. Rainer*
Carlos R. Rainer
State Bar No. 24027641
carlos.rainer@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone No.: (713) 651-5151
Facsimile No.: (713) 651-5246

***Attorneys for Defendant Shell plc***