## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| WORLD FEDERATION OF | § | |
| ADVERTISERS; MARS, INCORPORATED; | § | |
| CVS HEALTH CORPORATION; ØRSTED | § | Case No. 7:24-cv-00114-B |
| A/S; TWITCH INTERACTIVE, INC.; | § | |
| NESTLÉ S.A.; NESTLE USA, INC.; | § | |
| ABBOTT LABORATORIES; COLGATE | § | |
| PALMOLIVE COMPANY; LEGO A/S; | § | |
| LEGO BRANDS RETAIL, INC.; | § | |
| PINTEREST, INC; TYSON FOODS, INC.; | § | |
| SHELL PLC; SHELL USA, INC.; and | § | |
| SHELL BRANDS INTERNATIONAL AG, | § | |
| | § | |
| Defendants. | § | |

### BRIEF IN SUPPORT OF SHELL BRANDS INTERNATIONAL AG'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Layne E. Kruse
State Bar No. 11742550
layne.kruse@nortonrosefulbright.com
Carlos R. Rainer
State Bar No. 24027641
carlos.rainer@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone No.: (713) 651-5151
Facsimile No.: (713) 651-5246
Ellen Sessions
State Bar No. 00796282
ellen.sessions@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone No.: (214) 855-8000
Facsimile No.: (214) 855-8200
***Attorneys for Defendant Shell Brands International AG (SBI)***

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

III.  ARGUMENT AND AUTHORITIES ................................................................ 6

    A.  There is no personal jurisdiction over SBI under the Texas Long-Arm Statute........... 6

        i.  There is no general personal jurisdiction over SBI under Texas' long-arm statute. ................................................................................................ 7

        ii.  There is no specific personal jurisdiction over SBI under the Texas long-arm statute. ................................................................................................ 8

    B.  There is no personal jurisdiction over SBI anywhere in the U.S.............................. 12

        i.  There is no general jurisdiction over SBI in the U.S. ........................................ 13

        ii.  There is no specific jurisdiction over SBI in the U.S. ...................................... 14

        iii.  Alleged participation in an alleged conspiracy is not enough to establish specific personal jurisdiction over SBI in the U.S. .......................................... 14

    C.  There is no personal jurisdiction under Section 12 of the Clayton Act because X cannot establish venue. ................................................................................................ 16

    D.  The Northern District of Texas is not a proper venue. ............................................. 18

        i.  The Clayton Act does not provide for venue in this District. ........................... 18

        ii.  28 U.S.C. § 1391 does not provide for venue in the Northern District of Texas. ................................................................................................ 19

IV.  CONCLUSION ................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*721 Bourbon, Inc. v. House of Auth, LLC*,
　140 F. Supp. 3d 586 (E.D. La. 2015) ........................................................................10

*Admar Int'l. v. Eastrock, L.L.C.*,
　18 F.4th 783 (5th Cir. 2021) ....................................................................................10

*Air Vent, Inc. v. Powermax Elec. Co.*,
　2023 U.S. Dist. LEXIS 9155 (N.D. Tex. 2023) (Boyle, J.) .......................................9

*Burger King v. Rudzewicz*,
　471 U.S. 462 (1985).................................................................................................11

*Carmona v. Leo Ship Mgmt., Inc.*,
　924 F.3d 190 (5th Cir. 2019) ...................................................................................11

*Corr Wireless Commc'ns., L.L.C. v. AT & T, Inc.*,
　907 F. Supp. 2d 793 (N.D. Miss. 2012).....................................................................17

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014)...................................................................................................7

*Daniel v. Am. Bd. of Emergency Med.*,
　988 F. Supp. 127 (W.D.N.Y. 1997)..........................................................................19

*Daniel v. Am. Bd. of Emergency Medicine*,
　428 F.3d 408 (2d Cir. 2005)......................................................................................17

*Datamedia Comput. Serv., Inc. v. AVM Corp*,
　441 F.2d 604 (5th Cir. 1971) ...................................................................................18

*Delta Brands Inc. v. Danieli Corp.*,
　99 Fed. Appx. 1 (5th Cir. 2004)................................................................................15

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
　46 F.4th 226 (5th Cir. 2022 ) (*en banc*) ...................................................................13

*E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*,
　948 F.3d 289 (5th Cir. 2020) .....................................................................................8

*Eagle Metal Prod. v. Keymark Enterprises*,
　651 F. Supp. 2d 577 (N.D. Tex. 2009) ....................................................................15

*Federation of State Massage Therapy Boards v. Mendez Master Training Center, Inc.*,
   4:17-cv–2936, 2018 WL 534540 (S.D. Tex. Jan 24, 2018).....................................................15

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)............................................................................................................11

*Gigi's Cupcakes, LLC v. 4 Box, LLC*,
   No. 3:17-CV-3009, 2020 WL 1064852 (N.D. Tex. March 5, 2020) (Boyle, J.) ....................15

*Gilmore v. Palestinian Interim Self-Government*,
   422 F. Supp. 2d 96 (D.D.C. 2006) .......................................................................................14

*Gilmour, Tr. for Grantor Trs. v. Blue Cross & Blue Shield of Ala.*,
   SA-17-CA-518, 2019 WL 2147580 (W.D. Tex. Mar. 6, 2019) .............................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..........................................................................................................7, 8

*Green v. United States Chewing Gum Mfg.*,
   224 F.2d 369 (5th Cir. 1955) ...............................................................................................18

*GTE New Media Servs., Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ...........................................................................................17

*Guidry v. U.S. Tobacco Co.*,
   188 F.3d 619 (5th Cir. 1999) ...............................................................................................15

*Halliburton Energy v. Ironshore Specialty Ins.*,
   *921 F.3d 522 (5th Cir. 2019)* ...............................................................................................9

*Harbour v. Heyl Truck Lines, Inc.*,
   No. 24-CV-0183, 2024 WL 1317805 (N.D. Tex. Mar. 27, 2024) (Fitzwater, J.)....................6

*Hardy v. Scandinavian Airlines Sys.*,
   117 F.4th 252 (5th Cir. 2024) ..............................................................................................14

*Johnson v. TheHuffingtonPost.com, Inc.*,
   21 F.4th 314 (5th Cir. 2021) ................................................................................................10

