IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| _Plaintiff,_ | § | |
| | § | |
| v. | § | No. 7:24-cv-00114-B |
| | § | |
| WORLD FEDERATION OF ADVERTISERS; | § | |
| MARS, INCORPORATED; | § | |
| CVS HEALTH CORPORATION; | § | |
| ØRSTED A/S; | § | |
| TWITCH INTERACTIVE, INC. | § | |
| NESTLÉ S.A.; NESTLE USA, INC.; | § | |
| ABBOTT LABORATORIES; | § | |
| COLGATE-PALMOLIVE COMPANY; | § | |
| LEGO A/S; LEGO BRAND RETAIL, INC.; | § | |
| PINTEREST, INC.; | § | |
| TYSON FOODS, INC.; | § | |
| SHELL PLC; SHELL USA, INC.; AND | § | |
| SHELL BRANDS INTERNATIONAL AG, | § | |
| | § | |
| _Defendants._ | § | |

## BRIEF IN SUPPORT OF DEFENDANT LEGO A/S'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

## <u>TABLE OF CONTENTS</u>

**Page**

**TABLE OF AUTHORITIES** ..................................................................................................ii

**BACKGROUND** ........................................................................................................... 1

**LEGAL STANDARD** .................................................................................................... 2

**ARGUMENTS** ............................................................................................................. 4

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER LEGO A/S UNDER THE TEXAS LONG ARM STATUTE ............................................................. 4

      A.      LEGO A/S Does Not Have the Requisite Minimum Contacts with Texas or the United States ............................................................................... 4

            1.      There Are Insufficient Minimum Contacts for General Jurisdiction Over LEGO A/S........................................................................ 5

            2.      There Are Insufficient Minimum Contacts for Specific Jurisdiction Over LEGO A/S........................................................................ 6

            3.      Even an Alter-Ego / Veil-Piercing Theory Fails to Establish Personal Jurisdiction Over LEGO A/S ....................................... 8

      B.      To Exercise Jurisdiction Over LEGO A/S Would Offend Traditional Notions of Fair Play and Substantial Justice.......................................... 10

II.     THE COURT LACKS PERSONAL JURISDICTION OVER LEGO A/S UNDER SECTION 12 OF THE CLAYTON ACT ....................................................... 11

      A.      Venue is Improper for LEGO A/S Under Section 12 of the Clayton Act ........... 13

      B.      LEGO A/S Does Not Have Sufficient Contacts With the United States to Properly Exercise Personal Jurisdiction Under Section 12 of the Clayton Act.................................................................................................... 16

**CONCLUSION** ........................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpine View Co. Ltd. v. Atlas Copco AB*,
 205 F.3d 208 (5th Cir. 2000) ..................................................................4, 8, 11, 16

*In re Auto. Refinishing Paint Antitrust Litig.*,
 358 F.3d 288 (3d Cir. 2004)....................................................................................13

*Black v. Acme Mtks., Inc.*,
 564 F.2d 681 (5th Cir. 1977) ..................................................................................15

*BNSF Ry. v. Tyrrell*,
 581 U.S. 402 (2017).................................................................................................5

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985).........................................................................................3, 5, 6

*Clay v. Palfinger USA, LLC*,
 No. 20-CV-724, 2021 WL 430685 (W.D. Tex. Feb. 8, 2021)..................................9

*Corr Wireless Commn'cs, L.L.C. v. AT&T, Inc.*,
 907 F. Supp. 2d 793 (N.D. Miss. 2012)..................................................................13

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014).........................................................................................3, 5, 6

*Daniel v. Am. Bd. of Emergency Med.*,
 428 F.3d 408 (2d Cir. 2005)....................................................................................12

*Datamedia Comput. Serv., Inc. v. AVM Corp.*,
 441 F.2d 604 (5th Cir. 1971) ..................................................................................15

*Delta Brands Inc. v. Danieli Corp.*,
 99 F. App'x 1 (5th Cir. 2004) ........................................................................6, 11, 15

*Dickson Marine, Inc. v. Panalpina, Inc.*,
 179 F.3d 331 (5th Cir. 1999) ....................................................................................9

*DLR, LLC v. Montoya*,
 465 F. Supp. 3d 676 (N.D. Tex. 2020) ......................................................................3

*Eagle Metal Prods., LLC v. Keymark Enter., LLC*,
 651 F. Supp. 2d 577 (N.D. Tex. 2009) (Lynn, J.)....................................................6

*Eastman Kodak Co. v. S. Photo Materials Co.*,
    273 U.S. 359 (1927).................................................................................15

*Go-Video, Inc. v. Akai Elec. Co.*,
    885 F.2d 1406 (9th Cir. 1989) ...............................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)..................................................................................3

*Green v. U.S. Chewing Gum Mfg. Co.*,
    224 F.2d 369 (5th Cir. 1995) ..................................................................16

*GTE New Media Servs., Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000)...............................................................12

