IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| X CORP., § | | |
| § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | No. 7:24-cv-00114-B | |
| § | | |
| WORLD FEDERATION OF ADVERTISERS; § | | |
| MARS, INCORPORATED; § | | |
| CVS HEALTH CORPORATION; § | | |
| ØRSTED A/S; § | | |
| NESTLÉ S.A.; NESTLE USA, INC.; § | | |
| ABBOTT LABORATORIES; § | | |
| COLGATE-PALMOLIVE COMPANY; § | | |
| LEGO A/S; LEGO BRAND RETAIL, INC.; § | | |
| PINTEREST, INC.; § | | |
| TYSON FOODS, INC.; § | | |
| SHELL PLC; SHELL USA, INC.; AND § | | |
| SHELL BRANDS INTERNATIONAL AG, § | | |
| § | | |
| *Defendants*. § | | |

**DEFENDANT ØRSTED A/S's BRIEF IN SUPPORT OF
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

**TABLE OF CONTENTS**

STATEMENT OF FACTS ............................................................................................................. 2

LEGAL STANDARD ................................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

    I.   THERE IS NO BASIS TO EXERCISE GENERAL JURISDICTION OVER ØRSTED A/S. ................................................................................................................................. 4

    II.  SPECIFIC JURISDICTION OVER ØRSTED A/S IS ALSO LACKING. ..................... 5

    III. JURISDICTIONAL CONTACTS BY ØRSTED SUBSIDIARIES CANNOT BE ATTRIBUTED TO ØRSTED A/S. .................................................................................. 7

    IV. PERSONAL JURISDICTION OVER ØRSTED A/S CANNOT BE ESTABLISHED UNDER SECTION 12 OF THE CLAYTON ACT .......................................................... 9

CONCLUSION ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Cases**

*Bullion v. Gillespie*,
  895 F.2d 213 (5th Cir. 1990) ............................................................................................... 4

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................................................ 5

*Crown Distrib. LLC v. Peaceful Choice Distrib., LLC*,
  No. 3:20-CV-03404-K, 2022 WL 19763245 (N.D. Tex. Aug. 11, 2022) (Kinkeade, J.) ............ 4

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................................... 3, 4, 5

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005) ............................................................................................... 9

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*,
  24 F.4th 491 (5th Cir. 2022) ............................................................................................... 6

*Dickson Marine Inc. v. Panalpina, Inc.*,
  179 F.3d 331 (5th Cir. 1999) ........................................................................................... 7, 8

*Donatelli v. Nat'l Hockey League*,
  893 F.2d 459 (1st Cir. 1990) ............................................................................................... 7

*GE v. Bucyrus-Erie Co.*,
  550 F. Supp. 1037 (D.C.N.Y. 1982) ................................................................................... 10

*GlobeRanger Corp. v. Software AG*,
  No. 3:11-CV-0403-B, 2013 WL 1499357 (N.D. Tex. Apr. 12, 2013) (Boyle, J.) ..................... 9

*Gonzalez v. Bank of Am. Ins. Servs., Inc.*,
  454 F. App'x 295 (5th Cir. 2011) ..................................................................................... 7, 8

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ............................................................................................................ 3

*GTE New Media Servs., Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) .......................................................................................... 9

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
  921 F.3d 522 (5th Cir. 2019) ............................................................................................... 3

*Hargrave v. Fibreboard Corp.*,
  710 F.2d 1154 (5th Cir. 1983) ................................................................................... 2, 7, 8

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ......................................................................................... 9, 10

*Management Insights, Inc. v. CIC Enterprises, Inc.*,
  194 F. Supp. 2d 520 (N.D. Tex. 2001) (Lynn, J.) ............................................................... 10

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ........................................................................................ 6

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
    No. 23-cv-0155, 2024 WL 1218573 (N.D. Tex., Mar. 21, 2024) (Kacsmaryk, J.) ................... 10

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
    No. 3:00-CV-1165-D, 2000 WL 35615925,
    (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.), *aff'd*, 253 F.3d 865 (5th Cir. 2001) .......................... 4

*Perkins v. Benguet Consol. Mining Co.*,
    342 U.S. 437 (1952) .................................................................................................... 5

*Sinclair v. StudioCanal, S.A.*,
    709 F. Supp. 2d 496 (E.D. La. 2010) ............................................................................. 6

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................................ 1, 5

*Williams v. Portfolio Recovery Assocs., LLC*,
    No. 3:11-CV-2421-B, 2012 WL 5986426 (N.D. Tex. Nov. 29, 2012) (Boyle, J.) .................. 8, 9

