**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

X CORP.,

*Plaintiff,*

v.

WORLD FEDERATION OF ADVERTISERS; MARS, INCORPORATED; CVS HEALTH CORPORATION; ØRSTED A/S; TWITCH INTERACTIVE, INC.; NESTLÉ S.A.; NESTLE USA, INC.; ABBOTT LABORATORIES; COLGATE-PALMOLIVE COMPANY; LEGO A/S; LEGO BRAND RETAIL, INC.; PINTEREST, INC.; TYSON FOODS, INC.; SHELL PLC; SHELL USA, INC. and SHELL BRANDS INTERNATIONAL AG,

*Defendants.*

Civil Action No. 7:24-cv-00114-B

**BRIEF IN SUPPORT OF DEFENDANT NESTLÉ S.A.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

BACKGROUND ..... 2

A. Nestlé S.A ..... 2

B. Plaintiff's Claims Against Nestlé S.A ..... 3

C. Plaintiff's Jurisdictional Allegations ..... 3

LEGAL STANDARD ..... 4

ARGUMENT ..... 5

I. The Court Lacks Personal Jurisdiction Over Nestlé S.A. Under the Texas Long-Arm Statute ..... 5

A. The Court Lacks General Jurisdiction Over Nestlé S.A ..... 6

B. The Court Also Lacks Specific Jurisdiction Over Nestlé S.A ..... 7

1. Nestlé S.A. Lacks Minimum Contacts with the Forum ..... 8

a. Aggregated allegations cannot support specific jurisdiction as a matter of law ..... 8

b. Plaintiff's allegations are conclusory and controverted by Nestlé S.A.'s declaration ..... 9

i. Nestlé S.A. has no marketing or advertising activities in Texas or anywhere in the United States ..... 9

ii. Nestlé S.A. does not direct or control its subsidiary's marketing or advertising activities ..... 10

2. Plaintiff's Claims Do Not Arise Out of Nestlé S.A.'s Activities in the Forum ..... 10

3. The Exercise of Personal Jurisdiction in This Case Would Not Be Fair or Reasonable Under the Due Process Clause ..... 11

II. The Clayton Act Does Not Provide an Alternative Basis for Asserting Personal Jurisdiction Over Nestlé S.A ..... 11

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Access Telecom, Inc. v. MCI Telecomms. Corp.*,
197 F.3d 694 (5th Cir. 1999) ....12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....9

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017) ....6

*In re Baby Food Prods. Liab. Litig.*,
2025 WL 986959 (N.D. Cal. Apr. 2, 2025) ....6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ....4, 8

*Calder v. Jones*,
465 U.S. 783 (1984) ....8

*In re Chocolate Confectionary Antitrust Litig.*,
641 F. Supp. 2d 367 (M.D. Pa. 2009) ....6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....1, 4, 7, 10

*Daniel v. Am. Bd. of Emergency Med.*,
988 F. Supp. 127 (W.D.N.Y. 1997) ....13

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
46 F.4th 226 (5th Cir. 2022) ....7

*Exeter Fin. Corp. v. Metro Auto Sales Inc.*,
2018 WL 837696 (N.D. Tex. Feb. 12, 2018) (Boyle, J.) ....11

*Go-Video, Inc. v. Akai Elec. Co.*,
885 F.2d 1406 (9th Cir. 1989) ....12

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ....4

*GE v. Bucyrus-Erie Co.*,
550 F. Supp. 1037 (S.D.N.Y. 1982) ....12

*Halliburton Energy Servs., Inc.*,
921 F.3d at 539 (5th Cir. 2019)....................4, 11

*Int'l Shoe Co. v. Washington*,
326 U.S. 310, 319 (1945)....................4

*Johnston v. Multidata Sys. Int'l Corp.*,
523 F.3d 602 (5th Cir. 2008) ....................1

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984)....................7

*KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*,
725 F.3d 718 (7th Cir. 2013) ....................12

*Management Insights, Inc. v. CIC Enterprises, Inc.*,
194 F. Supp. 2d 520 (N.D. Tex. 2001) ....................12, 13

*Monkton Ins. Servs. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) ....................1

