**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| X CORP., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | |
| WORLD FEDERATION OF | ) | |
| ADVERTISERS; MARS, | ) | |
| INCORPORATED; CVS HEALTH | ) | |
| CORPORATION; ØRSTED A/S; NESTLÉ | ) | Civil Action No. 24-cv-00114-B |
| S.A.; NESTLE USA, INC.; ABBOTT | ) | |
| LABORATORIES; COLGATE- | ) | |
| PALMOLIVE COMPANY; LEGO A/S; | ) | |
| LEGO BRAND RETAIL, INC.; | ) | |
| PINTEREST, INC.; TYSON FOODS, INC.; | ) | |
| SHELL PLC; SHELL USA, INC. and | ) | |
| SHELL BRANDS INTERNATIONAL AG, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**DEFENDANTS' MARS, INC., CVS HEALTH CORP., NESTLE USA, INC., ABBOTT
LABORATORIES, COLGATE-PALMOLIVE CO., LEGO BRAND RETAIL, INC.,
AND PINTEREST, INC.'S BRIEF IN SUPPORT OF
<u>MOTION TO TRANSFER</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

BACKGROUND .......................................................................................................... 3

    A.   X Corp. Was Headquartered in California......................................... 3

    B.   None of Defendants' Personnel with Relevant Knowledge Live or
          Work in this District......................................................................... 4

    C.   The Operative Facts of the Lawsuit Largely Occurred in the Southern
          District of New York or in Europe, and Not in This District ........... 6

ARGUMENT ............................................................................................................... 7

I.    X Could Have Brought This Action in the Southern District of New York.................. 8

II.    The Court Should Not Defer to X's Choice of Forum................................. 10

III.    The 1404(a) Factors Strongly Support Transfer. ......................................... 11

    A.   The Private-Interest Factors Support Transfer.................................. 11

         1.   Access to Sources of Proof ................................................... 11

         2.   Availability of Compulsory Process To Secure Witness
             Attendance ........................................................................... 12

             a.   No Relevant Non-Party Witnesses Are Located Within
                 100 Miles of Wichita Falls......................................... 13

             b.   Key Non-Party Witnesses Are Located Within 100
                 Miles of the Southern District of New York.............. 13

         3.   Witness Convenience and Access........................................... 15

             a.   The Southern District of New York Is More
                 Convenient For Party and Non-Party Witnesses. .................... 15

                 1)   The Likely Defense Witnesses................................. 16

                 2)   X's Current and Former Employees ............................ 18

                 3)   Witnesses' Distance from New York and
                      Wichita Falls .................................................. 19

        4.      Other Practical Considerations—Lack of Personal Jurisdiction over Certain Defendants .................................................................20

   B.     The Public-Interest Factors Support Transfer.................................................21

        1.      Court Congestion ...........................................................................21

        2.      Local Interest ................................................................................21

        3.      Familiarity with Law.....................................................................23

        4.      Conflict of Laws ...........................................................................23

IV.   In the Alternative, the Court Should Transfer to the Dallas Division. .........................23

CONCLUSION.........................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Aguacate Consol. Mines, Inc. v. Deeprock, Inc.*,
   566 F.2d 523 (5th Cir. 1978) ..................................................20

*All. Transp. & Logistics, LLC v. G&J Truck Sales, Inc.*,
   2021 WL 5882820 (N.D. Tex. Dec. 13, 2021 ...........................................22

*Allcapcorp Ltd. v. CHC Consulting*,
   2019 WL 417995 (N.D. Tex. Jan. 10, 2019) ...........................................16

*Bentz v. Recile*,
   778 F.2d 1026 (5th Cir. 1985) (per curiam)..........................................21

*Blitz USA, Inc. v. Liberty Surplus Ins. Corp.*,
   2011 WL 1602718 (N.D. Tex. Apr. 27, 2011) ...........................................8

*Buckner v. Romulus, Inc.*,
   2018 WL 2461984 (N.D. Tex. June 1, 2018) ...........................................10

*Child.'s Health Def. v. WP Co.*,
   2023 WL 3940446 (N.D. Tex. May 12, 2023) .............................. *passim*

*Cub Club Invest., LLC v. Apple, Inc.*,
   2021 WL 12300180 (W.D. Tex. Sept. 7, 2021)....................................12, 23

*CUPP Cybersecurity LLC v. Symantec Corp.*,
   2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ...........................................22

*DDC Tech., LLC v. Google LLC*,
   2023 WL 2518846 (N.D. Tex. Mar. 14, 2023) ...........................................9

*Expoconsul Int'l, Inc. v. A/E Sys., Inc.*,
   711 F. Supp. 730 (S.D.N.Y. 1989).....................................................9

*Fin. Cas. & Sur., Inc. v. Zouvelos*,
   2012 WL 2886861 (S.D. Tex. July 13, 2012).........................................20

*Funk v. Stryker Corp.*,
   631 F.3d 777 (5th Cir. 2011) .........................................................4

*Goldman v. Barrett*,
   2017 WL 4334011 (S.D.N.Y. July 25, 2017) ...........................................4

*Great-W. Life & Annuity Ins. Co. v. Graves*,
    2010 WL 11582977 (N.D. Tex. Mar. 18, 2010) ......................................................10, 11

*Hard Metal Advantage LLC v. Kennametal Inc.*,
    2022 WL 1088887 (W.D. La. Mar. 22, 2022) ................................................................23

*In re Chamber of Com.*,
    105 F.4th 297 (5th Cir. 2024) ........................................................................................7

*In re Clarke*,
    94 F.4th 502 (5th Cir. 2024) ...................................................................................15, 22

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) (per curiam)....................................................................23

*In re Rolls Royce Corp.*,
    775 F.3d 671 (5th Cir. 2014) ..........................................................................................9

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) .............................................................................11, 12, 19

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ................................................................................ *passim*

*InfoGation Corp. v. Google LLC*,
    2021 WL 5547070 (W.D. Tex. Apr. 29, 2021)...............................................................21

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
    2011 WL 13134647 (E.D. Tex. Mar. 30, 2011) .............................................................19

*LeBlanc v. C.R. England, Inc.*
    961 F. Supp. 2d 819, 833 (N.D. Tex. Aug. 12, 2013)....................................................23

*Modisett v. Delek Refin., Ltd.*,
    2019 WL 2395377 (E.D. Tex. June 5, 2019).................................................................23

*Monsanto Co. v. Ledbetter*,
    2008 WL 11347430 (N.D. Tex. Mar. 10, 2008) ............................................................11

*Moore v. Payson Petroleum Grayson, LLC*,
    2018 WL 514258 (N.D. Tex. Jan. 23, 2018) .................................................................24

*Mt. Hawley Ins. Co. v. TFP Properties. III, LLC*,
    2018 WL 10419785 (N.D. Tex. Aug. 29, 2018).............................................................13

*Neo Wireless, LLC v. Dell Techs. Inc & Dell Inc.*,
    2022 WL 18673257 (W.D. Tex. Jan. 20, 2022) .............................................................24

*QR Spex, Inc. v. Motorola, Inc.*,
  507 F. Supp. 2d 650 (E.D. Tex. 2007) ....................................................9

*Qualls v. Prewett Enters. Inc.*,
  594 F. Supp. 3d 813 (S.D. Tex. 2022) ..................................................15

*Robertson v. Kiamichi R. Co.*,
  42 F. Supp. 2d 651 (E.D. Tex. 1999) ....................................................23

*Robertson v. M/V Cape Hunter*,
  979 F. Supp. 1105 (S.D. Tex. 1997) ...............................................10, 11

*Rodriguez v. Granite Servs. Int'l, Inc.*,
  2021 WL 10315900 (N.D. Tex. July 6, 2021) ............................... *passim*

*Rogers v. Burlington N. Santa Fe Corp.*,
  2005 WL 8161063 (E.D. Tex. Jan. 31, 2005) ........................................23

*Rumble Inc. v. World Federation of Advertisers*,
  No. 7:24-cv-00115-B ...............................................................................3

*Seramur v. Fed. Ins. Co.*,
  2019 WL 3253369 (N.D. Tex. July 19, 2019) ........................................8

*Stults v. Maalt Specialized Bulk LLC*,
  2018 WL 1697583 (N.D. Tex. Apr. 6, 2018) ..........................................1

*TitanUrbi21, LLC v. GS Oilfield Servs., LLC*,
  2020 WL 5066943 (N.D. Tex. Aug. 27, 2020) .....................................22

