IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| X CORP., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 7:24-cv-00114-B |
| | § | |
| WORLD FEDERATION OF ADVERTISERS; | § | |
| MARS, INCORPORATED; | § | |
| CVS HEALTH CORPORATION; | § | |
| ØRSTED SERVICES A/S; | § | |
| NESTLÉ S.A.; NESTLE USA, INC.; | § | |
| ABBOTT LABORATORIES; | § | |
| COLGATE-PALMOLIVE COMPANY; | § | |
| LEGO A/S; LEGO BRAND RETAIL, INC.; | § | |
| PINTEREST, INC.; | § | |
| TYSON FOODS, INC.; | § | |
| SHELL USA, INC.; AND | § | |
| SHELL BRANDS INTERNATIONAL AG, | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANT ØRSTED SERVICES A/S'S BRIEF IN SUPPORT OF
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................................................ii

STATEMENT OF FACTS ............................................................................................................ 2

LEGAL STANDARD .................................................................................................................. 4

ARGUMENT ................................................................................................................................ 5

      I.    THERE IS NO BASIS TO EXERCISE GENERAL JURISDICTION OVER ØRSTED SERVICES......................................................................................................................... 5

     II.   SPECIFIC JURISDICTION OVER ØRSTED SERVICES IS ALSO LACKING.......... 6

   III.  JURISDICTIONAL CONTACTS OF OTHER ØRSTED ENTITIES CANNOT BE ATTRIBUTED TO ØRSTED SERVICES. .................................................................... 8

   IV.  PERSONAL JURISDICTION OVER ØRSTED SERVICES CANNOT BE ESTABLISHED UNDER SECTION 12 OF THE CLAYTON ACT. ............................. 9

     V.   X CANNOT ESTABLISH PERSONAL JURISDICTION OVER ØRSTED SERVICES IN TEXAS USING RULE 4(K)(2). .............................................................................11

CONCLUSION............................................................................................................................ 12

CERTIFICATE OF SERVICE ................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Unione Mediterranea Di Sicurta*,
  364 F.3d 646 (5th Cir. 2004) ................................................................................... 11

*Bullion v. Gillespie*,
  895 F.2d 213 (5th Cir. 1990) ..................................................................................... 4

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .................................................................................................. 6

*Crown Distrib. LLC v. Peaceful Choice Distrib., LLC*,
  No. 3:20-CV-03404-K, 2022 WL 19763245 (N.D. Tex. Aug. 11, 2022) (Kinkeade, J.) ........... 4

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ........................................................................................... 4, 5, 6

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005) .................................................................................... 10

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*,
  24 F.4th 491 (5th Cir. 2022) ...................................................................................... 6

*Delta Brands Inc. v. Danieli Corp.*,
  99 F. App'x 1 (5th Cir. 2004) .................................................................................... 7

*Dickson Marine Inc. v. Panalpina, Inc.*,
  179 F.3d 331 (5th Cir. 1999) ..................................................................................... 9

*GE v. Bucyrus-Erie Co.*,
  550 F. Supp. 1037 (D.C.N.Y. 1982) ........................................................................ 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) .................................................................................................. 4

*GTE New Media Servs., Inc. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) .............................................................................. 10

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
  921 F.3d 522 (5th Cir. 2019) ..................................................................................... 4

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ................................................................................... 10

*Logan Int'l Inc. v. 1556311 Alberta Ltd.*,
  929 F. Supp. 2d 625 (S.D. Tex. 2012) ...................................................................... 1

*Management Insights, Inc. v. CIC Enterprises, Inc.*,
  194 F. Supp. 2d 520 (N.D. Tex. 2001) (Lynn, J.) .................................................. 10

*Monkton Ins. Servs., Ltd. v. Ritter*,
  768 F.3d 429 (5th Cir. 2014) ..................................................................................... 8

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
   No. 23-cv-0155, 2024 WL 1218573 (N.D. Tex., Mar. 21, 2024)............................................. 10

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   No. 3:00-CV-1165-D, 2000 WL 35615925,
   (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.), *aff'd*, 253 F.3d 865 (5th Cir. 2001)........................ 4

*Perkins v. Benguet Consol. Mining Co.*,
   342 U.S. 437 (1952) ....................................................................................................... 6

*Rumble, Inc., et al. v. World Federation of Advertisers, et al.*,
   No. 7:24-CV-0115-B, 2025 WL 2345076 (N.D. Tex. Aug. 13, 2025) ............................ 2, 7, 10

