**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**


|  |  |
|---|---|
| X CORP.,<br><br>*Plaintiff,*<br><br>v.<br><br>WORLD FEDERATION OF ADVERTISERS; MARS, INCORPORATED; CVS HEALTH CORPORATION; ØRSTED A/S; NESTLÉ S.A.; NESTLE USA, INC.; ABBOTT LABORATORIES; COLGATE-PALMOLIVE COMPANY; LEGO A/S; LEGO BRAND RETAIL, INC.; PINTEREST, INC.; TYSON FOODS, INC.; SHELL PLC; SHELL USA, INC. and SHELL BRANDS INTERNATIONAL AG,<br><br>*Defendants.* | Civil Action No. 24-cv-00114-B |

**DEFENDANTS MARS, INC., CVS HEALTH CORP., NESTLE USA, INC., ABBOTT
LABORATORIES, COLGATE-PALMOLIVE CO., LEGO BRAND RETAIL, INC.,
AND PINTEREST, INC.'S REPLY BRIEF IN SUPPORT OF
<u>MOTION TO TRANSFER</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

I.      This Case Has No Connection to This District. .................................................. 2

II.     Recent Caselaw Supports Transfer. ................................................................... 4

III.    The Forum Selection Clause in X's Terms of Service Does Not Apply. ........... 5

IV.     This Case Could Have Been Brought in the Southern District of New York ...... 8

V.      The Southern District of New York is Clearly More Convenient, and the
        Private Factors Weigh in Favor of Transfer. .................................................. 10

VI.     The Public Interest Factors Support Transfer. ................................................ 14

VII.    At a Minimum the Case Should be Transferred to Dallas. .............................. 15

CONCLUSION ................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*AdTrader, Inc. v. Google LLC*,
   2020 WL 1922579 (N.D. Cal. Mar. 24, 2020) ...........................................................................5

*Blair v. Tyson Foods, Inc.*,
   2021 WL 2711441 (E.D. Tex. July, 1, 2021) ...........................................................................15

*Child.'s Health Def.. v. WP Co.*,
   2023 WL 3940446 (N.D. Tex. May 12, 2023) .........................................................................11

*Cortex MCP, Inc. v. Visa, Inc.*,
   2023 WL 11990868 (W.D. Tex. Nov. 3, 2023) ...................................................................12, 13

*Defense Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) ......................................................................................................4

*Dennis v. JPMorgan Chase & Co.*,
   343 F. Supp. 3d 122 (S.D.N.Y. 2018) ......................................................................................8,9

*Entangled Media, LLC v. Dropbox, Inc.*,
   2023 WL 11922497 (W.D. Tex. June 30, 2023) ......................................................................12

*Est. of Bentley v. Marriott Int'l Inc.*,
   2015 WL 5836256 (N.D. Tex. Oct. 2, 2015) ...........................................................................14

*Expoconsul Int'l, Inc. v. A/E Sys., Inc.*,
   711 F. Supp. 730 (S.D.N.Y. 1989) .............................................................................................8

*Fare Techs. LLC v. Lyft, Inc.*,
   2023 WL 4878823 (W.D. Tex. July 31, 2023) ...........................................................................3

*Forrest v. Meta Platforms, Inc.*,
   737 F. Supp. 3d 808 (N.D. Cal. 2024) .......................................................................................5

*In re Apple Inc.*,
   2022 WL 1676400 (Fed. Cir. May 26, 2022) ..........................................................................14

*In re Chamber of Commerce*,
   105 F.4th 297 (5th Cir. 2024) .......................................................................................4, 14, 15

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) ..............................................................................................4, 14

*In re Planned Parenthood Fed'n of Am., Inc.*,
   52 F.4th 625 (5th Cir. 2022) ......................................................................................................4

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ...........................................................................2, 3, 4, 12

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ....................................................................................4, 15

*In re Yahoo! Inc.*,
    313 F. App'x 722 (5th Cir. 2009) ..................................................................................5

*LevelFields, Inc. v. Reddit, Inc.*,
    2024 WL 5161951 (N.D. Cal. Dec. 17, 2024) ...............................................................5

*Licensed Prac. Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*,
    131 F. Supp. 2d 393 (S.D.N.Y. 2000) ...........................................................................7

*Metroplex Commc'ns, Inc. v. Meta Platforms, Inc.*,
    2024 WL 940127 (S.D. Ill. Mar. 5, 2024) .....................................................................5

*Moates v. Facebook Inc.*,
    2021 WL 3013371 (E.D. Tex. May 14, 2021) .................................................................7

*Qualls v. Prewett Enterprises, Inc.*,
    594 F. Supp. 3d 813 (S.D. Tex. 2022) ....................................................................11, 14

*Salinas v. O'Reilly Auto., Inc.*,
    358 F. Supp. 2d 569 (N.D. Tex. 2005) .........................................................................10

*Sargent v. Sun Tr. Bank, N.A.*,
    2004 WL 1630081 (N.D. Tex. July 20, 2004) ...............................................................11

*SEC v. Coldicutt*,
    2013 WL 944550 (E.D. Tex. Feb. 8, 2013) .....................................................................3

