**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| X CORP., <br>                 *Plaintiff,* <br><br> v. <br><br> WORLD FEDERATION OF ADVERTISERS; MARS, INCORPORATED; CVS HEALTH CORPORATION; ØRSTED A/S; TWITCH INTERACTIVE, INC.; NESTLÉ S.A.; NESTLÉ USA, INC.; ABBOTT LABORATORIES; COLGATE-PALMOLIVE COMPANY; LEGO A/S; LEGO BRAND RETAIL, INC.; PINTEREST, INC.; TYSON FOODS, INC.; SHELL PLC; SHELL USA, INC. and SHELL BRANDS INTERNATIONAL AG, <br><br>                 *Defendants.* | Civil Action No. 7:24-cv-00114-B |

**<u>DEFENDANT NESTLÉ S.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

I.    THE COURT LACKS PERSONAL JURISDICTION OVER NESTLÉ S.A. UNDER RULE 4(K)(2) ............................................................................................ 1

    A.    Nestlé S.A. Lacks Minimum Contacts with the United States .............................. 2

        1.    X's Allegations About Nestlé S.A. Are Conclusory and Controverted by Nestlé S.A.'s Declarations ............................................... 3

        2.    X May Not Impute Non-Nestlé S.A. Contacts to Nestlé S.A. .................... 4

II.   THE CLAYTON ACT DOES NOT PROVIDE AN ALTERNATIVE BASIS FOR ASSERTING PERSONAL JURISDICTION OVER NESTLÉ S.A. ...................... 8

III.  THE COURT SHOULD DENY JURISDICTIONAL DISCOVERY ........................... 10

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3D Sys., Inc. v. Aarotech Lab'ys, Inc.*,
  160 F.3d 1373 (Fed. Cir. 1998)..........................................................................................5

*Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*,
  115 F. App'x 662 (5th Cir. 2004) ........................................................................................6

*In re Baby Food Prods. Liab. Litig.*,
  2025 WL 986959 (N.D. Cal. Apr. 2, 2025) ......................................................................2, 3

*Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*,
  406 U.S. 706 (1972).......................................................................................................9, 10

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985)............................................................................................................4

*Calder v. Jones*,
  465 U.S. 783 (1984).........................................................................................................4, 5

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)............................................................................................................8

*DDC Tech., LLC v. Structural Graphics, LLC*,
  2022 WL 17813705 (N.D. Tex. Dec. 19, 2022) (Boyle, J.) .............................................5, 10

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ..........................................................................................5

*Exeter Fin. Corp. v. Metro Auto Sales Inc.*,
  2018 WL 837696 (N.D. Tex. Feb. 12, 2018) (Boyle, J.)......................................................8

*Fuld v. Palestine Liberation Org.*,
  606 U.S. 1 (2025)................................................................................................................2

*Gigi's Cupcakes, LLC v. 4 Box, LLC*,
  2020 WL 1064852 (N.D. Tex. March 5, 2020) (Boyle, J.) ..................................................6

*Guidry v. U.S. Tobacco Co.*,
  188 F.3d 619 (5th Cir. 1999) ..............................................................................................7

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
  725 F.3d 718 (7th Cir. 2013) ..............................................................................................9

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    847 F.3d 1221 (10th Cir. 2017) ...................................................................................6

*Morris v. City of Ft. Worth*,
    2020 WL 870228 (N.D. Tex. Feb. 21, 2020)...............................................................1

*Nestlé USA, Inc. v. Crest Foods, Inc.*,
    2017 WL 3267665 (C.D. Cal. July 28, 2017)..............................................................2

*P & L Dev., LLC v. Gerber Prods. Co.*,
    715 F. Supp. 3d 435 ....................................................................................................2

*Pearson v. Shriners Hosps. for Child., Inc.*,
    133 F.4th 433 (5th Cir. 2025) ......................................................................................4

*Robert Yaquinto Printing Co. v. Fleer Skybox Int'l, L.P.*,
    2005 WL 8158550 (N.D. Tex. Dec. 20, 2005) ............................................................6

*Rumble, Inc. v. World Fed'n of Advertisers*,
    2025 WL 2345076 (N.D. Tex. Aug. 13, 2025) (Boyle, J.)..............................7, 9, 10

*Rush v. Savchuk*,
    444 U.S. 320 (1980)....................................................................................................4

*Saudi v. Northrop Grumman Corp.*,
    427 F.3d 271 (4th Cir. 2005) ......................................................................................1

