IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

FILED
February 6, 2026
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| X CORP., | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | §  No. 7:24-cv-00114-B |
| | § |
| WORLD FEDERATION OF ADVERTISERS; *ET AL.*, | § |
| | § |
| *Defendants*. | § |

**PLAINTIFF X CORP.'S PROPOSED SUR-REPLY IN OPPOSITION TO MOTION FOR INTERDISTRICT TRANSFER**

Plaintiff X Corp. respectfully submits this proposed Sur-Reply in opposition to the motion to transfer this action to the Southern District of New York filed by certain Defendants. (ECF 178.) Plaintiff's proposed Sur-Reply addresses new matter in the moving Defendants' Reply in support of the motion to transfer. (ECF 221.)

In their Reply, the transfer movants argue that a Master Services Agreement ("MSA") between X and certain advertisers, rather than the Terms of Service ("TOS") between X and the transfer movants that contains a Texas forum selection clause, "govern[s] advertising on the [X] platform." (Reply at 5.) X has submitted unrebutted evidence that the terms in its most recent TOS formed a binding contract with each of the transfer movants. The transfer movants, in contrast, submit no evidence that they are parties to the current version of the MSA, and given that they are generally purchasing no advertising from X as part of the boycott alleged in this action, it is unlikely that they are.

Advertisers on X must agree to both the TOS and the MSA. The MSA expressly references and incorporates the TOS. (*See* ECF 222 at App. 103 ("Your participation in each Program is subject to our policies as updated from time to time, including our … Terms of Service

1

(https://x.com/tos) ….").) The TOS also references the MSA. (*See* ECF 198 at App. 147 ("If you use advertising features of the Services, you agree to our Master Services Agreement (https://ads.x.com/terms).").) The TOS provides that the terms of the MSA supplement those of the TOS and supersede the terms of the TOS only (i) in the event of a conflict between the two agreements and (ii) while the counterparty-advertiser is using the advertising services of the MSA. (*Id.* ("By using or paying for any of these additional services [including the advertising features of the Services governed by the MSA], you agree to any additional terms applicable to those services, and those additional terms become part of our agreement with you. If any of the applicable additional terms conflict with these Terms, the additional terms will prevail while you are using those services to which they apply.").)

As a threshold matter, because the movants have made no showing that they are using the advertising services of the MSA, the terms of the MSA are irrelevant, and the terms of the TOS—which they do not deny they are bound by—control.

But even if the movants were parties to the MSA, a fact that they have not proven or attempted to prove, the FSC in the TOS would remain binding and enforceable because there is no conflict between the terms of the MSA (which has no forum selection clause) and the FSC in the TOS. The inclusion of a merger clause in the MSA is not, by itself, enough to make the two documents separate contracts, particularly given that the MSA expressly incorporates the TOS and vice versa as described above. *See Silverthorne Seismic, LLC v. Sterling Seismic Servs., Ltd.*, No. 4:20-cv-02543, 2021 WL 11728206, at *3 (S.D. Tex. June 1, 2021). In this situation, Texas courts read the contracts together and give effect to each term that is not in conflict with the other contract, and to the extent there is an inconsistency, the later one (here, the TOS) prevails.[1] *The Courage Co. v. The Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex. App. 2002) ("In such a case, the

---

[1] The Second Amended Complaint alleges that the Movants stopped purchasing advertising from X in late 2022. (ECF 77 ¶ 138.) X's opposition to the motion to transfer and the Scolari Declaration in support thereof establishes that each of the Movants is bound by the most recent version of the TOS that became effective in November 2024. (ECF 197 at 6–9; ECF 198 (Scolari Decl.) ¶¶ 15–32 (App. 007–013).)

two contracts must be interpreted together, and to the extent that they are inconsistent, the later one prevails. The remainder of the first contract not in conflict with the second may be enforced." (internal citations omitted)). The Texas Supreme Court's opinion in *In re Laibe Corp.*, 307 S.W.3d 314 (Tex. 2010), cited in X's opposition brief, speaks directly to this scenario. In that case, the court held that two separate documents that were related to the sale of a drilling rig could be read together as a single contract and the court could enforce a forum-selection clause contained in only one of the documents, the later-in-time agreement. *Id.* at 317.

    The interdependent nature of the MSA and the TOS also disposes of Movant's alternative argument that the broad FSC in the TOS does not encompass the claims at issue in this case because (according to the Movants) the claims have no relationship to the TOS. (Reply at 5.) As an initial matter, the FSC on its face applies given that it applies to *all* claims "related to" the "Services," which include "ads." (ECF 198 (Scolari Decl.) ¶¶ 6–7, 13 (App. 006–007 & App. 143, 151.) This lawsuit clearly "relates" to "ads" on X. Moreover, "Services" are defined in the TOS also to include "your and **other users**' access to and use of our services," (*id.* ¶ 7 (App. 006 & App. 143) (emphasis added), and X alleges that Defendants' illegal boycott of its platform harms its other users (ECF 77 (Second Amended Compl.) ¶ 155). In any event, because the purchase of advertising from X requires agreement to both the MSA and the TOS, X's claims against defendants that had once purchased advertising and then abruptly stopped doing so, as alleged in Paragraph 138 of the Second Amended Complaint, necessarily exist only because those defendants first agreed to the TOS. This fact distinguishes all of the cases cited by movants on page 5 of their Reply. Like the antitrust claims described in the cited portion of *Smith v. Lucent Technologies, Inc.*, No. Civ.A. 02-0481, 2004 WL 515769, at *10 (E.D. La. Mar. 16, 2004), X's antitrust claims against movants relate to the "business relationship evidenced by the contract" formed by the TOS. (citation omitted).

3

Dated: September 30, 2025

Respectfully submitted,

*/s/ John C. Sullivan*
John C. Sullivan
 Texas Bar No. 24083920
 john.sullivan@the-sl-lawfirm.com
Jace R. Yarbrough
 Texas Bar No. 24110560
 jace.yarbrough@the-sl-lawfirm.com
S|L LAW PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Phone: (469) 523-1351

Christopher G. Renner (*pro hac vice*)
 D.C. Bar No. 1025699
 cgrenner@dhillonlaw.com
Jonathan M. Shaw (*pro hac vice*)
 Virginia Bar No. 98497
 jshaw@dhillonlaw.com
Andrew K. Mann (*pro hac vice*)
 Virginia Bar No. 77021
 akmann@dhillonlaw.com
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314

*Attorneys for Plaintiff X Corp.*