7:24-cv-00114-B

**FILED**

2026 WL 100806
Only the Westlaw citation is currently available.
United States Court of Appeals, Fifth Circuit.

**February 6, 2026**

KAREN MITCHELL

CLERK, U.S. DISTRICT
COURT

RX SOLUTIONS, INCORPORATED,

Plaintiff—Appellant,

v.

CAREMARK, L.L.C.; CVS Pharmacy,

Incorporated, Defendants—Appellees.

No. 25-60084
|
FILED January 14, 2026

Appeal from the United States District Court for the Southern District of Mississippi, USDC No. 1:23-CV-100, Halil S. Ozerden, Chief Judge

**Attorneys and Law Firms**

Patrick Russell Buchanan, Esq. (argued), Brown Buchanan, P.A., Biloxi, MS, for Plaintiff—Appellant.

David Michael Hurst, Jr., Esq., Nash Gilmore, Phelps Dunbar, L.L.P., Flowood, MS, Jonathan Assia, Nixon Peabody, L.L.P., Los Angeles, CA, Seth A. Horvath (argued), Nixon Peabody, L.L.P., Chicago, IL, for Defendants—Appellees.

Before Southwick, Higginson, and Wilson, Circuit Judges.

**Opinion**

Cory T. Wilson, Circuit Judge:

**\*1**  After Caremark, LLC denied Rx Solutions, Inc.'s application to join Caremark's pharmacy benefit management network, Rx Solutions brought two federal antitrust claims and three state law claims against Caremark and CVS Pharmacy, Inc. The district court dismissed the federal claims, and then, finding no basis for diversity jurisdiction, declined to exercise supplemental jurisdiction over the remaining state claims. We affirm the district court's dismissal of the federal claims but reverse the district court's finding of a lack of diversity jurisdiction. We affirm the dismissal one of the state claims and remand the remaining two claims for further proceedings.

**EXHIBIT**

**A**

**I.**

**A.**

Rx Solutions, Inc. (Rx Solutions) is a retail pharmacy in Mississippi. Brothers Logan Cain and Evan Cain each own 50% of Rx Solutions, which is operated by Louis Bond, the corporation's CEO.

Rx Solutions wanted to become a member of a pharmacy benefit management (PBM) network owned by Caremark, LLC (Caremark). Caremark is "engaged in the management of prescription benefits for individuals, like a health insurance company manages medical benefits." According to Rx Solutions, Caremark's PBM network is "the largest—or one of the largest" PBM networks in the United States. CVS Pharmacy, Inc. (CVS), "the largest—or one of the largest—retail pharmacies in the United States[,]" is a member of Caremark's PBM network.[1] Caremark and CVS are both subsidiaries of CVS Health Corporation.

If a consumer wants to receive a PBM network's benefits, then that consumer's pharmacy needs to be a member of that PBM network. A retail pharmacy seeking membership in Caremark's PBM network must complete a credentialing questionnaire and application. Additionally, under federal regulations, a pharmacy must disclose whether a person with "ownership or control" has ever been convicted of a crime "related to the person's involvement in any program under Medicare, Medicaid, or the [T]itle XX Services Program." 42 C.F.R. § 455.106(a).[2]

Rx Solutions applied for admission to Caremark's PBM network, but the application was denied in October 2022. In November 2022, Caremark sent a letter explaining its denial: Rx Solutions provided "incomplete, inconsistent and/or inaccurate information regarding Rx Solutions['s] ownership[,]" as information in Rx Solutions's application was inconsistent with information in the company's corporate filings with the state. Believing Caremark was incorrect, Rx Solutions wrote Caremark to rectify Caremark's mistaken basis for denial. Nonetheless, Caremark again denied Rx Solutions's application in February 2023. Caremark gave the same reason for its new denial but also added another: The owners of Rx Solutions "have affiliations with both Quest Pharmacy [Inc.] and the previous owner Harold Ted Cain who was found guilty of violating the False Claims Act." Harold

Ted Cain is the father of Logan and Evan Cain, and he owns Quest Pharmacy.