*Johnston v. Multidata Sys. Int'l*,
   523 F.3d 602 (5th Cir. 2008) .............................................................................................6, 7

*Kevlin Serv., Inc. v. Lexington State Bank*,
   46 F.3d 13 (5th Cir. 1995) .....................................................................................................6

*KM Enters., Inc. v. Global Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ...............................................................................................17

*Lewis v. Fresne*,
    252 F.3d 352 (5th Cir. 2001) ...................................................................7

*Libersat v. Sundance Energy, Inc.*,
    978 F.3d 315 (5th Cir. 2020) ...................................................................8

*Mgmt. Insights, Inc. v. CIC Enter., Inc.*,
    194 F. Supp. 2d 520 (N.D. Tex. 2001) ..............................................17, 19

*Nat'l Athletic Trainers' Ass'n, Inc. v. Am. Physical Therapy Ass'n*,
    3:08-cv-0158, 2008 WL4146022 (N.D. Tex. Sept. 9, 2008)..................20

*Nat'l Indus. Sand Ass'n v. Gibson*,
    897 S.W. 2d 769 (Tex. 1995).................................................................16

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
    No. 23-cv-0155, 2024 WL 1218573 (N.D. Tex., Mar. 21, 2024)..........17

*Panda Brandywine Corp. v. Potomac Elec. Power. Co.*,
    253 F.3d 865 (5th Cir. 2001) .......................................................6, 10, 11

*Patterson v. Aker Solutions, Inc*.
    826 F.3d 231 (5th Cir. 2016) ............................................................13, 14

*Patterson v. Dietze*,
    764 F.2d 1145 (5th Cir. 1985) ...............................................................11

*Petersen v. Meta, Inc.*,
    No. 2:24-cv-00038, 2024 WL 4719714 *9 (S.D. Tex. Sept. 4, 2024),  2024
    WL 4608185 (S.D. Tex. Oct. 29, 2024)................................................20

*Quick Technologies v. Sage Grp. PLC*,
    313 F.3d 338 (5th Cir. 2002) ...................................................................6

*Ramzan v. GDS Holdings Ltd.*,
    No. 18-cv-539, 2019 WL 4748001 (E.D. Tex. Sept. 30, 2019)............17

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) ...................................................................7

*Sangha v. Navig8 ShipManagement Private Ltd.*,
    882 F.3d 96 (5th Cir. 2018) .....................................................................7

*Seiferth v. Helicopteros Atuneros, Inc*.
    472 F.3d 266 (5th Cir. 2006) ...................................................................8

*Sinox Company Ltd. v. YiFeng Manufacturing Co. Ltd.*,
    2023 WL 2769440 (W.D. Tex. Mar. 22, 2023) .....................................13

*Stuart v. Spademan*,
    772 F.2d 1185 (5th Cir. 1985) ...................................................................6

*Walden v. Fiore*,
    571 U.S. 277 (2014)...............................................................................8, 11

*WorldVentures Holdings v. Mavie*,
    No. 4:18-cv-393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ...........................15

*Wyatt v. Kaplan*,
    686 F.2d 276 (5th Cir. 1982) ...................................................................6

**Rules and Statutes**

15 U.S.C. § 22...............................................................................................16, 18

15 U.S.C. § 22.....................................................................................................2

28 U.S.C. § 1391........................................................................17, 18, 19, 20

Clayton Act .........................................................1, 2, 16, 17, 18, 19

Clayton Act 15 U.S.C. § 12 ....................................1, 2, 6, 16, 17, 18, 20

Fed. R Civ. P 4(k)(2).....................................................2, 12, 13, 14

Securities Exchange Act 15 U.S.C. §78c.....................................................18

TEX. CIV. PRAC. & REM. CODE § 17.042..............................................6

I.    **INTRODUCTION**[1]

Plaintiff X Corp. (hereinafter "X") seeks to bring Shell Brands International AG ("SBI"), a Swiss company with no Texas contacts, into a Texas courtroom in contravention of the Due Process Clause, the Clayton Act, and the federal venue statute and rules governing civil actions filed in federal court.  Simply put, X's Complaint reveals no viable pathway for X to establish personal jurisdiction over SBI consistent with the constitutional mandate that a federal court exercise power over a nonresident foreign defendant **only** when there is a prima facie showing that the foreign defendant has the requisite minimum contacts with the forum state *(or the United States as a whole in limited circumstances)* and the court's exercise of jurisdiction would be not offend due process.  X has made no such showing in its Complaint, which requires dismissal of its claims asserted against SBI for want of personal jurisdiction.

**First**, X cannot establish *general* personal jurisdiction over SBI in Texas or the United States ("U.S.") as a whole because SBI is not "at home" in either Texas or the U.S. Rather, SBI is headquartered in Switzerland and is organized under Swiss law.  The direction, control, and coordination of SBI's business affairs occur in Switzerland.  The company has no offices, employees, assets, or bank accounts in the U.S.

**Second**, X cannot establish *specific* personal jurisdiction over SBI because SBI has not purposefully availed itself of the laws of Texas or the U.S., and X's suit against SBI does not arise out of or relate to any independent conduct or actions specifically undertaken by SBI either directed at or that otherwise targeted Texas or the U.S.

**Third**, personal jurisdiction under the Clayton Act is another dead end for X. As this District has ruled previously, the Clayton Act allows for nationwide service of process on a

---

[1] X and Twitter may be used interchangeably, and X's Second Amended Complaint (ECF No. 77) may be referred to as "XSAC."

defendant only *after* venue is established under 15 U.S.C. § 22, and X cannot establish venue in the Northern District of Texas under the Clayton Act because SBI cannot be "found" in this District and does not "transact business" in this District.

**Fourth**, any attempt by X to rely on Federal Rule of Civil Procedure 4(k)(2) as an alternate route to establishing personal jurisdiction would also fail. X's Second Amended Complaint lacks nonconclusory facts establishing that SBI has contacts with the U.S. as a whole sufficient to satisfy due process concerns raised by X's attempt to sue SBI in this District.

For these reasons, which are more fully discussed below, SBI respectfully moves this Court for an order of dismissal for lack of personal jurisdiction under Rule 12(b)(2) and for improper venue under Rule 12(b)(3).