*Harbour v. Heyl Truck Lines, Inc.*,
    No. 24-CV-0183, 2024 WL 1317805 (N.D. Tex. Mar. 27, 2024)............2

*Hargrave v. Fibreboard Corp.*,
    710 F.2d 1154 (5th Cir. 1983) .......................................................8, 9, 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)..................................................................................6

*J.D. Fields & Co. v. Shoring Eng'rs*,
    391 F. Supp. 3d 698 (S.D. Tex. 2019) ...................................................14

*Kelvin Servs., Inc. v. Lexington State Bank*,
    46 F.3d 13 (5th Cir. 1995) ........................................................................2

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
    725 F.3d 718 (7th Cir. 2013) ..................................................................13

*Marathon Oil Co. v. A.G. Ruhrgas*,
    182 F.3d 291 (5th Cir. 1999) ....................................................................5

*Mgmt. Insights, Inc. v. CIC Enters., Inc.*,
    194 F. Supp. 2d 520 (N.D. Tex. 2001) ........................................ *passim*

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
    No. 23-cv-0155, 2024 WL 1218573 (N.D. Tex. Mar. 21, 2024)............13

*Patin v. Thoroughbred Power Boats Inc.*,
    294 F.3d 640 (5th Cir. 2002) ....................................................................8

*Risinger Holdings, LLC v. Sentinel Ins. Co.*,
    565 F. Supp. 3d 844 (E.D. Tex. 2021) ..............................................9, 10

*Sangha v. Navig8 ShipManagement Private Ltd.*,
   882 F.3d 96 (5th Cir. 2018) ............................................................6

*Schlobohm v. Schapiro*,
   784 S.W.2d 355 (Tex. 1990)..........................................................4

*Stuart v. Spademan*,
   772 F.2d 1185 (5th Cir. 1985) ......................................................3

*TransFirst Grp., Inc. v. Magliarditi*,
   237 F. Supp. 3d 444 (N.D. Tex. 2017) ........................................4

*United States v. Scophony Corp. of Am.*,
   333 U.S. 795 (1948)....................................................................15

*VeroBlue Farms USA, Inc. v. Wulf*,
   465 F. Supp. 3d 633 (N.D. Tex. 2020) ........................................2

*Walden v. Fiore*,
   571 U.S. 277 (2014).........................................................7, 11, 16

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980).................................................................3, 5

*WorldVentures Holdings, LLC v. Mavie*,
   No. 4:18CV393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ...........7

## Statutes

15 U.S.C. § 15....................................................................................13

Section 12 of the Clayton Act, 15 U.S.C. § 22 .........................1, 11, 12, 13

Sherman Act Section 1, 15 U.S.C. § 1 ..............................................1

Tex. Civ. Prac. & Rem. Code § 17.042 ............................................1

## Other Authorities

Federal Rule of Civil Procedure 12(b)(2) .....................................1, 2

The Court should dismiss X Corp.'s Complaint against LEGO A/S for lack of personal jurisdiction. LEGO A/S is a Danish corporation with no meaningful ties to Texas or the United States. As a parent company, LEGO A/S has undertaken no actions connected to X Corp.'s claims in this lawsuit; not in Texas, nor in the United States, nor anywhere else. For this reason, X Corp.'s Complaint is devoid of any plausible allegations establishing that LEGO A/S has the necessary minimum contacts required to authorize personal jurisdiction. To exercise jurisdiction over LEGO A/S would therefore violate fundamental notions of due process. Accordingly, under Federal Rule of Civil Procedure 12(b)(2), this Court should dismiss LEGO A/S from this case.

## BACKGROUND

X Corp. alleges that LEGO A/S, along with other advertisers and media agencies (collectively, "Defendants"), violated Section 1 of the Sherman Act, 15 U.S.C. § 1. Second Amended Complaint, ECF No. 77 ("SAC") ¶¶ 157, 162.[1] X Corp. claims Defendants acted collectively through the World Federation of Advertisers ("WFA"), an international nonprofit headquartered in Belgium with a U.S. office in New York, and its initiative, the Global Alliance for Responsible Media ("GARM"), to organize and carryout a group boycott of Twitter by withholding purchases of digital advertising from Twitter, and that they exchanged competitively sensitive information in the process. *Id.* ¶¶ 1-3, 36, 157, 162. X Corp. claims that this Court has personal jurisdiction over all Defendants under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and Section 12 of the Clayton Act, 15 U.S.C. § 22. *Id.* ¶¶ 28-29.

Defendant LEGO A/S is a foreign corporation headquartered in Billund, Denmark that X Corp. alleges manufactures and sells toys and games. SAC ¶ 20; Declaration of Renee Oliver

---

[1] Although X Corp. acquired Twitter and renamed the platform as "X," for the sake of clarity, this brief refers to the platform as "Twitter."