**Statutes**

15 U.S.C. § 22 ............................................................................................................. 9, 11

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................ 4, 11

**DEFENDANT ØRSTED A/S'S BRIEF IN SUPPORT OF**
**<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

TO THE HONORABLE JANE J. BOYLE, UNITED STATES DISTRICT JUDGE:

Plaintiff X Corp. ("X") asks the Court to exercise jurisdiction over Defendant Ørsted A/S—a Danish holding company based in Denmark—based on virtually non-existent jurisdictional allegations. Ørsted A/S operates as a traditional European parent company. It has no corporate offices or employees in the United States and no sales, manufacturing or marketing activities in the United States. Unsurprisingly, X does not allege any direct contacts between Ørsted A/S and this forum to establish personal jurisdiction.

Instead, X alleges that the exercise of personal jurisdiction over Ørsted A/S is appropriate based on its purported involvement in the alleged group boycott conspiracy and supposed agreement to exchange competitively sensitive information among competing advertisers. According to X, the World Federation of Advertisers ("WFA") and its initiative, the Global Alliance for Responsible Media ("GARM"), conspired with social media platforms, Ørsted A/S and other advertisers to withhold advertising revenue from the X platform. X further alleges that this conspiracy had "foreseeable effects in the United States, including in this District." Second Amended Complaint ("SAC") ¶ 29.

But as the Declaration of Ingrid Reumert makes clear, Ørsted A/S employees never participated in the WFA or any of its initiatives or subcommittees and Ørsted A/S had no responsibility for the decision to withhold advertising spend from the X platform. Ex. 1, Reumert Decl. ¶¶ 20–21. As no other "suit-related" contacts are alleged, the exercise of personal jurisdiction over Ørsted A/S is precluded. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (the exercise of specific jurisdiction requires plaintiff to establish that "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State").

1

Finally, X cannot establish jurisdiction over Ørsted A/S through the in-forum activities of Ørsted A/S subsidiaries. As Ørsted A/S has no direct jurisdictional contacts with this forum, X seeks to attribute to Ørsted A/S the jurisdictional contacts of "one or more [of Ørsted A/S's] wholly owned American subsidiaries." SAC ¶ 13. However, the law does not permit jurisdiction to be established over a foreign parent based on the in-forum contacts of its subsidiaries, and there are no allegations of an alter ego relationship between Ørsted A/S and any of its affiliate companies. *See Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) ("[T]he mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent.").

For these reasons and those described more fully below, X's claims against Ørsted A/S should be dismissed for lack of personal jurisdiction.

## STATEMENT OF FACTS

Ørsted A/S is a Danish corporation that maintains its principal place of business in Denmark. Ex. 1, Reumert Decl. ¶¶ 3, 4. Ørsted A/S is not registered to do business in the United States and has no employees or corporate officers, property, or bank accounts in the United States. *Id*. ¶¶ 6–9. Further, Ørsted A/S has never paid taxes in the United States and maintains its books and records outside the United States. *Id*. ¶¶ 10, 12. Ørsted A/S maintains its own corporate records and financial statements. *Id*. ¶ 11. Ørsted A/S's corporate officers make the decisions governing the company's day-to-day operations. *Id*. ¶ 13.

Ørsted A/S does not pay for or conduct any advertising activities in the United States. *Id*. ¶ 19. Its employees did not participate in WFA's activities, such as GARM, and Ørsted A/S "was not responsible for a determination by any Ørsted company to stop advertising on the Twitter or X platform." *Id*. ¶ 22. The Second Amended Complaint cites multiple emails produced in

connection with the inquiry conducted by the House of Representatives Judiciary Committee, but none of these emails were sent by, sent to or reference employees of Ørsted A/S. *Id*. ¶ 21.

X also alleges that "[t]hrough one or more wholly owned American subsidiaries, Ørsted [A/S] holds substantial investments in the United States, including wind farming facilities located throughout this District and in the Wichita Falls Division of this District, and transacts substantial business in this District." SAC ¶ 13. However, these wind farming facilities are owned by two indirect and partially owned subsidiaries of Ørsted A/S, Western Trail Wind, LLC and Lockett Windfarm LLC. Ex. 1, Reumert Decl. ¶¶ 14–18. These subsidiaries operate independently, and Ørsted A/S is not involved in their day-to-day decision making. *Id*. ¶ 18.

## LEGAL STANDARD

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a . . . tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "Because the Texas long-arm statute extends to the limits of federal due process, the [] inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019).