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
263 F. Supp. 3d 498 (D. Del. 2017)....................2, 5, 6, 13

*Nestlé USA, Inc. v. Crest Foods, Inc.*,
2017 WL 3267665 (C.D. Cal. July 28, 2017)....................6

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
2024 U.S. Dist. LEXIS 50183 (N.D. Tex. Mar. 21, 2024)....................12

*P & L Dev., LLC v. Gerber Prods. Co.*,
715 F. Supp. 3d 435 (E.D.N.Y. 2024) ....................2, 6

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
253 F.3d 865 (5th Cir. 2001)....................5

*Pearson v. Shriners Hosps. for Child., Inc.*,
133 F.4th 433 (5th Cir. 2025) ....................8

*Perkins v. Benguet Consol. Mining Co.*,
342 U.S. 437 (1952)....................7

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) ....................5

*Rush v. Savchuk*,
444 U.S. 320 (1980)....................9

*Saudi v. Northrop Grumman Corp.*,
427 F.3d 271 (4th Cir. 2005) ....................13

*Savoie v. Pritchard*,
122 F.4th 185 (5th Cir. 2024) ....................5

*Shambaugh & Son, L.P. v. Steadfast Ins. Co.*,
91 F.4th 364 (5th Cir. 2024) ....................5, 7, 11

*Truinject Corp. v. Nestlé Skin Health, S.A.*,
2019 WL 6828984 (D. Del. Dec. 13, 2019)....................6

*Walden v. Fiore*,
571 U.S. 277 (2014)....................8

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)....................4

*Wyatt v. Kaplan*,
686 F.2d 276 (5th Cir. 1982) ....................9

**Statutes**

Clayton Act Section 12, 15 U.S.C. § 22 ....................11, 12, 13

Sherman Act Section 1, 15 U.S.C. § 1....................3

**Other Authorities**

Fed. R. Civ. P. 4(k)(2)(B) ....................13

Fed. R. Civ. P 12(b)(2)....................1, 5

**INTRODUCTION**

Defendant Nestlé S.A. respectfully moves this Court, pursuant to Fed. R. Civ. P 12(b)(2), for an order dismissing the claims alleged against it in the Second Amended Complaint (ECF No. 77) ("SAC") for lack of personal jurisdiction.

Nestlé S.A.—a Swiss company headquartered in Switzerland—has no connection to the United States. It has no offices or employees in the United States; it is not licensed to conduct business in the United States; and it has not conducted advertising, business, or sales activities in the United States. Over the last fifteen years, numerous courts have consistently held that Nestlé S.A. is not subject to personal jurisdiction in the United States. Nevertheless, Plaintiff X Corp. seeks to drag Nestlé S.A. into this Court based on allegations that it somehow directs the marketing and advertising of its subsidiaries in the United States. Furthermore, Nestlé S.A. is not a member of the organizations that Plaintiff claims organized a group boycott of Plaintiff.

It is Plaintiff's burden to establish the Court's jurisdiction in response to a Rule 12(b)(2) challenge by a defendant. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Plaintiff has failed to meet its burden under Supreme Court and Fifth Circuit precedent.

There is no general jurisdiction, because Nestlé S.A. is not "at home" in Texas under governing Supreme Court precedent. *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). And there is no specific jurisdiction, because Nestlé S.A. neither "purposefully directed its activities towards the forum state" nor "purposefully availed itself of the privileges of conducting activities there[.]" *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citation omitted).

Accordingly, the claims against Nestlé S.A. should be dismissed for lack of personal jurisdiction.

## BACKGROUND

### A. Nestlé S.A.

Nestlé S.A. is a *Société Anonyme* organized under the laws of Switzerland with its principal place of business and registered offices in Vevey, Switzerland. Appendix (App.) 2 (Declaration of Silvan Jampen ("Decl.") ¶ 3); *see also* SAC ¶ 17. Nestlé S.A. has no offices or employees in the United States; it is not licensed or registered to conduct business in the United States; and it does not engage in advertising, marketing, contracting, manufacturing, or sales activities in the United States. App. 2 (Decl. ¶ 4); *accord Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017) ("Nestlé [S.A.] is not registered to do business in the U.S., does not maintain a registered agent for service, own any real property, offices, manufacturing plants, research facilities, have a mailing address or telephone listing in the U.S., or engage in the [product] market in the U.S. through sales or product development.").