*Toshiba Corp. v. Hynix Semiconductor, Inc.*,
  2005 WL 2415960 (N.D. Tex. Sept. 30, 2005) ..................................9, 10

*True Chem. Sols., LLC v. Performance Chem. Co.*,
  2021 WL 860009 (W.D. Tex. Mar. 8, 2021) .........................................24

*Uniloc USA, Inc. v. Activision Blizzard, Inc.*,
  2014 WL 11609813 (E.D. Tex. July 16, 2014) ......................................12

*USPG Portfolio Two, LLC v. John Hancock Real Est. Fin., Inc.*,
  2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) ......................................21

*Vargas v. Seamar Divers Int'l., LLC*,
  2011 WL 1980001 (E.D. Tex. May 20, 2011).......................................13

*VeroBlue Farms USA, Inc. v. Wulf*,
  465 F. Supp. 3d 633 (N.D. Tex. 2020) ...................................................9

*Victory Renewables, LLC v. Engergy Trading Co.*,
    2019 WL 2539209 (N.D. Tex. Feb. 8, 2019)........................................................................10

*Weinstein v. UGS Corp.*,
    2007 WL 3118363 (E.D. Tex. Oct. 22, 2007) ..................................................................2, 20

*Word to Info, Inc. v. Facebook, Inc.*,
    2015 WL 13870507 (N.D. Tex. July 23, 2015) ...................................................................13

*Xtreme Indus., LLC v. Gulf Copper & Mfg. Corp.*,
    2010 WL 4962967 (S.D. Tex. Dec. 1, 2010) ......................................................................17

## STATUTES

15 U.S.C. § 15.........................................................................................................................8, 9

15 U.S.C. § 22.........................................................................................................................8, 9

28 U.S.C. § 1391.........................................................................................................................7

28 U.S.C. § 1404...................................................................................................................1, 7, 23

## INTRODUCTION

This lawsuit has no material connection to the Northern District of Texas. Plaintiff X Corporation alleges a conspiracy led by the World Federation of Advertiser's ("WFA's") Global Alliance for Responsible Media ("GARM") to withhold advertising dollars from Twitter. But X's principal place of business is not in this District. Dkt. 77, Second Am. Compl. ("SAC") ¶ 10. Of the fifteen named Defendants, none have a principal place of business in this District (only one is headquartered in Texas).[1] And none of the events at issue occurred in this District. Instead, as the SAC repeatedly underscores, the events underlying X's allegations largely occurred in New York. Indeed, X expressly admits that the co-founder of GARM, whom they claim "was the Initiative Lead . . . and was part of every significant decision made by GARM," "works in . . . New York." SAC ¶ 38. So too do many significant non-party witnesses. Accordingly, pursuant to 28 U.S.C. § 1404, the Court should transfer this case to the United States District Court for the Southern District of New York. Because such a transfer would maximize both party and non-party witness convenience, there is good cause to do so.

X's choice to file this suit in the Wichita Falls Division of the Northern District of Texas is entitled to little if any deference because X was based in California during the relevant time frame (and still is not in this District) and none of the operative facts occurred here. *E.g.*, *Stults v. Maalt Specialized Bulk LLC*, 2018 WL 1697583, at *2 (N.D. Tex. Apr. 6, 2018) (Boyle, J.).

---

[1] This Motion is unopposed by the Defendants. Specifically, Defendants Mars, CVS, Nestle USA, Abbott, Colgate-Palmolive Company ("Colgate"), LEGO Brand Retail, Inc. ("LEGO Brand Retail"), and Pinterest join this motion. Because the convenience and interest of justice factors strongly support transfer, Tyson and Shell USA do not oppose the motion. International Defendants World Federation of Advertisers, Orsted A/S, and Nestle S.A. similarly do not oppose this motion while reserving all personal jurisdiction arguments presented under their individual Rule 12(b)(2) and/or 12(b)(3) motions to dismiss. *See* Dkts. 132; 158; 163. While International Defendants Shell plc, Shell Brands International AG, and LEGO A/S also believe the convenience and interest of justice factors strongly support a transfer, they do not oppose the motion but do intend to request a conditional severance in light of their venue challenges and objections to personal jurisdiction anywhere in the United States. *See* Dkts. 139; 142; 145.

In any event, the relevant Section 1404(a) factors also strongly favor transfer. All four private-interest factors and one public-interest factor—namely, the relative ease of access to sources of proof, the availability of compulsory process, witness convenience, other practical considerations, and local interest—support transfer. The remaining three public-interest factors—court congestion, the familiarity of the forum with governing law, and the avoidance of unnecessary problems of conflict of laws—are neutral.

The "single most important factor" of witness convenience heavily supports transfer. *Child.'s Health Def. v. WP Co.*, 2023 WL 3940446, at *2 (N.D. Tex. May 12, 2023) (Kacsmaryk, J.). Should the case proceed to discovery, most of the likely defense witnesses live in or near New York or in Europe. The same is true of many non-party witnesses, who are primarily located in New York or Europe, with a smaller number on the West Coast. For both sets of witnesses too, New York is more convenient than this District and Division because Europe is much closer to New York and there are no direct flights between California and Wichita Falls. As to X, given that X's principal place of business during the relevant time frame was in California, the current and former X employees with relevant knowledge are not likely to be in this District, either. Because "[t]ransferring the case . . . will be significantly more convenient for the vast majority, if not all, [of the] material witnesses in this case[, t]his factor heavily favors transfer." *Weinstein v. UGS Corp.*, 2007 WL 3118363, at *3 (E.D. Tex. Oct. 22, 2007).

Another significant factor weighing in favor of transfer is this Court's lack of personal jurisdiction over multiple Defendants, and particularly WFA. As discussed below, this "problem [could] be avoided and judicial economy would be served by transfer." *Rodriguez v. Granite Servs. Int'l, Inc.*, 2021 WL 10315900, at *3 (N.D. Tex. July 6, 2021) (Kacsmaryk, J.). The Southern District of New York is not only the location of many of the events in question, it is also

the only jurisdiction in which WFA has office space and is home to the co-founder and prior initiative lead for GARM.

For all those reasons, the Southern District of New York is "clearly [a] more convenient" venue, and a transfer is "in the interests of justice." *Id.* at *2 (citation omitted).[2]

## BACKGROUND[3]

### A.    X Corp. Was Headquartered in California.

During the relevant time period, X (or its predecessor, Twitter, Inc.) was headquartered at "1355 Market Street, Suite 900, San Francisco, California," as alleged in X's initial complaint in this action. Dkt. 1, ¶ 10.  After filing this lawsuit, X moved its headquarters, and now alleges that "X Corp. is a Nevada Corporation with its principal place of business in Bastrop, Texas."  SAC ¶ 10.[4]  But Bastrop is not located in this District.  Because X's move postdates the filing of the original complaint, it also necessarily post-dates the events described in the SAC.  Many of X's key witnesses (who largely separated from the company before its purported relocation),[5] including former advertising and Trust & Safety employees Yoel Roth and Robin Wheeler, very likely continue to be located outside of Texas.  *See infra* Section III.A.3.a.2.

---

[2] Defendants in a related case, *Rumble Inc. v. World Federation of Advertisers*, No. 7:24-cv-00115-B, have already filed a Motion to Dismiss in part because this Court is an improper venue and lacks personal jurisdiction over Defendants.  *See Rumble Inc. v. World Federation of Advertisers*, No. 7:24-cv-00115-B, Dkt. 56.  In that case, GroupM has "concede[d], for purposes of [that] litigation, that it may be sued in the Southern District of New York," *id.* at 12, and those defendants have indicated that there will be a forthcoming motion to transfer to the Southern District of New York, *id.* at 1 & n.1.  For the reasons explained in those motions, this Court is not the right place for that case, either.

[3] While the key facts relevant to this motion are presented here, for greater context, moving Defendants incorporate by reference the background from their Motion to Dismiss.  *See* Dkt. 161.

[4] On March 28, 2025, Elon Musk announced that X AI Corp. acquired X Corp.  X AI Corp. has "offices in San Francisco, Palo Alto, and London, UK."  *See Company: Offices*, X AI https://x.ai/company (last visited May 15, 2025).  X has not filed a supplemental corporate disclosure form in connection with this transaction.