*Sinclair v. StudioCanal, S.A.*,
   709 F. Supp. 2d 496 (E.D. La. 2010)................................................................................ 8

**Statutes**

15 U.S.C. § 22 ...........................................................................................................9, 10, 11

28 U.S.C. § 1391 ............................................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................................ 4, 12

Fed. R. Civ. P. 4(k)(2) ......................................................................................................11

**Other Authorities**

*Elon Musk Moves X Headquarters from California to Texas,* Industry Insider (Sept. 20, 2024),
   https://insider.govtech.com/texas/news/elon-musk-moves-x-headquarters-from-california-to-texas.........................................................................................................................8

**DEFENDANT ØRSTED SERVICES A/S'S BRIEF IN SUPPORT OF**
<u>**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**</u>

To the Honorable Jane J. Boyle, United States District Judge:

Plaintiff X Corp. ("X") asks the Court to exercise personal jurisdiction over Defendant Ørsted Services A/S ("Ørsted Services")—a Danish company based in Denmark—based on virtually non-existent jurisdictional allegations. Indeed, X alleges **no direct contacts** between Ørsted Services and Texas; nor can it. As the Declaration of Ingrid Reumert makes clear, Ørsted Services has no corporate offices, employees, sales, manufacturing activities, bank accounts or other corporate assets or activities anywhere in Texas.

Instead, X alleges that the exercise of personal jurisdiction over Ørsted Services is appropriate based on its purported involvement in the alleged conspiracy to boycott advertising on the X platform. According to X, the World Federation of Advertisers ("WFA") and its initiative, the Global Alliance for Responsible Media ("GARM"), conspired with social media platforms, Ørsted Services, and other advertisers to withhold advertising revenue from X. X further alleges that this conspiracy had "foreseeable effects in the United States, including in this District." Second Amended Complaint ("SAC") ¶ 29.

But courts in the Fifth Circuit regularly reject such attempts to rely on participation in an alleged conspiracy as an independent basis to extend personal jurisdiction over a foreign defendant. As is well established, "[e]ach defendant's contacts with the forum must be analyzed individually, and a defendant cannot be subject to personal jurisdiction solely because he participated in an alleged conspiracy with a co-conspirator who had contacts with Texas." *Logan Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F. Supp. 2d 625, 630–31 (S.D. Tex. 2012). Indeed, this Court recently rejected a similar attempt in the *Rumble* matter to establish personal jurisdiction over non-resident defendants based on the aggregate contacts of alleged co-conspirators when the

1

plaintiff failed to specify who did what. *See Rumble, Inc., et al. v. World Federation of Advertisers, et al.,* No. 7:24-CV-0115-B, 2025 WL 2345076, at *4 (N.D. Tex. Aug. 13, 2025) (Boyle, J.). The same result is warranted here as X does not allege any specific contacts by Ørsted Services with Texas.

X also cannot establish jurisdiction over Ørsted Services through the in-forum activities of other distantly-related Ørsted entities. As Ørsted Services has no direct contacts with Texas, X seeks to attribute to Ørsted Services the jurisdictional contacts of "one or more [of Ørsted Services A/S's] wholly owned American subsidiaries." SAC ¶ 13. But those entities and their Texas contacts have no connection with X's claims, and Ørsted Services has no ownership stake in those entities. X alleges no basis to impute the unrelated contacts of these far-removed entities to Ørsted Services.

Finally, X cannot rely on Section 12 of the Clayton Act as an alternative basis to establish personal jurisdiction. "The structure and text of the statute establish that the Clayton Act only allows nationwide personal jurisdiction if the venue provision is satisfied." *Rumble, Inc.,* 2025 WL 2345076, at *7. Ørsted Services demonstrably is not found in the Northern District of Texas and does not do business in the Northern District of Texas. Ex. 1, Reumert Decl. ¶¶ 6–10. Therefore, the requirements of Section 12 of the Clayton Act are not satisfied and personal jurisdiction over Ørsted Services is precluded.

For these reasons and those described more fully below, X's claims against Ørsted Services should be dismissed for lack of personal jurisdiction.