*Seeberger Enters., Inc. v. Mike Thompson Recreational Vehicles, Inc.*,
    502 F. Supp. 2d 531 (W.D. Tex. 2007) .........................................................................11

*Smith v. Lucent Techs., Inc.*,
    2004 WL 515769 (E.D. La. Mar. 16, 2004) ...................................................................5

*TradeComet.com LLC v. Google, Inc.*,
    693 F. Supp. 2d 370 (S.D.N.Y. 2010) ............................................................................7

*Universal Grading Serv. v. eBay, Inc.*,
    2009 WL 2029796 (E.D.N.Y. June 10, 2009) ................................................................7

*USPG Portfolio Two, LLC v. John Hancock Real Est. Fin., Inc.*,
    2011 WL 1103372 (N.D. Tex. Mar. 25, 2011) ..............................................................14

*USTA Tech., LLC v. Google LLC*,
    2023 WL 4833481 (W.D. Tex. July 26, 2023) ...................................................................2, 10

*Van Rooyen v. Greystone Home Builders, LLC*,
    295 F. Supp. 3d 735 (N.D. Tex. 2018) ........................................................................................9

## INTRODUCTION

It would be vastly more convenient to litigate this dispute in the Southern District of New York. The single most important transfer factor—witness convenience—strongly favors transfer. X does not contest that New York is home to the co-founder of GARM, whom X alleges "was part of every significant decision made by GARM," Second Amended Complaint ("SAC") ¶ 38, and who was included on virtually every email on which it relies, *see id*. Exs. A-F. Nor does X dispute that the SDNY would be more convenient for most relevant witnesses, including the many non-party witnesses located there. In contrast, X fails to identify a single relevant witness located in the Northern District of Texas, much less in the Wichita Falls Division. That is reason enough to grant the motion, especially where the other factors either support transfer, or are neutral.

X stresses its newfound identity as a "Texas company." Opp. 1. But X cannot dispute that during the relevant time and when it filed this lawsuit, it was headquartered in California. And X is still not headquartered in this District; X filed suit in a District and Division with no connection to the case. X's Opposition resorts to misdirection, casting the Motion as relying on caselaw from a bygone era and raising a forum selection clause in inapplicable Terms of Service. X's arguments are wrong. The Motion establishes that transfer is warranted under the Fifth Circuit's longstanding transfer inquiry. And X cites irrelevant Terms of Service that apply to *users*, not *advertisers*, while ignoring its separate Master Services Agreement ("MSA") with advertisers. Assuming for the sake of argument the MSA is valid and enforceable,[1] it would not require parties to litigate here.

Similarly, X attempts to persuade the Court that transfer would be too complex given the presence of foreign defendants. But the presence of those defendants, over which this Court cannot exercise jurisdiction, is a reason to transfer the case. X describes GARM, alleged to be the central

---

[1] The current version of the MSA is attached to this Reply. Movants do not concede that the Terms of Service or the MSA is valid and enforceable and assume so here only for the sake of argument.

figure in this conspiracy, as "a committee of WFA." SAC ¶ 11. WFA only has office space in New York. In addition, X's argument is belied by its theory that the foreign parties are subject to *nationwide* jurisdiction. Thus, even if the Court finds jurisdiction (as X argues), then the Court can transfer the entire case. And if the Court does not find jurisdiction, it can transfer the remaining parties. In either case, this issue is not complex.

Ultimately, New York is a more convenient forum. The case should be transferred.

## I.    This Case Has No Connection to This District.

No party has a principal place of business in this District, and none of the events the SAC focuses on occurred here. X does not dispute that or put forth any facts to demonstrate a connection to this District. Instead, X focuses on Texas generally. Opp. 1-5. X is wrong to "compar[e] Texas" with New York "when it should [] be[] comparing" this District to the SDNY. *In re TikTok, Inc.*, 85 F.4th 352, 359 (5th Cir. 2023); *see also USTA Tech., LLC v. Google LLC*, 2023 WL 4833481, at *4 (W.D. Tex. July 26, 2023) (explaining "offices and witnesses" located in Texas, but not the same district where the action was filed, are "of little importance to the transfer analysis"). And even X's purported connections to Texas are vastly overblown.

As Movants explained, the SAC makes clear that this District is unconnected to the events that gave rise to this lawsuit, and X offers no facts to the contrary. Not a single GARM or Steer Team meeting is alleged to have occurred in this District. *See* Mot. 6. In contrast, Rob Rakowitz— whom X alleges is central to its misguided theories—is based in New York. SAC ¶ 38; *see also* Mot. 11. X claims that relevant advertising agencies happen to have Texas offices, Opp. 4-5, in addition to the New York offices that Movants identified, Mot. 14-15 n.13. But X does not identify a single relevant agency witness located in Texas, much less in this District. In fact, the only agency witness X identified in the SAC, Joe Barone, is located in New York. *See* Mot. 13. And

the Movants' declarations make clear that relevant agency witnesses and documents would not likely be in Texas.[2]

X emphasizes that it is now a Texas company, Opp. 1, 3-5, 22, but that is a red herring. X's recent move to Texas does not establish a connection to *this District*, and X's focus on its connections to Austin and Bastrop have nothing to do with Wichita Falls or any other location in this District. *See In re TikTok, Inc.*, 85 F.4th at 359. X does not dispute that it was headquartered in California during the relevant time period. Its Opposition claims that "the move to Texas was complete by the time the First Amended Complaint . . . was filed." Opp. 4. But by the time X filed its first Complaint, the relevant events had already happened. What is more, X's former employees who engaged in decision-making relevant to this case are not located in Texas or this District either, which is likely why X fails to identify any individuals located here. *See* Mot. 3.