*Walden v. Fiore*,
    571 U.S. 277 (2014)....................................................................................................4

*Weinberg v. NFL Players Ass'n*,
    2008 WL 4808920 (N.D. Tex. Nov. 5, 2008) (Boyle, J.) ...........................................6

**Statutes**

18 U.S.C. §§ 2333, 2334...................................................................................................2

28 U.S.C. § 1391(c)(3).....................................................................................................9

Clayton Act § 12, 15 U.S.C. § 22 ........................................................................8, 9, 10

Sherman Act, 15 U.S.C. §§ 1-38 .....................................................................................6

**Other Authorities**

Fed. R. Civ. P. 4(k)(2)..............................................................................................1, 2, 8

**INTRODUCTION**

Plaintiff X Corp.'s ("X") Consolidated Opposition ("Opp'n") provides no justification for subjecting Nestlé S.A. to personal jurisdiction in this action. Nestlé S.A.—a Swiss company headquartered in Switzerland—has no connection to the United States. It has no offices or employees in the United States; it is not licensed to conduct business in the United States; and it has not engaged in advertising, business, or sales activities in the United States. It does not market or advertise with X, formerly Twitter, and it does not control or direct the advertising activities of its subsidiaries. X presents no evidence controverting Nestlé S.A.'s specific denials in its declarations, but it insists that the Court should nevertheless exercise personal jurisdiction over Nestlé S.A. based on the alleged U.S.-related contacts of its affiliate, Nestlé USA, Inc. ("NUSA") and other co-defendants. For the reasons discussed below, X is wrong as a matter of law. Accordingly, the claims against Nestlé S.A. should be dismissed for lack of personal jurisdiction.

**ARGUMENT**

**I.   THE COURT LACKS PERSONAL JURISDICTION OVER NESTLÉ S.A. UNDER RULE 4(K)(2)**

X's reliance on Rule 4(k)(2)—forgoing any reliance on the Texas Long-Arm Statute—does not alter the conclusion that this Court lacks personal jurisdiction over Nestlé S.A.[1] Rule 4(k)(2) "does not operate to relax the [Due Process] requirement that the defendant's contacts with the forum be constitutionally sufficient." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005). As such, personal jurisdiction under this Rule is proper only if "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(B).

---

[1] X's failure to respond to Nestlé S.A.'s argument that the Court lacks personal jurisdiction over it under the Texas Long-Arm Statute effectively waives this argument as to Nestlé S.A. *See* Opp'n at 34-35 (cabining the application of the Texas Long-Arm Statute to WFA); *Morris v. City of Ft. Worth*, 2020 WL 870228, at *3 n.3 (N.D. Tex. Feb. 21, 2020) ("Failure to respond to arguments made in a motion to dismiss results in waiver of opposition.").

For the same reasons Nestlé S.A. is not subject to personal jurisdiction in Texas, it is not subject to personal jurisdiction anywhere in the United States. X has not alleged minimum contacts between Nestlé S.A. and the United States from which X's claims arise. This defect is fatal. X's attempts to aggregate or impute contacts through conspiracy jurisdiction are precluded by controlling Supreme Court and Fifth Circuit precedent. Numerous federal courts have dismissed claims against Nestlé S.A. in similar situations for lack of personal jurisdiction.[2] The same result is warranted here.

### A. Nestlé S.A. Lacks Minimum Contacts with the United States

X concedes there is no general jurisdiction over Nestlé S.A. *See* Opp'n at 8. For the Court to exercise specific jurisdiction over Nestlé S.A. under Rule 4(k)(2), X must show that Nestlé S.A. has sufficient contacts with the United States such that the exercise of personal jurisdiction would satisfy the Constriction's due process standard. For the reasons below, X has failed to do so.[3]

---

[2] *See, e.g.*, *P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435, 457 (granting Nestlé S.A.'s motion to dismiss for lack of personal jurisdiction, because plaintiff did "not [meet] its burden to show that Nestlé S.A. 'purposefully availed' itself of 'the privilege of doing business' in the United States"); *Nestlé USA, Inc. v. Crest Foods, Inc.*, 2017 WL 3267665, at *7-8 (C.D. Cal. July 28, 2017) (dismissing claims against Nestlé S.A. for lack of personal jurisdiction because allegations did not support a plausible inference that the Swiss entity directed its U.S. subsidiary's activities); *In re Baby Food Prods. Liab. Litig.*, 2025 WL 986959, at *4 (N.D. Cal. Apr. 2, 2025) (dismissing claims against Nestlé S.A. for lack of personal jurisdiction because Plaintiff failed to make a prima facie showing of jurisdictional facts in light of Nestlé S.A.'s sworn affidavits).