**\*2** Rx Solutions continues to dispute Caremark's stated reasons for denying the application. After all, Rx Solutions provided the same information to eight other PBM networks and was accepted into all of them. And Rx Solutions alleges that Harold Ted Cain has no operational or managerial control of Rx Solutions, nor do his sons have any operational or managerial control over Quest Pharmacy. According to Rx Solutions, "Harold Ted Cain has never been convicted of a criminal offense related to his involvement in any program under Medicare, Medicaid or Title XX."

**B.**

Rx Solutions filed suit against Caremark and CVS in the Southern District of Mississippi. The gist of Rx Solutions's allegations is that Caremark and CVS "conspired and colluded to use their PBM to ... engage in prohibited conduct ... in order to force competitors, such as Rx Solutions, out of business."

Rx Solutions alleged two claims for violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2. Rx Solutions also brought three claims under Mississippi law: One under Miss. Code Ann. § 83-9-6 (the state's "any willing provider" statute), another under Miss. Code Ann. § 75-21-3 (the state's antitrust statute), and a claim for tortious interference with business relations. Caremark and CVS filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion without prejudice as to the two Sherman Act claims and the two Mississippi statutory claims, but denied the motion as to the claim for tortious interference with business relations.

Rx Solutions then filed an amended complaint alleging the same five claims. The district court dismissed the amended complaint. The court concluded that Rx Solutions had failed to delineate a relevant market, which is a requirement for Rx Solutions's federal antitrust claims. The court also explained that even if the amended complaint had adequately alleged a relevant market, the federal antitrust claims failed for other reasons. Finally, the district court held that Rx Solutions had failed to allege diversity jurisdiction, so the court declined to exercise supplemental jurisdiction over Rx Solutions's three remaining state law claims. Rx Solutions then appealed.

**II.**

"We review a district court's decision on a Rule 12(b)(6) motion de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (quoting *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007)). "We assess a Rule 12(b)(6) motion only on the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Id.* (quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)) (quotation marks omitted).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007)). While we accept all well-pleaded facts as true, we do not accept as true "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quotation marks and citation omitted).

**III.**

We first address Rx Solutions's two federal antitrust claims. We then discuss whether the record contains a basis for diversity jurisdiction. Finding that there is diversity jurisdiction, we end by dismissing one of Rx Solutions's state claims before remanding the remaining two.

**A.**

**\*3** Rx Solutions brings two federal antitrust claims: One for violation of § 1 of the Sherman Act, and one for violation of § 2 of the Sherman Act. *See* 15 U.S.C. §§ 1, 2. Both claims fail, for at least two independent reasons. First, both claims require a plaintiff adequately to define the relevant market, and Rx Solutions has failed to do so. Second, both claims require a plaintiff to establish antitrust injury, and Rx Solutions falters on that score as well.

**1.**

To state a claim for a violation of § 1 of the Sherman Act, a plaintiff must allege that a defendant engaged in a conspiracy to restrain trade "in the relevant market." *Wampler v. Sw. Bell Telephone Co.*, 597 F.3d 741, 744 (5th Cir. 2010). And to state a claim for a violation of § 2, a plaintiff must allege that a defendant, *inter alia*, possessed monopoly power "in the relevant market." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). It follows then that to sustain claims under either § 1 or § 2, a plaintiff must "define the relevant market." *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453–54 (5th Cir. 2021).

"Whether a relevant market has been identified is usually a question of fact." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002). But the "less stringent standard of pleading" at the motion-to-dismiss stage "does not relieve [a plaintiff] from its obligation to allege facts sufficient to support an antitrust violation." *Id.* at 633. "A district court can dismiss Sherman Act claims for failure to properly define the relevant market." *New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1036 (5th Cir. 2023).

"The relevant market has two components: a product market and a geographic market." *Shah*, 985 F.3d at 454; *see also* Herbert Hovenkamp, Federal Antitrust Policy: The Law of Competition and Its Practice § 3.6 (4th ed. 2011) (same). A failure to substantiate either one will result in dismissal. *New Orleans Ass'n*, 56 F.4th at 1036. Rx Solutions has not adequately pled either one.