## II.    BACKGROUND

X, the successor to Twitter, Inc. ("Twitter"), operates a social media platform selling ad space to companies and ad agencies with the ads appearing in "feeds" along with posts generated by X users. XSAC ¶¶ 10 and 33. X alleges that the defendants (save the World Federation of Advertisers ("WFA")) have purchased advertising on social media platforms. *Id*. ¶¶ 13-23.

SBI is an Aktiengesellschaft (AG), or a public limited company. Declaration of Andrea Laanio ("Laanio Decl.") ¶ 2. It is organized under Swiss law, *id*. ¶ 2, and is responsible for the development and licensing of Shell trademarks. *Id*. ¶ 4. SBI directs, coordinates, and controls its business affairs from its home base and principal office in Steinhausen, Switzerland. *Id*. ¶ 3. SBI has no offices located in the U.S. *Id*. ¶ 5; Declaration of Ferdinand V. Aragon ("Aragon Decl.") ¶ 8. SBI has no employment contracts with anyone located in the U.S. Laanio Decl. ¶ 5; Aragon

Decl. ¶ 6.  Similarly, SBI has no bank accounts in the U.S. Laanio Decl. ¶ 5; Aragon Decl. ¶ 6.

And, SBI does not own any tangible assets in the U.S.  Aragon Decl. ¶ 6.[2]

The WFA is comprised of companies that advertise products and services around the world.

XSAC ¶¶ 11-12.  The WFA is headquartered in Belgium and organized under the Belgian

Companies Code. *Id*. ¶ 11.  SBI is a member of the WFA. Aragon Decl. ¶ 3.  SBI pays an annual

fee for its membership in the WFA, which membership fee is invoiced from the WFA's Head

Office address located in Brussels, Belgium with remittance and payment submitted by SBI to the

WFA's bank account located in Belgium.  *Id*. ¶ 3.  No SBI membership payments to the WFA are

made to the U.S. *Id*.

In 2019, the WFA established an initiative called the Global Alliance for Responsible

Media ("GARM"). XSAC ¶ 36.[3]  GARM was formed to address a problem plaguing social media

platforms and their customers.  *Id*. ¶¶ 36, 63.  Conscious of risks to their brands, companies "d[id]

not want their advertisements appearing in connection with or adjacent to" hateful, obscene, or

otherwise objectionable content, *id*. ¶ 63, and they wanted tools to (i) better understand and decide

where their ads would appear relative to such content, *id*. ¶¶ 41, 49, and 53, and (ii) streamline

---

[2] Shell plc is the ultimate parent of Shell USA, Inc. ("Shell USA") and SBI. Declaration of Sean Ashley ¶ 7; Aragon Decl. ¶ 8; Declaration of Lynn S. Borgmeier ("Borgmeier Decl.") ¶ 4; XSAC. ¶ 23.  Shell USA and SBI are organized and operate separately from Shell plc. Ashley Decl. ¶ 7; Aragon Decl. ¶ 8; Borgmeier Decl. ¶ 4.  Officers and employees of Shell USA and SBI are responsible for day-to-day operations of those subsidiaries. Ashley Decl. ¶ 7; Aragon Decl. ¶ 8; Borgmeier Decl. ¶ 4. None of the officers and directors of SBI reports that they are directors or employees of Shell plc or Shell USA, Inc.  Ashley Decl. ¶ 7; Aragon Decl. ¶ 8; Borgmeier Decl. ¶ 4; Laanio Decl. ¶ 7.

[3] In July 2020, SBI received one invoice from the WFA for a contribution towards the operating budget for GARM. Aragon Decl. ¶ 4.  That invoice was sent from the WFA's Head Office address in Brussels with remittance and payment made by SBI to the WFA's bank account located in Brussels. Aragon Decl. ¶ 4.  Although SBI was a member of the WFA and made a one-time contribution payment towards GARM's operating budget, SBI was not a GARM Steer Team member. Aragon Decl. ¶ 5.

discussions with platforms concerning how to avoid placing their ads next to such content. *Id.* ¶ 63. GARM participants included advertisers, ad agencies, and social media platforms. *Id.* ¶¶ 11, 36. Twitter was one of GARM's original participants, *id.* ¶ 96, as was Meta, the operator of the Facebook and Instagram platforms. *Id.* ¶ 46. Through GARM, platforms like Twitter worked together with advertisers to develop a voluntary brand safety framework that facilitates social media advertising. Thus, GARM's participants sought to create "common definition[s], common measures, [and] common tools" to facilitate negotiations between advertisers and platforms, *id.* ¶ 49, to address and "customize" where ads would be placed so as "to avoid unwanted content." *Id.* ¶ 63.[4]

In April 2022, Mr. Musk announced his intention to buy Twitter. XSAC ¶ 92. The transaction closed October 27, 2022. *Id.* ¶ 92. Four days later, the WFA wrote Mr. Musk, reminding him that Twitter was one of GARM's original members, noting the industry had "come a long way" in advancing "transparency and control," and explaining that GARM would monitor Twitter's actions so GARM members would have information that they needed to make "their own independent assessments" of the platform. XSAC ¶ 96. Although Mr. Musk publicly responded to the WFA that "Twitter's commitment to brand safety remain[ed] unchanged," *id.* ¶ 98, he immediately dismissed many of Twitter's personnel who helped make the platform safe for

---

[4] To establish a common framework that social media platforms could use to measure and verify their brand safety processes and that advertisers could use to gauge the risk to their brands from advertising on particular platforms, X alleges GARM "promulgate[d] standards relating to the placement of advertising on digital media and social media platforms." *Id.* ¶¶ 48, 56, 68. In September 2020, GARM published and adopted its Brand Safety Floor and Suitability Framework (the "Framework") to improve transparency in ad placements on social media platforms. *Id.* ¶¶ 52-53. The Framework established a rubric to identify and assign risk to various categories of objectionable content. *Id.* ¶ 51. The categories were split into two tiers: (1) the "Brand Safety Floor," which designated content "that advertisements may not appear in connection with," and (2) the "Brand Suitability Framework," which designated sensitive content next to which advertisers could choose whether or not their ads "may" appear. *Id.* ¶ 53.

advertisers, *id.* ¶ 132.  Mr. Musk later renamed the Twitter platform "X" and merged it with his new X Corporation.  *Id.* ¶¶ 10, 92.  Over the course of the week after Mr. Musk acquired Twitter, multiple ad agencies issued recommendations that clients pause their advertising on the platform "based on concerns" about impending changes to Twitter's content policy.  *Id.* ¶ 104.  None of those agencies are defendants here.  On November 3, Mr. Musk tried to salvage X's advertising relationships by meeting with more than 100 companies and ad agencies "to assure them" Twitter would remain "attractive to advertisers."  *Id.* ¶ 107.