("Oliver Decl.") App. at 004 ¶ 3. LEGO A/S does not have offices, employ personnel, or otherwise conduct any business activities in Texas or the United States. *Id.* ¶¶ 5-8. Nor does LEGO A/S have any physical presence or registered agents in the United States. *Id.* ¶¶ 8, 10. LEGO A/S does not make advertising decisions for the LEGO Group, and is not, nor has it ever been, a member of GARM. Declaration of Caroline Soriano ("Soriano Decl.") App. at 007 ¶¶ 3-4. Although LEGO A/S is the ultimate parent of Defendant LEGO Brand Retail, Inc., LEGO Brand Retail, Inc. is an indirectly held U.S. subsidiary that independently operates its own business. SAC ¶ 20; Oliver Decl. App. at 005 ¶ 12.

The word "LEGO" appears few times in X Corp.'s 60-page Complaint. In the few paragraphs "LEGO" is mentioned, X Corp. collectively refers to both LEGO A/S and LEGO Brand Retail, Inc., as if they are one "LEGO" entity. SAC ¶ 20. In sweeping terms, X Corp.'s boilerplate allegations state that "LEGO" (and all other Defendants) transacts substantial business in the Northern District of Texas, participated in conspiracy-related conduct affecting Texas, and intentionally caused foreseeable harm in Texas. SAC ¶¶ 20, 29-30. X Corp. does not point to any action by LEGO A/S directed toward Texas or the United States and instead relies on vague, generalized claims about the collective behavior of the Defendants as alleged "members of the conspiracy." SAC ¶ 29.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) compels dismissal whenever a court lacks personal jurisdiction over a defendant. A plaintiff must establish a prima facie case for personal jurisdiction over a nonresident defendant. *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 660 (N.D. Tex. 2020); *Kelvin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14 (5th Cir. 1995). To meet this burden, a plaintiff must provide more than mere "conclusory allegations." *Harbour v. Heyl Truck Lines, Inc.*, No. 3:24-CV-0183-D, 2024 WL 1317805, at *2 (N.D. Tex.

2

Mar. 27, 2024) (citation omitted). In fact, "the Court need only accept as true uncontroverted allegations in the complaint if those allegations are not conclusory." *DLR, LLC v. Montoya*, 465 F. Supp. 3d 676, 680 (N.D. Tex. 2020). This Court has the latitude to consider declarations and additional evidence, and it need not accept allegations from the Complaint that are contradicted by such evidence. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

The requirement that a plaintiff clearly establishes personal jurisdiction is not merely procedural—it "protects the defendant against the burdens of litigating in [ ] distant or inconvenient forum[s]" with which it has little or no contact. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). This requirement is governed by the legal standards for exercising personal jurisdiction under state law. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Any exercise of jurisdiction must also satisfy federal constitutional due process standards. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (due process "sets the outer boundaries of a . . . tribunal's authority to proceed against a defendant").

Due process "protects [the defendant's] liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Accordingly, a state can "authorize its courts to exercise personal jurisdiction over an out-of-state defendant" only "if the defendant has certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler*, 571 U.S. at 126 (internal quotation marks and citation omitted). Alternatively, where a federal statute grants jurisdiction over a defendant by providing nationwide service of process, a federal court may exercise personal jurisdiction over

3

that defendant so long as this exercise does not offend traditional notions of fair play and substantial justice. *See Mgmt. Insights, Inc. v. CIC Enters., Inc*., 194 F. Supp. 2d 520, 523 (N.D. Tex. 2001).

## ARGUMENTS

Because X Corp. fails to establish a prima facie case of jurisdiction under either the Texas long-arm statute or the Clayton Act, this Court should dismiss LEGO A/S from this lawsuit.

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER LEGO A/S UNDER THE TEXAS LONG ARM STATUTE

Texas's jurisdictional statute cannot reach LEGO A/S in Denmark.

The Texas long-arm statute reaches as far as federal due process allows, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), and the jurisdictional inquiry comes down to two essential questions: A) has LEGO A/S established the necessary "minimum contacts" with Texas or the United States, and B) would exercising personal jurisdiction over LEGO A/S align with "traditional notions of fair play and substantial justice." *TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 451 (N.D. Tex. 2017) (citation omitted). X Corp. has not—and cannot—meet its burden on either front. X Corp. is silent as to whether LEGO A/S maintains the required minimum contacts with Texas. Indeed, its Complaint provides no allegations suggesting that exercising jurisdiction would meet traditional notions of fair play and substantial justice. The supporting declarations of LEGO Systems, Inc. employees Renee Oliver and Caroline Soriano show that X Corp. cannot establish this Court's jurisdiction over LEGO A/S.

### A.    LEGO A/S Does Not Have the Requisite Minimum Contacts with Texas or the United States

First, X Corp.'s Complaint fails on minimum contacts.