There are "two categories of personal jurisdiction" that a court may exercise. *Daimler*, 571 U.S. at 126. The first, general jurisdiction, is present "where a foreign corporation's continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler*, 571 U.S. at 127 (citation omitted). The second, specific jurisdiction, exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* (citation omitted).

3

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. Once a defendant has raised a jurisdictional defense, the plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990). In connection with the jurisdictional inquiry, "the Court is not required to give credit to conclusory allegations, even if they are uncontroverted." *Crown Distrib. LLC v. Peaceful Choice Distrib., LLC*, No. 3:20-CV-03404-K, 2022 WL 19763245, at *2 (N.D. Tex. Aug. 11, 2022) (Kinkeade, J.). To meet its burden, a plaintiff must present "***facts*** to make out a prima facie case supporting personal jurisdiction." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, No. 3:00-CV-1165-D, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (emphasis added), *aff'd*, 253 F.3d 865 (5th Cir. 2001). X has not come close to satisfying this standard for Ørsted A/S, which plainly is not subject to personal jurisdiction in this case.

## ARGUMENT

### I. THERE IS NO BASIS TO EXERCISE GENERAL JURISDICTION OVER ØRSTED A/S.

For general jurisdiction to exist, a party must have "affiliations with the State [that] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 119 (citations omitted). The Supreme Court in *Daimler* explained that, in all but the most exceptional circumstances, a corporation is "at home" only in its "place of incorporation and principal place of business." *Id.* at 139 & n.19. These "affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* at 137. Accordingly, limiting general jurisdiction to only those forums in which a corporation is "at home" allows corporations "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," while "afford[ing] plaintiffs

4

recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 136–39 (citations omitted).

Critically, X concedes that Ørsted A/S is a Danish corporation that maintains its principal place of business in Denmark. SAC ¶ 13; Ex. 1, Reumert Decl. ¶¶ 3, 4. There is also nothing remotely "exceptional" about X's jurisdictional allegations to warrant the exercise of general jurisdiction outside of Ørsted A/S's "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 136–37.[1] Contrary to X's false assertion that Ørsted A/S "transacts substantial business in this District" (SAC ¶ 13), Ørsted A/S has no business presence in this District or anywhere else in the United States. *See* Ex. 1, Reumert Decl. ¶¶ 6–13.

Thus, because Ørsted A/S is manifestly not "at home" in Texas, the exercise of general jurisdiction is precluded. *Daimler*, 571 U.S. at 136.

## II.   SPECIFIC JURISDICTION OVER ØRSTED A/S IS ALSO LACKING.

For specific jurisdiction to attach, "the defendant's ***suit-related*** conduct must create a substantial connection with the forum State" and "the relationship must arise out of contacts that the defendant ***himself*** creates with the forum State." *Walden v. Fiore*, 571 U.S. at 277 (emphases added) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Only the defendant's contacts with the forum that are related to a plaintiff's cause of action are relevant to the analysis. *See Burger King*, 471 U.S. at 472. Moreover, to establish specific jurisdiction, a plaintiff must

---

[1] The Supreme Court in *Daimler* further explained that, "in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19 (*citing Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). This circumstance clearly does not apply to Ørsted A/S, which does not operate in Texas in any capacity.

point to the "allegedly tortious conduct [that] meaningfully connects [a defendant] to Texas." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 498 (5th Cir. 2022).

The crux of X's jurisdictional case against Ørsted A/S is Ørsted A/S's participation in the alleged group boycott conspiracy, which X maintains had "foreseeable effects in the United States, including in this District." SAC ¶ 29. But no Ørsted A/S personnel participated in any of the conduct alleged in the Second Amended Complaint. The Reumert Declaration makes clear that:

- Ørsted A/S employees did not participate in the WFA or GARM;

- Ørsted A/S does not conduct or pay for any advertising or marketing activities in the United States; and

- Ørsted A/S was not responsible for a determination by any Ørsted company to stop advertising on the Twitter or X platform.

Ex. 1, Reumert Decl. ¶¶ 19–20, 22. Moreover, while the Second Amended Complaint cites various emails discussing GARM advertising standards and advertising on the X platform, ***none*** of the individuals who sent, received or were referenced in those emails were employees of Ørsted A/S. *Id.* ¶ 21.