From its headquarters in Switzerland, Nestlé S.A. is the ultimate parent company to all entities within the Nestlé S.A. group. But Nestlé S.A. is not an operating company and does not have direct control or managerial responsibilities over the activities of its subsidiaries. App. 2 (Decl. ¶¶ 5-6); *accord*, *e.g.*, *P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435, 454 (E.D.N.Y. 2024) ("Nestlé S.A. does not have any input into, or control over, the day-to-day operations of [its subsidiary].").

Defendant Nestlé USA, Inc. ("NUSA") is one of the hundreds of separate companies around the world that are affiliated with Nestlé S.A. App. 2 (Decl. ¶¶ 5-6); SAC. ¶ 17. The two companies are separate corporate entities. App. 2 (Decl. ¶ 6). Nestlé S.A. and NUSA each has separate employees, officers, and directors; files separate taxes; has separate offices; and maintains separate books and accounting. *Id.* Nestlé S.A.'s involvement with NUSA is limited to that of an

ultimate corporate parent—it does not direct the day-to-day activities of NUSA, much less NUSA's marketing or advertising activities in the United States. App.2 (*Id.* ¶¶ 6-7).

**B. Plaintiff's Claims Against Nestlé S.A.**

Plaintiff alleges that Nestlé S.A. conspired with other named defendants to boycott X Corp.'s advertising services in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. SAC ¶ 157. Plaintiff also alleges that Nestlé S.A. engaged in an unlawful agreement to exchange competitively sensitive information among competing advertisers in the course of organizing said boycott, again in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. *Id.* ¶ 162.

**C. Plaintiff's Jurisdictional Allegations**

Plaintiff asserts that jurisdiction is proper over Nestlé S.A. in this forum based on its conclusory allegation that Nestlé S.A., "through its participation in the conspiracy alleged in this Complaint and otherwise, has substantial contacts with the United States and with this District." SAC ¶ 29. Combing through Plaintiff's second amended complaint, there are only three specific allegations related to Nestlé S.A.'s alleged participation in the conspiracy. First, Plaintiff alleges that "Nestlé S.A. was a founding member of GARM and is also represented on WFA's Executive Board." *Id.* ¶ 17. Second, Plaintiff alleges that "Nestlé S.A. controlled, directed and encouraged Nestle USA's anticompetitive conduct as alleged in this Complaint." *Id.* Then, as a supposed example of this alleged control, Plaintiff alleges that "Nestlé S.A. instruct[ed] its subsidiaries, including Nestle USA, to presumptively refrain from purchasing advertising from Twitter, now X, as a 'high-risk' platform." *Id.* ¶ 141.

As for the remainder of Plaintiff's second amended complaint, Plaintiff aggregates allegations against Nestlé S.A. with either allegations against its co-defendants or allegations against NUSA. *See* SAC ¶ 24 ("For the purposes of this Complaint, Defendants Ørsted, Mars, CVS Health, Twitch, Nestlé, Abbott, Colgate, LEGO, Pinterest, Tyson Foods, and Shell are referred to

collectively as 'Advertiser Defendants'"); *see also id.* ¶ 17 (naming "'Nestle USA,' [] together with Nestlé S.A., 'Nestlé'").

## LEGAL STANDARD

The fundamental requirement that the plaintiff establish the court's personal jurisdiction over the defendant "protects the defendant against the burdens of litigating in a distant or inconvenient forum" with which it has little or no contact. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). This requirement generally is guided by the legal standards specified in state law for exercising personal jurisdiction. *See Daimler*, 571 U.S. at 125 ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons.").

But the assertion of jurisdiction over a person must also comport with the federal Due Process Clause. *See*, *e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (recognizing that due process "sets the outer boundaries of a . . . tribunal's authority to proceed against a defendant"). Where, as here, the state long-arm statute is coextensive with due process, the analysis collapses into one. *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) ("Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis.").