[5] *See, e.g.*, Michelle Toh & Juliana Liu, *Elon Musk Says He's Cut About 80% of Twitter's Staff*, CNN (Apr. 12, 2023), https://www.cnn.com/2023/04/12/tech/elon-musk-bbc-interview-twitter-intl-hnk/index.html (describing layoffs of 80% of Twitter's (now X Corp.'s) staff).

**B.**    **None of Defendants' Personnel with Relevant Knowledge Live or Work in this District.**

There are fifteen Defendants, some of which are affiliates of larger corporate families: WFA, Mars, CVS, Ørsted A/S, Nestle (Nestlé S.A. and Nestle USA, Inc.), Abbott, Colgate, the LEGO Group (LEGO A/S and LEGO Brand Retail, Inc.), Pinterest, Tyson, and Shell (Shell PLC, Shell USA, Inc., and Shell Brands International AG).[6]  The SAC alleges that only one Defendant, Shell USA, has a principal place of business in Texas (but not in this District).

Many Defendants have offices or office space, or agents, and/or otherwise transact business in New York.  *See* SAC ¶ 19; Dkt. 134 ("WFA Decl.") ¶ 5; Ex. 17 ("Mars Decl.") ¶ 14; Ex. 18 ("CVS Decl.") ¶ 5; Ex. 15 ("Pinterest Decl.") ¶ 4; Ex. 1 ("Gamse Decl.") ¶¶ 2-7 (attaching records including New York business registrations for Abbott, LEGO Brand Retail, Nestle USA, Pinterest, Shell USA, and Tyson Foods).[7]

None of Defendants' potential witnesses with knowledge of GARM and Defendants' social media advertising strategies are in this District.  As to WFA, the SAC and its exhibits identify two WFA employees: Rob Rakowitz and Stephan Loerke.  *See, e.g.*, SAC ¶ 38; Ex. A.  Neither is in

---

[6] WFA is "organized under the Belgian Companies Code."  SAC ¶ 11.  "Mars is incorporated in Delaware and headquartered in Virginia."  *Id.* ¶ 14.  CVS "is incorporated in Delaware and headquartered in Rhode Island."  *Id.* ¶ 15.  Ørsted A/S is headquartered "in Fredericia, Denmark." *Id.* ¶ 13.  Nestlé S.A. is "headquartered in Switzerland."  *Id.* ¶ 17.  Nestle USA, Inc. is "incorporated in Delaware and headquartered in Virginia."  *Id.*  "Abbott is incorporated and headquartered in Illinois."  *Id.* ¶ 18.  "Colgate is incorporated in Delaware and headquartered in New York."  *Id.* ¶ 19.  "Lego A/S is incorporated and headquartered in Denmark."  *Id.* ¶ 20. "LEGO Brand Retail . . . is incorporated and headquartered in Connecticut."  *Id.*  "Pinterest is headquartered in California and incorporated in Delaware."  *Id.* ¶ 21.  Tyson "is headquartered in Arkansas and incorporated in Delaware."  *Id.* ¶ 22.  Shell PLC is "headquartered in England."  *Id.* ¶ 23.  Shell USA is a wholly owned subsidiary of Shell PLC, "incorporated in Delaware and headquartered in Houston."  *Id.*

[7] The Court may take judicial notice of facts in "publicly-available documents" where the "matters of public record [are] directly relevant to the issue at hand."  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).  Courts routinely do so in connection with business registration records.  *See, e.g.*, *Goldman v. Barrett*, 2017 WL 4334011, at *1 n.3 (S.D.N.Y. July 25, 2017) ("'[I]t is clearly proper to take judicial notice' of 'documents retrieved from official government websites.'" (citation omitted)), *aff'd*, 733 F. App'x 568 (2d Cir. Mar. 9, 2018).

Texas.  Mr. Rakowitz, whom the SAC alleges "co-founded GARM" and "was part of every significant decision made by GARM," is based in New York, NY.  SAC ¶ 38.  Mr. Loerke resides in Metropolitan Brussels, Belgium.  WFA Decl. ¶ 4.  As to the remaining Defendants, their employees with knowledge of this matter (to the extent there are any) are located across the United States and Europe.  *See infra* Section III.A.3.a.1.  But *none* is located in this District.

With respect to non-party entities and witnesses, Defendants do not believe any of significance are in this District.  The SAC alleges that "GARM was governed by its Steer Team."  SAC ¶ 39; *see also id.* ¶ 121 (describing meeting among "WFA Executive Committee members, GARM Steer Team members, and Musk and others from Twitter").  No Steer Team member is in either this District or Texas.  WFA Decl. ¶ 23.  Further, the SAC alleges that the "Association of National Advertisers ('ANA') Growth Council . . . had a seat on GARM's Steer team," "joined with WFA to create GARM," and "played a key role in the promulgation and wide adoption of the GARM Brand Safety Standards."  SAC ¶¶ 37, 58.  ANA is headquartered in New York, NY.[8]  During the relevant timeframe, Bill Tucker, who served on the GARM Steer Team on behalf of ANA, was located in New York, NY.[9]  Similarly, the only other Steer Team member who is identified in the SAC or its exhibits, Joe Barone, *see* Dkt. 77-3, is also located in New York, NY.[10]

Also, many of the Defendants regularly work with advertising agencies to develop their advertising strategies, including to make decisions about which platforms to advertise on.  During the relevant time, Mars, for example, worked with representatives from marketing agency EssenceMediacom located in New York, NY, Chicago, IL, and the United Kingdom to set advertising strategy.  EssenceMediacom's parent company is GroupM (described in the SAC as a

---

[8] *See Contact the ANA*, ANA https://www.ana.net/content/show/id/contact (last visited May 15, 2025) (noting the headquarters' address in New York, NY).

[9] *See* Ex. 1 ¶ 8 (attaching Tucker LinkedIn profile).

[10] *See* Ex. ¶ 9 (attaching Barone LinkedIn profile).

member of GARM's Steer Team, SAC ¶ 105), which is headquartered in New York, NY.  Mars Decl. ¶ 11.  Similarly, CVS's advertising agency partner, Universal McCann, which assists CVS in deciding where to spend its advertising dollars, is likewise headquartered in New York, NY. CVS Decl. ¶ 10.  And Abbott's advertising agency partner, Mindshare Media, is similarly headquartered in New York, NY.  Ex. 16 ("Abbott Decl.") ¶ 8.

### C.    The Operative Facts of the Lawsuit Largely Occurred in the Southern District of New York or in Europe, and Not in This District.

All operative facts relating to GARM and the individual Defendants' decisions relating to social media advertising occurred outside of this District.  No GARM-related conduct occurred in this District.  WFA Decl. ¶¶ 23, 24-27.  The SAC centers on the actions and communications of Rob Rakowitz—the co-founder and Initiative Lead for GARM.  *See, e.g.*, SAC ¶¶ 42, 47, 72, 88-90, 97, 110, 117, 120, 122.  Mr. Rakowitz works in New York.  SAC ¶ 38.

GARM's Working Groups, SAC ¶¶ 50-57, and Steer Team often met virtually.  WFA Decl. ¶¶ 23, 26.  X does not and cannot allege that any named Defendants participated in any GARM meetings or events while physically located in this District.  Indeed, any in-person meetings took place outside of Texas.  *See id.*  And meeting participants participated from around the world.  For example, CVS's primary GARM point of contact participated from CVS's headquarters in Rhode Island, CVS Decl. ¶ 6, Abbott's primary GARM point of contact participated from Abbott Park, IL, Abbott Decl. ¶ 6, and Mars's participation in GARM's steer team primarily occurred from the United Kingdom, Mars Decl. ¶ 6.[11]

As described above, and as alleged in the SAC, some Defendants also worked with advertising agencies to develop their social media marketing strategies, including which social

---

[11] LEGO Brand Retail has never been a member of GARM or WFA, and LEGO Brand Retail has never paid membership dues to GARM or WFA. Dkt. 147 ("Soriano Decl.") App. 007 ¶ 3.  Shell USA, Inc. has no record of paying invoices for membership in WFA or GARM, and no record of paying invoices from X Corp. or Twitter Inc.  Dkt. 144 ("Borgmeier Decl.") ¶ 6.

media platforms to advertise on.  Thus, these decisions were often made in connection with advice from New York City-based advertising agencies, such as Group M, Universal McCann, or Mindshare Media.  *See, e.g.*, Mars Decl. ¶ 11; CVS Decl. ¶ 10; Abbott Decl. ¶ 8; *see also* SAC ¶¶ 105-06 (emphasizing the role of New York agencies).  None of the decisions were made by employees in this District.