## STATEMENT OF FACTS

Ørsted Services is a Danish corporation that maintains its principal place of business in Denmark. Ex. 1, Reumert Decl. ¶¶ 3, 4. It is a subsidiary of Ørsted A/S, which is the ultimate

Ørsted parent company.[1]  *Id*. ¶ 3. Ørsted Services is not registered to do business in Texas and has no employees or corporate officers, property, or bank accounts in Texas.  *Id*. ¶¶ 6–9.  Further, Ørsted Services has never paid taxes in Texas and maintains its books and records outside of Texas.  *Id*. ¶¶ 10, 12.  Ørsted Services maintains its own corporate records and financial statements outside of the state of Texas.  *Id*. ¶ 11. Ørsted Services' corporate officers make the decisions governing the company's day-to-day operations.  *Id*. ¶ 13.

Ørsted Services' alleged connection with the case facts bears no relationship to Texas. While the Second Amended Complaint cites multiple emails sent or received by Ørsted employees produced in connection with the inquiry conducted by the U.S. House of Representatives Judiciary Committee, those communications involved individuals located in Denmark and New York, not Texas. *Id*. ¶ 1; Dkt. 134, WFA App'x, Loerke Decl. ¶¶ 10, 22; *see* Dkt. 193, Joint Mot. Substitute, 2 ("[Ørsted A/S] represents and warrants that Ørsted Services A/S is the entity that employs the individuals referenced in X's complaint").

X also alleges that "[t]hrough one or more wholly owned American subsidiaries, Ørsted holds substantial investments in the United States, including wind farming facilities located throughout this District and in the Wichita Falls Division of this District, and transacts substantial business in this District."  SAC ¶ 13.  However, while these wind farming facilities are owned by two indirect and partially owned subsidiaries of Ørsted A/S (Western Trail Wind, LLC and Lockett Windfarm LLC), Ørsted Services has no ownership stake in these entities and is not involved in their day-to-day decision-making.  Ex. 1, Reumert Decl. ¶¶ 14–18.

---

[1] Ørsted A/S was the Ørsted entity originally named in this litigation.  On July 22, 2025, the parties jointly requested the court substitute Ørsted Services for Ørsted A/S in the SAC.  *See* Dkt. 193, Joint Mot. Substitute. The court granted the motion on July 29, 2025.  *See* Dkt. 203, Order. As a result of the substitution, allegations in the SAC previously asserted against Ørsted A/S now apply to Ørsted Services.

## LEGAL STANDARD

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a . . . tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "Because the Texas long-arm statute extends to the limits of federal due process, the [] inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019).

There are "two categories of personal jurisdiction" that a court may exercise. *Daimler*, 571 U.S. at 126. The first, general jurisdiction, is present "where a foreign corporation's continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler*, 571 U.S. at 127 (citation omitted). The second, specific jurisdiction, exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* (citation omitted).

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. Once a defendant has raised a jurisdictional defense, the plaintiff bears the burden of making a prima facie showing of personal jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990). In connection with the jurisdictional inquiry, "the Court is not required to give credit to conclusory allegations, even if they are uncontroverted." *Crown Distrib. LLC v. Peaceful Choice Distrib., LLC*, No. 3:20-CV-03404-K, 2022 WL 19763245, at *2 (N.D. Tex. Aug. 11, 2022) (Kinkeade, J.). To meet its burden, a plaintiff must present "***facts*** to make out a prima facie case supporting personal jurisdiction." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, No. 3:00-CV-1165-D, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (emphasis added), *aff'd*, 253 F.3d 865 (5th Cir. 2001).

4

X has not come close to satisfying this standard for Ørsted Services, which plainly is not subject to personal jurisdiction in this case.

## ARGUMENT

### I.    THERE IS NO BASIS TO EXERCISE GENERAL JURISDICTION OVER ØRSTED SERVICES.

For general jurisdiction to exist, a party must have "affiliations with the State [that] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 119 (citations omitted).  The Supreme Court in *Daimler* explained that, in all but the most exceptional circumstances, a corporation is "at home" only in its "place of incorporation and principal place of business." *Id.* at 139 & n.19.  These "affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* at 137.  Accordingly, limiting general jurisdiction to only those forums in which a corporation is "at home" allows corporations "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," while "afford[ing] plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 136–39 (citations omitted).