Finally, no Defendant is located in this District. X first argues that Defendant Shell USA is located in Texas. Opp. 4. But Shell USA is not located in this District. SAC ¶ 23. X next identifies, for the first time, non-party Kimberly-Clark as "a GARM-member advertiser." Opp. 4. But the Opposition offers no facts to explain why the Court ought to consider the location of Kimberly-Clark—which is not named a single time in the SAC—in deciding whether to transfer the case. *See, e.g.*, *Fare Techs. LLC v. Lyft, Inc.*, 2023 WL 4878823, at *1 (W.D. Tex. July 31, 2023) (granting motion to transfer where plaintiff "failed to identify any specific relevant employees or evidence in this District"); *SEC v. Coldicutt*, 2013 WL 944550, at *2 (E.D. Tex. Feb.

---

[2] *See* App. 75 (explaining any documents from agency related to Abbott "advertising on X/Twitter" would be with "agency partners outside of Texas"), 78 ("Mars worked with Essencemediacom representatives located in New, York, NY, the United Kingdom, and Chicago, IL."), 82 (explaining that any documents from an agency "relating to [CVS's] decision to stop advertising on Twitter" would be "at Universal McCann in New York, NY"), 86 ("[N]o individuals who reside in Texas were involved in any interaction—to the extent any such interaction occurred—with WFA, GARM, or advertising on X Corp. on behalf of Nestlé USA.").

8, 2013) ("In reviewing the [transfer] factors. . . , th[e] Court must look to facts which are a matter of record, not merely to assertions in the attorneys' briefs." (internal quotations and alterations omitted)).  Because X does not dispute that its alleged operative facts did not occur in this District, and X does not reside in this District, the Court should accord X's choice of forum little or no deference.  *See* Mot. 10-11.

## II.    Recent Caselaw Supports Transfer.

X erroneously characterizes the Motion as "from a bygone era," claiming that recent caselaw imposes a higher bar that Movants do not meet.  Opp. 1.  That is wrong.  None of the cases that X cites as evidencing a legal sea change purports to alter (i) the longstanding Fifth Circuit factor test inquiry which Movants applied; or (ii) the burden required to show that a transfer is in the interest of justice.  *See* Mot. 7-8 (citing *In re Chamber of Commerce*, 105 F.4th 297, 304 (5th Cir. 2024) and *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313-15 (5th Cir. 2008)).  To the contrary, all of the cases applied that same test.  *See In re Chamber of Commerce*, 105 F.4th at 305, 307 (citing *In re Volkswagen*, 545 F.3d at 315 and applying factor test); *In re TikTok, Inc.*, 85 F.4th at 358-59 (same); *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) (same); *Defense Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (same); *In re Clarke*, 94 F.4th 502, 508-09 (5th Cir. 2024) (same).[3]

---

[3] The denial of a motion to transfer in *X Corp. v. Media Matters for America*, does not alter the legal landscape either.  4:23-cv-01175-O (N.D. Tex. Sept. 16, 2025) (O'Connor, J.) (ECF 242).  There, unlike here, the defendants "waited over 500 days and filed 11 motions before moving to transfer."  *Id.* at 10.  Moreover, the "geographical spread" of witnesses there weighed against transfer because many more "key witnesses" (e.g., "four out of [] Media Matters's five executives") allegedly lived on the coast opposite the transferee district than in the transferee district.  *Id.* at 8-9.  But here WFA has office space in the transferee district, and Defendants identified many more witnesses within or closer to the transferee district, including international witnesses (which were not at issue in *Media Matters*).

Movants applied the Fifth Circuit's precedential private-and-public-factors test for transfer, and under that standard, the Court should transfer this case.

### III. The Forum Selection Clause in X's Terms of Service Does Not Apply.

With no credible opposition to transfer, X asserts that a forum selection clause in its User Agreement's Terms of Service ("Terms") somehow requires certain Defendants to litigate this dispute here. *See* Opp. 6-13. But separate terms, like the Master Services Agreement ("MSA"), govern advertising on the platform. *See* App. 98-120. X oddly never mentions the MSA (or other advertiser-specific agreements). Assuming for the sake of argument that the MSA is valid and enforceable, *see supra* n.1, nothing in it would bind Defendants to litigate here.