[3] X cites the Supreme Court's recent decision in *Fuld v. Palestine Liberation Org.*, 606 U.S. 1 (2025). Opp'n at 9, n.4. But that decision addressed the constitutionality of a statute, the Promoting Security and Justice for Victims of Terrorism Act (PSJVTA), that expressly subjected two enumerated entities to personal jurisdiction in the United States. *See* 18 U.S.C. §§ 2333, 2334. There is no personal jurisdiction-granting statute relevant here—and X does not cite one. X invokes vague policy arguments, but *Fuld* rests on the authority of the political branches to enact a statute prescribing a personal jurisdiction standard, and that authority has not been exercised with respect to X's claims. Moreover, the Supreme Court indicated that such an exercise of federal authority could be subject to a reasonableness standard, *Fuld*, 606 U.S. at 23-24, and there is no reasonable justification for subjecting Nestlé S.A. to personal jurisdiction here.

### 1. X's Allegations About Nestlé S.A. Are Conclusory and Controverted by Nestlé S.A.'s Declarations

X alleges without support that Nestlé S.A. "served at relevant times on WFA's Executive Board[,]" "was a founding member of GARM[,]" and "served on the ANA Global CMO Growth Council." Opp'n at 3. On the basis of these supposed memberships, X alleges Nestlé S.A. participated in a conspiracy to boycott X's advertising services. It is uncontroverted, however, that Nestlé S.A. is *not* a member of the World Federation of Advertisers ("WFA"), the Global Alliance for Responsible Media ("GARM"), or the Association of National Advertisers ("ANA"). *See* Declaration of Silvan Jampen ("Jampen Decl.") ¶¶ 8-10, ECF No. 165. Moreover, Nestlé S.A. does not engage in marketing or advertising activities anywhere in the United States and Nestlé S.A. "does not market or advertise with X, formerly known as Twitter, in the United States or anywhere in the world." *Id.* ¶¶ 4, 11.

Aware that it has no facts about Nestlé S.A.'s activities in the United States, X contends instead that it has "[e]vidence that *a Nestlé entity* (i) was a founding member of GARM (ii) sat on WFA's Executive Board and (iii) participated in the ANA Global CMO Growth Council." Opp'n at 6 (citing X's Exhibits D, E, and G, ECF No. 195) (emphasis added). Evidence about "a Nestlé entity," however, is not evidence supporting personal jurisdiction over "Nestlé S.A." Indeed, X's exhibits do not support a plausible inference that Nestlé S.A. is involved in any of the alleged activities because none of its exhibits contain the name "Nestlé S.A."

Indeed, another federal district court recently held just that, rejecting a claim of personal jurisdiction over Nestlé S.A. because the plaintiffs' "proffered evidence conflat[ing] any usage of the word 'Nestlé' with the distinct corporate entity, Nestlé S.A. . . . does not support a *prima facie* showing that Nestlé S.A., specifically, conducted any relevant activities in the United States." *In re Baby Food Prods. Liab. Litig.*, 2025 WL 986959, at *6. That holding is particularly relevant

3

here because at least one of X's exhibits submitted in its effort to support personal jurisdiction over Nestlé S.A. names "Nestlé USA" instead. *See* X's Exhibit G (identifying members of "The Global GMO Growth Council Leadership Team"), ECF No. 195.

In addition to exhibits purporting to name "Nestlé" or "Nestlé USA" as members of WFA, GARM or ANA, X also submitted evidence about individuals who purportedly participated in WFA activities (Aude Gandon) or who communicated a "global recommendation" about advertising to Nestlé affiliates (Natalia Louzada). *See* X's Exhibits E, F, H, and I, ECF No. 195. Ms. Gandon and Ms. Louzada, however, have never worked for Nestlé S.A. *See* Supplemental Declaration of Jampen Silvan ¶¶ 3-5, Appendix ("App.") 002. (Aude Gandon and Natalia Louzada have "never been [] officer[s] or employee[s] of Nestlé S.A."). Their alleged activities or contacts with the United States are therefore irrelevant to Nestlé S.A. and cannot support a finding of personal jurisdiction over Nestlé S.A.