To determine the "relevant product market," courts "consider the extent to which the seller's product is 'interchangeable in use' and the degree of 'cross-elasticity of demand between the product itself and substitutes for it.' " *Apani*, 300 F.3d at 626 (quoting *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1245 (5th Cir. 1985)). Thus, to plead a legally sufficient product market, a plaintiff must "define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand." *Id.* at 628. If a plaintiff fails to do so, or if a plaintiff "alleges a proposed relevant market that clearly does not encompass all interchangeable product substitutes even when all factual inferences are granted in the plaintiff's favor," then the "relevant market is legally insufficient, and a

motion to dismiss may be granted." *Id.* "A legally cognizable product market must 'include all commodities reasonably interchangeable by consumers for the same purposes[.]' " *New Orleans Ass'n*, 56 F.4th at 1037 (quoting *Shah*, 985 F.3d at 454). A product market is "insufficiently pleaded" if it "fails to identify reasonable substitutes." *Id.*

Rx Solutions's proposed product market is "the prescription medication market." But Rx Solutions provides no explanation for why this is the appropriate delineation. The alleged product market definition stands alone, with no facts alleged to support it. Rx Solutions's amended complaint contains no allegations regarding reasonable interchangeability or cross-elasticity of demand. Without more, Rx Solutions's bare definition of its proposed product market is insufficient as a matter of law, and fatal to Rx Solutions's federal antitrust claims.

**\*4** As for the "relevant geographic market," courts "focus on the area of 'effective competition.' " *Apani*, 300 F.3d at 626 (quoting *Jim Walter Corp. v. F.T.C.*, 625 F.2d 676, 682 (5th Cir. 1980)). This is the area "in which the seller operates and to which buyers can practicably turn for supplies." *Wampler*, 597 F.3d at 744 (quoting *Apani*, 300 F.3d at 626). "[T]he alleged geographic market must correspond to the commercial realities of the industry and be economically significant." *Apani*, 300 F.3d at 628 (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 336–37, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)). Those commercial realities include "size, cumbersomeness, and other characteristics of the relevant product," as well as "regulatory constraints impeding the free flow of competing goods into the area, perishability of products, and transportation barriers." *Id.* at 626. "When assessing economic significance, a court must determine whether the geographic area contains an appreciable segment of the product market." *Id.* at 629 (citation omitted).

Rx Solutions's proposed geographic market is "the State of Mississippi, including but not limited to Greene County, Mississippi and Stone County, Mississippi." But the amended complaint contains no allegations supporting that geographic market, beyond a generic assertion that the proposed geographic market is where Caremark's PBM network and CVS's pharmacies operate. There are no facts alleged regarding the area of effective competition, commercial realities of the industry, or economic significance of the identified market. "[I]dentifying a relevant market requires more than a determination of 'metes and bounds.' " *Id.* at 630 (quoting *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320,

331–32, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961)). Lacking any allegations apart from merely offering the state and counties in which the parties do business, Rx Solutions's proposed geographic market is legally insufficient, and likewise fatal to Rx Solutions's federal antitrust claims.

**2.**

Beyond Rx Solutions's failure to plead a relevant market, Rx Solutions's federal antitrust claims are not viable for another reason: The amended complaint does not articulate any antitrust injury.[3]

"[A]n antitrust plaintiff must do more than meet the requirements of Article III to establish its standing to bring suit." *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 737 (5th Cir. 2015); *see also Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 488 (5th Cir. 2022) (discussing antitrust laws' "threshold requirements that go beyond Article III standing"); Daniel Berger & Roger Bernstein, *An Analytical Framework for Antitrust Standing*, 86 Yale L.J. 809, 813 n.11 (1977) ("[T]he antitrust standing inquiry is not concerned with whether the plaintiff has constitutional standing.").[4] "Standing to pursue an antitrust suit exists only if a plaintiff shows[,]" *inter alia*, "antitrust injury." *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 305 (5th Cir. 1997); *see Bell v. Dow Chem. Co.*, 847 F.2d 1179, 1182 (5th Cir. 1988) ("Antitrust injury is a component of the standing inquiry, not a separate qualification.").