Advertisers' responses varied with some either reducing or suspending their advertisements on Twitter while others continued advertising on Twitter.  Although X alleges the GARM initiative included at least 60 and as many as 118 companies and was started by WFA and the Association of National Advertisers (a coalition of 1,100 advertisers), *id*. ¶¶ 37, 68, 110, only 18 GARM members allegedly stopped purchasing ads on X.  *Id.* ¶ 137.  Those that did pull back took different approaches at different times, with some cutting back over several months in the U.S. while still advertising on the platform overseas; others withdrew completely.  *Id.* ¶ 138.  Meanwhile, other advertisers who were not GARM participants exhibited nearly identical behavior: some continued advertising on X, and others stopped.  *Id.* ¶¶ 139, 154.  Individual GARM participants made independent advertising decisions, and those decisions were similar to decisions made by advertisers who did not participate in GARM.  *Id.* ¶¶ 3, 66, 85-88, 154–55.

X subsequently filed suit against SBI and the other Defendants in this case alleging a group boycott and an unlawful information exchange in violation of U.S. antitrust laws.  SBI was not added as a defendant in X's initial Complaint or in its First Amended Complaint, but rather was added as a defendant in X's Second Amended Complaint filed nearly six months after X initiated this litigation.

III.    **ARGUMENT AND AUTHORITIES**[5]

Federal Rule of Civil Procedure 12(b)(2) compels dismissal of claims against a defendant if the court does not have personal jurisdiction over that defendant. A plaintiff has the burden to establish a prima facie case of personal jurisdiction. *Quick Technologies v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002); *see also Kevlin Serv., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). This obligation requires more than mere "conclusory allegations," *Harbour v. Heyl Truck Lines, Inc.*, No. 24-CV-0183, 2024 WL 1317805, at *2 (N.D. Tex. Mar. 27, 2024) (Fitzwater, J.), and a district court is not required to credit conclusory factual or jurisdictional allegations, even if the allegations are unchallenged. *Panda Brandywine Corp. v. Potomac Elec. Power. Co.*, 253 F.3d 865, 869 (5th Cir. 2001). The Court may consider declarations and other evidence in addressing a motion to dismiss for lack of personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). And, the court is not required to accept allegations in the complaint that are contradicted by such evidence. *Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982) ("On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true to the extent not contradicted by affidavits.").

A.    **There is no personal jurisdiction over SBI under the Texas Long-Arm Statute.**

X can only establish personal jurisdiction under the Texas long-arm statute —TEX. CIV. PRAC. & REM. CODE § 17.042— if the statute extends to SBI and the exercise of jurisdiction under the statute is otherwise consistent with due process. *Johnston v. Multidata Sys. Int'l*, 523 F.3d 602, 609 (5th Cir. 2008). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* "Due process requires that [SBI] have ''minimum contacts'' with [Texas] (i.e., that [SBI] has purposely

---

[5] Unless otherwise indicated, alterations, citations, and internal quotation marks have been omitted from quotations.

availed [itself] of the privilege of conducting activities within [Texas]) and that exercising jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "Minimum contacts" can give rise to either general or specific jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Here, neither general nor specific jurisdiction exists over SBI.

### i. There is no general personal jurisdiction over SBI under Texas' long-arm statute.

It is well-established that a court may assert general jurisdiction over non-resident foreign defendant like SBI to hear any and all claims against it **only** when SBI's contacts and interaction with Texas are ". . .so 'continuous and systematic' as to render [SBI] essentially at home in [Texas]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). "[T]he paradigm forum for the exercise of general jurisdiction" over a corporation is "the place of incorporation and principal place of business." *Id.* at 137. Because of this standard, the Fifth Circuit has observed that "[e]stablishing general jurisdiction is 'difficult' and requires 'extensive' contacts between a defendant and a forum." *Sangha*, 882 F.3d at 101-02 (5th Cir. 2018) (*citing Johnston*, 523 F.3d at 609)). "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required[,]" *Johnston*, 523 F.3d at 609-10 (quoting *Revell v. Lidov*, 317 F.3d 467, 47 (5th Cir. 2002)), and the Fifth Circuit has explained moreover that "…vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.*

Given the high bar for establishing general personal jurisdiction, X does not even attempt to invoke general jurisdiction over SBI in its Complaint. This is hardly surprising because SBI is an *Aktiengesellschaft* (AG), or public limited company, organized under Swiss law. Laanio Decl.

¶ 2. The registered address of SBI's office is in Steinhausen, Switzerland, from where its business affairs are directed, controlled, and coordinated. Laanio Decl. ¶ 3. SBI is responsible for the development and licensing of Shell trademarks, but SBI has no employment contracts with anyone in the U.S. and has no offices located in the U.S. Laanio Decl. ¶¶ 4 and 5. SBI does not own any tangible assets in the U.S., nor does it have any bank accounts in the U.S. Laanio Decl. ¶ 5.

There is simply no basis in fact or law for any finding that SBI is "at home" in Texas.

> ### ii.    There is no specific personal jurisdiction over SBI under the Texas long-arm statute.

SBI is not subject to this Court's specific jurisdiction either.  "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (2011) (quotations omitted).  Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).  The Fifth Circuit applies a three-step analysis to determine whether specific personal jurisdiction exists:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 319-20 (5th Cir. 2020) (quoting *Seiferth v. Helicopteros Atuneros, Inc.* 472 F.3d 266, 271 (5th Cir. 2006)).  A plaintiff asserting specific jurisdiction bears the burden of establishing both that the out-of-state defendant purposefully directed its activities toward the forum state and that the cause of action arises from those forum-related contacts. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir.