X Corp. "make[s] no attempt to link [LEGO A/S's] contacts with Texas and the instant litigation." *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000). The

4

"minimum contacts" prong is met only when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 252 (1958)). The "purposeful availment" test is only met when the defendant could reasonably foresee being brought into court in the forum state. *World-Wide Volkswagen Corp.*, 444 U.S. at 297. This ensures that jurisdiction over a defendant does not rely solely on "random, fortuitous, or attenuated contacts," nor the unilateral actions of third parties. *Burger King*, 471 U.S. at 475 (internal quotation marks and citation omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to (1) "general" personal jurisdiction and (2) those that give rise to "specific" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). X Corp. falls short of demonstrating sufficient contacts to support either general or specific jurisdiction over LEGO A/S.

### 1. There Are Insufficient Minimum Contacts for General Jurisdiction Over LEGO A/S

LEGO A/S's contacts with Texas do not meet the Supreme Court's test for general jurisdiction. The Supreme Court has repeatedly explained that general jurisdiction requires corporate operations within a state so "substantial, continuous, and systematic" that the corporation is effectively "at home" there. *Daimler AG*, 571 U.S. at 119, 127, 139 (citation omitted). Aside from exceptional cases, the Supreme Court has confined general jurisdiction to two locations: the corporation's place of incorporation and its principal place of business. *Id*. at 137; *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 413 (2017). Here, X Corp.'s Complaint misses the mark by thousands of miles—and an ocean. LEGO A/S is incorporated in Denmark, SAC ¶ 20, and maintains its principal place of business in Billund, Denmark. Oliver Decl. App. at 004 ¶ 3. And X Corp. does not—and cannot—allege that LEGO A/S's business contacts within Texas (or the

5

United States) come close to the "substantial, continuous, and systematic" nature that might justify extending general jurisdiction beyond these well-established boundaries. *Daimler AG*, 571 U.S. at 119. As such, LEGO A/S is neither domiciled nor "at home" in Texas or the United States. Thus, asserting general jurisdiction over the company would contradict the Supreme Court's instructions and mock any limits on jurisdiction.

### 2.     There Are Insufficient Minimum Contacts for Specific Jurisdiction Over LEGO A/S

Similarly, there is no specific jurisdiction over LEGO A/S in Texas based on the facts alleged by X Corp. The Supreme Court has underscored that specific jurisdiction requires a direct connection between a defendant's purposeful activities in the forum state and the plaintiff's claims. *Burger King*, 471 U.S. at 472-473. Incidental or unrelated contacts must fail. Rather, (a) a defendant needs to intentionally direct activities towards the forum state, ***and*** (b) the plaintiff's claims must arise directly from those specific activities. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Further, the Fifth Circuit notes that personal jurisdiction must be based on a defendant's individual contacts with the forum "and not as part of [a] conspiracy." *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004); *accord Eagle Metal Prods., LLC v. Keymark Enter., LLC*, 651 F. Supp. 2d 577, 593 (N.D. Tex. 2009) (Lynn, J.).

Here, X Corp. fails to allege a single intentional act by LEGO A/S (or Connecticut-based subsidiary LEGO Brand Retail, Inc., *see* SAC ¶ 20) aimed specifically at the Lone Star State that gave rise to its claims. X Corp. does not allege that LEGO A/S specifically targeted Texas with any Twitter advertisements (and as the owner of Twitter, X Corp. would presumably know if this had occurred). Further, the Complaint is silent as to any fact that expressly implicates LEGO A/S

(or any LEGO entity, for that matter) in a group boycott or information sharing conspiracy, let alone a conspiracy arising from LEGO A/S's contacts with Texas. Moreover, X Corp. does not—and cannot—allege that (1) LEGO A/S made any advertising decisions at all, Soriano Decl. App. at 007 ¶¶ 3-4, (2) LEGO A/S made any other decisions in Texas that could have given rise to its claims (e.g., that it participated in adopting, enforcing, or coordinating GARM's Brand Safety Standards within Texas), *id.*, or that (3) LEGO A/S communicated competitively sensitive information to anyone in, or from, Texas or the United States.

X Corp.'s recent move to Texas, in September 2024, cannot provide this Court with jurisdiction over LEGO A/S.[2] Because X Corp. was not headquartered in Texas until after the company filed this lawsuit, X Corp. cannot maintain that any of the challenged conduct was directed at a Texas business. And, of course, the Supreme Court has held that a plaintiff's mere presence or principal place of business within a state does not establish jurisdiction, absent purposeful and targeted actions by the defendant towards that state. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014) ("[The] 'minimum contacts' analysis looks to the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there."); *see also, WorldVentures Holdings, LLC v. Mavie*, No. 4:18CV393, 2018 WL 6523306, at *10 (E.D. Tex. Dec. 12, 2018) ("[M]inimum contacts is not established merely because the plaintiff suffered an injury in the forum state."). "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum [s]tate that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. Here,

---

[2] According to records filed with the California Secretary of State, X Corp. moved its headquarters from San Francisco, California to Bastrop, Texas on September 13, 2024, after X Corp. filed this lawsuit. At all relevant times, X. Corp has been incorporated in Nevada.