Therefore, Ørsted A/S has engaged in no ***suit-related*** contacts with this or any other U.S. forum, and certainly no conduct that creates a "substantial connection" with the state of Texas. Courts in this Circuit regularly decline to exercise specific jurisdiction under such circumstances. *See, e.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433–34 (5th Cir. 2014) (no basis to exercise specific jurisdiction where defendant "has not purposefully availed itself of the benefits and protections of Texas law through minimum contacts related to the cause of action"); *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 510 (E.D. La. 2010) (dismissing for lack of jurisdiction because "it [wa]s clear from [defendant's] submitted declaration that [it] lacks any jurisdictional contacts sufficient to support either general or specific jurisdiction"). The same determination is warranted here.

### III. JURISDICTIONAL CONTACTS BY ØRSTED SUBSIDIARIES CANNOT BE ATTRIBUTED TO ØRSTED A/S.

X does not allege any direct contacts between Ørsted A/S and this forum; nor can it. Ørsted A/S has no business presence in the United States of any kind. Ex. 1, Reumert Decl. ¶¶ 6–13. To create the impression of a jurisdictional nexus where none exists, X seeks to attribute to Ørsted A/S the jurisdictional contacts of its subsidiaries. More specifically, X alleges that "[t]hrough one or more wholly owned American subsidiaries, Ørsted holds substantial investments in the United States, including wind farming facilities located through this District and in the Wichita Falls Division of this District, and transacts substantial business in this District." *See* SAC ¶ 13. But there is no legitimate basis alleged in the Complaint that would warrant the attribution of such contacts to a foreign parent company several layers removed from those assets, like Ørsted A/S; nor is the ownership of wind farming facilities in any way related to the group boycott conspiracy that X alleges.

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave*, 710 F.2d at 1159. Since *Hargrave*, courts in the Fifth Circuit have adopted a presumption "that a subsidiary, even one that is wholly-owned, is independent of its parent for jurisdictional purposes" and this presumption must be overcome by clear evidence of a "plus factor" or "something beyond the subsidiary's mere presence within the bosom of the corporate family." *Gonzalez v. Bank of Am. Ins. Servs., Inc.*, 454 F. App'x 295, 300 (5th Cir. 2011); *see also Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (citing *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)).

7

To overcome this presumption, courts consider the "*Hargrave* factors" to determine whether the acts of a subsidiary may confer jurisdiction over its parent company. *See Gonzalez*, 454 F. App'x at 300. Those factors are:

(1) the amount of stock owned by the parent of the subsidiary;

(2) if the two corporations have separate headquarters;

(3) if they have common officers and directors;

(4) if they observe corporate formalities;

(5) if they maintain separate accounting systems;

(6) whether the parent exercises complete authority over the subsidiary's general policy;

(7) whether the subsidiary exercises complete authority over its daily operations.

*Dickson Marine Inc*, 179 F.3d at 338–39 (citing *Hargrave*, 710 F.2d at 1160).

X does not allege the Hargrave factors in even conclusory terms. In fact, the phrase "alter ego" is not used anywhere in X's Complaint. As a result, X has not alleged any legal basis by which the U.S. contacts of subsidiary companies can be attributed to Ørsted A/S. *See Gonzalez*, 454 F. App'x at 300 (affirming a dismissal of a foreign corporation where the plaintiff offered "almost no support" that the defendant controlled the activities of its subsidiary); *see also Williams v. Portfolio Recovery Assocs., LLC*, No. 3:11-CV-2421-B, 2012 WL 5986426, at *4 (N.D. Tex. Nov. 29, 2012) (Boyle, J.) (refusing to impute contacts of a subsidiary unless "the plaintiff offers clear evidence that is sufficient to demonstrate that the subsidiary is the alter ego of the parent") (citation omitted).

Beyond these fundamental pleading deficiencies, there are no facts that could support the finding of an alter ego relationship. The record establishes that Ørsted A/S and its subsidiaries are all separate and distinct, each with their own decision-making mechanisms. Ex. 1, Reumert Decl.

¶ 18; *see Williams*, 2012 WL 5986426, at *4 (granting a motion to dismiss for lack of jurisdiction where the foreign parent had "no direct contact with" the plaintiff and the parent was entirely independent of its subsidiary).

X's attempt to attribute the U.S. contacts of subsidiary companies to Ørsted A/S should therefore be rejected. *See, e.g.*, *GlobeRanger Corp. v. Software AG*, No. 3:11-CV-0403-B, 2013 WL 1499357, at *5 (N.D. Tex. Apr. 12, 2013) (Boyle, J.) (dismissing for lack of personal jurisdiction because the only contacts alleged were contacts of a wholly-owned, but independent, subsidiary).