Due process "protects [the defendant's] liberty interest in not being subject to the binding judgments of a forum with which [it] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Accordingly, a state can "authorize its courts to exercise personal jurisdiction over an out-of-state defendant" only "if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler*, 571 U.S. at 126 (internal quotation marks omitted).

In resolving questions of personal jurisdiction, the Court may decide a Rule 12(b)(2) motion without holding an evidentiary hearing. In such a case, "[t]he plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

The court "is not obligated to consult only [Plaintiff's] assertions," but also "may consider the contents of the record before the court at the time of the motion, including affidavits [or other] recognized methods of discovery." *Savoie v. Pritchard*, 122 F.4th 185, 190 (5th Cir. 2024) (citations omitted). While the Court must "resolve in favor of the plaintiff any factual conflicts posed by the affidavits," the Court may set aside any factual allegations that are controverted or conclusory. *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) (directing courts to "accept as true the *uncontroverted* allegations in the complaint") (emphasis added); *see also, Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("[T]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted.").

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER NESTLÉ S.A. UNDER THE TEXAS LONG-ARM STATUTE

Nestlé S.A. is not subject to general jurisdiction in Texas. Plaintiff does not allege that Nestlé S.A. has any specific contacts with either Texas or with the United States as a whole, let alone the minimum contacts needed to support specific jurisdiction. The Court therefore should dismiss the claims against Nestlé S.A. for lack of personal jurisdiction.

Indeed, other federal courts have in a variety of contexts consistently dismissed claims against Nestlé S.A. and Nestlé S.A. affiliates headquartered in Switzerland for lack of personal jurisdiction. *See*, *e.g.*, *Nespresso USA*, 263 F. Supp. 3d at 504 (dismissing Nestlé S.A. from suit in

the district of Delaware for lack of personal jurisdiction because no allegation supporting a plausible inference that the Swiss parent company, instead of the subsidiary, was "responsible for introducing the Nespresso machines into the stream of commerce"); *Truinject Corp. v. Nestlé Skin Health, S.A.*, 2019 WL 6828984, at *1, *9 (D. Del. Dec. 13, 2019) (dismissing Swiss parent Nestlé Skin Health S.A. for lack of personal jurisdiction); *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 395 (M.D. Pa. 2009) (granting Nestlé S.A.'s motion to dismiss for lack of personal jurisdiction to ensure that Nestlé S.A.'s U.S. affiliate "does not languish in its parent's shadow"); *P & L Dev.*, 715 F. Supp. 3d at 457 (granting Nestlé S.A.'s motion to dismiss for lack of personal jurisdiction, because plaintiff did "not [meet] its burden to show that Nestlé S.A. 'purposefully availed' itself of 'the privilege of doing business' in the United States"); *Nestlé USA, Inc. v. Crest Foods, Inc.*, 2017 WL 3267665, at *7-8 (C.D. Cal. July 28, 2017) (dismissing claims against Nestlé S.A. and SPN for lack of personal jurisdiction because allegations did not support a plausible inference that the Swiss entities directed their U.S. subsidiary's activities); *In re Baby Food Prods. Liab. Litig.*, 2025 WL 986959, at *4 (N.D. Cal. Apr. 2, 2025) (dismissing claims against Nestlé S.A. for lack of personal jurisdiction because Plaintiff failed to make a *prima facie* showing of jurisdictional facts in light of Nestlé S.A.'s sworn affidavits).

The same result is warranted here.

### A. The Court Lacks General Jurisdiction Over Nestlé S.A.

The Due Process Clause permits the exercise of general personal jurisdiction over a corporation only in the corporation's "place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). Plaintiff concedes that Nestlé S.A. is organized under Swiss law and maintains its principal place of business in Vevey, Switzerland. SAC ¶ 17. General jurisdiction therefore is not available. *See*, *e.g.*, *Nespresso USA*, 263 F. Supp. 3d. at 503 (finding Switzerland-based Nestlé S.A. entities are not subject to general jurisdiction in Delaware).