## ARGUMENT

The Court should transfer this matter to the Southern District of New York, for the convenience of the parties, for the ease of the witnesses, and because of New York's substantially and undeniably greater connection to the facts of the case.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).  "When the movant demonstrates that the transferee venue is clearly more convenient . . . it has shown good cause and the district court should therefore grant the transfer."  *Id.* at 315.

"There are two steps to the transfer analysis.  First, the district court must ask whether the case might have been brought in the destination venue, and second the district court must weigh the private and public interest factors."  *In re Chamber of Com.*, 105 F.4th 297, 304 (5th Cir. 2024).  "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen*, 545 F.3d at 315.  "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized

interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* "Public and private factors aside, a court must also independently consider how much weight to assign a plaintiff's choice of forum." *Seramur v. Fed. Ins. Co.*, 2019 WL 3253369, at *2 (N.D. Tex. July 19, 2019) (Boyle, J.).

Here, X could have brought this action in the Southern District of New York. And both the private and public interest factors weigh in favor of transfer; all four private interest factors favor the Southern District of New York, and all of the public interest factors are either neutral or likewise favor transfer. Accordingly, the Southern District of New York is a far more convenient venue, and this case should be transferred there.

## I.    X COULD HAVE BROUGHT THIS ACTION IN THE SOUTHERN DISTRICT OF NEW YORK.

The first question is "whether a civil action 'might have been brought' in the destination venue. This requires a finding that the transferee court has jurisdiction over the defendant and venue in the transferee district would be proper." *Blitz USA, Inc. v. Liberty Surplus Ins. Corp.*, 2011 WL 1602718, at *2 (N.D. Tex. Apr. 27, 2011) (Fish, J.) (quotation marks omitted). A federal antitrust plaintiff may bring suit "in the district in which the defendant resides or is found or has an agent." 15 U.S.C. § 15(a); *see also* 15 U.S.C. § 22 ("Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transact business[.]"). Venue is likewise proper in such a district. *See* 15 U.S.C. § 15.

Here, the Southern District of New York has subject matter jurisdiction over this case for the same reasons that X alleges this District has subject matter jurisdiction: X's claims arise under federal law. *See* SAC ¶¶ 27-28. As to personal jurisdiction over specific defendants, none of the domestic defendants (Abbott, Colgate, CVS, LEGO Brand Retail, Mars, Nestle USA, Pinterest,

Shell USA, and Tyson) have contested personal jurisdiction in this case, and personal jurisdiction attaches under the Clayton Act in any venue where a defendant does "practical, everyday business" that "is not insubstantial," *Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 733 (S.D.N.Y. 1989).  *See generally* 15 U.S.C. §§ 15, 22; *supra* Background Section B.  With respect to international Defendants Ørsted A/S, Nestlé S.A., LEGO A/S, Shell PLC, and Shell Brands International AG, jurisdiction is not proper anywhere in the United States.  *See* Dkts. 139; 142; 145; 158; 163.  For that reason, the lack of personal jurisdiction over those Defendants in New York should not weigh against transfer; the Court can dismiss (or sever) those defendants before transferring.  More specifically, the Court can sever those parties over which there is no jurisdiction in New York or anywhere in the United States (for purposes of dismissal) and transfer the remaining parties.  *See, e.g.*, *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 676 (N.D. Tex. 2020) (Starr, J.) (dismissing certain defendants for lack of personal jurisdiction and transferring case with remaining defendant); *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 668 (E.D. Tex. 2007) (same); *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014) (noting "district court has wide discretion to sever a claim against a party into separate cases," and inquiry focuses on considerations of "judicial efficiency"); *DDC Tech., LLC v. Google LLC*, 2023 WL 2518846, at *4 (N.D. Tex. Mar. 14, 2023) (Boyle, J.) (severing and transferring to N.D. Cal. because "benefits of transfer outweigh any judicial inefficiencies resulting from" severance); Fed. R. Civ. P. 21.[12]

---

[12] To the extent the Court grants the pending jurisdictional motions there would not be any need for severance prior to transfer.  To the extent the Court finds that the case could not have been brought in the Southern District of New York as to any other party, that party should be severed and the case should still be transferred given New York's overwhelmingly greater connection to the case, and the comparatively "peripheral" role of any witness subject to this Court's jurisdiction only.  *Toshiba Corp. v. Hynix Semiconductor, Inc.*, 2005 WL 2415960, at *3 (N.D. Tex. Sept. 30, 2005) (Lindsay, J.).

WFA has also contested this Court's jurisdiction. *See* Dkt. 132. To the extent any U.S. court has jurisdiction over WFA, the appropriate court to make that determination would be the Southern District of New York due to this case's much stronger connection to that venue, and WFA's connections there. *Id.*; *see also Victory Renewables, LLC v. Engergy Trading Co.*, 2019 WL 2539209, at *2 (N.D. Tex. Feb. 8, 2019) (Rutherford, M.J.) (recognizing precedent for considering venue issues prior to jurisdictional issues "when there is a sound prudential justification for doing so" (citation omitted)); *see infra* Section III.A.4. "[R]esolution of the venue [i.e., transfer] issue may render the personal jurisdiction issues [as to WFA] moot and avoid the need to address constitutional questions." *Victory Renewables*, 2019 WL 2539209, at *2.

## II.   THE COURT SHOULD NOT DEFER TO X'S CHOICE OF FORUM.

Although a plaintiff's choice of forum is normally entitled to some weight, "Plaintiff's choice of forum is entitled to little or no deference" where, as here, the "case simply has no significant connection to th[e] forum." *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1109 (S.D. Tex. 1997); *see Buckner v. Romulus, Inc.*, 2018 WL 2461984, at *2 (N.D. Tex. June 1, 2018) (Boyle, J.) ("[W]hen she files suit outside her home forum, the weight accorded to the choice is diminished."). Here, X does not maintain its principal place of business in this District. SAC ¶ 10. During the relevant time, X was not—and has never been—a Texas corporation, and its principal place of business was in California. *See* Dkt. 1, ¶ 10. Although X has since shifted its headquarters to Bastrop, SAC ¶ 10, the company still alleges no connections to this District.

In addition, none of the operative facts occurred within this District. *See supra* Background Section C; *see also Great-W. Life & Annuity Ins. Co. v. Graves*, 2010 WL 11582977, at *1 (N.D. Tex. Mar. 18, 2010) (Furgeson, J.) (according no deference where operative facts occurred outside of Texas); *Robertson*, 979 F. Supp. at 1109 (little or no deference where operative facts occurred outside of Texas); *Monsanto Co. v. Ledbetter*, 2008 WL 11347430, at *2 (N.D. Tex. Mar. 10,

2008) (Godbey, J.) ("[N]one of the operative facts occur within the forum of plaintiff's original selection, his choice is entitled to only minimal consideration."). The SAC challenges alleged conduct by Rob Rakowitz, a former initiative lead at WFA, SAC ¶¶ 32–33, 34, 89–90, 107, who resides in New York, *id.* ¶ 38, as well as advertising decisions made by the other Defendants, all of which were made at Defendants' headquarters, by witnesses located outside of this District, occasionally with advice with agency partners, many of which are located in the Southern District of New York, and none of which are located in this District. *See supra* Background.

As X is not headquartered in this District and none of the operative facts occurred here, its "choice of forum should be afforded no deference." *Great-W. Life*, 2010 WL 11582977, at *1.

## III. THE 1404(A) FACTORS STRONGLY SUPPORT TRANSFER.

The 1404(a) factors strongly support transfer of this case. Five factors support transfer (all private factors and the first public factor) and three are neutral (the last three public factors). There is not a single factor that supports this District as the proper forum.

### A. The Private-Interest Factors Support Transfer.

#### 1. Access to Sources of Proof

The first private factor—the relative ease of access to sources of proof—supports transfer. "[T]his factor weighs in favor of the venue where the majority of relevant documents are physically kept." *Rodriguez*, 2021 WL 10315900, at *2. When "the vast majority of the evidence is electronic . . . this factor bears less strongly on the transfer analysis." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023). But although technological advances mean that "access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments[, that] does not render this factor superfluous." *In re Volkswagen*, 545 F.3d at 316. The factor turns "upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Uniloc*

*USA, Inc. v. Activision Blizzard, Inc.*, 2014 WL 11609813, at *2 (E.D. Tex. July 16, 2014).  It "weighs in favor of transfer where," as is true here, "the current district lacks any evidence relating to the case."  *In re TikTok*, 85 F.4th at 358.