Critically, X concedes that Ørsted Services is a Danish corporation that maintains its principal place of business in Denmark.  SAC ¶ 13; Ex. 1, Reumert Decl. ¶¶ 3, 4.  There is also nothing remotely "exceptional" about X's jurisdictional allegations to warrant the exercise of general jurisdiction outside of Ørsted Services' "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 136–37.[2]  Contrary to X's false and conclusory assertion that

---

[2] The Supreme Court in *Daimler* further explained that, "in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19 (*citing Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437

Ørsted Services "transacts substantial business in this District" (SAC ¶ 13), Ørsted Services has no business presence in this District or anywhere else in Texas. *See* Ex. 1, Reumert Decl. ¶¶ 6–12.

Thus, because Ørsted Services is manifestly not "at home" in Texas, the exercise of general jurisdiction is precluded. *Daimler*, 571 U.S. at 136.

## II.    SPECIFIC JURISDICTION OVER ØRSTED SERVICES IS ALSO LACKING.

For specific jurisdiction to attach, "the defendant's ***suit-related*** conduct must create a substantial connection with the forum State" and "the relationship must arise out of contacts that the 'defendant ***himself*** creates with the ***forum State***." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphases added) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Only the defendant's contacts with the forum that are related to a cause of action are relevant to the analysis. *See Burger King*, 471 U.S. at 472.  Moreover, to establish specific jurisdiction, a plaintiff must point to the "allegedly tortious conduct [that] meaningfully connects [a defendant] to Texas." *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 498 (5th Cir. 2022).

Critically, X does not allege any suit-related contacts between Ørsted Services and Texas; nor can it.  Ørsted Services has no employees, offices, records, property, manufacturing, sales or other business operations in the State of Texas and X alleges no facts to the contrary. *See* Ex. 1, Reumert Decl. ¶¶ 6–12.  WFA also did not establish GARM in Texas, GARM was not created for the express purpose of targeting Texas companies or residents, and there are no allegations that Ørsted Services and other Defendants met in Texas for the purpose of furthering their conspiracy. Thus, any conduct by Ørsted Services relevant to this lawsuit all occurred ***outside*** of Texas.

---

(1952)).  This circumstance clearly does not apply to Ørsted  Services A/S, which does not operate in Texas in any capacity.

The crux of X's jurisdictional case against Ørsted Services is Ørsted Services' participation in the alleged group boycott conspiracy, which X maintains had "foreseeable effects in the United States, including in this District."  SAC ¶ 29.  But this Court squarely rejected similar attempts in the *Rumble* matter to invoke "conspiracy jurisdiction" over foreign defendants—i.e., the argument that a conspirator's in-forum contacts can be attributed to a co-conspirator, even where that co-conspirator has no jurisdictional contacts of its own.  *Rumble,* 2025 WL 2345076, at *4.  Indeed, the Fifth Circuit has been clear that to establish specific personal jurisdiction, a plaintiff must demonstrate "that [a defendant] individually, and not as part of the conspiracy, had minimum contacts with Texas."  *Delta Brands Inc. v. Danieli Corp.*, 99 F. App'x 1, 6 (5th Cir. 2004); *see Rumble,* 2025 WL 2345076, at *5 ("Rumble did not even experience its injuries in Texas because the three Rumble plaintiffs are not Texas citizens.").[3]  X has fallen woefully short of this standard as it does not allege ***any*** specific contacts between Ørsted Services and Texas.

Finally, X's dubious allegation that the alleged conspiracy had "foreseeable effects" in this District is of no consequence to the jurisdictional analysis because X does not distinguish between the conduct of any of the Defendants.  X "cannot establish that each Defendant has minimum contacts with Texas without saying what actions each Defendant specifically took and how each Defendant intended to affect business operations in Texas."  *See Rumble,* 2025 WL 2345076, at *4.  X has failed to meet its burden of establishing that Ørsted Services has minimum contacts with Texas as it does not allege any facts demonstrating that Ørsted Services intended to have (or

---

[3] The SAC cites various emails between Ørsted Services employees and WFA employees discussing GARM advertising standards and advertising on the X platform.  *See* SAC ¶¶ 117–118, 129, 131–132.  However, ***none*** of the individuals who sent, received or were referenced in those emails were located in Texas.  Ex. 1, Reumert Decl. ¶¶ 1, 8; Dkt. 134, WFA App'x, Loerke Decl. ¶¶ 10, 22.  These individuals were either based in international offices of Ørsted Services and WFA or in WFA's New York city office.  *See id.*

actually had) any effect on Texas. This omission is particularly noteworthy here, as X was not even based in Texas when the alleged misconduct by Ørsted Services is alleged to have occurred.[4]