*First*, the Terms apply only to the *use* of X, and X's claims are unrelated to Defendants' conduct on their *user* accounts. The lawsuit "would exist even if" Defendants had not supposedly entered into user agreements. *Metroplex Commc'ns, Inc. v. Meta Platforms, Inc.*, 2024 WL 940127, at *5 (S.D. Ill. Mar. 5, 2024) (concluding advertiser that asserted claim as Meta competitor was not subject to arbitration clause in Meta's commercial terms of service). X's claims do "not depend on [any] contractual relationship" described in the Terms or "require interpretation of the" Terms. *In re Yahoo! Inc.*, 313 F. App'x 722, 723 (5th Cir. 2009). Moreover, X's claims involve "different operative facts than would exist" in "a breach of contract claim" under the Terms. *Id.* at 723. Thus, the forum selection clause in the Terms cannot apply. *See, e.g., id.*; *Smith v. Lucent Techs., Inc.*, 2004 WL 515769, at *10 (E.D. La. Mar. 16, 2004) (holding forum selection clause applied to claims "arising . . . from the business relationship evidenced by the contract").[4]

---

[4] Other courts have recognized that similar online platforms operate under separate agreements for users as opposed to advertisers. *See, e.g., Forrest v. Meta Platforms, Inc.*, 737 F. Supp. 3d 808, 814 (N.D. Cal. 2024) (recognizing advertisers and users "must agree to different terms"); *AdTrader, Inc. v. Google LLC*, 2020 WL 1922579, at *9 (N.D. Cal. Mar. 24, 2020) ("AdTrader must have an AdWords advertiser account subject to Google's Advertising Program Terms for the United States[.]"); *LevelFields, Inc. v. Reddit, Inc.*, 2024 WL 5161951, at *1 (N.D. Cal. Dec. 17,

5

X argues that the Terms's forum selection clause would apply "broadly to '[a]ll disputes related to' the Services," Opp. 11, and since "Services" includes "ads," "disputes relating to the purchase of advertising" are subject to the clause.  Opp. 6-7, 11.  But the Terms purport to govern "*users*' access to and use of [X's] services" and differentiate between "use" of X and advertising on X.  For example, the Terms provide that:  "X and . . . third-party providers and partners may display advertising to" users, Opp. App. 142, and that X and providers "may place advertising on the Services or in connection with the display of Content or information from the Services," Opp. App. 147.  Since "Services" includes only an X *user's* consumption of advertising, not an advertiser's purchase of advertising, Defendants' decisions as to whether to purchase advertising on X would fall outside the scope of Services altogether.[5]  The MSA itself makes this clear:  "The Agreement constitutes the entire agreement and understanding between you and us regarding the subject matter contained herein."  App. 108.

*Second,* the Terms state that the MSA, not the Terms, govern the use of advertising features, providing:  "If you use advertising features of the Services, you agree to our Master Services Agreement (https://ads.x.com/terms)."  Opp. App. 147.  It is no coincidence that the URL for the MSA features the word "ads."  The MSA makes clear that it is meant to address advertising, repeatedly referencing an "Insertion Order," which is an agreement between an advertiser and a publisher to run an advertising campaign.  *See, e.g.*, App. 99, 102, 108, 110.  The MSA also includes numerous provisions expressly about advertising,[6] including an entire section devoted to

---

2024) (relevant agreement for advertiser on Reddit was the "the Reddit Ad Platform Agreement").

[5] X also claims that "Twitter was used by the conspirators to communicate the terms of the alleged conspiracy."  Opp. 11.  But the claims at issue here pertain to advertising on X, not using it.  And the SAC focuses primarily on Defendants' statements through other channels, like a "public letter," SAC ¶ 96, agency announcements, *id*. ¶¶ 104-105, and emails, *id*. ¶¶ 111-120.  Even if any statements on X were relevant, only the substance of those messages would be relevant, not the medium conveying them.  And those few statements could not bind all Defendants to a forum.

[6] *See, e.g.*, App. 110 ("If you are an advertising agency, search engine marketer, reseller, or other

"X ADS PROGRAM T&Cs." *Id.* at 111. In short, unlike the Terms, the MSA purports to govern X's advertising relationships. X's cited cases underscore that if any agreement applied here, it would be the MSA or other advertising-related agreements, not the Terms. For example, *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 379-80 (S.D.N.Y. 2010), enforced the forum-selection clause with respect to antitrust claims in the Google AdWords agreement, not the generic Google user terms of service.[7]

The MSA notably has no forum-selection clause. Instead, it contains a choice-of-law and arbitration provision that applies to "any dispute relating" to "[t]he terms of the Agreement." App. 107. But even assuming the arbitration provision would otherwise apply, by filing a lawsuit in this District, X has waived any right it might have had to rely on that provision.

*Third*, until November 15, 2024—long after X filed its original Complaint and three days before X Corp. filed its First Amended Complaint—all of X's prior Terms included forum selection clauses consenting to jurisdiction in federal courts in San Francisco, California. *See* Opp. App., Ex. 1 ¶¶ 9-13, Exs. A-E. X concedes that it sued CVS and Mars when the prior Terms would have been in effect. Opp. 9. For those Movants, then, even assuming the forum selection clause could apply to advertising, the proper forum would have been in California. By filing here, X waived any right to rely on the forum selection clause in its Terms. *See, e.g.*, *Licensed Prac. Nurses, Technicians & Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp.

---

entity representing Advertisers ('Representative'), this Section 21 applies, and in such case, 'you' and 'your' means Representative, and any Affiliates of Representative who execute an Insertion Order, together with Advertisers. 'Advertiser(s)' means an entity (including a sole proprietor) which is/will be enrolled in a Program by you.").