### 2. X May Not Impute Non-Nestlé S.A. Contacts to Nestlé S.A.

It is a bedrock principle of personal jurisdiction that "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984). A "defendant's suit-related conduct must create a substantial connection with the forum State" and "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). A plaintiff "may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 442 (5th Cir. 2025) (citing *Rush v. Savchuk*, 444 U.S. 320, 331-32

(1980)). With these principles as a backdrop, X has not articulated any viable theories to impute Nestlé S.A.'s affiliate's or co-defendants' contacts to Nestlé S.A. for personal jurisdiction.[4]

With respect to X's argument based on the alleged contacts of Nestlé S.A.'s affiliates, this Court has recognized that the "corporate form is not to be lightly cast aside," and the Court should "generally avoid imputing one corporate entity's contacts to an affiliated entity unless 'specific, unusual circumstances call for an exception.'" *DDC Tech., LLC v. Structural Graphics, LLC*, 2022 WL 17813705, at *6 (N.D. Tex. Dec. 19, 2022) (Boyle, J.) (citing *3D Sys., Inc. v. Aarotech Lab'ys, Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998)). X has not identified any Nestlé S.A. affiliate other than NUSA—and it has not advanced any arguments that could justify disregarding those companies' corporate separateness. Nor could it. Nestlé S.A. and NUSA "are separate companies that maintain separate books and accounting, file separate tax returns, have separate offices, and have separate employees, officers, and directors." Jampen Decl. ¶ 6. "Nestlé S.A. does not have any control over the day-to-day operations of NUSA." *Id*. And, critical to this case, "Nestlé S.A. does not control or direct the marketing or advertising activities of its subsidiaries. Nestlé S.A. does not instruct its subsidiaries to advertise or to refrain from advertising on any platform." *Id.*

---

[4] The Fifth Circuit's prohibition on aggregating contacts for personal jurisdiction is fatal to X's argument that the "effects test" under *Calder* establishes personal jurisdiction over Nestlé S.A. Opp'n at 12; 465 U.S. 783 (1984). As X concedes, for there to be purposeful direction under *Calder*, there must be "an intentional action [] expressly aimed at the forum [] with [the] knowledge that the brunt of the injury would be felt in the forum state." Opp'n at 13 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008)). X falters from the start. X has alleged no intentional actions attributable to Nestlé S.A. that are non-aggregated, nonconclusory, and uncontroverted by Nestlé S.A.'s specific disavowals. It is plainly insufficient for X to assert that "Movants" as a group "intentionally targeted their boycott against prominent American company X in the United States" without specifying *who* did *what* or *how*. Opp'n at 17; *see Pearson*, 133 F.4th at 442 (rejecting aggregated allegations). In the whole of X's discussion of *Calder*, spanning six pages, X mentions Nestlé S.A. by name zero times.

¶ 7. There is no basis for imputing NUSA's contacts to Nestlé S.A. for the purposes of personal jurisdiction.

Grasping at straws, X insinuates NUSA's contacts should be imputed to Nestlé S.A. based on a single enterprise theory grounded in the Sherman Act. Opp'n at 6-7, n.2 (citing *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1236 (10th Cir. 2017)). As X itself recognizes, however, the single enterprise theory relates to liability not jurisdiction. Opp'n at 7, n. 2. (discussing how "[p]roof of the *liability* of the individual components of the single entity . . . may be made by attributing the proof as to one member of the single entity against the others") (emphasis added). "Liability and personal jurisdiction are two separate questions in law, and the former does not establish the latter." *Robert Yaquinto Printing Co. v. Fleer Skybox Int'l, L.P.*, 2005 WL 8158550, at *2 (N.D. Tex. Dec. 20, 2005). As such, hypothetical liability under the single enterprise theory cannot support the Court's exercise of personal jurisdiction over Nestlé S.A.

Having no grounds to impute NUSA's contacts to Nestlé S.A. through its affiliate relationship, X argues that co-defendants' contacts may be imputed to Nestlé S.A. under "conspiracy jurisdiction." Opp'n at 18. But the Fifth Circuit and district courts within the Circuit have consistently held that conspiracy allegations do not provide grounds for imputing contacts among the alleged conspirators. *See, e.g.*, *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 666 n.16 (5th Cir. 2004) ("Bare allegations of conspiracy . . . do not suffice to establish minimum contacts for personal jurisdiction purposes."); *Gigi's Cupcakes, LLC v. 4 Box, LLC*, 2020 WL 1064852, at *7 (N.D. Tex. March 5, 2020) (Boyle, J.) ("Texas courts have held that 'alleging a conspiracy cause of action does not provide an independent basis for jurisdiction.'"); *Weinberg v. NFL Players Ass'n*, 2008 WL 4808920, at *5 (N.D. Tex. Nov. 5, 2008) (Boyle, J.) (same). This Court in *Rumble* reached the same result, holding that an alleged