**\*5** The Supreme Court has distilled antitrust injury as being "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). "The antitrust laws ... were enacted for 'the protection of competition not competitors.' " *Id.* at 488, 97 S.Ct. 690 (quoting *Brown Shoe Co.*, 370 U.S. at 320, 82 S.Ct. 1502). "Typical" antitrust injury thus "include[s] increased prices and decreased output." *Anago, Inc. v. Tecnol Med. Prods., Inc.*, 976 F.2d 248, 249 (5th Cir. 1992). "This circuit has narrowly interpreted the meaning of antitrust injury, excluding from it the threat of decreased competition." *Id.* "Loss from competition itself—that is, loss in the form of customers' choosing the competitor's goods and services over the plaintiff's—does not constitute an antitrust injury." *Pulse Network*, 30 F.4th at 489. In short, the question underlying antitrust injury is whether *consumers*—not *competitors*—have been harmed.

Rx Solutions alleges that "Defendants conspired and colluded to use their PBM to improperly control and manipulate costs of prescription medication and ... force competitors, such as Rx Solutions, out of business." Rx Solutions posits that the "improper monopolization ... leaves consumers with little or no choice of selecting alternatives for the purchase of prescription medications," causing Caremark and CVS to receive "an unfair and improper increase in their respective profits to the detriment of [Rx Solutions] and the consumers of prescription medications." According to Rx Solutions, "Defendants' prohibited conduct results in competitors, such as Rx Solutions, being unable to fairly compete in the prescription medication market."

But Rx Solutions nowhere explains how *consumers* have been harmed by Caremark and CVS. Rx Solutions does not allege that there was an increase in the price of prescription medication; nor does Rx Solutions allege that there was a decrease in the supply or quality of prescription medication. Rather, the gravamen of Rx Solutions's complaint is that Caremark and CVS have made it harder to compete with them. That is archetypical harm to a competitor, not harm to consumers. Without more, Rx Solutions has not alleged a cognizable antitrust injury, so, for this additional reason, Rx Solutions articulates no viable Sherman Act claim.

**B.**

The district court determined that it had no basis to exercise diversity jurisdiction. Based on that finding, it dismissed Rx Solutions's state law claims. On this point, we disagree with the district court.

Rx Solutions's amended complaint alleges that: (1) Rx Solutions is a Mississippi corporation with its principal place of business in Mississippi; (2) Caremark is a California limited liability company with its principal place of business in Rhode Island; and (3) CVS is a Rhode Island corporation with its principal place of business in Rhode Island. But it is well-established that "the citizenship of an *LLC* is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (emphasis added).[5] The amended complaint does not allege the citizenship of the members of Caremark, an LLC, such

that the amended complaint indeed does not adequately allege Caremark's citizenship for purposes of diversity jurisdiction.

On appeal, Caremark and CVS emphasize that as the plaintiff, Rx Solutions bears the burden of properly alleging a basis for diversity jurisdiction. They are correct on that score. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) ("For diversity jurisdiction, the party asserting federal jurisdiction must distinctly and affirmatively allege the citizenship of the parties.") (quotations and citation omitted). But the record nonetheless substantiates a basis for diversity jurisdiction: In Caremark and CVS's answer to Rx Solutions's *original* complaint, Caremark and CVS averred that "Caremark's sole member is Caremark Rx, LLC, whose sole member is CVS." And because "CVS is incorporated in Rhode Island" and has its "principal place of business in Rhode Island," Caremark and CVS conceded that "Caremark's place of citizenship for jurisdictional purposes is Rhode Island." This admission by Caremark and CVS supplies a clear basis for diversity jurisdiction.