2020).[6] SBI has not purposefully availed itself of Texas law, and X's causes of action do not arise out of or result from any specific forum-related contacts attributable to SBI.

X's complaint is entirely devoid of specific facts establishing that SBI either directed its activities toward Texas or purposefully availed itself of the privileges of conducting any activities in Texas. X's conclusory allegations that "[e]ach Defendant transacts a substantial volume of business in the District. […]," XSAC. ¶ 29, plainly do not establish specific jurisdiction over SBI in Texas under the long-arm statute. And, X's attempt to lump the Shell entities under the same corporate name "Shell" treating them as a single unit despite their obvious separate corporate existences —*a distinction conceded in X's Complaint*— similarly does not create specific jurisdiction where it is plainly lacking. Specifically, X alleges:

> This Complaint will refer to Shell plc, Shell USA, and Shell Brands International AG collectively as "Shell." Shell expends substantial sums annually on the promotion of its services over the internet, including on social media platforms. Shell transacts substantial business in this District and within the Wichita Falls Division of this District.

XSAC ¶ 23. This attempt at impermissible group pleading painting the Shell entities with one stroke cannot mask the glaring deficiencies in X's complaint.[7]

---

[6] "[C]ourts only reach this [fair and reasonable] prong after establishing the defendant's minimum contacts with the forum state." *Halliburton Energy Servs., Inc.*, 921 F.3d at 544-45; *see also Air Vent, Inc. v. Powermax Elec. Co.*, 2023 U.S. Dist. LEXIS 9155, *16 (N.D. Tex. 2023) (Boyle, J.) (same).

[7] What precisely has SBI allegedly done in Texas that amounts to "…the promotion of its services over the internet, including on social media platforms" or "…transact[ing] substantial business in this District and within the Wichita Falls Division?" In point of fact, what services did SBI promote over the internet and on social media platforms in this District from its home base in Switzerland? Even further, what specific business did SBI transact in this District from its home base in Switzerland? X's Complaint leaves these questions unanswered. Nowhere does X allege with nonconclusory facts that *SBI* engaged in any specific conduct either directing its activities toward Texas or purposefully availing itself of the privileges of conducting any activities in Texas. There is not a single allegation in the complaint establishing that SBI itself targets Texas specifically and knowingly. Rather, X merely alleges in conclusory fashion that "Shell" promotes it services over the internet and transacts business in this District and within the Wichita Falls

Even if X's allegation lumping all Shell defendants together is credited —which it should not be— the allegation would not establish specific jurisdiction over SBI in Texas.  As a threshold matter, the mere act of purchasing or releasing advertisements over the internet, including on third-party social media platforms like Twitter, that are available and accessible anywhere and by anyone, including by residents of Texas either using the internet or accessing the Twitter platform, would not provide a basis for specific jurisdiction over a foreign defendant under the Texas long-arm statute:

> At bottom, the only reason to hale Huff-Post into Texas is that Texans visited the site, clicking ads and buying things there.  But as far as Johnson has alleged, those visits reflect only HuffPost's universal accessibility, not its purposeful availment of Texas. Accessibility alone cannot sustain our jurisdiction.  If it could, lack of personal jurisdiction would be no defense at all.
>
> *     *     *
>
> That point matters because 'the defendant himself' must create the contacts that sustain the forum state's jurisdiction. Because Johnson does not allege that HuffPost solicited Texan visits to the alleged libel, we cannot conclude that those visits are HuffPost's purposeful contacts with Texas. Instead, those visits reflect the ''unilateral activity'' of persons in Texas typing ''huffpost.com'' into their web browsers and pressing ''Enter.''

*Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320-21 (5th Cir. 2021); *see e.g., Admar Int'l. v. Eastrock, L.L.C.*, 18 F.4th 783, 788 (5th Cir. 2021) ("Merely running a website that is accessible in the forum state does not constitute the purposeful availment required to establish personal jurisdiction under longstanding principles of due process."); *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 594–95 (E.D. La. 2015) ("[P]ersonal jurisdiction requires more than a mere possibility that forum residents may purchase products on a nonresident defendant's website.").

---

Division of this District, which impermissible group allegation is conclusory and therefore should not be credited.  *Panda Brandywine Corp.*, 253 F.3d at 869.

**1)  The allegations against SBI do not arise from or relate to any individual contacts with Texas attributable to SBI.**

This prong of the specific jurisdiction test requires a plaintiff to demonstrate the required nexus between "the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84. That nexus must result from the defendant's purposeful availment of the forum's laws and protections; purposeful availment is the "constitutional touchstone" of the specific personal jurisdiction inquiry. *Carmona v. Leo Ship Mgmt., Inc*., 924 F.3d 190, 195 (5th Cir. 2019) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 474 (1985). Recently, the Supreme Court emphasized the limited nature of this prong in the specific jurisdiction analysis, finding that the "relate to" language "does not mean anything goes," but that "the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021).

Neither of the two claims asserted by X against SBI arises from or relates to any alleged minimum contacts SBI had with Texas because SBI did not conduct any suit-related conduct either in or otherwise targeting Texas.  At the time of the alleged decision to boycott Twitter in the Fall of 2022, X (Twitter) was headquartered in California, not Texas.  Even if Twitter had been domiciled in Texas at the time, its fortuitous presence there would not create jurisdiction over SBI. *Patterson v. Dietze*, 764 F.2d 1145, 1147 (5th Cir. 1985) (noting that purposeful availment cannot be inferred from "the mere fortuity that the plaintiff happens to be a resident of the forum").[8]

---

[8] X's conclusory allegation that the alleged conspiracy had ". . .foreseeable effects in the United States, including in this District," XSAC ¶ 29, does not compel a different analysis or result.  This allegation is conclusory for one, and moreover, does not relieve X of its obligation to show that SBI purposefully availed itself of the benefits of Texas or purposely directed conduct at Texas. *Panda Brandywine Corp.*, 253 F.3d at 869 (noting that the "'effects' test is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment" and that plaintiff must show purposeful availment besides the plaintiff's residence in the state and the foreseeability of defendant's actions causing injury in Texas).  In any event, X does not allege any specific, purposeful and affirmative action undertaken by SBI with reasonably foreseeable consequences in