LEGO A/S has done nothing to deliberately engage Texas or the United States concerning X Corp.'s claims. Without this, there is no specific jurisdiction over LEGO A/S.

> **3.    Even an Alter-Ego / Veil-Piercing Theory Fails to Establish Personal Jurisdiction Over LEGO A/S**

The Court should reject X Corp.'s efforts to do an end-run around the limits of personal jurisdiction.

X Corp. alleges that "[LEGO] A/S controlled, directed, and encouraged the anticompetitive conduct of LEGO Brand Retail, Inc." SAC ¶ 20. But there are no allegations demonstrating that LEGO A/S actually controlled or directed LEGO Brand Retail, Inc., which is an indirect, wholly-owned subsidiary incorporated and headquartered in Connecticut. *Id*. Even assuming that LEGO Brand Retail, Inc. had contacts sufficient to establish jurisdiction over it in Texas and the United States, LEGO A/S does not automatically assume such contacts by virtue of a parent-subsidiary relationship.

The Fifth Circuit explains that:

> [A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent.

*Alpine View Co.*, 205 F.3d at 218 (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). Personal jurisdiction through a subsidiary is only permitted if the corporate separation between parent and subsidiary can be disregarded under an alter-ego or veil-piercing theory. *See Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). The standard is stringent: federal courts assert jurisdiction over a parent based on subsidiary actions only when there exists a sufficiently "close relationship" that obliterates their corporate

separateness. *Risinger Holdings, LLC v. Sentinel Ins. Co*., 565 F. Supp. 3d 844, 854 (E.D. Tex. 2021) (quoting *Hargrave*, 710 F.2d at 1159). X Corp. has made no effort to plead these facts.

"In a diversity case, the applicable test for alter ego status, as a jurisdictional question, is found by consulting the law of the state where the federal court sits." *Id.* (citing *Adm'rs of Tulane Educ. Fund v. Ipsen, S.A*., 450 F. App'x 326, 330 n.5 (5th Cir. 2011)). In Texas, this means applying the *Hargrave* factors:

> (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities.

*Id.* This test sets a high bar; "[e]ven if a plaintiff can show that some factors support an alter ego relationship, 'the maintenance of corporate formalities' weighs in favor of 'finding that the entities are not alter egos.'" *Id.* (quoting *Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 588 (5th Cir. 2010)).

Similarly, to pierce the corporate veil to gain personal jurisdiction, there must be "something beyond the subsidiary's mere presence within the bosom of the corporate family." *Dickson Marine, Inc. v. Panalpina, Inc*., 179 F.3d 331, 338 (5th Cir. 1999) (citation omitted). A plaintiff must prove "the parent controls the internal business operations and affairs of the subsidiary" to a great degree such that "the two entities cease to be separate" and "the corporate fiction should be disregarded to prevent fraud or injustice." *Clay v. Palfinger USA, LLC*, No. A-20-CV-724-LY, 2021 WL 430685, at *6 (W.D. Tex. Feb. 8, 2021) (citation omitted), report and recommendation adopted, *Clay v. Palfinher USA, LLC,* No. 1:20-CV-724-LY, 2021 WL 8053491 (W.D. Tex. Feb. 26, 2021).

Here, X Corp.'s jurisdictional blanket is woven only with conclusory threads. *See* SAC ¶ 20. The Court accordingly "cannot impute" any of LEGO Brand Retail, Inc.'s contacts to LEGO A/S. *Risinger Holdings, LLC*, 565 F. Supp. 3d at 854-855 (finding that plaintiff made "no effort to meet the *Hargrave* standard" when it alleged only "bare assertions" of a parent-subsidiary relationship where the parent "administer[ed] and/or overs[aw] the claims administration process") (citation omitted).

### B.    To Exercise Jurisdiction Over LEGO A/S Would Offend Traditional Notions of Fair Play and Substantial Justice

Second, X Corp.'s grab for jurisdiction over a foreign corporation collides with basic ideas of fairness and justice.

X Corp. alleges only vague, attenuated connections between LEGO A/S and Texas, or the United States generally. *See, e.g.*, SAC ¶ 20 ("LEGO [including both LEGO Brand Retail, Inc. and LEGO A/S] transacts substantial business in this District and within the Wichita Falls Division of this District."); *id*. ¶ 29 (making broad allegations that apply to all defendants). Not only do these allegations lack a factual basis, *see generally* Soriano Decl. App. at 007; Oliver Decl. App at 004-05, they fail to describe how the alleged claims arise out of, or relate to, LEGO A/S's actions in Texas or the United States, particularly where LEGO A/S has not taken *any* actions in Texas or the United States. Oliver Decl. App. at 004 ¶ 5.