## IV. PERSONAL JURISDICTION OVER ØRSTED A/S CANNOT BE ESTABLISHED UNDER SECTION 12 OF THE CLAYTON ACT.

Plaintiff alleges that the Court may also have "personal jurisdiction over each Defendant under Section 12 of the Clayton Act, 15 U.S.C. § 22." SAC ¶ 29. Section 12 of the Clayton Act provides that an action "against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22.

Most federal circuits in addressing this issue have held that nationwide service of process for personal jurisdiction under the Clayton Act applies only after the first clause dealing with venue (and where an action "may be brought") is satisfied. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (holding that the "invocation of the nationwide service clause rests on satisfying the venue provision"); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423–24 (2d Cir. 2005) (same); *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 729 (7th Cir. 2013) (same). In contrast, a minority of federal circuit courts have adopted the competing view that the "Section's clauses may be decoupled" and that nationwide service is

9

permitted even where venue is provided by another statute instead of Clayton Act Section 12. *See KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 726–27 (7th Cir. 2013) (identifying views held by the Third and Ninth Circuits).

Although the Fifth Circuit has not addressed this issue, this court and other district courts in the Fifth Circuit have consistently adopted the majority approach that nationwide service of process (and thus nationwide personal jurisdiction) is not available *until* the statute's venue requirements are met. *See, e.g.*, *Management Insights, Inc. v. CIC Enterprises, Inc.*, 194 F. Supp. 2d 520, 530 (N.D. Tex. 2001) (Lynn, J.) ("operation of the [Clayton Act Section 12] statute is predicated upon proper venue").  Satisfying the venue provision of Section 12 requires a "show[ing] that Defendants either (1) inhabit; (2) 'may be found' in; or (3) 'transact[] business' in this District." *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 23-cv-0155, 2024 WL 1218573, at *2 (N.D. Tex., Mar. 21, 2024) (Kacsmaryk, J.). "Being an 'inhabitant' is held to mean incorporated under the laws of that jurisdiction[, while being] 'found' in a district is generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'" *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532 (citing *GE v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1041 n.5 (D.C.N.Y. 1982)).

Ørsted A/S does not remotely satisfy any of these conditions.  Ørsted A/S is a Danish corporation that maintains its principal place of business in Denmark.  Reumert Decl. ¶¶ 3, 4. Ørsted A/S is not registered to do business in the United States and has no employees or other business assets anywhere in the United States, including in this District. *Id*. ¶¶ 6–9.  Therefore,

10

Ørsted A/S manifestly does not inhabit, is not found in, and does not transact business in this District, and exercise of personal jurisdiction under the Clayton Act is not permitted.[2]

## CONCLUSION

Accordingly, Ørsted A/S respectfully requests the Court grant this motion and dismiss the claims against Ørsted A/S for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2).

---

[2] For these same reasons, Ørsted A/S does not have sufficient minimum contacts with this or any other District or the United States as a whole that could satisfy the requirements of the general venue statute 28 U.S.C. § 1391. *See* SAC ¶ 13 (alleging that venue is proper under 15 U.S.C. § 22 (the Clayton Act) and 28 U.S.C. § 1391).

11

Dated: May 14, 2025

                    Respectfully submitted,

                    */s/Jason M. Powers*
                    Jason M. Powers
                     Texas Bar No. 24007867
                     jpowers@velaw.com
                    VINSON & ELKINS LLP
                     845 Texas Avenue, Suite 4700
                    Houston, TX 77002
                    Phone (713) 758-2222

                    George M. Kryder
                     Texas Bar No. 11742900
                     gkryder@velaw.com
                    Avery Westerlund
                     State Bar No. 24125453
                     awesterlund@velaw.com
                    VINSON & ELKINS LLP
                  2001 Ross Avenue, Suite 3900
                  Dallas, TX  75201-2975
                  Phone (214) 220-7700

                  Stephen Medlock (admitted *pro hac vice*)
                    D.C. Bar No. 995636
                    smedlock@velaw.com
                  Adam Hudes (admitted *pro hac vice*)
                    D.C. Bar No. 495188
                    ahudes@velaw.com
                  VINSON & ELKINS LLP
                  2200 Pennsylvania Avenue NW, Suite 500 West
                  Washington, DC 20037
                  Phone (202) 639-6578


                  *Attorneys for Defendant Ørsted A/S*

**CERTIFICATE OF SERVICE**

    I certify that, on May 14, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

_/s/Jason M. Powers_
Jason M. Powers