The Supreme Court in *Daimler* recognized that, "in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19 (*citing Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). "*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952) remains the lodestar for such exceptional circumstances." *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242 (5th Cir. 2022). In *Perkins*, Ohio became a Filipino mining company's "principal, if temporary, place of business" when the company's president relocated and ran the company's operations from there during World War II. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 779 n.11 (1984) (citing *Perkins*, 342 U.S. at 448).

No *de facto* transfer of a company's principal place of business or equivalent "exceptional" facts are alleged here. For these reasons, Nestlé S.A. is not subject to general jurisdiction. *See Daimler*, 571 U.S. at 137-39.

**B. The Court Also Lacks Specific Jurisdiction Over Nestlé S.A.**

The Fifth Circuit employs a three-step test for assessing specific personal jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Shambaugh & Son, L.P.*, 91 F.4th at 372 (5th Cir. 2024). If the Plaintiff establishes the first two prongs, the burden shifts to the defendant for the last prong. *Id.* Plaintiff fails under each prong.

**1. Nestlé S.A. Lacks Minimum Contacts with the Forum**

**a. Aggregated allegations cannot support specific jurisdiction as a matter of law.**

Plaintiff's aggregated pleading cannot support a finding of personal jurisdiction because the Complaint's use of group pleading renders it impossible to parse the specific alleged conduct that supports Plaintiff's theory of jurisdiction as to Nestlé S.A. When making a case for personal jurisdiction, "plaintiffs may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025) (citing *Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980)). Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). That is because "the defendant's suit-related conduct must create a substantial connection with the forum State" and "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Burger King*, 471 U.S. at 475).

Courts therefore have consistently held that aggregated pleading—attributing acts to a group of defendants rather than a particular defendant—cannot support the assertion of specific jurisdiction over an individual defendant. But Plaintiff uses the label "Nestlé" to describe Nestlé S.A. and NUSA without delineation of "who did what" and despite their separate corporate existences. *See* SAC ¶ 17. Plaintiff thus engages in the very group pleading that the Fifth Circuit and the Supreme Court have held legally insufficient to establish personal jurisdiction.

For example, Plaintiff alleges "Nestlé expends substantial sums annually on the promotion of its products and services over the internet, including on social media platforms" and "Nestlé transacts substantial business in this District[.]" *Id.* But, by using the general label "Nestlé," Plaintiff fails to allege whether the alleged contacts were by Nestlé S.A. or NUSA. That

impermissible group pleading violates the standard specified by the Supreme Court and basing specific personal jurisdiction on Plaintiff's improperly aggregated allegations would produce results that are "plainly unconstitutional." *Rush*, 444 U.S. at 332. The Court should therefore disregard all of Plaintiff's aggregated allegations.

**b. Plaintiff's allegations are conclusory and controverted by Nestlé S.A.'s declaration.**

Even if Plaintiff's aggregated allegations could support specific jurisdiction over Nestlé S.A. (and they cannot), Plaintiff's allegations should be disregarded for the independent reasons that they are conclusory and in addition squarely controverted by Nestlé S.A.'s submitted declaration.

The Supreme Court has recognized that "allegations [that] are conclusory [are] not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Moreover, when evaluating a defendant's alleged contacts with the forum, courts do not accept a plaintiff's allegations if they are controverted by a defendant's declaration. *Wyatt v. Kaplan*, 686 F.2d 276, 282 n.13 (5th Cir. 1982) ("On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint are taken as true *to the extent they are not contradicted by affidavits*.") (emphasis added).

i. **Nestlé S.A. has no marketing or advertising activities in Texas or anywhere in the United States.**

Nestlé S.A. does not directly engage in marketing or advertising activities in the United States. App. 2 (Decl. ¶ 4). Further, "Nestlé S.A. does not contract with any advertising agency to market or advertise on its behalf in the Untied States." App. 3 (*Id.* ¶ 11). Nestlé S.A. has never marketed or advertised with X, formerly Twitter, in the United States or anywhere in the world. *Id.*