Here, Defendants are likely to possess a larger percentage of relevant documents, as there are many Defendants, and their alleged conduct is the subject of the Complaint.  *See Rodriguez*, 2021 WL 10315900, at *2; *Cub Club Invest., LLC v. Apple, Inc.*, 2021 WL 12300180, at *2 (W.D. Tex. Sept. 7, 2021) (finding first factor in copyright infringement action weighed in favor of transfer because pertinent features were developed in Defendant's California offices).  Defendants' documents are spread across the United States and Europe at their respective headquarters or the corporate offices where their primary witnesses work.  *See, e.g.*, Mars Decl. ¶ 12; CVS Decl. ¶ 12; Abbott Decl. ¶ 9; WFA Decl. ¶ 28; *Uniloc USA, Inc.*, 2014 WL 11609813, at *2 (headquarters presumed to be location of material related to corporate party).  To the extent there are other relevant WFA documents, they would most likely be with Mr. Rakowitz in New York.  *See* SAC ¶ 38.  In addition, relevant documents will likely be at offices of Defendants' marketing agencies, many of which are also located in New York.  *See* Mars Decl. ¶¶ 11-12; CVS Decl. ¶¶ 11–12; Abbott Decl. ¶ 9.  The location of relevant evidence therefore supports transfer to New York, a more convenient location closer to those documents.  *See Child.'s Health Def.*, 2023 WL 3940446, at *3 (finding first private interest factor supported transfer "because no evidence [was] in Texas and the relevant documents [were] in Defendants' respective headquarters in New York, the District of Columbia, and London").

### 2.    Availability of Compulsory Process To Secure Witness Attendance

The second private factor—availability of compulsory process to secure the attendance of witnesses—also favors of transfer.  "A venue that has absolute subpoena power for both deposition and trial is favored over one that does not."  *Word to Info, Inc. v. Facebook, Inc.*, 2015 WL

13870507, at *3 (N.D. Tex. July 23, 2015) (Kinkeade, J.). "This factor will weigh more heavily in favor of transfer when more non-party witnesses reside within the transferee venue." *Vargas v. Seamar Divers Int'l., LLC*, 2011 WL 1980001, at *4 (E.D. Tex. May 20, 2011). A subpoena may command a person to attend a trial, hearing, or deposition if it is within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(1)(A). This factor is primarily concerned with non-party witnesses because the parties are presumed to be able to control their current employee witnesses. *See, e.g.*, *Mt. Hawley Ins. Co. v. TFP Properties. III, LLC*, 2018 WL 10419785, at *3 (N.D. Tex. Aug. 29, 2018) (Kinkeade, J.). Here, all relevant nonparty witnesses known to Defendants are more than 100 miles from this Court, and many are within 100 miles of the Southern District of New York.

> **a.** **No Relevant Non-Party Witnesses Are Located Within 100 Miles of Wichita Falls**

There are no non-party witnesses within 100 miles of Wichita Falls, Texas whom Defendants believe have any relevant information as to GARM or Defendants' decisions regarding advertising on Twitter.

> **b.** **Key Non-Party Witnesses Are Located Within 100 Miles of the Southern District of New York**

Several relevant non-party witnesses are located within 100 miles of the court to which Defendants seek transfer. The following non-party witnesses are located within 100 miles of the Southern District of New York:

- **Joe Barone** previously served as Managing Partner, Brand Safety Americas at GroupM. Mr. Barone was a member of GARM's Steer Team, and he is included on a communication attached to the SAC. Dkt. 77-3. On information and belief, he is based in New York, NY. *See supra* Background Section B.

- **Delaney Goodwin** previously worked for WFA and was one of Pinterest's GARM contacts; at that time, she was located in New York, NY.  Pinterest Decl. ¶ 6.

- **EssenceMediacom**:  Mars worked with its marketing agency EssenceMediacom during the relevant time period to set advertising strategy.  Some relevant EssenceMediacom witnesses are located in New York, NY.  Mars Decl. ¶ 11.

- **Mindshare Media**:  Abbott worked with agency partners with respect to decision-making regarding advertising on Twitter, specifically including Mindshare Media, which is based in New York, NY.  Abbott Decl. ¶ 9.

- **Universal McCann**: CVS worked with its agency partner in deciding whether to advertise on Twitter.  Universal McCann is headquartered in New York, NY, and any relevant Universal McCann witnesses are likely to be located in or near New York, NY as well.  *See* CVS Decl. ¶ 11.

- **Bill Tucker**:  During the relevant time, Bill Tucker, served on the GARM Steer Team on behalf of ANA.  On information and belief, he was and is still located in New York NY.  *See supra* Background Section B.

In addition, the SAC alleges that GARM "included the so-called 'Big Six' advertising agency holding companies."  SAC ¶ 40.  The SAC likewise alleges that some of those agencies recommended that their clients suspend advertising on Twitter, *id.* ¶ 104, and that some of those clients (even those that were not GARM members) "ceased purchasing advertising from Twitter," *id.* ¶¶ 139-40.  These advertising agencies are therefore likely to be important third-party witnesses.  New York would be more convenient for these agencies, too.[13]

---

[13] Upon information and belief, Omnicom and Interpublic Group—two of the Big Six—are headquartered in New York City.  *See Contact Us*, Omnicom Media Group, https://omg.com/contact-us (last visited June 12, 2025); *Contact Us*, Interpublic Group, https://www.interpublic.com/contact-us (last visited June 12, 2025).  The remainder of the Big Six advertising are headquartered internationally: WPP (England), Publicis Groupe (France), Dentsu (Japan), Havas (France), and many maintain substantial offices in New York City.  *See Explore*

### 3. Witness Convenience and Access

The third private factor—the cost of attendance for party and nonparty witnesses—weighs strongly in favor of transfer. "The third private-interest factor examines the cost of attendance for willing witnesses and is probably . . . the most important factor in the transfer analysis." *Child.'s Health Def.*, 2023 WL 3940446, at *2; *see also Qualls v. Prewett Enters. Inc.*, 594 F. Supp. 3d 813, 824 (S.D. Tex. 2022) (same). This factor "attempts to internalize and minimize" "myriad external costs on witnesses" "by favoring the venue that is more convenient from the perspective of willing witnesses." *In re Clarke*, 94 F.4th 502, 514 (5th Cir. 2024).

Where "the transferee venue is more than one hundred miles from the transferor[,] . . . the factor of inconvenience borne by witnesses positively and linearly scales with the additional distance they must travel." *Id.* "[I]t is more convenient for witnesses to testify at home." *In re Volkswagen*, 545 F.3d at 317. "The court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *Rodriguez*, 2021 WL 10315900, at *2 (alterations omitted). Here, the Southern District of New York would be substantially more convenient for the likely witnesses in the case.

#### a. The Southern District of New York Is More Convenient For Party and Non-Party Witnesses.

First, as explained above, *supra* Subsection III.A.2.b, there are several non-party witnesses located in New York City, NY—Joe Barone and GroupM, Norm De Greve, Delaney Goodwin, EssenceMediacom, Bill Tucker, Minshare Media, and Universal McCann—for whom the Southern District is vastly more convenient than this District. Non-party witnesses' convenience is "accorded the most weight." *Allcapcorp Ltd. v. CHC Consulting*, 2019 WL 417995, at *6-7

---

*Campuses*, WPP, https://www.wpp.com/en-us/contacts#tab-campuses (last visited June 12, 2025) (listing New York City campus); Gamse Decl. ¶ 10 (attaching Publicis Groupe LinkedIn profile); *Contact Us*, Dentsu Group, https://www.dentsu.com/us/en/contact-us (last visited June 12, 2025) (identifying New York City as U.S. headquarters); Gamse Decl. ¶ 11 (attaching Havas LinkedIn profile).

(N.D. Tex. Jan. 10, 2019) (Ramirez, J.), *R & R adopted*, 2019 WL 415819 (N.D. Tex. Feb. 1, 2019). So those witnesses' convenience weighs heavily in the transfer analysis.