Therefore, Ørsted Services has engaged in no suit-related contacts with this forum, and certainly no conduct that creates a "substantial connection" with the State of Texas. Courts in this Circuit regularly decline to exercise specific jurisdiction under such circumstances. *See, e.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433–34 (5th Cir. 2014) (no basis to exercise specific jurisdiction where defendant "has not purposefully availed itself of the benefits and protections of Texas law through minimum contacts related to the cause of action"); *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 510 (E.D. La. 2010) (dismissing for lack of jurisdiction because "it [wa]s clear from [defendant's] submitted declaration that [it] lacks any jurisdictional contacts sufficient to support either general or specific jurisdiction"). The same determination is warranted here.

## III. JURISDICTIONAL CONTACTS OF OTHER ØRSTED ENTITIES CANNOT BE ATTRIBUTED TO ØRSTED SERVICES.

To create the impression of a jurisdictional nexus where none exists, X seeks to attribute to Ørsted Services the unrelated business contacts of Ørsted entities in which Ørsted Services holds no ownership stake. More specifically, X alleges that "[t]hrough one or more wholly owned American subsidiaries, Ørsted [Services A/S] holds substantial investments in the United States, including wind farming facilities located through this District and in the Wichita Falls Division of this District, and transacts substantial business in this District." *See* SAC ¶ 13. But there is no

---

[4] X alleges that Ørsted Services' allegedly wrongful conduct occurred in late 2022 and early 2023. *See* SAC ¶¶ 117–118, 129, 131–132. But, at this time, X was headquartered in San Francisco, California; X did not move its headquarters to Texas until September 2024. *Elon Musk Moves X Headquarters from California to Texas,* INDUSTRY INSIDER (Sept. 20, 2024), https://insider.govtech.com/texas/news/elon-musk-moves-x-headquarters-from-california-to-texas.

legitimate basis alleged in the Second Amended Complaint that would warrant the attribution of such contacts to a foreign entity several corporate layers removed from those assets, like Ørsted Services; nor is the ownership of wind farming facilities in any way related to the group boycott conspiracy that X alleges.

As explained in the Reumert Declaration, the wind farms referenced in paragraph 13 of the Second Amended Complaint are owned by Western Trail Wind, LLC and Lockett Windfarm LLC. Ex. 1, Reumert Decl. ¶ 14. These entities are wholly owned indirect subsidiaries of Ørsted A/S, the Ørsted parent company. *See id*. ¶¶ 15–17. Ørsted Services is a separate subsidiary of Ørsted A/S and does not own any part of Western Trail Wind, LLC or Lockett Windfarm LLC. *Id*. ¶ 17. Ørsted Services has no involvement in Western Trail Wind, LLC or Lockett Windfarm LLC, making it improper to impute any jurisdictional contacts of these entities to Ørsted Services. *See id*. ¶ 18. X does not even attempt in the SAC to connect the two wind farming facilities to the exercise of personal jurisdiction over Orsted Services. X's attempt to attribute the Texas contacts of these distantly-related affiliate companies to Ørsted Services should therefore be rejected. *See Dickson Marine Inc. v. Panalpina, Inc.,* 179 F.3d 331, 338 (5th Cir. 1999) ("Courts have long presumed the institutional independence of related corporations . . . when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts.").

## IV.    PERSONAL JURISDICTION OVER ØRSTED SERVICES CANNOT BE ESTABLISHED UNDER SECTION 12 OF THE CLAYTON ACT.

X alleges that the Court may also exercise "personal jurisdiction over each Defendant under Section 12 of the Clayton Act, 15 U.S.C. § 22." SAC ¶ 29. Section 12 of the Clayton Act provides that an action "against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process

in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22.

This court and other district courts in the Fifth Circuit have consistently held that nationwide service of process clause for personal jurisdiction under the Clayton Act applies only when the first clause dealing with venue (and where an action "may be brought") is satisfied. *See, e.g.*, *Rumble, Inc.,* 2025 WL 2345076, at *9 ("Section 12 of the Clayton Act only authorizes nationwide personal jurisdiction if the statute's special venue provision is satisfied."); *Mgmt. Insights, Inc. v. CIC Enters., Inc.*, 194 F. Supp. 2d 520, 530 (N.D. Tex. 2001) (Lynn, J.) ("operation of the [Clayton Act Section 12] statute is predicated upon proper venue"). The majority of other circuits that have addressed this issue are in accord. *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (holding that the "invocation of the nationwide service clause rests on satisfying the venue provision"); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423–24 (2d Cir. 2005) (same); *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 729 (7th Cir. 2013) (same).