[7] X claims that Sherman Act claims are covered by the forum-selection clause. But X relies on cases about *user* features of platforms, not advertising. *See, e.g.*, *Moates v. Facebook Inc.*, 2021 WL 3013371, at *1, *9 (E.D. Tex. May 14, 2021) (explaining claims "concern[ed] [] Facebook accounts"); *Universal Grading Serv. v. eBay, Inc.*, 2009 WL 2029796, at *15 (E.D.N.Y. June 10, 2009) (explaining claim about sale of coins on eBay was covered by eBay User Agreement).

2d 393, 410 (S.D.N.Y. 2000) ("By bringing suit in New York in violation of the forum-selection clause, plaintiff . . . waived any right to insist on its enforcement.").

There is no valid forum selection clause requiring the parties to litigate in this District.

## IV.    This Case Could Have Been Brought in the Southern District of New York.

X incorrectly claims this case could not have been brought in the SDNY. Opp. 14-16. Like this District, the SDNY has subject matter jurisdiction over this case. *See* Mot. 8-9. And to the extent any U.S. court has jurisdiction over WFA, the right court to decide that would be the SDNY due to the case's and WFA's stronger connections to that venue. *See* Mot. 10. X tries to ignore WFA altogether for transfer purposes, but its allegations paint WFA as the central party in the case. And X has no response to what clearly follows: WFA is critical to the dispute. X claims that the SDNY's "jurisdiction over . . . WFA has not been shown." Opp. 15. But the SDNY is *the only district* in which WFA has office space in the U.S. *See* Mot. 20. And it *is the only district* with GARM co-founder, Rakowitz, who, according to the SAC, "was part of every significant decision made by GARM," SAC ¶ 38, and was included on most emails cited therein, *see id.*, Exs. A-F. There is no dispute that WFA's office space and this key witness are in the SDNY, not here.

As to the domestic defendants, X asserts without explication or any supporting authority that Movants' showing is inadequate. *See* Opp. 15-16. But as Movants explained, no domestic defendant has contested personal jurisdiction in this case, and personal jurisdiction attaches under the Clayton Act in any venue where a defendant does "practical, everyday business" that "is not insubstantial." *Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 733 (S.D.N.Y. 1989).[8]

The only domestic Defendant X addresses specifically is Pinterest, arguing that its "office is by itself insufficient," and citing *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 199-

---

[8] To the extent the Court finds that the case could not have been brought in the SDNY as to any party, the Court can sever that party and transfer the remaining parties. *See* Mot. 9 n.12.

200 (S.D.N.Y. 2018).  But that case is inapposite.  In *Dennis*, the allegation that one defendant had an office in New York was "challenged directly" by declaration, and the court found that defendant merely held investments in subsidiaries that did business in the United States.  *Id*.  Another defendant had a "Foreign Representative Office" in New York and did not conduct any activities there.  *Id*.  Here, X has not challenged the existence of Pinterest's New York office, much less introduced evidence that it is held by a subsidiary or foreign representative (it is not).  The authoritative declaration from Pinterest prevails.

In arguing that the case could not have been filed in the SDNY, X focuses on the foreign defendants, *see* Opp. 14-15, and claims that the jurisdictional motions create practical problems that weigh against transfer.  Opp. 20-22.  But the lack of personal jurisdiction over those defendants should not weigh against transfer because the proper resolution of this case as to those defendants is dismissal regardless of the venue.  If the Court agrees with Defendants that this Court *cannot* exercise personal jurisdiction over the foreign defendants, then there is no issue.  The Court can dismiss those defendants and transfer the case.  Even if the Court disagrees and finds personal jurisdiction over the foreign defendants here, any theory of nationwide jurisdiction—which are X's primary jurisdictional theories, *see* Dkt. 194—supporting that conclusion would apply equally to New York, and the Court should transfer to the SDNY.  *See, e.g.*, *Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 750 (N.D. Tex. 2018) (Fitzwater, J.) (denying motions to dismiss for lack of personal jurisdiction and granting transfer).  In short, the Court has multiple avenues available to it to effectuate a transfer.  The only option that would not make sense in light of these practical considerations is keeping the case in this District.

**V.     The Southern District of New York is Clearly More Convenient, and the Private Factors Weigh in Favor of Transfer.**

The four private factors—access to sources of proof, availability of compulsory process, witness convenience, and other practical considerations—weigh in favor of transfer.

With regard to sources of proof, X tries to twist Defendants' argument regarding documents at their headquarters, suggesting that this means there are no documents in New York. Opp. 16-17.  X misses the forest for the trees; the point is that the headquarters and documents are closer to New York, which X cannot deny.  *See* Mot. 12 & Ex. A.  X tosses up a conclusory assertion that Movants' testimony regarding documents at their New York advertising agencies is too "vague," Opp. 17, but ignores that the testimony makes clear the documents would pertain to Defendants' decisions to advertise on X, i.e., the core issue in the case, *id.*

With respect to the private factors related to non-party and party witnesses, X does not supply any evidence that this District would be a more convenient forum.  Instead, X tries to undercut the significance of the undisputed evidence Movants put forth.  Its arguments on that score are unpersuasive.  "The convenience of witnesses is oft-considered the most important factor in the transfer analysis."  *Salinas v. O'Reilly Auto., Inc.*, 358 F. Supp. 2d 569, 572 (N.D. Tex. 2005) (Boyle, J.).  Movants are unaware of even a single potential witness in this District, and X has failed to identify one.  Movants identified a number of witnesses who either reside in the SDNY or for whom that District would be more convenient.  This factor thus weighs decisively in favor of transfer.  *See USTA Tech.*, 2023 WL 4833481, at *4 (finding convenience of witnesses "strongly favor[ed] transfer" where "no known witnesses reside[d]" in transferor district).  X wrongly minimizes the importance of both the witnesses identified in the Motion and the importance of their convenience in multiple ways.