6

co-conspirator's action "in furthering [a] conspiracy cannot be used to establish personal jurisdiction" over another defendant. *Rumble, Inc. v. World Fed'n of Advertisers*, 2025 WL 2345076, at *11 (N.D. Tex. Aug. 13, 2025) (Boyle, J.).[5]

Even if conspiracy jurisdiction could be viable (it cannot), X's conclusory and controverted allegations cannot support personal jurisdiction as to Nestlé S.A. In X's own words:

> SBI, Nestlé, and Lego A/S [participated in the alleged conspiracy] through their participation in WFA and GARM themselves (including by agreeing to their rules), in steering the operations of the ANA (which itself had a seat on the GARM Steer Team), by withholding advertising purchases from X, and by acting in unity of purpose with their commonly-controlled U.S.-based affiliates or subsidiaries to engage in the same conduct as a single enterprise.

Opp'n at 26. This allegation (1) impermissibly aggregates Nestlé S.A. with NUSA as "Nestlé;" (2) ignores Nestlé S.A.'s uncontroverted declaration stating that it is *not* a member of WFA, GARM, or ANA; (3) ignores Nestlé S.A.'s uncontroverted declaration stating that it does not advertise with X (formerly Twitter) in the United States or anywhere in the world; (4) impermissibly asserts a legal conclusion—that Nestlé S.A. acted with unity of purpose with its U.S.-based affiliate—as a factual allegation; and (5) wrongly relies on a liability doctrine (single enterprise) to establish personal jurisdiction. This allegation is, in microcosm, representative of the many fatal deficiencies in X's theory of personal jurisdiction as to Nestlé S.A.

Because X's alternate theories for imputing non-Nestlé S.A. contacts with the United States to Nestlé S.A. fail as a matter of law and because X has not shown that Nestlé S.A. individually

---

[5] X's citation to *Guidry v. U.S. Tobacco Co.*, changes nothing because the *Guidry* court did not rule on conspiracy jurisdiction. Rather, the *Guidry* court held it "need not consider or decide the complex issues of whether the plaintiffs made a prima facie showing that each of the [defendants] had sufficient minimum contacts with [the forum] because it conspired with one or more [other defendants]" because the court found that "plaintiffs have made a prima facie showing that each . . . defendant *individually* had sufficient contacts with the forum[.]" 188 F.3d 619, 626, 631 (5th Cir. 1999) (emphasis added).

has minimum contacts with the United States, claims against Nestlé S.A. should be denied for lack of personal jurisdiction.[6]

## II. THE CLAYTON ACT DOES NOT PROVIDE AN ALTERNATIVE BASIS FOR ASSERTING PERSONAL JURISDICTION OVER NESTLÉ S.A.

X's theory of personal jurisdiction as to Nestlé S.A. under Section 12 of the Clayton Act fails as it does under Rule 4(k)(2), because, at most, Section 12 permits aggregation of a party's nationwide contacts in applying the due process standard, which is the same test that applies under Rule 4(k)(2). Indeed, X itself recognizes that even if its arguments about the Clayton Act were to carry the day (they do not), the end result would be for the Court to "apply the same due process analysis applicable to Rule 4(k)(2)[.]" Opp'n at 34. Thus, for the same reasons discussed above, Nestlé S.A. should be dismissed.

X's theory under the Clayton Act fails for the additional reason that Section 12 does not even apply. Nestlé S.A. does not satisfy Section 12's special venue provision, and satisfying the special venue provision is a prerequisite for the aggregation of national contacts under Section 12's national service of process provision. Section 12's special venue provision provides that an action "against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business[.]" 15 U.S.C. § 22. Nestlé S.A. does not satisfy any of these conditions for venue. It does not inhabit Texas because it is not incorporated there and does not have its principal place of business there; it cannot be found in

---

[6] Because X has not identified any specific conduct by Nestlé S.A. anywhere in the United States, X cannot, by definition, satisfy the second prong of the specific jurisdiction inquiry to show that "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation omitted). This Court therefore may not exercise specific jurisdiction over Nestlé S.A. The Court also need not address the "fair and reasonable" prong of the analysis. *See Exeter Fin. Corp. v. Metro Auto Sales Inc.*, 2018 WL 837696, at *3 (N.D. Tex. Feb. 12, 2018) (Boyle, J.) (concluding jurisdictional analysis after plaintiff failed the first prong).