**\*6** Caremark and CVS nonetheless assert that because Rx Solutions's *amended* complaint superseded its original complaint,[6] we should not consider their answer to the original complaint. We disagree. Caremark and CVS's answer to Rx Solutions's original complaint was, if not a binding representation, an evidentiary admission that the district court could have properly considered. *Cf. White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983) ("Admissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions."). Caremark and CVS agreed that Caremark's citizenship, for purposes of diversity jurisdiction, is Rhode Island.[7] The district court thus erred in finding that there was no diversity jurisdiction.

## C.

Because there was a basis for diversity jurisdiction, the district court should have addressed the Rule 12(b)(6) viability of Rx Solutions's three state claims. That being said, we may do so now because we "may affirm on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result." *Lauren C. ex rel. Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d

363, 374 (5th Cir. 2018) (citation omitted). We exercise that discretion regarding one of Rx Solutions's state claims, as that claim obviously falters for the same reasons that the federal antitrust claims do.

Rx Solutions alleges a claim under Miss. Code Ann. § 75-21-3, Mississippi's antitrust law. Claims under that statute are "analytically identical" to federal antitrust claims, so they are analyzed the same way. *Walker v. U-Haul Co. of Miss.*, 734 F.2d 1068, 1070 n.5 (5th Cir. 1984); *see also Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403, 409 n.10 (5th Cir. 2007). The parties agree. Thus, for the same reasons Rx Solutions's Sherman Act claims fail, as discussed *supra*, its § 75-21-3 claim also falls short and was properly dismissed.

By contrast, we remand Rx Solutions's two remaining state claims for the district court to consider in the first instance. Rx Solutions brings a claim under Miss. Code Ann. § 83-9-6 and a claim for tortious interference with business relations. These claims are not as easily resolved as Rx Solutions's state antitrust claim. Rx Solutions's claim under § 83-9-6 involves analysis of whether a PBM qualifies as a "health benefit plan," "insurance company" or "health maintenance organization." *See* Miss. Code Ann. § 83-9-6(1). And Rx Solutions's claim for tortious interference initially survived Caremark and CVS's motion to dismiss Rx Solutions's original complaint. Given that, it would be premature for us to decide the viability of these two claims in the first instance.

## IV.

For these reasons, we affirm the district court's dismissal of Rx Solutions's federal and state antitrust claims. We reverse the district court's finding of a lack of diversity jurisdiction and remand Rx Solutions's two remaining state claims for further proceedings. We express no view on how the district court should resolve those two claims on remand.

AFFIRMED in part; REVERSED in part; REMANDED.

**All Citations**

--- F.4th ----, 2026 WL 100806

## Footnotes

The amended complaint does not directly state that CVS is a member of Caremark's PBM network, but it is implied throughout the amended complaint, referenced in Rx Solutions's brief, and never disputed by Caremark or CVS.

The parties do not dispute the contours of the federal regulations, which do not control the analysis.

The district court did not address this issue, but this court "may affirm on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result." *Lauren C. ex rel. Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 374 (5th Cir. 2018) (citation omitted).

"Whether a plaintiff has antitrust standing does not raise a question of jurisdiction on which we are required without exception to satisfy ourselves." *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1343 (5th Cir. 1988). Our sister circuits have analyzed this question similarly. *E.g., Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 94 n.5 (2d Cir. 2019) ("While the term 'antitrust standing' may give the impression of a jurisdictional obligation, ... its absence is not a jurisdictional bar to suit, but a failure to state a claim.") (internal quotations and citation omitted); *Ethypharm S.A. France v. Abbott Lab'ys*, 707 F.3d 223, 232 (3d Cir. 2013) ("[A]ntitrust standing ... does not affect the subject matter jurisdiction of the court, as Article III standing does[.]"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107–08 (D.C. Cir. 2002) ("Unlike constitutional standing, this court's jurisdiction does not turn on antitrust standing.").

A corporation, on the other hand, is a citizen of the state in which it is incorporated as well as the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1).

*See* 6 CHARLES A. WRIGHT & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed., May 2025 update) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case.").

And if there were any doubt, Caremark and CVS's counsel at oral argument reaffirmed that in Caremark and CVS's view, there is diversity jurisdiction in this case.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---