X cannot link SBI's membership in the WFA —under which GARM was created as an initiative within the WFA— to the United States much less to Texas.  XSAC ¶11 ("GARM was a committee of WFA and reported to the WFA Executive Committee."); SBI is based out of Switzerland.  Laanio Decl. ¶ 2.  SBI's membership dues were invoiced by the WFA outside of the U.S. with SBI's membership payments made outside of the U.S., including SBI's one-time contribution payment to the WFA pertaining to GARM's operating budget, which was made to the WFA's Head Office address in Brussels with remittance to the WFA's bank account located in Brussels.  Aragon Decl. ¶¶ 3-4.  X's complaint alleges that "GARM was governed by its Steer Team," XSAC ¶ 39, but SBI was not a GARM Steer Team member.  Aragon Decl. ¶ 5.  And X does not allege that any SBI directors or employees traveled to the U.S. to participate in any GARM related activities in Texas or elsewhere in the U.S.  In fact, the only GARM-related meeting that X alleges SBI attended in person and discussed GARM was the ANA Global CMO Growth Council meeting held in June 2022, where the ANA CMO Growth Council met in Cannes, France. XSAC ¶ 59.  None of this activity concerned Texas (or the U.S.) and therefore cannot justify a conclusion that SBI should have reasonably anticipated being called into a court in Texas (or the U.S.).  Purposeful availment is a constitutional prerequisite for jurisdiction and it is plainly lacking here with respect to the allegations and claims X has asserted against SBI.

## B. There is no personal jurisdiction over SBI anywhere in the U.S.

X cannot rely on Rule 4(k)(2) to establish personal jurisdiction either.  Rule 4(k)(2) functions essentially as an analogue to state "long-arm" statutes by allowing federal courts to exercise personal jurisdiction over foreign defendants in certain limited situations not present here. Specifically, Rule 4(k)(2) provides that: "[f]or a claim that arises under federal law, serving a

---

Texas that were known to SBI at the time that it allegedly acted.  Again, according to X, the alleged conspiracy occurred in the Fall of 2022 when X was based in California, *not Texas*.

summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). While the relevant inquiry here is not whether the defendant has minimum contacts with the forum state, but rather whether the defendant has minimum contacts with the U.S. as a whole, due process still sets the outer bounds of personal jurisdiction under Rule 4(k)(2). *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 241-42 (5th Cir. 2022 ) (*en banc*). The relevant forum would be the U.S. writ large, not Texas. And, the relevant Constitutional Amendment would be the Fifth, not the Fourteenth. But, the inquiry would still be whether there can be either general or specific personal jurisdiction over SBI. *See Sinox Company Ltd. v. YiFeng Manufacturing Co. Ltd.*, 2023 WL 2769440 at *3 (W.D. Tex. Mar. 22, 2023) (applying general and specific jurisdiction tests under Rule 4(k)(2)).

### i.    There is no general jurisdiction over SBI in the U.S.

There is no general jurisdiction over SBI in the U.S. for the same reason there is no general jurisdiction in Texas. "[T]o assert general personal jurisdiction under Rule 4(k)(2), [the defendant's] contacts with the United States must be so continuous and systematic as to render it essentially at home in the United States." *Patterson v. Aker Solutions, Inc*. 826 F.3d 231, 234 (5th Cir. 2016). Consistent with the analysis under the Texas long-arm statute, under Rule 4(k)(2) a defendant will only be subject to general jurisdiction in the country where its principal place of business is located or the country under whose laws it is incorporated—absent an exceptional case. *Id*.

As detailed above, SBI is a Swiss company organized under Swiss law with no employees, physical locations, tangible assets, or accounts located in the U.S. *See generally* Laanio Decl. and Aragon Decl. Thus, federal courts in the U.S. cannot exercise general jurisdiction over SBI under

-13-

Rule 4(k)(2). *See Patterson*, 826 F.3d at 234-37 (no general jurisdiction under Rule 4(k)(2) for company headquartered and incorporated in Norway).

### ii.    There is no specific jurisdiction over SBI in the U.S.

The test for whether there is specific jurisdiction in the U.S. under the Fifth Amendment is identical to the test for whether there is specific jurisdiction in any individual state under the Fourteenth Amendment. *See Hardy v. Scandinavian Airlines Sys*., 117 F.4th 252, 265-684 (5th Cir. 2024) (analyzing whether defendant purposefully availed itself of the country, whether the suit must arises out of or relates to the defendant's contacts with the country, and whether the exercise of jurisdiction would be fair and reasonable).   This court cannot exercise specific jurisdiction over SBI under Rule 4(k)(2) because SBI has not purposefully availed itself of the privilege of doing business in the U.S., and X's suit does not arise out of or relate to any alleged contacts SBI has with the U.S.  Again, SBI is not at home in the U.S., but rather is headquartered in Switzerland and is organized under Swiss law with the direction, control, and coordination of its business affairs occurring in Switzerland.  SBI has no offices in the U.S., no employees in the U.S., and no assets or bank accounts located in the U.S.  Exercising specific personal jurisdiction over SBI under these facts would offend the traditional notions of fair play and substantial justice and therefore is constitutionally impermissible.  *See Gilmore v. Palestinian Interim Self-Government*, 422 F. Supp. 2d 96, 104 (D.D.C. 2006) (granting motion to dismiss because exercising specific jurisdiction under Rule 4(k)(2) would offend the Constitution).

### iii.    Alleged participation in an alleged conspiracy is not enough to establish specific personal jurisdiction over SBI in the U.S.