Indeed, X Corp. fails to allege any contacts with Texas or the United States that are specific to LEGO A/S. Instead, X Corp. conflates LEGO A/S with its separate, U.S.-based subsidiary, LEGO Brand Retail, Inc. The Complaint refers to both entities as "LEGO," *see* SAC ¶ 20, and then leans into cut-and-paste assertions that LEGO A/S "committed substantial acts in furtherance of [an] unlawful scheme within the United States, including in this District." *See id.* ¶ 29. As is common with such boilerplate, it seeks to hide reality behind verbiage. And it fails.

10

LEGO A/S is a Danish parent company to the LEGO Group corporate family, and LEGO Brand Retail, Inc. is just one of its indirect subsidiaries. SAC ¶ 20; Oliver Decl. App. at 004 ¶ 4. LEGO A/S's role as an indirect parent of LEGO Brand Retail, Inc., without more, cannot subject the foreign parent, LEGO A/S, to jurisdiction in the United States. *Alpine View Co.*, 205 F.3d at 218 ("[A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there.") (citation omitted).

Nor do X Corp.'s allegations that LEGO A/S acted as part of an antitrust conspiracy save the day. Not only do these conclusory allegations fail to connect LEGO A/S "to the forum in a meaningful way," *Walden*, 571 U.S. at 290, they also fail to establish that LEGO A/S "individually, and not as part of [a] conspiracy, had minimum contacts with Texas." *Delta Brands Inc.*, 99 F. App'x at 6. Thus, the Court should dismiss the claims against LEGO A/S because exercising personal jurisdiction over LEGO A/S would offend fair play and undermine justice.

## II.     THE COURT LACKS PERSONAL JURISDICTION OVER LEGO A/S UNDER SECTION 12 OF THE CLAYTON ACT

Because X Corp. fails to establish that A) venue would be proper here under Section 12 of the Clayton Act and B) LEGO A/S has the requisite minimum nationwide contacts with the United States, the Clayton Act does not authorize this Court to exercise personal jurisdiction over LEGO A/S.

X Corp. contends that the Clayton Act permits this Court to exercise personal jurisdiction over LEGO A/S and the other Defendants based on their nationwide contacts. SAC ¶ 29. But that argument misreads the statute's plain language. Section 12 authorizes nationwide service of process—and thus jurisdiction based on nationwide contacts—only in a court where venue is also proper under that same section. 15 U.S.C. § 22; *Mgmt. Insights,* 194 F. Supp. 2d at 530

(finding Section 12's nationwide personal jurisdiction authorization predicated on proper venue under Section 12). Thus, X Corp.'s reliance on the Clayton Act for jurisdiction is twice flawed: first, because the company fails to establish the necessary venue predicate; and second, because even if venue were established (which it is not), LEGO A/S does not have sufficient nationwide contacts with the United States such that Section 12 would authorize this Court to exercise personal jurisdiction over LEGO A/S.

The Clayton Act is only available to establish jurisdiction in limited circumstances. Section 12 of the Act provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process *in such cases* may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22 (emphasis added). According to the plain text of the statute, a plaintiff can only invoke personal jurisdiction under Section 12 in courts where Section 12's venue requirements are met. This is because the phrase "in such cases" links the two sentences and limits personal jurisdiction to only those districts where the defendant corporation is an inhabitant, is found, or transacts business. *Mgmt. Insights*, 194 F. Supp. 2d at 530 (holding that Section 12 allows nationwide personal jurisdiction only if venue is proper under the same section). The plain reading of the statute indicates that a plaintiff can only rely on the statute's nationwide service-of-process provision in a judicial district where the defendant is an inhabitant, is found, or transacts business.[3]

---

[3] Indeed, a majority of circuit courts have concluded that Section 12's nationwide service-of-process provision is contingent on satisfying its venue clause. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (holding that the "invocation of the nationwide service clause rests on satisfying the venue provision"); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423-24 (2d Cir. 2005) (interpreting "in such cases" to refer only

Although the Fifth Circuit has yet to weigh in on this issue, the march of precedent holds that venue under Section 12 is a predicate requirement for asserting personal jurisdiction based on nationwide contacts under that section. *See, e.g.*, *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-cv-0155-Z, 2024 WL 1218573, at *2 (N.D. Tex. Mar. 21, 2024) (requiring plaintiffs alleging antitrust violations to satisfy Section 12's venue provision prior to invoking nationwide service); *Mgmt. Insights,* 194 F. Supp. 2d at 530 (finding that plaintiffs must establish proper venue under Section 12 before invoking its nationwide personal jurisdiction authorization); *Corr Wireless Commn'cs, L.L.C. v. AT&T, Inc*., 907 F. Supp. 2d 793, 800 (N.D. Miss. 2012) (satisfying the Clayton Act's venue provision is a predicate to invoking its nationwide service of process). Accordingly, this Court should first assess whether Section 12's venue requirements are met before determining whether Section 12 provides for personal jurisdiction based on LEGO A/S's nationwide contacts.