Plaintiff alleges that "Nestlé S.A. was a founding member of GARM" and that it "is also represented on WFA's Executive Board." SAC ¶ 17. But, in fact, Nestlé S.A. is not even a member

of the Global Alliance for Responsible Media ("GARM") or World Federal of Advertisers ("WFA"). App. 2-3 (Decl. ¶¶ 8-9). Nestlé S.A. is also not a member of the Association of National Advertisers ("ANA"). App. 3 (*Id.* ¶ 10). Nestlé S.A. has not paid membership dues to any of these organizations. App. 3 (*Id.* ¶¶ 8-10). Accordingly, Plaintiff's allegations about Nestlé S.A.'s participation in any of these organizations committees or working groups is squarely controverted.

ii. **Nestlé S.A. does not direct or control its subsidiary's marketing or advertising activities.**

Unable to allege any U.S. marketing or advertising activities by Nestlé S.A., Plaintiff asserts in a quintessential conclusory allegation that "Nestlé S.A. controlled, directed and encouraged Nestlé USA's anticompetitive conduct as alleged in this Complaint." SAC ¶ 17. As an example of this alleged control, Plaintiff alleges that "Nestlé S.A. instruct[ed] its subsidiaries, including Nestlé USA, to presumptively refrain from purchasing advertising from Twitter, now X, as a 'high-risk' platform." *Id.* ¶ 141.

But, as discussed, Nestlé S.A. and NUSA "are separate companies that maintain separate books and accounting, file separate tax returns, have separate offices, and have separate employees, officers and directors." App. 2 (Decl. ¶ 6). Nestlé S.A. "does not have any control over the day-to-day operations of NUSA." *Id.* Nestlé S.A.'s relationship with NUSA is a normal parent/affiliate relationship. *Id.*

Plaintiff's allegations therefore provide no basis whatsoever for the imputation of any of NUSA's alleged contacts to Nestlé S.A.

2. **Plaintiff's Claims Do Not Arise Out of Nestlé S.A.'s Activities in the Forum**

Because Plaintiff has not identified any specific conduct by Nestlé S.A. in the forum or anywhere in the United States, Plaintiff cannot, by definition, show that "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 571 U.S. at 127 (quotation

omitted). Plaintiff fails to adequately allege that Nestlé S.A. has directed activities related to this suit toward Texas or the United States. And, in addition, there are no uncontroverted, unaggregated allegations about Nestlé S.A.'s contacts with Texas or the United States. This Court therefore may not exercise specific jurisdiction over Nestlé S.A.

**3. The Exercise of Personal Jurisdiction in This Case Would Not Be Fair or Reasonable Under the Due Process Clause**

Because Plaintiff has not met its burden to establish the first two prongs of the Fifth Circuit's three-part test for specific jurisdiction, the Court need not address the third, whether the assertion of specific jurisdiction over Nestlé S.A. would be "fair and reasonable." *Shambaugh & Son, L.P.*, 91 F.4th at 372. "[C]ourts only reach this [fair and reasonable] prong after establishing the defendant's minimum contacts with the forum state." *Halliburton Energy Servs., Inc.*, 921 F.3d at 544-45; *see also Exeter Fin. Corp. v. Metro Auto Sales Inc.*, 2018 WL 837696, at *3 (N.D. Tex. Feb. 12, 2018) (Boyle, J.) (ceasing analysis after plaintiff failed step one). Given Nestlé S.A.'s lack of contacts with Texas and with the United States as a whole, any exercise of personal jurisdiction would be unfair and unreasonable.

**II. THE CLAYTON ACT DOES NOT PROVIDE AN ALTERNATIVE BASIS FOR ASSERTING PERSONAL JURISDICTION OVER NESTLÉ S.A.**

Plaintiff alleges that the Court may also have "personal jurisdiction over each Defendant under Section 12 of the Clayton Act, 15 U.S.C. § 22." SAC ¶ 29. This provision of the Clayton Act states that an action "against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22.

There is a conflict among the courts of appeals regarding whether satisfying the first clause of Section 12, dealing with venue (specifying where an action "may be brought"), acts as a

precondition to invoking the second clause, dealing with nationwide service of process (specifying where "process in such cases may be served"). *See KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 726-27 (7th Cir. 2013) ("The Third and Ninth Circuits hold that the Section's clauses may be decoupled . . . [while] the D.C. and Second Circuits have adopted the integrated view of Section 12.").