In addition to those non-party witnesses, there are additional party and non-party witnesses who will testify about GARM's formation and operation as well as about Defendants' involvement in GARM and the non-WFA Defendants' decisions to halt or reduce advertising on Twitter. None of the witnesses live near this District. As explained further below, many witnesses are located on the East Coast or internationally. For all of those witnesses, the Southern District of New York would be a significantly more convenient forum than this District.

### 1)    The Likely Defense Witnesses

The SAC alleges that Mr. Rakowitz "co-founded GARM," "was the Initiative Lead for GARM and was part of every significant decision made by GARM." SAC ¶ 38. The Defendants also have current and former employees who possess relevant information as to each organizations' alleged involvement in GARM. If the case proceeds to discovery, those employees will be key witnesses as they possess information relevant to X's claims and Defendants' defenses. Below, Defendants list some of those expected witnesses and their locations should the case proceed. Uniformly, New York would be far more convenient than Texas for these witnesses:

- **Norm De Greve** is a former CVS employee who was Mr. Vaccarezza's manager during the relevant time period. CVS Decl. ¶ 10. Mr. De Greve lives in Massachusetts. *Id*. Mr. De Greve is expected to testify about CVS's involvement in GARM and its decision to halt advertising on Twitter.

- **Stephan Loerke** is the CEO of WFA who lives in the Brussels area. WFA Decl. ¶¶ 2, 4. Mr. Loerke is included on a communication that is an exhibit to the SAC. Dkt. 77-1. Defendants expect that Mr. Loerke would testify about WFA and GARM.

- **Rob Rakowitz** is a consultant for WFA who lives and works in New York. SAC ¶ 38. X alleges he was involved in "every significant decision made by GARM." *Id.* Mr. Rakowitz would be expected to testify about GARM's purpose, communications, and relationships with the non-WFA Defendants.

- **Brad Santeler** was Senior Director, Marketing Management at Abbott. Abbott Decl. ¶ 2. He would be expected to testify about Abbott's involvement in GARM. *Id.* ¶¶ 6, 8. He worked from Abbott's headquarters in Illinois, and lives in Wisconsin. *Id.* ¶ 4.

- **Jacqueline Stephenson** is Senior Director of Responsible & Purpose Marketing at Mars and a former member of the GARM Steer Team who lives and works in the United Kingdom. Mars Decl. ¶¶ 2, 4, 6. She would be expected to testify about Mars's marketing strategy and involvement with WFA and GARM. *Id.* ¶¶ 6-9.

- **Diego Vaccarezza** is VP of Enterprise Media at CVS and was CVS's primary participant in GARM calls. CVS Decl. ¶ 7. He resides in Franklin, Massachusetts and works at CVS's Rhode Island headquarters. *Id.* ¶ 4. Mr. Vaccarezza would be expected to testify about CVS's involvement in GARM and decision to halt advertising on Twitter.

Given the central importance of Mr. Rakowitz and those other witnesses, their convenience is significant for purposes of the transfer inquiry. "[T]he relative convenience to key witnesses and key non-party witnesses is accorded greater weight than the convenience to less important witnesses." *Child.'s Health Def.*, 2023 WL 3940446, at *2. Indeed, "[t]he convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Xtreme Indus., LLC v. Gulf Copper & Mfg. Corp.*, 2010 WL 4962967, at *4 (S.D. Tex. Dec. 1, 2010). And here, Defendants are not aware of *any* material witness located in this District.[14]

---

[14] For example, no individuals who reside in Texas were involved in any interaction with WFA, GARM, or advertising on X Corp. on behalf of Nestle USA. Ex. 19 ("Nestle USA Decl.") ¶ 6.

## 2)    X's Current and Former Employees

The most significant current and former employee witnesses of X, too, seem to be overwhelmingly located outside of this District:

- **Elon Musk** acquired Twitter in October 2022.  SAC ¶ 73.  In November 2022, he met with WFA Executive Committee and GARM Steer Team members, *id.* ¶ 100, and also with advertisers and agencies to discuss Twitter's attractiveness as an ad platform.  *Id.* ¶ 87.  On information and belief, he is based in Texas, but not in this District.

- **Yoel Roth** was Head of Trust & Safety at Twitter and led its content moderation efforts; he is expected to testify about the same.  Upon information and belief, he is located in San Francisco, California.[15]

- **Robin Wheeler** was VP, United States Client Solutions at Twitter.  She is expected to testify about Twitter's attempts to maintain advertiser relationships during the relevant time period.  Upon information and belief, she is located in San Francisco, California.[16]

- **Linda Yaccarino** has been the CEO of X Corp. since June 2023.  On August 6, 2024, she drafted an open letter about this lawsuit.[17]  She is expected to testify about Twitter's

---

No Pinterest witness with knowledge of the issues in this case resides in this District; the substantial majority of its employees are in San Francisco, CA.  Pinterest Decl. ¶¶ 3, 7.  Shell USA, Inc. does not occupy any offices or maintain any employees in the Northern District of Texas.  Borgmeier Decl. ¶ 5.  And Colgate's headquarters is located in New York City.  SAC ¶ 19.

[15] *See, e.g.*, Gamse Decl. ¶ 12 (attaching Roth LinkedIn profile); *see also, e.g.*, Meghan Bobrowsky, *Twitter's Former Trust and Safety Chief Says He Left When System of Governance Went Away*, Wall St. J. (Nov. 29, 2022), https://www.wsj.com/articles/twitters-former-trust-safety-chief-says-he-left-when-system-of-governance-went-away-11669771655.

[16] *See* Gamse Decl. ¶ 13 (attaching Wheeler LinkedIn profile); *see also, e.g.*, Alexa Course and Tim Higgins, *Twitter's Mass Resignations Test Elon Musk's Management Playbook*, Wall St. J. (Nov. 18, 2022), https://www.wsj.com/articles/twitters-mass-resignations-test-elon-musks-management-playbook-11668803573.

[17] *See An Open Letter to Advertisers*, @lindayaX (Linda Yaccarino), Twitter (Aug. 6, 2024, 11:03 AM) https://x.com/lindayaX/status/1820838134470328676.

ad sales, content moderation, and alleged damages. On information and belief, she is located in New York, NY.[18]

### 3) Witnesses' Distance from New York and Wichita Falls

The Southern District of New York is a substantially more convenient forum than this District for most party and non-party witnesses, as described above. As set forth in the table attached as Exhibit A, the Southern District of New York is closer geographically to most likely witnesses. Travel to that district for those witnesses, including the international witnesses, would likewise be more efficient, which weighs in favor of transfer here. *See, e.g.*, *In re TikTok, Inc.*, 85 F.4th at 361 (finding abuse of discretion where district court failed to consider relative convenience of proposed transferee district for international witnesses); *Kaneka Corp. v. SKC Kolon PI, Inc.*, 2011 WL 13134647, at *6 (E.D. Tex. Mar. 30, 2011) (granting transfer from Eastern District of Texas to Central District of California, which would be more convenient for witnesses from Asia).

Finally, with respect to the current and former Twitter employees located in San Francisco, New York is likewise more convenient. In contrast to New York City, there are no direct flights to Wichita Falls from California. Although there are multiple nonstop flights from San Francisco to New York each day, there are no nonstop flights from San Francisco to Wichita Falls, and the closest nonstop flights from San Francisco that go anywhere remotely near Wichita Falls are flights from San Francisco to Dallas-Fort Worth that would require more than 100 miles of transit by car. *See In re TikTok, Inc.*, 85 F.4th at 361 (noting, as part of the "100-mile test," that "additional distance means additional *travel time*" (emphasis added) (quoting *In re Volkswagen*, 545 F.3d at 317)). And the same is true for many of the international locations at which witnesses are located.

Because "[t]ransferring the case . . . will be significantly more convenient for the vast majority, if not all, [of the] material witnesses in this case[, t]his factor heavily favors transfer."

---

[18] *See* Gamse Decl. ¶ 14 (attaching Yaccarino LinkedIn profile).

*Weinstein*, 2007 WL 3118363, at *3; *see also, e.g., Fin. Cas. & Sur., Inc. v. Zouvelos*, 2012 WL 2886861, at *6 (S.D. Tex. July 13, 2012) (transferring case with "nonparty witnesses located in New York" because "[i]t will be significantly more convenient for them to have the case litigated in New York, where they reside").