Satisfying the venue provision of Section 12 requires a "show[ing] that Defendants either (1) inhabit; (2) 'may be found' in; or (3) 'transact[] business' in this District." *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 23-cv-0155, 2024 WL 1218573, at *2 (N.D. Tex., Mar. 21, 2024) (Kacsmaryk, J.). "Being an 'inhabitant' is held to mean incorporated under the laws of that jurisdiction[, while being] 'found' in a district is generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'" *Mgmt. Insights, Inc.*, 194 F. Supp. 2d at 532 (citing *Gen. Electric Co. v. Bucyrus-Erie Co.*, 550 F. Supp. 1037, 1041 n.5 (D.C.N.Y. 1982)).

X's allegations do not remotely satisfy any of these conditions as to Ørsted Services. As the Second Amended Complaint concedes, Ørsted Services is a Danish corporation that maintains its principal place of business in Denmark. SAC ¶ 13; Reumert Decl. ¶¶ 3, 4. Ørsted Services is not registered to do business in Texas and has no employees or other business assets in Texas, including in this District. Reumert Decl. ¶¶ 6–9. Therefore, Ørsted Services manifestly does not inhabit, is not found in, and does not transact business in this District, and exercise of personal jurisdiction under the Clayton Act is not permitted.[5]

### V.    X CANNOT ESTABLISH PERSONAL JURISDICTION OVER ØRSTED SERVICES IN TEXAS USING RULE 4(K)(2).

X also cannot rely on Federal Rule of Civil Procedure 4(k)(2) to hale Ørsted Services into court in Texas. Rule 4(k)(2) provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state. Fed. R. Civ. P. 4(k)(2); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004). However, a court may not use Rule 4(k)(2) to confer jurisdiction when a defendant concedes to jurisdiction in another state. *See Adams,* 364 F.3d at 651 ("[S]o long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction."). Here, Ørsted Services has acknowledged that its employees corresponded with WFA employees located in New York regarding X's compliance with the GARM Brand Safety Standards. *See* Dkt. 193, Joint Mot. Substitute, 2 ("[Ørsted A/S] represents and warrants that Ørsted Services A/S is the entity that employs the individuals referenced in X's complaint").

---

[5] For these same reasons, Ørsted Services does not have sufficient minimum contacts with this or any other District in Texas that could satisfy the requirements of the general venue statute 28 U.S.C. § 1391. *See* SAC ¶ 30 (alleging that venue is proper under 15 U.S.C. § 22 (the Clayton Act) and 28 U.S.C. § 1391).

For this reason, for the purposes of this litigation alone, Ørsted Services concedes that it may be sued in federal district court in New York.[6] This concession precludes any argument that jurisdiction is proper in this District under Rule 4(k)(2).

## CONCLUSION

Accordingly, Ørsted Services respectfully requests the Court grant this motion and dismiss the claims against Ørsted Services for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

---

[6] Ørsted Services does not concede, outside of these specific communications, that it otherwise has contacts with the United States as a whole sufficient to satisfy due process concerns. Ørsted Services' concession is limited to the specific facts of this case and should not be interpreted to concede contacts with the United States related to any other matter.

Dated: August 28, 2025

Respectfully submitted,

*/s/ Jason M. Powers*
Jason M. Powers
 Texas Bar No. 24007867
 jpowers@velaw.com
VINSON & ELKINS LLP
 845 Texas Avenue, Suite 4700
Houston, TX 77002
Phone (713) 758-2222

George M. Kryder
 Texas Bar No. 11742900
 gkryder@velaw.com
Avery Westerlund
 State Bar No. 24125453
 awesterlund@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, TX  75201-2975
Phone (214) 220-7700

Stephen Medlock (admitted *pro hac vice*)
 D.C. Bar No. 995636
 smedlock@velaw.com
Adam Hudes (admitted *pro hac vice*)
 D.C. Bar No. 495188
 ahudes@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW, Suite 500 West
Washington, DC 20037
Phone (202) 639-6578

*Attorneys for Defendant Ørsted Services A/S*

13

## CERTIFICATE OF SERVICE

I certify that, on August 28, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

*/s/Jason M. Powers*
Jason M. Powers