*First*, X ignores two witnesses that Movants identified: Rob Rakowitz and Brad Santeler. The SAC characterizes Rakowitz as "the Initiative Lead for GARM" who "was part of every significant decision made by GARM," and alleges that he "works in WFA's New York office." SAC ¶ 38. Given Rakowitz's purported centrality to the case, his availability and convenience are paramount. Mot. 16-17; *Child.'s Health Def. v. WP Co.*, 2023 WL 3940446, at *2 (N.D. Tex. May 12, 2023) (Kacsmaryk, J.); *Qualls v. Prewett Enterprises, Inc.*, 594 F. Supp. 3d 813, 824 (S.D. Tex. 2022). Santeler, retired Senior Director, Marketing Management at Abbott Laboratories, participated in GARM calls from Illinois and now resides in Wisconsin. App. 075. For Santeler, like for Rakowitz, New York would be more convenient. *See* Mot. 17.

*Second*, X implores the Court to ignore the remaining non-party witnesses. As to the three non-party witnesses located in the SDNY—Joe Barone, Delaney Goodwin, and Bill Tucker—X suggests their convenience is unimportant because of the availability of "videotaped testimony." *See* Opp. 18. X offers no support for that baseless contention, and there is none. If videotaped testimony could negate witness convenience, that would cut witness convenience out of the transfer inquiry entirely. That is not the law; live testimony is preferred for key witnesses. *See Sargent v. Sun Tr. Bank, N.A.*, 2004 WL 1630081, at *4 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (explaining that using depositions would deprive defendant of "benefit of presenting [witnesses] in a manner that would enable the jury to judge their demeanor in the personal setting of the courtroom," and finding location of witnesses factor "weigh[ed] in favor of" transfer); *Seeberger Enters., Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F. Supp. 2d 531, 539–40 (W.D. Tex. 2007) ("[D]eposition testimony is a poor substitute for live testimony.").

X erroneously claims that Norm De Greve is the only third party that Movants identified "who would be inconvenienced by trial in Texas instead of in New York," Opp. 20. That ignores Santeler, Barone, Goodwin, and Tucker. *See* Mot. 13-14; 17. And as to De Greve, X is wrong to

11

speculate that he is irrelevant because he may not have "unique information" or because CVS Health may not "still be in the case by the time of trial." *Contra* Opp. 20. "All potential material and relevant witnesses must be considered for the transfer analysis, irrespective of the centrality of their testimony to the issues raised in a case." *Entangled Media, LLC v. Dropbox, Inc.*, 2023 WL 11922497, at *4 (W.D. Tex. June 30, 2023).

*Third*, X is wrong that the Court should not consider the non-party advertising agency witnesses because Movants did not "identify which employees of those advertising agencies would be called to testify or what their testimony would relate to." Opp. 18. The declarations Movants submitted identified the role of each advertising agency as it relates to this case and made clear that relevant agency witnesses would not likely be in Texas—with one even specifying that the defendant worked with agency representatives in New York, the United Kingdom, and Chicago. *See supra* Section I. And the Court may still consider the location of likely witnesses even if no specific witness is identified anyway. *See, e.g.*, *Cortex MCP, Inc. v. Visa, Inc.*, 2023 WL 11990868, at *7 (W.D. Tex. Nov. 3, 2023) (agreeing third-party witnesses were "more likely in California than Texas" and concluding that weighed in favor of transfer).

*Fourth*, as to party witnesses, X wrongly implies that the Court should ignore all international witnesses for whom New York will be more convenient. Specifically, the Motion identifies Jacqueline Stephenson and Stephan Loerke (also identified in the SAC, *see* Dkt. 77-1). Setting those witnesses aside would be clearly inconsistent with Fifth Circuit precedent, which mandates that "when the distance between an existing venue for trial and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok, Inc.*, 85 F.4th at 361 (reversing denial of transfer where district court ignored 100-mile test and failed to recognize transferee district court would be more convenient for international witnesses).

*Fifth*, X ignores the convenience of its former employees. *See* Mot. 18. For example, X says nothing about Linda Yaccarino, X's former CEO, who is likely to testify about Twitter's ad sales, content moderation, and alleged damages. On information and belief, Yaccarino, now a non-party following her recent separation from X, is located in New York, NY. *See* Mot. 18-19; App. 122. Her presence as a non-party in New York only strengthens its gravitational pull.

In sum, X does not dispute the veracity of any of the factual support Movants relied on, instead relying only on faulty legal reasoning to minimize the importance of those witnesses. Nor does it attempt to respond to the chart in the Motion which provided objective measures for how much more convenient New York would be. *See* Mot. Ex. A. Witness convenience is the single most important factor in the transfer inquiry, and here, it clearly weighs in favor of transfer.