Texas for the same reasons and also because it does not conduct any business there; and it does not transact business in Texas because it is not licensed or registered to conduct business anywhere in the United States—and does not conduct business in the United States—and therefore cannot be said to have any substantial business activity in Texas. X's inability to establish proper venue under the special venue provision of the Clayton Act precludes its reliance on Section 12's service of process provision.

The Court has already rejected arguments, identical to those advanced by X, for decoupling the special venue provision from the service of process provision. *See Rumble*, 2025 WL 2345076, at *7. As this Court held, the special venue and the service of process provisions "are integrated" and Section 12 only permits the aggregation of nationwide contacts under the latter "if the special venue provision is satisfied." *Id.* (relying on the structure and text of Section 12 to support an integrated reading). Moreover, as the Court noted, an integrated reading of the provisions best preserves the function of both the special venue and service of process provisions. Indeed, an independent reading of Section 12's service of process provision "would improperly render the Clayton Act's special venue provision superfluous because the general venue statute would *always* authorize venue over antitrust cases brought against a corporation." *Rumble*, 2025 WL 2345076, at *8 (original emphasis); *see also KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 725 (7th Cir. 2013) (considering and rejecting a scenario where "in a suit against an alien . . . a plaintiff could combine Section 12 service of process with Section 1391 venue, [and] drag an alien into court anywhere in the United States").

X's reliance on *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.* and the Alien Venue Statute to create a domestic/foreign defendant distinction fails to move the needle in its favor. 406 U.S. 706 (1972); 28 U.S.C. § 1391(c)(3). In the first place, "[n]othing in Section 12 of the Clayton

9

Act or any other provision of the statutory scheme supports giving Section 12 a different meaning in cases where the defendant is a foreign corporation." *Rumble*, 2025 WL 2345076, at *9. Further, as this Court reasoned, the Clayton Act does not "expressly incorporate the 'tradition' that suits against foreign defendants can 'be tried in any district, subject only to the requirement of service of process.'" *Id.* The *Brunette Mach. Works* case, therefore, "does not support distinguishing between foreign and domestic defendants in Clayton Act cases," regardless of the Alien Venue Statute. *Id.*

Accordingly, the Clayton Act does not provide an alternative basis for exercising personal jurisdiction over Nestlé S.A. and the claims against it should be dismissed for lack of personal jurisdiction.

## III.  THE COURT SHOULD DENY JURISDICTIONAL DISCOVERY

The Court should reject X's suggestion that the Court "permit jurisdictional discovery as to the identity of the Nestlé entity that did these things to clarify any ambiguities its conduct has created."[7] Opp'n at 6, n. 2. This Court has held that jurisdictional discovery should be denied when a plaintiff merely "seeks to understand *who* the [actor] was within the broader corporate family, not *whether* [defendant] has any additional contacts with Texas." *DDC Tech., LLC*, 2022 WL 17813705, at *7.

### CONCLUSION

For the foregoing reasons, Nestlé S.A. respectfully requests that this Court grant Nestlé S.A.'s motion to dismiss the claims alleged against it in Plaintiff's second amended complaint without leave to amend.

---

[7] Contrary to X's unfounded aspersions, Nestlé S.A. is not playing "a corporate shell game." Opp'n at 6, n.2. Nestlé's corporate structure has existed for decades prior to the events allegedly giving rise to X's claims.

10

Dated: September 26, 2025						Respectfully submitted,


By: */s/ Anthony W. Bates*
Anthony W. Bates (Bar No. 24076904)
**SHERRILL & GIBSON, PLLC**
3711 Maplewood Avenue, Suite 200
Wichita Falls, TX 76308
Phone: (940) 264-4400
Fax: (940) 264-4401
Email: tbates@sgpllc.law

By:     */s/ Carmine R. Zarlenga*
Carmine R. Zarlenga (NDTX Bar No. 386244DC)
Oral D. Pottinger (*admitted pro hac vice*)
Christina Luk (*admitted pro hac vice*)
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3227
Fax: (202) 263-5227
Email:  czarlenga@mayerbrown.com
           opottinger@mayerbrown.com
           cluk@mayerbrown.com

*Attorneys for Defendant Nestlé S.A.*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Carmine R. Zarlenga*
Carmine R. Zarlenga