X also attempts to establish specific jurisdiction in the U.S. over SBI by alleging  that "[e]ach Defendant, including WFA, Ørsted, Nestlé S.A., Lego A/S, Shell plc, and Shell Brands, through its participation in the conspiracy alleged in this Complaint and otherwise, has substantial

contacts with the United States and with this District." XSAC ¶ 29. X's attempt to base this Court's jurisdiction on a defendant's alleged participation in a conspiracy runs afoul of Fifth Circuit precedent requiring that jurisdiction rest on a defendant's own conduct. *See Delta Brands Inc. v. Danieli Corp.,* 99 Fed. Appx. 1, 6 (5th Cir. 2004) ("[The plaintiff] also contends that specific personal jurisdiction can be based on [a defendant's] alleged participation in a conspiracy to obtain [the plaintiff's] confidential information. To establish its prima facie case of specific personal jurisdiction, [the plaintiff] was required to demonstrate that [a defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas"); *see also Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999) (same); *Eagle Metal Prod. v. Keymark Enterprises*, 651 F. Supp. 2d 577, 593 (N.D. Tex. 2009) (rejecting application of "conspiracy theory" of jurisdiction based on the Fifth Circuit's decision in *Delta Brands*); *Federation of State Massage Therapy Boards v. Mendez Master Training Center, Inc.*, 4:17-cv–2936, 2018 WL 534540, at *5 n.9 (S.D. Tex. Jan 24, 2018) ("To the extent Plaintiff is asserting that J. Mendez is subject to personal jurisdiction in Texas by virtue of acts in Texas taken by any of his alleged cheating ring 'co-conspirators,' including MMTC Texas, the Court rejects that argument as inconsistent with Fifth Circuit precedent."); *WorldVentures Holdings v. Mavie*, No. 4:18-cv-393, 2018 WL 6523306, at *10 (E.D. Tex. Dec. 12, 2018) ("Because the Fifth Circuit and Texas Supreme Court have both found that personal jurisdiction must be based on a defendant's 'individual contacts' with the forum 'and not as part of [a] conspiracy,' minimum contacts is established only if 'the alleged conspiracy w[as] related to or arose out of [defendants'] contacts with Texas.'").

    Under Fifth Circuit authority both cited and followed by this Court and other district courts in this Circuit, SBI's alleged participation in the alleged conspiracy to boycott X (Twitter), without more, does not create "minimum contacts" attributable to SBI with the U.S. *See Gigi's Cupcakes,*

*LLC v. 4 Box, LLC*, No. 3:17-CV-3009, 2020 WL 1064852, at *7 (N.D. Tex. March 5, 2020) (Boyle, J.) ("The only other claim asserted against Butler and Thompson is a general conspiracy claim. But Texas courts have held that 'alleging a conspiracy cause of action does not provide an independent basis for jurisdiction.'") (*citing Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W. 2d 769, 773 (Tex. 1995) ("[W]e decline to recognize assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state."). That other members of the alleged conspiracy, or that the alleged boycott group as a whole, may have contacts with the U.S., does not create specific jurisdiction over SBI because X does not allege that SBI, either as part of the conspiracy or independently, took any specific individual actions evidencing ***its*** purposeful availment of the privilege of doing business in the U.S.

> **C.    There is no personal jurisdiction under Section 12 of the Clayton Act because X cannot establish venue.**

In antitrust cases, the Clayton Act provides for nationwide personal jurisdiction in a court only if venue is also proper in that court under the Clayton Act.  And, as explained below, venue is not proper in this District under the Clayton Act.

Section 12 states in full:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. The first clause authorizes venue in antitrust cases in any district where the defendant resides, may be found, or transacts business. The second provides for  nationwide personal jurisdiction but only in "such cases"—that is, only in the cases where venue is proper according to the terms of the first clause.  Personal jurisdiction cannot be established through the

second clause if venue is established only under the general venue statute, 28 U.S.C. § 1391, and not the specific venue provision of Section 12. This is the plain meaning of the statute. The phrase "such cases" demands that the two provisions be read together. *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000) finding it "quite unreasonable to presume that Congress would intentionally craft a two-pronged provision with a superfluous first clause, ostensibly link the two provisions with the 'in such cases' language, but nonetheless fail to indicate clearly anywhere that it intended the first clause to be disposable"); *Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 422-424 (2d Cir. 2005) (finding that the service of process provision "plainly refers to those cases qualifying for venue in the immediately preceding clause"). Nationwide personal jurisdiction is not available *until* the statute's venue requirements are met. Any other reading would render the "venue inquiry meaningless." *KM Enters., Inc. v. Global Traffic Techs., Inc*., 725 F.3d 718, 729 (7th Cir. 2013).[9]

Although the Fifth Circuit has not addressed this issue, district courts in the Fifth Circuit have consistently held that the two clauses must be read together. *Mgmt. Insights, Inc. v. CIC Enter., Inc.*, 194 F. Supp. 2d 520, 530 (N.D. Tex. 2001) (endorsing interdependent view); *Open Cheer*, 2024 WL 1218573, at *2 (following *Mgmt. Insights*); *Corr Wireless Commc'ns., L.L.C. v. AT & T, Inc*., 907 F. Supp. 2d 793, 800 (N.D. Miss. 2012) (same); *Ramzan v. GDS Holdings Ltd.*, No. 18-cv-539, 2019 WL 4748001, at *5 (E.D. Tex. Sept. 30, 2019) (citing favorably to the Seventh, Second, and D.C. Circuit Courts' treatment of Section 12 to conclude that an analogous

---

[9] Most federal circuits in addressing this have held that nationwide service of process for personal jurisdiction under the Clayton Act can only apply once venue under the Clayton Act is met. *GTE*, 199 F.3d at 1350–51 (D.C. Cir.); KM *Enters.*, 725 F.3d at 729–30 (7th Cir.); *Daniel*, 428 F.3d at 422 (2d Cir.). The Fifth Circuit has yet to address the issue. *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 23-cv-0155, 2024 WL 1218573, at *2 (N.D. Tex., Mar. 21, 2024) ("To date, the Fifth Circuit has not weighed in . . . as to whether clauses one and two are interdependent.").

universal service of process provision from the Securities Exchange Act only applied after the venue requirements of the statute were met.).  In short, to avail itself of nationwide personal jurisdiction under the Clayton Act, X must first establish venue in this District, which it cannot do for the reasons detailed below.  And even if service of process was allowed here, X has not established personal jurisdiction over SBI based on national contacts, nor could it, as explained above.

### D.    The Northern District of Texas is not a proper venue.

Whether a federal district court is the proper venue to hear a dispute is an entirely separate question from whether the court can exercise personal jurisdiction over the defendant. In other words, even if there is personal jurisdiction, a court may still dismiss for lack of proper venue. Here, X alleges that venue is proper under 15 U.S.C. § 22 and 28 U.S.C. § 1391, XSAC ¶ 30, but venue cannot be established in this case under either provision.