A.      **Venue is Improper for LEGO A/S Under Section 12 of the Clayton Act**

Venue under Section 12 of the Clayton Act is proper only in the district(s) where LEGO A/S may be found, is an inhabitant, or transacts business. *See* 15 U.S.C. § 22 (suits brought "under the antitrust laws against a corporation" may be litigated in "any district wherein [the corporation] may be found," is an "inhabitant," or "transacts business."); *see id.* § 15

---

to cases that meet Section 12's venue requirements); *KM Enters., Inc. v. Glob. Traffic Techs., Inc*., 725 F.3d 718, 729 (7th Cir. 2013) (emphasizing that the statute must be read as a whole to avoid rendering the venue clause superfluous). A minority of circuits, however, have adopted a broader view that allows nationwide service of process even where venue is provided by another statute instead of Section 12. *See Go-Video, Inc. v. Akai Elec. Co*., 885 F.2d 1406, 1408 (9th Cir. 1989) (declining to read Section 12 as an "integrated whole" and allowing supplementation with § 1391); *In re Auto. Refinishing Paint Antitrust Litig*., 358 F.3d 288, 297 (3d Cir. 2004) (same). But these interpretations are contrary to the plain meaning of the statute and this Court should instead follow the textualist approach of the majority. *Mgmt. Insights*, 194 F. Supp. 2d at 532 (declaring such an interpretation unsupported by the text, legislative history, and would require "a court's inquiry into venue and jurisdiction in antitrust cases to become indisputably circular and monolithic").

("resides or is found or has an agent"). In its Complaint, X Corp. makes conclusory allegations that "LEGO transacts substantial business in this District," SAC ¶ 20, that "[e]ach Defendant acted as the agent or co-conspirator of or for the other Defendants," *id.* ¶ 26, and that "each Defendant transacted business, was found, or had agents in this District." *Id.* ¶ 30. X Corp. cannot reasonably claim that LEGO A/S specifically (as opposed to a U.S. subsidiary of LEGO A/S) transacts any business in Texas. Not only would such an allegation be false, *see* Oliver Decl. App. at 005 ¶ 5, but its conclusory nature means that this Court is not required to take it as true. *J.D. Fields & Co. v. Shoring Eng'rs*, 391 F. Supp. 3d 698, 702 (S.D. Tex. 2019) ("[T]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted.") (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). And while LEGO A/S may have U.S.-based subsidiaries that operate in Texas, such contacts cannot be imputed to a foreign parent corporation absent specific allegations that justify disregarding the corporate structure that exists between a parent and its subsidiary. *See* Section I.A.3. Because LEGO A/S does not inhabit Texas, cannot be found in Texas, and does not transact business in Texas, venue is improper under the Clayton Act.

First, LEGO A/S is not an inhabitant of Texas. An "inhabitant" means being incorporated under the laws of the relevant jurisdiction. *Mgmt. Insights*, 194 F. Supp. 2d at 532 (citing *Gen. Elec. Co. v. Bucyrus–Erie Co.*, 550 F. Supp. 1037, 1041 n.5 (S.D.N.Y.1982)). As X Corp. itself acknowledges, LEGO A/S is incorporated and headquartered in Denmark. SAC ¶ 20. Therefore, LEGO A/S plainly is not an inhabitant of Texas.

Second, LEGO A/S cannot be found in Texas. Being "found" in a district means "doing business" there and requires greater contacts than simply "transacting business." *Mgmt. Insights*, 194 F. Supp. 2d at 532 (citation omitted). To be "found" in a particular district, a corporation

must have a physical presence in the district or maintain agents that carry "on business of such character and in such manner that it is . . . amenable to local process" there. *Eastman Kodak Co. v. S. Photo Materials Co.*, 273 U.S. 359, 373 (1927) (internal quotation marks and citation omitted). Here, X Corp. does not—and cannot—allege that LEGO A/S has a physical presence in Texas or that it employed business agents in Texas sufficient to subject it to service of process there. Nor can X Corp. claim that other Defendants acted as agents for LEGO A/S; to win jurisdiction, X Corp. must allege that each Defendant "individually, and not as part of [a] conspiracy, had minimum contacts with Texas." *Delta Brands Inc.*, 99 F. App'x at 6. LEGO A/S has no officers, directors, employees, or agents in Texas, has never hosted an event or conference in Texas, maintains no physical presence in Texas, is not registered to do business in Texas, and maintains no registered agents there. *See generally* Soriano Decl. App. at 007; Oliver Decl. App. at 004-05. As such, LEGO A/S is not found in Texas.