"To date, the Fifth Circuit has not weighed in—but this District has." *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2024 U.S. Dist. LEXIS 50183, *5 (N.D. Tex. Mar. 21, 2024). The *Open Cheer* court held that a plaintiff must satisfy the venue provision of Section 12—by "show[ing] that Defendants either (1) inhabit; (2) 'may be found' in; or (3) transact[] business' in this District"—before it may invoke nationwide service of process. *Id.* (citing and agreeing with *Management Insights, Inc. v. CIC Enterprises, Inc.*, 194 F. Supp. 2d 520, 530 (N.D. Tex. 2001) that the "operation of the statute is predicated upon proper venue"). In so holding, this Court rejected the Ninth Circuit's reasoning in *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir. 1989).[1]

"Being an 'inhabitant' is held to mean incorporated under the laws of that jurisdiction[, while being] 'found' in a district is generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'" *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532 (citing *GE v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1041 n.5 (S.D.N.Y. 1982)). And, "courts have found that a corporation transacts business within their forum jurisdictions when a substantial business activity is performed within the jurisdiction with continuity of character, regularity,

[1] To the extent that Plaintiff may argue that the Fifth Circuit did adopt *Go Video* in its discussion of the Clayton Act in *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694 (5th Cir. 1999), the Fifth Circuit's discussion of the Clayton Act there was cabined to "the jurisdictional provision of the Clayton Act," *Access Telecom*, 197 F.3d at 718, and did not address whether satisfying the venue provision was a precondition to the availability of nationwide service of process.

contemporaneous with the service and not looking toward cessation of business." *Id.* at 532-33 (citing *Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 127, 260 (W.D.N.Y. 1997)).

Nestlé S.A.—a Swiss company headquartered in Switzerland—does not satisfy any of these conditions. It does not inhabit Texas because it is not incorporated there. Nestlé S.A. cannot be found in Texas, because it does not do any business there. *See* App. 2 (Decl. ¶ 4). And, it does not transact business in Texas, because it does not conduct any substantial business activity in Texas.

Moreover, even apart from the venue analysis, the Clayton Act provision cannot support personal jurisdiction because, even if nationwide contacts could be considered, the minimum contacts standard is not satisfied for the same reasons that there are no minimum contacts with Texas. Nestlé S.A. does not have minimum contacts with the United States as a whole. For that reason, regardless of the Court's conclusion regarding venue for the Clayton Act, the assertion of personal jurisdiction over Nestlé S.A. would violate due process.[2]

**CONCLUSION**

For the foregoing reasons, Nestlé S.A. respectfully requests that this Court grant Nestlé S.A.'s motion to dismiss the claims alleged against it in Plaintiff's second amended complaint.

---

[2] That conclusion also would apply to any argument by Plaintiff that jurisdiction is appropriate under Rule 4(k)(2). Rule 4(k)(2) does provide federal long-arm jurisdiction, but it "does not operate to relax the [Due Process] requirement that the defendant's contacts with the forum be constitutionally sufficient." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005). Indeed, the Rule provides for personal jurisdiction only if "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(B). Because, for the reasons described in Section I.B, Plaintiff's allegations do not satisfy the due process standard, they cannot support personal jurisdiction under Rule 4(k)(2). *See Nespresso USA*, 263 F. Supp. 3d at 506 ("Since minimum contacts have not been established through either a stream of commerce or agency approach, *ipso facto*, personal jurisdiction cannot be predicated on Fed. R. Civ. P. 4(k)(2)").

Dated: May 14, 2025

Respectfully submitted,

By: *[/s/ Carmine R. Zarlenga]*

Carmine R. Zarlenga (NDTX Bar No. 386244DC)
Oral D. Pottinger (*pro hac vice* forthcoming)
Christina Luk (*pro hac vice* forthcoming)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3227
Fax: (202) 263-5227
Email: czarlenga@mayerbrown.com
opottinger@mayerbrown.com
cluk@mayerbrown.com

*Attorneys for Defendant Nestlé S.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Carmine R. Zarlenga*
Carmine R. Zarlenga