### 4.    Other Practical Considerations—Lack of Personal Jurisdiction over Certain Defendants

The fourth private factor—all other practical considerations that affect whether a case is easy, expeditious, and inexpensive to litigate in the forum—also weighs in favor of transfer. This Court lacks personal jurisdiction over WFA, Ørsted A/S, Nestlé S.A., LEGO A/S, Shell PLC, and Shell Brands International AG. *See* Dkts. 132; 139; 142; 145; 158; 163. If even one Defendant who is not subject to personal jurisdiction in this Court would be subject to personal jurisdiction in the Southern District of New York, this factor weighs in favor of transfer. *See Child.'s Health Def.*, 2023 WL 3940446, at *4 (transferring case where court lacked jurisdiction over one defendant).

The SAC reveals that WFA is the central party in this case. According to the SAC, WFA's employee, Mr. Rakowitz, founded GARM, was "part of every significant decision made by GARM," SAC ¶ 38, and took credit for GARM's alleged collective action, *id.* ¶ 47. He is based in New York. *Id.* And WFA maintains office space in New York. WFA Decl. ¶ 5. In contrast, WFA has no employees or offices in Texas. *Id.* ¶¶ 7, 10-11; *see Aguacate Consol. Mines, Inc. v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978) (explaining 1404(a) permits "transfer for the convenience of the parties . . . even if no personal jurisdiction existed in the transferring court"); *Bentz v. Recile*, 778 F.2d 1026, 1027–28 (5th Cir. 1985) (per curiam) (same). Certainly, it makes little sense to litigate the case in this forum without WFA's participation.[19]

---

[19] To the extent the Court finds that it has personal jurisdiction over some Defendants but not over WFA, then severance and transfer would still be appropriate, because WFA's presence is far more essential to this dispute than the other Defendants. *See supra* Section I.

### B.        The Public-Interest Factors Support Transfer.

#### 1.        Court Congestion

The first public factor—the administrative difficulties flowing from court congestion—is neutral.  This first public-interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *InfoGation Corp. v. Google LLC*, 2021 WL 5547070, at *5 (W.D. Tex. Apr. 29, 2021); *USPG Portfolio Two, LLC v. John Hancock Real Est. Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011) (Fitzwater, C.J.) (granting transfer).  "The relevant inquiry under this factor is the speed with which a case can come to trial and be resolved." *InfoGation Corp.*, 2021 WL 5547070, at *5 (alterations and citation omitted).  "[C]ourts commonly consider the Federal Judicial caseload statistics" to determine whether one court's docket is more congested than another's.  *USPG Portfolio Two, LLC*, 2011 WL 1103372, at *5.

Here, the relevant Federal Judicial caseload statistics establish that the average time to dispose of cases in the Southern District of New York is approximately the same as the average time to dispose of cases in the Northern District of Texas.  As of March 2025, the median time to dispose of civil cases in the Southern District of New York is 5.9 months, while the median time to dispose of cases in the Northern District of Texas is 5.5 months.[20]

#### 2.        Local Interest

The second public factor—the interest in having localized interests decided at home—favors transfer.  This factor is based on the premise that jury duty ought not be imposed upon a community unconnected to the litigation.  *See All. Transp. & Logistics, LLC v. G&J Truck Sales, Inc.*, 2021 WL 5882820, at *4 (N.D. Tex. Dec. 13, 2021) (Boyle, J.) (citing *Volkswagen I*, 371 F.3d at 206) (granting transfer).  Accordingly, the local interest factor "generally favors the venue where the acts giving rise to the lawsuit occurred." *CUPP Cybersecurity LLC v. Symantec Corp.*,

---

[20] *See U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics*, U.S. Courts (Mar. 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-court-management-statistics/n-a-1.

2019 WL 1070869, at *9 (N.D. Tex. Jan. 16, 2019) (Lynn, C.J.) (granting transfer). "To identify localized interests properly, [courts] look not to the parties' significant connections to each forum but rather the significant connections between a particular venue and the events that gave rise to a suit." *In re Clarke*, 94 F.4th at 511 (alterations omitted). "[T]he location of the injury, witnesses, and the plaintiff's residence are useful proxies for determining what local interests exist in each venue." *Id*. But those proxies "can never subsume the ultimate inquiry." *Id*.

The alleged events giving rise to this action—the formation of GARM, some Defendants' involvement in GARM, and some Defendants' independent decisions related to advertising on Twitter—largely occurred in or around the Southern District of New York. Its local interest is substantial. In contrast, no significant event occurred in this District. *See supra* Background Section C. This District, therefore, has little if any local interest in the resolution of this case. For that reason, this factor supports transfer. *See All. Transp. & Logistics*, 2021 WL 5882820, at *4; *CUPP Cybersecurity LLC*, 2019 WL 1070869, at *9.

The Southern District of New York would, moreover, be "actually affected" by the resolution of the case because multiple Defendants and advertising partners have offices there. *See Rodriguez*, 2021 WL 10315900, at *4 (finding Georgia would be actually affected because defendant was headquartered there); *TitanUrbi21, LLC v. GS Oilfield Servs., LLC*, 2020 WL 5066943, at *6 (N.D. Tex. Aug. 27, 2020) (Kaczmaryk, J.) (finding local interest in San Antonio because business was headquartered there); *Hard Metal Advantage LLC v. Kennametal Inc.*, 2022 WL 1088887, at *6 (W.D. La. Mar. 22, 2022) (similar).[21] This factor, too, favors transfer.

---

[21] X's allegations that an Ørsted A/S subsidiary owns a wind farming facility in this District, Compl ¶ 13; Dkt. 158-01 ("Reumert Decl.") ¶ 14-15, and Mars and CVS "engage[] in a substantial volume of commerce in this District," *id*. ¶¶ 15-16, are irrelevant; there is no reason to believe that either the facility or Mars's or CVS's commerce has anything to do with this case. *See Cub Club Investment*, 2021 WL 12300180, at *5.

### 3.    Familiarity with Law

The third public factor—familiarity of the forum with the law that governs the case—is neutral; federal courts are equally familiar with federal statutes.  *See Rodriguez*, 2021 WL 10315900, at *4 (indicating federal courts are equally familiar with federal statutes (citing *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 833 (N.D. Tex. Aug. 13, 2013) (Boyle, J.)); *Modisett v. Delek Refin., Ltd.*, 2019 WL 2395377, at *5 (E.D. Tex. June 5, 2019) (same).  Since X brings only claims under the Sherman Act, a federal statute, both venues are equally equipped to address X's claims.

### 4.    Conflict of Laws

The fourth public factor—the avoidance of unnecessary conflict of laws issues—is neutral for the same reasons stated above.  Federal antitrust law governs this case and no conflict of laws issues are expected.  *See Rogers v. Burlington N. Santa Fe Corp.*, 2005 WL 8161063, at *4 (E.D. Tex. Jan. 31, 2005) (explaining where case governed by federal statute, this factor is inapplicable in transfer analysis); *Robertson v. Kiamichi R. Co.*, 42 F. Supp. 2d 651, 659 (E.D. Tex. 1999).

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER TO THE DALLAS DIVISION.

If the Court declines to transfer this case to the Southern District of New York, it should instead transfer to the Dallas Division of this District.  The Court may transfer to another division under either Section 1404(a) or Section 1404(b).  *See* 28 U.S.C. § 1404; *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (per curiam) ("The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another.").  "[T]rial courts have even greater discretion in granting intra-district transfers than they do in the case of inter-district transfers."  *True Chem. Sols., LLC v. Performance Chem. Co.*, 2021 WL 860009, at *1 (W.D. Tex. Mar. 8, 2021).

The Dallas Division would be more convenient for the many out-of-state parties and witnesses to attend hearings and trial. *See, e.g.*, *Neo Wireless, LLC v. Dell Techs. Inc & Dell Inc.*, 2022 WL 18673257, at *4 (W.D. Tex. Jan. 20, 2022) (transferring where out-of-state witnesses "could easily fly into" Austin "and would not have to drive 90 miles to Waco"). And, since the distance between the Wichita Falls Division and the Dallas Division is approximately 140 miles, intra-district transfer here would satisfy the Fifth Circuit's "100-mile rule." *See In re Volkswagen*, 545 F.3d at 317 (finding witness convenience served by transfer to the Dallas Division, "as the Marshall Division is 155 miles from Dallas"). The parties expect such intra-division transfer would also be more convenient for the Court, which could then conduct proceedings in its regular chambers. *See, e.g.*, *Moore v. Payson Petroleum Grayson, LLC*, 2018 WL 514258, at *6 (N.D. Tex. Jan. 23, 2018) (Ramirez, J.) (granting transfer where plaintiff could not explain "why the district judge would hear this particular civil suit in a location other than the courthouse in which his chambers and staff are located").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request transfer to the United States District Court for the Southern District of New York for the convenience of all Parties and nonparty witnesses and in the interests of justice. In the alternative, Defendants respectfully request that the Court transfer to the Dallas Division of this District.