Relatedly, with regard to compulsory process, X does not contest that there is not a single significant witness who would be subject to compulsory process in this District (because there are no such witnesses in the District, much less Division). Mot. 12-14. X concedes that there are multiple witnesses in New York and argues only that the factor should get "less weight" since they may be willing to testify. Opp. 18. But even if Barone, Goodwin, Tucker, and Yaccarino ultimately are willing witnesses, that does not mean the Court should negate their convenience in the analysis. *See Cortex MCP, Inc.*, 2023 WL 11990868, at *5 (explaining although it was "not clear whether any former employees or third-party witnesses would be willing or unwilling to attend a trial in this case, . . . they [were] more likely to be willing to attend a trial closer to their home because it [would] require less travel and costs").

Finally, as for practical considerations, as discussed, they support transfer. *Supra* Section IV. In sum, all private factors decisively support transfer, including the most important factor.

## VI.    The Public Interest Factors Support Transfer.

The parties agree that two of four public interest factors are neutral.  Opp. 24.  As to the other two, first, X looks at the wrong metric to reach the erroneous conclusion that court congestion weighs against transfer.  Opp. 22.  Courts primarily consider time to disposition, not trial.[9]

Second, the fourth public interest factor—local interest—weighs in favor of transfer.  X's Opposition tries to excise Rakowitz from this case.  But the SAC alleges in no uncertain terms that he "co-founded GARM with WFA" and "was the Initiative Lead for GARM and was part of every significant decision made by GARM."  SAC ¶ 38.  And X alleges Rakowitz "works in WFA's New York office."  *Id*.  In X's own telling, therefore, the events giving rise to this action took place in and around the SDNY.  Mot. 21-22.  And "the significant connections between a particular venue and the events that gave rise to a suit," *In re Clarke*, 94 F.4th at 511 (citation omitted), are what matter most.  Indeed, "[t]he location of the alleged wrong is of primary importance."  *Qualls*, 594 F. Supp. 3d at 825 (quotations omitted).

X's arguments to the contrary are wrong.  First, *In re Chamber of Commerce* does not mandate a different conclusion.  There, the local interest factor was neutral because "a challenge to an agency's Final Rule" was "not a 'localized' case," because the rule was "designed to affect the entire nation."  105 F.4th at 308-309.  This case, in contrast, is about private parties' business decisions and their ramifications for one specific party (X).  Second, X argues the case concerns the "boycott of a Texas company."  Opp. 22.  But X was in California when it filed the case and still is not located in this District.  *E.g.*, *In re Apple Inc.*, 2022 WL 1676400, at *2 (Fed. Cir. May

---

[9] *See, e.g.*, *USPG Portfolio Two, LLC v. John Hancock Real Est. Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011) (Fitzwater, J.); *In re Chamber of Commerce*, 105 F.4th at 310.  Even if the Court were to consider time to trial, the factor would still be neutral, because, where, as here, both districts have "an average disposition time of less than three years . . . neither court can be characterized as 'congested.'"  *Est. of Bentley v. Marriott Int'l Inc.*, 2015 WL 5836256, at *5 (N.D. Tex. Oct. 2, 2015) (Boyle, J.) (citations omitted).

26, 2022) (trial court's holding that party's Western District of Texas headquarters supported local interest in Eastern District was a "clear abuse of discretion"). Third, X misunderstands Movants' argument with respect to the location of Defendants and advertising partners. Opp. 23-24. It is not the parties' connection to the SDNY that matters for this factor. What matters is the SDNY's deep interest in resolving a case concerning its well-known advertising industry. Mot. 21-22.[10]

## VII.  At a Minimum the Case Should be Transferred to Dallas.

There is no reason to keep the case in Wichita Falls, where none of the operative facts occurred and where there are no parties or non-party witnesses. X does not identify facts suggesting otherwise and cannot dispute that Dallas would be more convenient for all parties and the Court. Though X asks the Court to defer to its forum-shopped venue, Opp. 24-25, X receives "less [deference] for intra-district transfers," *Blair v. Tyson Foods, Inc.*, 2021 WL 2711441, at *3 (E.D. Tex. July, 1, 2021). At minimum, the Court should transfer this case to Dallas.

### CONCLUSION

For these reasons, the Court should transfer to the SDNY or, alternatively, to Dallas.

Dated: September 26, 2025

By:    /s/ *Nicholas Gamse*
  Nicholas Gamse (admitted *pro hac vice*)
    ngamse@wc.com
  Jonathan B. Pitt (admitted *pro hac vice*)
    jpitt@wc.com
  Kimberly Broecker (admitted *pro hac vice*)
    kbroecker@wc.com

---

[10] X claims that Texas has "articulated a strong local interest in prohibiting the demonetization of speech on social media platforms," including an active Texas Attorney General investigation. Opp. 22-23. But this factor examines "the interest of non-party citizens in adjudicating the case." *In re Chamber of Commerce*, 105 F.4th at 308. What matters is a forum's citizens' interest in the specific controversy, not the general subject matter of the litigation. *See id*. For example, in *In re Volkswagen*, the Court focused on the location of the specific car accident at issue, not on what jurisdictions might have a general interest in preventing car accidents. *See* 545 F.3d at 317-18.