### i.    The Clayton Act does not provide for venue in this District.

The Clayton Act provides that "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business[.]" 15 U.S.C. § 22. X has alleged that "each Defendant" either "transacts business" in, "may be found" in, or "had agents in" the Northern District of Texas. XSAC ¶ 30. These conclusory allegations should not be credited against SBI because they do not establish that SBI *itself* "transacts business" in the Northern District of Texas.  A defendant transacts business under the Clayton Act if its "sales [in that district] would appear to be substantial from the average businessman's point of view." *Datamedia Comput. Serv., Inc. v. AVM Corp,* 441 F.2d 604, 606 (5th Cir. 1971) (quoting *Green v. United States Chewing Gum Mfg.*, 224 F.2d 369, 372 (5th Cir. 1955). The business transactions must be "performed. . . with continuity of character, regularity, contemporaneous with the service and not

looking toward cessation." *Mgmt. Insights, Inc. v. CIC Enter., Inc.,* 194 F. Supp. 2d 520 (N.D. Tex. 2001) (quoting *Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 260 (W.D.N.Y. 1997). X's Complaint does not allege nonconclusory facts evidencing any specific business transactions conducted by SBI in this District that "would appear to be substantial" to anyone or that are "performed with continuity…[or] regularity…" and otherwise deemed "contemporaneous…" with any service performed or offered by SBI in this District. Nor can SBI be "found" in the Northern District of Texas for purposes of the Clayton Act. This court long ago held that, under the Clayton Act, "'being found' in a district is generally equated with doing business there, and requires greater contacts than does 'transacting business.'" *Mgmt. Insights*, 194 F. Supp. 2d at 532. X's utter failure to plead nonconclusory facts evidencing specific business transactions involving SBI in this District inescapably means SBI cannot be "found" in this District. Further, X does not allege, nor could it allege that SBI is an inhabitant of the Northern District of Texas. Laanio Decl. ¶¶ 2-3, 5. Therefore, venue is improper under the Clayton Act.

      **ii.**    **28 U.S.C. § 1391 does not provide for venue in the Northern District of Texas.**

X cites to 28 U.S.C. § 1391(b), (c), (d), and (f), but X cannot establish proper venue in this District under this venue statute. Subsections (d) and (f) plainly do not apply.

Venue under Section 1391(b)(1) is not applicable here because not all defendants in this case reside in Texas. Nor is venue proper under § 1391(b)(2) based on X's conclusory allegation that "a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District," XSAC ¶ 30, which this Court is not required to credit. *Gilmour, Tr. for Grantor Trs. v. Blue Cross & Blue Shield of Ala.,* SA-17-CA-518, 2019 WL 2147580, at *5 (W.D. Tex. Mar. 6, 2019). This allegation is conclusory because none of the substantial acts are specified in the Complaint. Rather, X merely recites the elements of section 1391(b)(2). In an

antitrust suit, the district where the defendant is headquartered, and theoretically engaged in much of the alleged anticompetitive conduct, would meet the requirements of 1391(b)(2). *Nat'l Athletic Trainers' Ass'n, Inc. v. Am. Physical Therapy Ass'n*, 3:08-cv-0158, 2008 WL4146022, at *14 (N.D. Tex. Sept. 9, 2008). Here, X alleges nothing that distinguishes the Northern District of Texas from any other federal district with respect to this action.

Venue is also improper under section 1391(b)(3), which courts apply stringently, requiring a plaintiff to still prove there is personal jurisdiction over a defendant in a given district, which X has not done with respect to SBI. *Petersen v. Meta, Inc.*, No. 2:24-cv-00038, 2024 WL 4719714 *9 (S.D. Tex. Sept. 4, 2024), *report and recommendation adopted by* 2024 WL 4608185 (S.D. Tex. Oct. 29, 2024) (finding 1391(b)(3) inapplicable because court lacked personal jurisdiction). As detailed above, SBI is not subject to personal jurisdiction in any district in the U.S.

To the extent X purports to rely on Section 1391(c)(3)'s venue provision and separately invoke worldwide service of process for personal jurisdiction over SBI under Section 12 of the Clayton Act based on a minimum contacts analysis focused on purported contacts with the U.S. as a whole, the effort fails because the availability of worldwide service of process for personal jurisdiction under Section 12 is expressly dependent on X satisfying Section 12's substantive venue requirements, which it cannot do for the reasons noted above. Even if this Court were to permit X to decouple the venue and service of process provisions of Section 12 and rely on Section 1391(c)(3)'s venue provision while also relying on Section 12's service of process provision, the exercise would still prove unavailing because X has not made a prima facie showing that SBI has sufficient minimum contacts with the U.S. as a whole to establish personal jurisdiction over SBI in the U.S.

## IV.    CONCLUSION

For the foregoing reasons, SBI should be dismissed under Rule 12(b)(2) and 12(b)(3).

Dated: May 14, 2025                                  Respectfully submitted,

By: */s/ Layne E. Kruse*
Layne E. Kruse
State Bar No. 11742550
layne.kruse@nortonrosefulbright.com
Carlos R. Rainer
State Bar No. 24027641
carlos.rainer@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone No.: (713) 651-5151
Facsimile No.: (713) 651-5246

Ellen Sessions
State Bar No. 00796282
ellen.sessions@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone No.: (214) 855-8000
Facsimile No.: (214) 855-8200

***Attorneys for Defendant Shell Brands International AG***

## CERTIFICATE OF SERVICE

I certify that on May 14, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

Dated: May 14, 2025

Respectfully submitted,

By: */s/ Carlos R. Rainer*
Carlos R. Rainer
State Bar No. 24027641
carlos.rainer@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone No.: (713) 651-5151
Facsimile No.: (713) 651-5246

***Attorneys for Defendant Shell Brands International AG***

## CERTIFICATE OF COMPLIANCE

I certify that Defendant Shell Brands International AG's Brief in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue complies with LR 7.2 and this Court's previous order.


Dated: May 14, 2025                              Respectfully submitted,

By: */s/ Carlos R. Rainer*
Carlos R. Rainer
State Bar No. 24027641
carlos.rainer@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone No.: (713) 651-5151
Facsimile No.: (713) 651-5246

***Attorneys for Defendant Shell Brands International AG***