Finally, "[c]ourts have found that a corporation transacts business within their forum jurisdictions when a substantial business activity is performed within the jurisdiction with continuity of character, regularity, contemporaneous with the service and not looking toward cessation of business." *Mgmt. Insights*, 194 F. Supp. 2d at 532–33 (citation omitted). To "transact business" in a district, a corporation must engage in "[t]he practical, everyday business or commercial concept of doing or carrying on business 'of any substantial character,'" *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948); or its sales in that district must "appear to be substantial from the average businessman's point of view." *Datamedia Comput. Serv., Inc. v. AVM Corp.*, 441 F.2d 604, 606 (5th Cir. 1971).[4]

---

[4] Both "purchasing activity" and "sales activity constitutes the transaction of business." *Black v. Acme Mkts., Inc.*, 564 F.2d 681, 687 (5th Cir. 1977) (finding venue proper based on "$1.5 million worth of purchases from the Northern District of Texas in a single year"). Likewise, "the deliveries

X Corp. makes no factual allegations to support its claim that LEGO A/S transacts "substantial" business in Texas, which means venue under Section 12 of the Clayton Act would be improper. Thus, the Clayton Act cannot save X Corp. from its jurisdictional shortcomings, and the company's Complaint against LEGO A/S must be dismissed.

### B.    LEGO A/S Does Not Have Sufficient Contacts With the United States to Properly Exercise Personal Jurisdiction Under Section 12 of the Clayton Act

Even if this Court concludes that venue under Section 12 of the Clayton Act is proper, which it should not, the Court should still conclude that X Corp. failed to identify any contacts that LEGO A/S maintains with the United States and dismiss its Complaint.

X Corp. alleges no specific facts regarding the "substantial acts" LEGO A/S allegedly undertook to further the alleged scheme in the United States. None of X Corp.'s claims against Defendants arise from or relate to any actions by LEGO A/S in Texas—indeed, LEGO A/S has undertaken no actions in the United States. *See* Soriano Decl. App. at 007 ¶¶ 3-4; Oliver Decl. App. at 005 ¶¶ 8-11. Conclusory allegations like these fail to establish minimum contacts connecting LEGO A/S to the United States. *Walden*, 571 U.S. at 290.

It is undisputed that LEGO A/S is a Danish parent corporation within a corporate family comprised of a number of affiliates, including its indirectly owned, Connecticut-based subsidiary LEGO Brand Retail, Inc. SAC ¶ 20; Oliver Decl. App. at 004 ¶¶ 3-4. LEGO A/S's relationship with LEGO Brand Retail, Inc. is insufficient, as a matter of law, to establish personal jurisdiction in Texas. *Alpine View Co.*, 205 F.3d at 218 ("[A] foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there.")

---

of substantial amounts of [a defendant's] product into a judicial district constitute the transaction of business." *Green v. U.S. Chewing Gum Mfg. Co*., 224 F.2d 369, 374 (5th Cir. 1995) (finding that "delivery of almost $600,000 worth of a company's product into the [district] within less than two years as part of sales transactions" constituted transaction of business).

(citation omitted). Thus, there is no legal or factual basis for this Court to assert personal jurisdiction over LEGO A/S under Section 12 of the Clayton Act.

**CONCLUSION**

X Corp.'s attempt to assert personal jurisdiction over LEGO A/S fails at every turn. LEGO A/S is neither at home in Texas nor anywhere else in the United States—it is incorporated and headquartered exclusively in Denmark. Nor has LEGO A/S engaged in any specific conduct within Texas or the United States sufficient to establish this Court's specific jurisdiction over LEGO A/S in this case. X Corp.'s reliance on generalized, conclusory allegations and attempts to impute to LEGO A/S the contacts of the other Defendants or LEGO A/S's independent subsidiary are unavailing and contrary to well-established precedent.

Section 12 of the Clayton Act does not provide any refuge for X Corp., as nationwide service of process requires X Corp. to establish proper venue under the Clayton Act and to demonstrate that LEGO A/S has nationwide contacts with the U.S.—which it cannot do. To allow a finding of personal jurisdiction here would distort clear statutory requirements and violate fundamental principles of due process.

For these reasons, X Corp. has failed to establish a prima facie case of personal jurisdiction under any basis. Accordingly, this Court should dismiss LEGO A/S from this lawsuit.

Dated: May 14, 2025

Respectfully submitted,

By:

/s/ Minoo Blaesche
Minoo Blaesche
mblaesche@jw.com
**JACKSON WALKER LLP**
Texas Bar No. 24075102
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Phone: (214) 953-6051
Fax: (214) 661-6800

Chahira Solh  (*Admitted Pro Hac Vice*)
csolh@crowell.com
**CROWELL & MORING LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Phone: (949) 798-1367

Sima Namiri-Kalantari  (*Admitted Pro Hac Vice*)
snamiri@crowell.com
**CROWELL & MORING LLP**
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Phone: (213) 443-5564

Kenneth Dintzer  (*Admitted Pro Hac Vice*)
kdintzer@crowell.com
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Phone: (202) 624-2561

*Attorneys for LEGO A/S*

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned Counsel hereby certifies that on this 14th day of May 2025, notice of

the foregoing pleading was provided via the CM/ECF system to the counsel of record.


*/s/ Minoo Blaesche*
Minoo Blaesche
*Attorney for LEGO A/S*