Dated: June 13, 2025

By:   /s/ *Nicholas Gamse*
       Nicholas Gamse (admitted *pro hac vice*)
        ngamse@wc.com
       Jonathan B. Pitt (admitted *pro hac vice*)
        jpitt@wc.com
       Kimberly Broecker (admitted *pro hac vice*)
        kbroecker@wc.com
       Williams & Connolly LLP
       680 Maine Avenue, SW
       Washington, D.C. 20024
       Phone: (202) 434-5000

       Thomas C. Riney
        tom.riney@uwlaw.com
        Texas Bar. No. 16935100
       C. Jason Fenton
        jason.fenton@uwlaw.com
        Texas Bar No. 24087505
       Underwood Law Firm, P.C.
       500 S. Taylor, Suite 1200
       Amarillo, TX 79101
       Phone: (806) 379-5613

       *Attorneys for CVS Health Corporation*

*/s/ Karen Hoffman Lent*
Karen Hoffman Lent (admitted *pro hac vice*)
  karen.lent@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3276

Noelle M. Reed
  Texas Bar No. 24044211
  noelle.reed@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
1000 Louisiana Street, Suite 6800
Houston, TX 77002
Phone: (713) 655-5122

*/s/ Ralph H. Duggins*
Ralph H. Duggins
  Texas Bar No. 06183700
  rduggins@canteyhanger.com
Philip Vickers
  Texas Bar No. 24051699
  pvickers@canteyhanger.com
Kate Hancock
  Texas Bar No. 24106048
  khancock@canteyhanger.com
Cantey Hanger LLP
600 West 6th Street, Suite 300
Fort Worth, TX 76102
Phone: (817) 877-2800

*Counsel for Mars, Incorporated*

/s/ Russ Falconer
Russ Falconer
   Texas Bar No. 24069695
   RFalconer@gibsondunn.com
Scott Hvidt
   Texas Bar No. 24097864
   SHvidt@gibsondunn.com
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Phone: (214) 698-3100

Gregg Costa
   Texas Bar No. 24028160
   GCosta@gibsondunn.com
Prerak Shah
   Texas Bar No. 24075053
   PShah@gibsondunn.com
Gibson, Dunn & Crutcher LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Phone: (346) 718-6600

*Attorneys for Defendant Nestlé USA, Inc.*

/s/ William F. Cavanaugh, Jr.
William F. Cavanaugh, Jr. (admitted *pro hac vice*)
   wfcavanaugh@pbwt.com
Christine Harper (admitted *pro hac vice*)
   charper@pbwt.com
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Phone: (212) 336-2000

/s/ Thomas M. Melsheimer
Thomas M. Melsheimer
   Texas Bar No. 13922550
   tmelsheimer@winston.com
Winston & Strawn LLP
2121 N. Pearl Street, 9th Floor
Dallas, TX 75201
Phone: (214) 453-6500

*Attorneys for Abbott Laboratories*

27

/s/ Fred A. Rowley Jr.
Fred A. Rowley, Jr. (admitted *pro hac vice*)
   fred.rowley@wsgr.com
Wilson Sonsini Goodrich & Rosati
Professional Corporation
953 East Third Street, Suite 100
Los Angeles, CA 90013
Phone: (323) 210-2902

Jeffrey C. Bank (admitted *pro hac vice*)
   jbank@wsgr.com
Wilson Sonsini Goodrich & Rosati
Professional Corporation
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Phone: (202) 973-8800

Taylor M. Owings (admitted *pro hac vice*)
   towings@wsgr.com
Wilson Sonsini Goodrich & Rosati
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Phone: (212) 999-5800

Lars L. Berg
   Texas Bar No. 00787072
   lars.berg@kellyhart.com
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Phone: (817) 878-3524

*Counsel for Colgate-Palmolive Company*

28

/s/ *Chahira Solh*
Chahira Solh (admitted *pro hac vice*)
  csolh@crowell.com
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Phone: (949) 798-1367

Sima Namiri-Kalantari (admitted *pro hac vice*)
  snamiri@crowell.com
Crowell & Moring LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Phone: (213) 443-5564

Kenneth Dintzer (admitted *pro hac vice*)
  kdintzer@crowell.com
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 624-2561

Minoo Blaesche
  Texas Bar No. 24075102
  mblaesche@jw.com
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Phone: (214) 953-6051

*Attorneys for LEGO Brand Retail, Inc.*

/s/ *Brian E. Robison*
Brian E. Robison
  Texas Bar No. 00794547
  brian@brownfoxlaw.com
Michael L. Baum
  Texas Bar No. 24006815
  mbaum@brownfoxlaw.com
Paulette C. Miniter
  Texas Bar No. 24075153
  paulette@brownfoxlaw.com
C. Alan Carrillo
  Texas Bar No. 24109693
  alan@brownfoxlaw.com
Farwa Zahra
  Texas Bar No. 24134610
  farwa@brownfoxlaw.com
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
Phone: (214) 327-5000

*Attorneys for Defendant Pinterest, Inc.*

## EXHIBIT A

**Table 1.    Defendant Headquarters**

| Defendant | Headquarters | Distance from Wichita Falls, TX[22] | Distance from New York, NY |
|---|---|---|---|
| World Federation of Advertisers | Brussels, Belgium | 4,950 miles | 3,660 miles |
| Mars, Inc. | McLean, Virginia | 1,230 miles | 210 miles |
| CVS Health Corp. | Woonsocket, Rhode Island | 1,570 miles | 160 miles |
| Ørsted A/S | Fredericia, Denmark | 4,960 miles | 3,740 miles |
| Nestlé S.A. | Vevey, Switzerland | 5,200 miles | 3,880 miles |
| Nestlé USA, Inc. | Arlington, Virginia | 1,240 miles | 210 miles |
| Abbott Laboratories | Abbott Park, Illinois | 820 miles | 720 miles |
| Colgate-Palmolive Company | New York, New York | 1,420 miles | 0 miles |
| Lego A/S | Billund, Denmark | 4,930 miles | 3,720 miles |
| Lego Brand Retail, Inc. | Enfield, Connecticut | 1,510 miles | 120 miles |
| Pinterest, Inc. | San Francisco, California | 1,360 miles | 2,560 miles |
| Tyson Foods, Inc. | Springdale, Arkansas | 290 miles | 1,130 miles |
| Shell PLC | London, United Kingdom | 4,750 miles | 3,460 miles |
| Shell USA, Inc. | Houston, Texas | 330 miles | 1,430 miles |
| Shell Brands International AG | Zug, Switzerland | 5,240 miles | 3,930 miles |

---

[22] Numbers indicate the straight-line distance between locations rounded to the nearest ten miles.

**Table 2.    Party Witness Locations**

| Defendant | Witness | Location | Distance from Wichita Falls, TX | Distance from New York, NY |
|---|---|---|---|---|
| World Federation of Advertisers | Stephan Loerke | Brussels, Belgium | 4,950 miles | 3,660 miles |
| | Rob Rakowitz | New York, New York | 1,420 miles | 0 miles |
| Mars, Inc. | Jacqueline Stephenson | London, United Kingdom | 4,750 miles | 3,460 miles |
| CVS Health Corp. | Diego Vaccarezza | Franklin, Massachusetts | 1,520 miles | 150 miles |

**Table 3.    Non-Party Witness Locations**

| Non-Party | Location | Distance from Wichita Falls, TX | Distance from New York, NY |
|---|---|---|---|
| Joe Barone | New York, New York | 1,420 miles | 0 miles |
| Norm De Greve | Hingham, Massachusetts | 1,600 miles | 190 miles |
| Delaney Goodwin | New York New York | 1,420 miles | 0 miles |
| Brad Santeler | Pleasant Prairie, Wisconsin | 830 miles | 730 miles |
| Bill Tucker | New York, New York | 1,420 miles | 0 miles |
| EssenceMediacom | New York, New York | 1,420 miles | 0 miles |
| Mindshare Media | New York, New York | 1,420 miles | 0 miles |
| Universal McCann | New York, New York | 1,420 miles | 0 miles |