Williams & Connolly LLP
680 Maine Avenue, SW
Washington, D.C. 20024
Phone: (202) 434-5000

Thomas C. Riney
  tom.riney@uwlaw.com
  Texas Bar. No. 16935100
C. Jason Fenton
  jason.fenton@uwlaw.com
  Texas Bar No. 24087505
Underwood Law Firm, P.C.
500 S. Taylor, Suite 1200
Amarillo, TX 79101
Phone: (806) 379-5613

*Attorneys for CVS Health Corporation*


*/s/ Karen Hoffman Lent*
Karen Hoffman Lent (admitted *pro hac vice*)
  karen.lent@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3276

Noelle M. Reed
  Texas Bar No. 24044211
  noelle.reed@skadden.com
Skadden, Arps, Slate, Meagher & Flom LLP
1000 Louisiana Street, Suite 6800
Houston, TX 77002
Phone: (713) 655-5122

*/s/ Ralph H. Duggins*
Ralph H. Duggins
  Texas Bar No. 06183700
  rduggins@canteyhanger.com
Philip Vickers
  Texas Bar No. 24051699
  pvickers@canteyhanger.com
Kate Hancock
  Texas Bar No. 24106048
  khancock@canteyhanger.com
Cantey Hanger LLP

16

—

600 West 6th Street, Suite 300
Fort Worth, TX 76102
Phone: (817) 877-2800

*Counsel for Mars, Incorporated*


*/s/ Russ Falconer*
Russ Falconer
    Texas Bar No. 24069695
    RFalconer@gibsondunn.com
Scott Hvidt
    Texas Bar No. 24097864
    SHvidt@gibsondunn.com
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Phone: (214) 698-3100

Gregg Costa
    Texas Bar No. 24028160
    GCosta@gibsondunn.com
Prerak Shah
    Texas Bar No. 24075053
    PShah@gibsondunn.com
Gibson, Dunn & Crutcher LLP
811 Main Street, Suite 3000
Houston, TX 77002-6117
Phone: (346) 718-6600

*Attorneys for Defendant Nestlé USA, Inc.*


*/s/ William F. Cavanaugh, Jr.*
William F. Cavanaugh, Jr. (admitted *pro hac vice*)
    wfcavanaugh@pbwt.com
Christine Harper (admitted *pro hac vice*)
    charper@pbwt.com
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
Phone: (212) 336-2000

*/s/ Thomas M. Melsheimer*
Thomas M. Melsheimer
    Texas Bar No. 13922550

17

tmelsheimer@winston.com
Winston & Strawn LLP
2121 N. Pearl Street, 9th Floor
Dallas, TX 75201
Phone: (214) 453-6500

*Attorneys for Abbott Laboratories*


*/s/ Fred A. Rowley, Jr.*
Fred A. Rowley, Jr. (admitted *pro hac vice*)
    fred.rowley@wsgr.com
Wilson Sonsini Goodrich & Rosati
Professional Corporation
953 East Third Street, Suite 100
Los Angeles, CA 90013
Phone: (323) 210-2902

Jeffrey C. Bank (admitted *pro hac vice*)
    jbank@wsgr.com
Wilson Sonsini Goodrich & Rosati
Professional Corporation
1700 K Street, NW, 5th Floor
Washington, D.C. 20006
Phone: (202) 973-8800

Taylor M. Owings (admitted *pro hac vice*)
    towings@wsgr.com
Wilson Sonsini Goodrich & Rosati
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019
Phone: (212) 999-5800

Lars L. Berg
    Texas Bar No. 00787072
    lars.berg@kellyhart.com
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Phone: (817) 878-3524

*Counsel for Colgate-Palmolive Company*

18

/s/ *Chahira Solh*
Chahira Solh (admitted *pro hac vice*)
  csolh@crowell.com
Crowell & Moring LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Phone: (949) 798-1367

Sima Namiri-Kalantari (admitted *pro hac vice*)
  snamiri@crowell.com
Crowell & Moring LLP
515 South Flower Street, 41st Floor
Los Angeles, CA 90071
Phone: (213) 443-5564

Kenneth Dintzer (admitted *pro hac vice*)
  kdintzer@crowell.com
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 624-2561

Minoo Blaesche
  Texas Bar No. 24075102
  mblaesche@jw.com
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Phone: (214) 953-6051

*Attorneys for LEGO Brand Retail, Inc.*

/s/ *Brian E. Robison*
Brian E. Robison
  Texas Bar No. 00794547
  brian@brownfoxlaw.com
Michael L. Baum
  Texas Bar No. 24006815
  mbaum@brownfoxlaw.com
Paulette C. Miniter
  Texas Bar No. 24075153
  paulette@brownfoxlaw.com
C. Alan Carrillo
  Texas Bar No. 24109693
  alan@brownfoxlaw.com

Farwa Zahra
  Texas Bar No. 24134610
  farwa@brownfoxlaw.com
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
Phone: (214) 327-5000

*Attorneys for Defendant Pinterest, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Nicholas Gamse*
Nicholas Gamse

21